CHAPIN FITZGERALD
  SULLIVAN & BOTTINI LLP
EDWARD D. CHAPIN (No. 053287)
(echapin@cfsblaw.com)
FRANCIS A. BOTTINI, JR. (No. 175783)
(fbottini@cfsblaw.com)
550 West "C" Street, Suite 2000
San Diego, CA 92101
Tel: (619) 241-4810
Fax: (619) 955-5318

BERNSTEIN LITOWITZ
  BERGER & GROSSMANN LLP
BLAIR A. NICHOLAS (No. 178428)
(blairn@blbglaw.com)
BENJAMIN GALDSTON (No. 211114)
(beng@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

[Additional Counsel Appear in Signature Block]

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MATTHIAS HILDEBRANDT, SCOTT PHILLIPS, DORSEY MCTAGGART, and WILLIAM C. HADDON, individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FIDELITY NATIONAL FINANCIAL, INC., a Delaware corporation; FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation; COMMONWEALTH

Case No. SACV12 - TSLMLx)

CLASS ACTION COMPLAINT

1  |  LAND TITLE COMPANY, a California
2  |  corporation; CHICAGO TITLE
   |  COMPANY, a California corporation;
3  |  TICOR TITLE COMPANY OF
   |  CALIFORNIA, a California
4  |  corporation; LAWYERS TITLE
   |  COMPANY, a California corporation;
5  |  FIDELITY NATIONAL
   |  DISCLOSURE SOURCE, LLC, a
6  |  Delaware corporation; FIDELITY
   |  NATIONAL HOME WARRANTY
7  |  COMPANY, a California corporation;
   |  and DOES 1-100, inclusive,
8
   |                  Defendants.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    NATURE OF THE ACTION ............................................................. 1

II.   JURISDICTION AND VENUE ...................................................... 4

III.  THE PARTIES ................................................................................. 5

      A.   Plaintiffs ................................................................................ 5

      B.   Defendants ............................................................................. 6

IV.   NON-DEFENDANT CO-CONSPIRATORS ................................ 10

V.    SUBSTANTIVE ALLEGATIONS ................................................ 10

VI.   DEFENDANTS' VIOLATIONS OF CAL. INS. CODE §§ 12404
      AND 12760 ..................................................................................... 19

VII.  CONSPIRACY, AIDING AND ABETTING, AND CONCERTED
      ACTION ........................................................................................... 22

VIII. EQUITABLE TOLLING ................................................................. 26

IX.   CLASS ACTION ALLEGATIONS ............................................... 27

FIRST CAUSE OF ACTION: VIOLATIONS OF RESPA,
      12 U.S.C. § 2607 ............................................................................ 31

SECOND CAUSE OF ACTION: VIOLATIONS OF CAL. BUS. &
      PROF. CODE §§ 17200, *ET SEQ.* ON BEHALF OF PLAINTIFFS
      HILDEBRANDT, PHILLIPS AND MEMBERS OF THE
      TRANSACTIONPOINT CLASS ..................................................... 34

THIRD CAUSE OF ACTION: VIOLATIONS OF CAL. BUS. & PROF.
      CODE §§ 17200, *ET SEQ.* ON BEHALF OF PLAINTIFFS
      HILDEBRANDT, PHILLIPS, AND THE CALIFORNIA UCL
      CLASS ............................................................................................. 35

FOURTH CAUSE OF ACTION: FOR A DECLARATORY
      JUDGMENT UNDER 28 U.S.C. § 2201(A) AND AN
      INJUNCTION .................................................................................. 37

PRAYER FOR RELIEF .............................................................................. 38

JURY DEMAND ......................................................................................... 39

APPENDIX ................................................................................... APPX-40

EXHIBITS A-E ............................................................................... A-43

## I.    NATURE OF THE ACTION

1.    This is a class action against Defendants Fidelity National Financial, Inc. ("Fidelity" or the "Company") and certain of its subsidiaries.  As alleged herein, Defendants violated federal and state laws during the Class Periods (defined below) by paying fees, kickbacks, and other valuable consideration to real estate agents and brokers for the referral of real estate settlement service business. Defendants carried out their unlawful scheme through a software platform that facilitated the placement of settlement service business and allowed kickbacks and referral fees to be disguised as "sublicense fees" or "access fees."

2.    Under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2607, *et seq.*, "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

3.    In violation of RESPA, Defendant Fidelity and certain of its subsidiaries and affiliates engaged in a scheme to provide real estate agents and brokers with fees, kickbacks, and other valuable consideration for the referral of real estate settlement service business via TransactionPoint, the Company's web-based transaction management software.   Through TransactionPoint, agents or brokers selected real estate settlement service providers for real estate transactions and, in turn, real estate brokers and agents entered into standard form sublicensing agreements with vendors, including Defendants, to enable the vendors to be listed and selected through TransactionPoint as service providers for the transaction. Under the guise of "sublicense fees" or "access fees," Defendants paid real estate agents and brokers predetermined fees for each referral of real estate settlement service provided.   Different fees were charged for different services.   In all transactions, however, real estate agents and brokers performed no *bona fide* work for the fees.  In short, the scheme allowed Defendants and participating real estate

1   agents and brokers to camouflage illegal kickbacks and referral fees as sublicense

2   payments.

3       4.      Payments made under the TransactionPoint sublicensing agreements

4   by Defendants and other vendors were not nominal.  For example, in exchange for

5   referral of home warranty policies, kickback payments constituted up to one-fifth of

6   the premium for such policies.  Similarly, in exchange for referral of title insurance

7   policies, kickback payments frequently equaled or exceeded $100 per policy.  The

8   amount of the kickback was frequently linked to the profitability or cost of the

9   given settlement service.  Thus, the more lucrative the service, the steeper the

10  kickback.

11      5.      In addition to disguising unlawful kickbacks and referral fees as

12  "sublicensing fees," TransactionPoint also enabled Defendants to quantify and track

13  kickbacks owed to real estate agents and brokers.  Participating real estate agents

14  and brokers were included in Fidelity's "Revenue Share Program," and the

15  Company maintained reports listing each referral made by a "Revenue Share"

16  participant to the Company and the amount paid to the participant for each referral.

17      6.      To entice real estate agents and brokers to use the TransactionPoint

18  platform (and thus effectuate the scheme), Fidelity promoted TransactionPoint as a

19  revenue generating mechanism for real estate agents and brokers.  Fidelity actively

20  marketed the TransactionPoint platform and encouraging the use of its "pay-per-

21  click" system in settlement services as a way for the broker to generate revenue.

22  Fidelity also assisted and trained brokers in the use of TransactionPoint, including

23  how to complete the form sublicense agreements, and recommended the amount of

24  the fee brokers and agents should charge settlement service providers for referral of

25  a given settlement service.  In addition, if the vendor was a Fidelity-related

26  company, Fidelity would facilitate executing the sublicense agreement.

27      7.      During the Class Periods, hundreds, if not thousands, of real estate

28  agents and brokers executed TransactionPoint sublicensing agreements in which

1 | Fidelity or its subsidiaries and affiliates agreed to pay kickbacks for referrals. On

2 | information and belief, all TransactionPoint sublicense agreements that Defendants

3 | entered into with real estate agents and brokers during the Class Periods have been

4 | virtually identical standard form agreements.

5 |     8.     Defendants have engaged in the illegal kickback scheme for years,

6 | during which time they actively concealed the kickbacks from consumers and

7 | federal and state regulators. At various times during the Class Periods, the United

8 | States Department of Housing and Urban Development ("HUD") initiated non-

9 | public investigations and inquiries into the TransactionPoint scheme and the related

10 | licensing agreements that masked the unlawful kickbacks and referral fees. For

11 | example, HUD launched an investigation into the TransactionPoint scheme in 2009

12 | in response to a formal complaint from former Senator Bob Dole. A copy of

13 | Senator Dole's April 28, 2010 letter (with enclosures) to HUD's General Counsel

14 | regarding HUD's investigation in response to Senator Dole's complaint, which

15 | Plaintiffs obtained from the Consumer Financial Protection Bureau ("CFPB") in

16 | response to a Freedom of Information Act ("FOIA") request, is attached hereto as

17 | **Exhibit A**.

18 |     9.     In July 2011, HUD publicly disclosed its investigation into

19 | TransactionPoint for the first time and announced that it had entered into a

20 | settlement agreement with Fidelity in which the Company was required to pay a

21 | $4.5 million fine to settle HUD's charges that Defendants' payments under the

22 | TransactionPoint sublicensing agreements constituted unlawful kickbacks and

23 | improper referral fees in violation of RESPA. In the press release announcing the

24 | settlement – titled, "**HUD SETTLES RESPA KICKBACK CASE AGAINST**

25 | **FIDELITY NATIONAL FINANCIAL**" – HUD confirmed that Fidelity and its

26 | affiliates and subsidiaries had "engaged in a widespread and years-long campaign

27 | to pay real estate brokers kickbacks for the referral of real estate settlement

28 | services, including home warranties and title insurance" utilizing the

1   TransactionPoint platform, and that "RESPA is very clear that paying fees or
2   providing anything of value for the simple act of referring business is a violation of
3   law." A copy of the Settlement Agreement between HUD and Fidelity, and HUD's
4   press release announcing the settlement are attached hereto as **Exhibit B**.

5        10.   After agreeing to pay the $4.5 million dollar fee, Fidelity declared that
6   it would "terminate any arrangement involving the payment of fees to any real
7   estate brokers for use of the TransactionPoint platform."

8        11.   Throughout and following the Class Periods consumers had no basis or
9   reason to discover the unlawful scheme. Real estate agents and brokers involved in
10  the scheme never disclosed to their clients the illegal fees they were receiving, and
11  the use of TransactionPoint was not disclosed on HUD-1 real estate transaction
12  closing statements.

13       12.   As discussed in greater detail below, Defendants violated RESPA, 12
14  U.S.C. §§ 2601, *et seq.*, by giving or receiving fees and kickbacks in exchange for
15  the referral of real estate settlement services involving federally related mortgage
16  loans. Defendants also violated RESPA by giving or receiving a portion, split, or
17  percentage of charges for real estate settlement services involving federally related
18  mortgage loans. In addition, Defendants violated California Insurance Code
19  Sections 12404-12406 and 12760 and California's Unfair Competition Law,
20  California Business & Professions Code Sections 17200, *et seq.* ("UCL") by paying
21  commissions to real estate agents and brokers as an inducement or compensation
22  for the sale of home protection contracts, title insurance policies, and other real
23  estate settlement service business.

24  **II.   JURISDICTION AND VENUE**

25       13.   Jurisdiction in this Court exists under RESPA. This case arises in part
26  under the laws of the United States. Accordingly, federal question jurisdiction
27  exists pursuant to 28 U.S.C. §1331.

28

14.     Jurisdiction also exists pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1453.  Minimal diversity exists because Plaintiffs are California residents and citizens and Defendant Fidelity is a citizen of Delaware, its state of incorporation.     The amount in controversy exceeds $5,000,000 exclusive of interest and costs.

15.     Venue is proper in this Court because one or more of the Defendants are located within this District, Plaintiffs are California citizens, their transactions with Defendants were entered into in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## III.     THE PARTIES

### A.     Plaintiffs

16.     Plaintiff Matthias Hildebrandt, a California citizen, purchased a home protection contract issued by Defendant Fidelity National Home Warranty Company ("Fidelity National Home Warranty") during the Class Periods and in connection with the close of escrow for a residential home located at 13354 Killion Street, Sherman Oaks, California 91401 involving a federally related mortgage. The escrow on the transaction closed on or about January 6, 2010.

17.     Plaintiff Scott Phillips, a California citizen, purchased multiple real estate settlement services from the Defendants during the Class Periods in connection with the close of escrow for a residential home located at 3251 Pasternack Place, San Diego, California 92123 involving a federally related mortgage.  Among other settlement services, Plaintiff Phillips purchased (1) a home protection contract issued by Defendant Fidelity National Home Warranty; and (2) a title policy from Defendant Commonwealth Land Title Company. The escrow on the transaction closed on or about February 22, 2006.

18. Plaintiff Dorsey McTaggart is a California citizen. In 2009, she purchased a home protection contract from Defendant Fidelity National Home Warranty for her home in Corte Madera, California.

19. Plaintiff William C. Haddon is a Nevada citizen. He purchased a home protection contract issued by Defendant Fidelity National Home Warranty during the Class Periods and in connection with the close of escrow for a residential home located at 7620 Lytton Road, Reno, Nevada 89434 involving a federally related mortgage. The escrow on the transaction closed on or about December 16, 2009.

20. Upon information and belief, a portion of the fees paid for the real estate settlement services provided by Defendants to each of the Plaintiffs was paid by Defendants to real estate agents and/or brokers as kickbacks for the referral of such settlement services. Also, upon information and belief, Defendants and/or their parents and subsidiaries paid real estate agents and brokers commissions as an inducement or compensation for the issuance, purchase, or acquisition of home protection contracts issued by Defendant Fidelity National Home Warranty to Plaintiffs. Also upon information and belief, the price Defendants charged for the real estate settlement services and home protection contracts purchased by Plaintiffs from Defendants was inflated due to the commissions, fees, or kickbacks paid by Defendants. Plaintiffs believe such allegations will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

**B.  Defendants**

21. Defendant Fidelity National Financial, Inc. is a Delaware corporation with its principal place of business located at 601 Riverside Avenue, Jacksonville, Florida 32204. Defendant Fidelity is a holding company that, through its subsidiaries, provides title insurance, closing and escrow services, appraisal services, flood certification services, credit reporting services, property and casualty insurance services, mandatory disclosure reports, tax services, home warranty

1   services, and other real estate settlement services. It is the nation's largest title
2   insurance company through its title insurance underwriters — Commonwealth
3   Title, Fidelity National Title, Chicago Title, Lawyers Title, and Alamo Title —
4   which collectively issued more title insurance policies in 2010 than any other title
5   company in the United States. Defendant Fidelity's subsidiaries, including Fidelity
6   National Home Warranty, market themselves to consumers based on the financial
7   strength and backing of Fidelity. During the Class Periods, Fidelity directly made
8   payments and/or caused its subsidiaries to make payments to real estate agents and
9   brokers in exchange for the referral of real estate settlement services involving
10  federally related mortgages. Fidelity was also a party to all the TransactionPoint
11  license agreements and was listed as the "Licensor" in such agreements. Any
12  notices under the agreements were to be sent to Fidelity's offices in Santa Ana,
13  California.

14      22.   Defendant Fidelity National Title Insurance Company ("Fidelity Title
15  Insurance") is a California corporation with its principal place of business located at
16  2510 N. Redhill Avenue, Santa Ana, California 92705. It provides title insurance
17  policies, escrow services, and other real estate settlement services. Its agent for
18  service of process is CT Corporation System, located at 818 W. Seventh St.,
19  Los Angeles, California 90017.

20      23.   Defendant Commonwealth Land Title Company ("Commonwealth
21  Title") is a California corporation with its principal place of business located at
22  2510 N. Redhill Avenue, Santa Ana, California 92705. It provides title insurance
23  policies and other real estate settlement services. Its agent for service of process is
24  CT Corporation System, located at 818 W. Seventh St., Los Angeles, California
25  90017.

26      24.   Defendant Chicago Title Company ("Chicago Title") is a California
27  corporation with its principal place of business located at 2510 N. Redhill Avenue,
28  Santa Ana, California 92705. It provides title insurance policies and other real

1   estate settlement services.  Its agent for service of process is CT Corporation
2   System, located at 818 W. Seventh St., Los Angeles, California 90017.

3       25.   Defendant Ticor Title Company of California ("Ticor Title") is a
4   California corporation with its principal place of business located at 2510 N.
5   Redhill Avenue, Santa Ana, California 92705.  It provides title insurance policies
6   and other real estate settlement services.  Its agent for service of process is
7   CT Corporation System, located at 818 W. Seventh St., Los Angeles, California
8   90017.

9       26.   Defendant Lawyers Title Company ("Lawyers Title") is a California
10  corporation with its principal place of business located at 2510 N. Redhill Avenue,
11  Santa Ana, California 92705.  It provides title insurance policies and other real
12  estate settlement services.  Its agent for service of process is CT Corporation
13  System, located at 818 W. Seventh St., Los Angeles, California 90017.

14      27.   Defendant Fidelity National Disclosure Source, LLC ("Disclosure
15  Source") is a Delaware corporation with its principal place of business located at
16  1850 Gateway Blvd., Suite 400, Concord, California 94520.  Disclosure Source
17  provides property hazard reports regarding, among other things, natural hazards,
18  toxic mold, Mello-Roos determinations, Megan's Law, and airport proximity.  Its
19  agent for service of process is CT Corporation System, located at 818 W. Seventh
20  St., Los Angeles, California 90017.

21      28.   Defendant Fidelity National Home Warranty Company is a California
22  corporation with its principal place of business located at 1850 Gateway Boulevard,
23  Suite 400, Concord, California 94520.  Fidelity National Home Warranty is a
24  "home protection company" as defined by Cal. Ins. Code § 12740(b).  During the
25  Class Periods, Fidelity National Home Warranty sold home warranty contracts or
26  "home protection contracts," as defined by Cal. Ins. Code § 12740(a), to
27  homeowners in the State of California, as well as in Arizona, Nevada, Colorado,
28  Washington, and Oregon.  These contracts obligated Fidelity National Home

1   Warranty to repair or replace covered systems and appliances that become
2   inoperable due to normal wear and tear during the term of a contract. All Fidelity
3   National Home Warranty's home warranty contracts were drafted at Fidelity
4   National Home Warranty's headquarters in California. All such contracts were
5   entered into by Fidelity National Home Warranty from its headquarters in Concord,
6   California and listed a Post Office Box in San Francisco, California as Fidelity
7   National Home Warranty's address for purposes of the contract.

8       29.    Defendants Fidelity Title, Commonwealth Title, Chicago Title, Ticor
9   Title, Lawyers Title, Disclosure Source, and Fidelity National Home Warranty are
10  all direct or indirect subsidiaries of Defendant Fidelity (the "Subsidiary
11  Defendants"). The Subsidiary Defendants are part of a larger group of companies
12  ultimately owned and controlled by Defendant Fidelity. Each year, Fidelity
13  subsidiaries, including Subsidiary Defendants, pay cash dividends to their parent
14  companies, including Defendant Fidelity, which have equaled or exceeded their net
15  incomes. For example, in 2007, Fidelity National Home Warranty collected home
16  protection contract fees of $64,436,734 and had a net income of $9,066,973. It paid
17  a $9,500,000 cash dividend to its parent companies, which included Fidelity. From
18  2004 to 2007, Fidelity National Home Warranty earned a net income of
19  $27,055,572, and it paid cash dividends to its parent companies of $26,200,000.

20      30.    Defendants John Does 1-100 are other active participants in the
21  widespread unlawful conduct alleged herein. The true names and capacities
22  (whether individual, corporate, or otherwise) of Defendants sued herein as John
23  Does 1 through 100, inclusive, and each of them, are unknown to Plaintiffs, who
24  sue said Defendants by fictitious names. Plaintiffs are informed and believe and
25  thereon allege that each of the John Doe Defendants – which include, but are not
26  limited to, additional Fidelity subsidiaries and affiliates, other real estate settlement
27  service providers that are not affiliated with Fidelity, mortgage lenders, and real
28  estate agents and brokers – were active participants in the TransactionPoint

1  kickback scheme detailed herein and each is legally responsible in some actionable
2  manner for the events described herein, and thus proximately caused damage to
3  Plaintiffs and members of the Class. Plaintiffs will seek to amend this Complaint to
4  state the true names and capacities of said Defendants (whether corporate or
5  individual) when they have been ascertained.

6  **IV.   NON-DEFENDANT CO-CONSPIRATORS**

7       31.   During the Class Periods, Defendants conspired with numerous real
8  estate agents and firms regarding the kickbacks and unlawful compensation paid to
9  the real estate agents. While not named as defendants herein, the real estate agents
10  and firms were essential parties to the violations of law committed by Defendants.

11      32.   Defendants conspired with hundreds, if not thousands, of real estate
12  agents and firms concerning the kickbacks and unlawful compensation. While the
13  full identity of all the real estate agents is within the exclusive knowledge of
14  Defendants, information recently acquired by Plaintiffs indicates that Defendants
15  conspired with and signed TransactionPoint licensing agreements with, at a
16  minimum, numerous offices of Re/Max, Prudential California Realty, Keller
17  Williams, Pacific Union, Century 21, Coldwell Banker, Ascent Real Estate, Inc.,
18  Bankers Realty, Rhesus, Inc., Brush Real Estate and Financial Services, Landmark
19  Real Estate Network, Coastal Properties, Domaine Real Estate LLC, Empire Realty
20  Associates, ERA Premiere Realty Associates, West USA Realty, Realty World,
21  Windermere, Smart Click Realty, and numerous other brokers throughout
22  California and the rest of the United States. An itemized spreadsheet obtained from
23  the CFPB listing hundreds of real estate brokerage firms that accepted kickbacks
24  pursuant to the TransactionPoint scheme and the dates and amounts of kickbacks
25  paid during a portion of the Class Periods, is attached as **Exhibit C.**

26  **V.   SUBSTANTIVE ALLEGATIONS**

27      33.   Congress enacted RESPA to protect home buyers "from unnecessarily
28  high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a).

1   RESPA, Section 8(a) provides, "No person shall give and no person shall accept
2   any fee, kickback, or thing of value pursuant to any agreement or understanding,
3   oral or otherwise, that business incident to or a part of a real estate settlement
4   service involving a federally related mortgage loan shall be referred to any person."
5   12 U.S.C. § 2607(a). RESPA, Section 8(b) provides, "No person shall give and no
6   person shall accept any portion, split, or percentage of any charge made or received
7   for the rendering of a real estate settlement service in connection with a transaction
8   involving a federally related mortgage loan other than for services actually
9   performed."

10      34.     During the Class Periods, Defendants and their subsidiary and parent
11  companies marketed and sold real estate settlement services, including but not
12  limited to, title insurance, escrow services, home warranty services, appraisal
13  services, flood and natural hazard certification services, credit reporting services,
14  property and casualty insurance services, mandatory disclosure reports, tax
15  services, and other real estate settlement services throughout the United States. The
16  real estate settlement services were sold during the Class Periods to consumers as
17  part of escrows involving the purchase and sale of residential homes involving
18  federally insured mortgage loans. Defendants incentivized real estate brokers and
19  agents to sell their real estate settlement services by paying the agents and brokers a
20  fee, kickback, or commission in exchange for the referral of the real estate
21  settlement service.

22      35.     The fees, kickbacks, or commissions paid by Defendants to the real
23  estate agents and brokers were directly tied to the number of home protection
24  contracts, title policies, escrow services, and other real estate settlement services
25  sold through escrow. Due to Defendants' payment of the fees, kickbacks, or
26  commissions, the prices of the real estate settlement services provided by
27  Defendants to Plaintiffs and the Classes, during the Class Periods, were inflated,
28

1    and were higher than they would have been if the kickbacks or commissions had

2    not been paid.

3         36.    Moreover, during the UCL Class Period, the prices charged by

4    Defendants to consumers in California for real estate settlement services and home

5    protection contracts were inflated as a result of the kickbacks and commissions.

6    Thus, even consumers who did not acquire home protection contracts through

7    escrow, and even consumers who purchased real estate settlement services from

8    Defendants in transactions where TransactionPoint was not utilized, were still

9    damaged by being charged inflated prices for home protection contracts and real

10   estate settlement services.

11        37.    The real estate agents and brokers did not provide any real estate

12   settlement services, or if any services were provided, they were not actual,

13   necessary, and distinct from the primary services provided by the real estate broker

14   or agent; were nominal; and were duplicative of other fees charged.

15        38.    Defendants carried out their kickback scheme through the use of

16   Fidelity's web-based transaction management software known as TransactionPoint.

17   The TransactionPoint platform automates a real estate transaction from listing to

18   closing, and allows the real estate agent or broker to select real estate settlement

19   service providers such as the Subsidiary Defendants and other Fidelity-related

20   companies.

21        39.    The TransactionPoint platform was developed by a Fidelity division

22   known as Fidelity National Information Services ("FNIS"). FNIS was formed by

23   Fidelity on August 1, 2001, creating a services provider of real estate-related

24   information and technical solutions. Fidelity owned a majority of the shares of

25   FNIS and operated it as a majority-owned subsidiary.[1]

26

27   _____

[1] On July 11, 2003, Fidelity and FNIS announced terms of a merger agreement

28   whereby Fidelity acquired all the outstanding stock of FNIS that it did not already
     own.

-12-

40.    In October 2002, the National Association of Realtors ("NAR") announced the selection of TransactionPoint(TM) as its new REALTOR VIP(SM) Program partner. On May 14, 2003, the adoption of the TransactionPoint software continued when several Re/MAX broker offices signed contracts to install the software. Fidelity issued a press release announcing the development, which stated that the contracts "are the first of many TransactionPoint(TM) platform installations signed by RE/MAX Broker-Owners or Associates indicating major inroads in national acceptance" of the TransactionPoint platform, and "FNIS will continue [its] aggressive implementation campaign nationwide throughout 2003."

41.    In 2004, Fidelity National Real Estate Solutions, a wholly-owned subsidiary of the Company, implemented a fully integrated suite of Web-based tools, including Fidelity's BrokerOffice and AgentOffice systems, with the stated purpose of enabling real estate agents and brokers to take advantage of Internet-based leads and business opportunities.    In reality, the main purpose of this software and the TransactionPoint software was to allow Fidelity and its subsidiaries to encourage real estate brokers and agents to recommend the Company's real estate settlement services, to track which real estate brokers and agents had referred business to Fidelity, and then to track which kickbacks were owed to which real estate brokers and agents.

42.    In connection with the marketing of TransactionPoint, Fidelity entered into licensing agreements, also called application service provider access agreements, with real estate brokers and agents which provided the agents and brokers access to TransactionPoint. Fidelity granted real estate brokers and agents the right to sublicense TransactionPoint to various real estate service providers, or vendors, who access the platform to receive and process orders.    Fidelity did not require real estate brokers or agents to charge a fee for the purported sublicense, but if agents or brokers wished to charge a fee, Fidelity and/or its subsidiaries or affiliates would "recommend" the amount of the fee.

43.     The real estate brokers and agents that licensed TransactionPoint, in turn, entered into standard form sublicense agreements with subsidiaries of Fidelity, including the Subsidiary Defendants, to enable Fidelity's subsidiaries to be listed in the TransactionPoint software as providers of real estate settlement services.

44.     As part of the sublicense agreements, Defendant Fidelity and/or its subsidiaries, including the Subsidiary Defendants, paid the real estate agents and brokers a predetermined fee for each referral of the real estate settlement service provided.     These payments were not in exchange for settlement services actually provided and were not nominal payments. For example, in the case of kickbacks in exchange for the referral of home protection contracts, the payments averaged approximately one-fifth of the premium for such policies. In the case of kickbacks in exchange for the referral of title insurance/escrow, the payments frequently equaled or exceeded $100 per transaction. Moreover, in a particular transaction, real estate agents or brokers frequently received multiple kickbacks/referral fees from Defendants for different types of settlement services provided.

45.     During the Class Periods, Defendants paid, and real estate agents and brokers received, millions of dollars in kickbacks and referral fees through TransactionPoint sublicense agreements. Kickbacks and referral fees paid through the TransactionPoint sublicensing agreements were paid only when transactions closed.     The real estate agents and brokerages performed no work for such kickbacks and referral fees.

46.     Fidelity assisted with marketing TransactionPoint to brokers and agents, and assisted and trained brokers in its use. For example, Fidelity assisted agents and brokers in filling out the form sublicense agreements, including the amount of the fee brokers and agents should charge settlement service providers for referral of a given settlement service. In addition, if the vendor was a Fidelity-related Company, such as the Subsidiary Defendants, Fidelity would assist in getting the sublicense agreements executed.

47.    Defendants, including Fidelity and its subsidiaries and affiliates, marketed TransactionPoint as a revenue generating mechanism for the real estate brokers and agents, and informed brokers of the revenue that could be generated under the sublicense agreements. Participating real estate agents and brokers were paid kickbacks and referral fees by Fidelity and its subsidiaries and affiliates under the Company's "Revenue Share Program." Fidelity's marketing materials for the TransactionPoint platform stated that the Revenue Share Program will lead to "additional revenue stream through transaction coordination services" and will allow real estate brokers and others to build "revenue via ancillary services."

48.    In addition to disguising the kickbacks and referral fees as "sublicense fees" or "access fees," the TransactionPoint software platform also provided Defendants with a mechanism to track the kickbacks owed to real estate agents and brokers, and the amount of such kickbacks. Hundreds of real estate agents, brokers, and lenders executed TransactionPoint licensing agreements in which Fidelity or its subsidiaries and affiliates agreed to pay kickbacks for referrals. Fidelity maintained reports listing each referral made by a Revenue Share participant to the Company and the amount paid to the participant for each referral.

49.    On information and belief, all of the TransactionPoint sublicense agreements that Fidelity and/or the Subsidiary Defendants have entered into with real estate agents and brokers during the Class Periods have been virtually identical standard form agreements. For example, Fidelity Vice-President Steven Murnin stated in sworn declaration submitted to HUD in July 2010 that "[a]ll of the TransactionPoint sublicense agreements that [Defendant] Disclosure Source has entered into with brokers have been virtually identical, consisting of the same standard form." *See* **Exhibit D,** attached hereto, at ¶9.

50.    During the Class Periods, HUD initiated several investigations into the Company's TransactionPoint software platform and whether fees paid under the TransactionPoint sublicense agreements constituted unlawful kickbacks and referral

1    fees under RESPA, Section 8.  These investigations were not made public until

2    after the Class Periods.

3         51.   In or about September 2009, for example, HUD received a formal

4    complaint of RESPA violations in California by Defendant Disclosure Source.  The

5    complaint was submitted by former Senator Robert Dole on behalf of a competing

6    provider of natural hazard reports, which refused to pay kickbacks through

7    TransactionPoint.  On April 28, 2010, Senator Dole confidentially submitted to the

8    General Counsel of HUD additional materials in further support of the complaint.

9    These materials, which are included in the attached **Exhibit A**, include an internal

10   email from Keller Williams Coastal Properties, a California real estate broker, to

11   Keller Williams agents, stating that Keller Williams designates as "preferred

12   providers" those vendors – including Defendants Fidelity Title, Lawyers Title,

13   Chicago Title, Ticor Title, Fidelity National Home Warranty, Disclosure Source,

14   and others, including Bank of America Home Loans, and National Property

15   Inspections – that agree to pay kickback fees under the TransactionPoint sublicense

16   agreements.  The internal email urges Keller Williams agents to use the preferred

17   providers to make their lives "more profitable."  The email further states that, "[t]he

18   fee goes into company profits" and that the agents "SHARE in the PROFITS."[2] *See*

19   **Exhibit A.**

20        52.   On June 3, 2011, Defendant Fidelity issued a Memorandum to all the

21   real estate brokers and agents with whom it had business agreements that it was

22

23

24   [2] In a follow-up letter to HUD dated August 25, 2010, Senator Dole confidentially submitted additional materials in further support of the complaint.  These materials,

25   which have been reviewed by Plaintiffs' counsel, include an email solicitation widely distributed by a Keller Williams brokerage to various vendors urging them

26   to use TransactionPoint and setting forth a fee schedule for the referral of various

27   settlement services under a TransactionPoint sublicense, including title and escrow,

28   home warranty, home inspection, natural hazard disclosures, mortgage, and homeowners insurance.

1  suspending all payments to brokers under TransactionPoint licensing agreements
2  due to potential RESPA violations. The Memorandum stated:

3    The United States Department of Housing and Urban Development
4    (HUD) has advised Fidelity National Financial (FNF) that the
5    payments under FNF Real Estate Service Provider Access
6    Agreements associated with the TransactionPoint transaction
7    management software may violate the Real Estate Settlement
8    Procedures Act (RESPA), 12 USC Section 2601 et seq. and its
9    implementing regulations.

10   As a result, FNF has decided to voluntarily suspend payments to
11   Brokers in conjunction with any FNF Real Estate Service Provider
12   Access Agreements associated with TransactionPoint as of the close
13   of business on May 27, 2011.

14   53.    *On July 11, 2011, HUD announced that Fidelity had agreed to pay*
15 *$4.5 million as a fine due to its RESPA violations, including the payment of*
16 *commissions to real estate agents for the referral of real estate settlement*
17 *services.* The press release stated:

18        **HUD SETTLES RESPA KICKBACK CASE AGAINST FIDELITY**
19                            **NATIONAL FINANCIAL**

20        *Title company to pay $4.5 million and cease paying brokers referral fees*
21        WASHINGTON – The U.S. Department of Housing and Urban
22        Development (HUD) today announced an agreement with Fidelity
23        National Financial, Inc. (FNF) to settle allegations the title company
24        paid real estate brokers and other settlement service providers
25        improper kickbacks or referral fees in violation of the *Real Estate*
26        *Settlement Procedures Act (RESPA)*.   Read the full text of the
27        agreement announced today.

28

1    HUD claimed FNF and its affiliates and subsidiaries engaged in a
2    widespread and years-long campaign to pay real estate brokers
3    kickbacks for the referral of real estate settlement services, including
4    home warranties and title insurance. FNF agreed to cease this practice
5    and pay HUD $4.5 million to resolve the complaint.

6    "RESPA is very clear that paying fees or providing anything of value
7    for the simple act of referring business is a violation of law," said
8    Acting FHA Commissioner Robert Ryan. "This agreement should be
9    a signal to others that these business practices won't be tolerated."

10   HUD alleges that FNF, through its subsidiaries, paid fees for the
11   referral of settlement service business in violation of Section 8 of
12   RESPA. To facilitate these payments, real estate brokerages entered
13   into "Application Service Provider Agreements" which provided the
14   real estate brokerages access to *TransactionPoint*, a web-based
15   platform that automates the real estate transaction from listing to
16   closing. This online system also allows the brokers to select real
17   estate settlement providers for a particular real estate transaction. The
18   real estate brokerages, in turn, entered into Sub-License Agreements
19   with subsidiaries of FNF to enable FNF's subsidiaries to be listed in
20   *TransactionPoint* as a provider of settlement services. As part of the
21   Sub-Licensee Agreement, HUD alleges that FNF's subsidiaries paid
22   the real estate brokerages a fee for each referral of real estate
23   settlement services.

24   RESPA was enacted in 1974 to provide consumers advance
25   disclosures of settlement charges and to prohibit illegal kickbacks and
26   excessive fees in the homebuying process. Section 8 of RESPA
27   prohibits a person from giving or accepting anything of value in
28   exchange for the referral of settlement service business.

54.     According to non-public documents recently obtained by Plaintiffs from the CFPB, HUD determined that, from August 1, 2007 through September 24, 2010 alone, pursuant to the TransactionPoint scheme, Fidelity and its subsidiaries and affiliates, including the Subsidiary Defendants: (1) paid a total of $1,114,000 in kickbacks/referral fees in connection with 21,810 transactions; and (2) earned $21,979,596 in profits. *See, e.g.*, HUD Presentation titled "Fidelity National Financial Inc. & TransactionPoint, attached hereto as **Exhibit E.**

## VI.   DEFENDANTS' VIOLATIONS OF CAL. INS. CODE §§ 12404 AND 12760

55.     During the California UCL Class Period, Defendant Fidelity Home Warranty was a "home protection company" as defined by Cal. Ins. Code § 12740(b). Defendant Fidelity Home Warranty further sold, during the California UCL Class Period, "home protection contracts," which are defined as "a contract or agreement whereby a person, other than a builder, seller, or lessor of the home which is the subject of the contract, undertakes for a specified period of time, for a predetermined fee, to repair or replace all or any part of any component, system or appliance of a home necessitated by wear and tear, deterioration or inherent defect, arising during the effective period of the contract, and, in the event of an inspection conducted pursuant to subdivision (b) of Section 12761, by the failure of that inspection to detect the likelihood of any such loss." Cal. Ins. Code § 12740(a).

56.     During the California UCL Class Period, Defendants Fidelity National Title Insurance Company, Commonwealth Land Title Company, Chicago Title Company, Ticor Title Company of California, Inc., and Lawyers Title Company sold title insurance and other "title business" in California, were in the title insurance business in the State of California, and were and are all California corporations.

57.     During the California UCL Class Period, Defendants and/or their parents and subsidiaries, acting in concert and pursuant to a conspiracy, paid real

-19-

1  estate agents and/or brokers commissions as an inducement or compensation for the
2  sale of home protection contracts issued by Defendant Fidelity Home Warranty.
3  Defendant Fidelity Home Warranty is a California corporation.    During the
4  California UCL Class Period, it was headquartered, and remains headquartered, in
5  Concord, California.  While Fidelity Home Warranty sold home warranty contracts
6  in California, Arizona, Nevada, Colorado, Washington, and Oregon during the
7  California UCL Class Period, all its home warranty plans were drafted at its
8  headquarters in Concord, California.  Moreover, all such contracts were entered
9  into by Fidelity Home Warranty from its headquarters in Concord, California and
10 all such contracts listed a Post Office Box in San Francisco, California as Fidelity
11 Home Warranty's address for purposes of the contract.

12      58.    During the California UCL Class Period, Defendants Fidelity National
13 Title Insurance Company, Commonwealth Land Title Company, Chicago Title
14 Company, Ticor Title Company of California, Inc., and Lawyers Title Company
15 and/or their parents and subsidiaries, acting in concert and pursuant to a conspiracy,
16 paid commissions to real estate agents and/or brokers as an inducement or
17 compensation for the placement or referral of title business.  Defendants violated
18 Cal. Ins. Code §§12404-12406.    "Title business" means the "business of title
19 insurance" as defined in Cal. Ins. Code §12340.3, and includes, but is not limited
20 to, the offering of title insurance, escrow, or other services by a title insurer,
21 underwritten title company, or controlled escrow company.

22      59.    Because of Defendants' payments of such commissions and
23 compensation, the prices of Defendants' home protection contracts, title business,
24 and other real estate settlement services were inflated during the California UCL
25 Class Period, and were higher than they would have been absent payment of the
26 commissions and compensation.  As a result, Plaintiffs and the California UCL
27 Class suffered harm.

28

60.     On February 21, 2008, HUD issued an Advisory Opinion determining that home protection companies such as Fidelity Home Warranty were violating RESPA.  In response, the NAR, in combination with Defendant Fidelity Home Warranty and some of its competitors who were also paying commissions and fees to real estate agents, sent a letter to HUD dated May 21, 2008 which frankly admitted the agreements pursuant to which Defendant Fidelity Home Warranty and Fidelity were paying kickbacks to real estate agents.   The letter also frankly admitted that home warranty companies were paying real estate agents "*a flat fee per home warranty application submitted to the HWC.*"

61.     While the NAR advocated in the letter for the position that real estate agents were providing services separate and apart from the mere referral of real estate settlement services to corporations such as Defendants, the NAR acknowledged that the Advisory Opinion "*suggests that real estate brokers/agents would have difficulty ever showing that the services performed under such agreements merit compensation and that transaction-based compensation essentially renders their compensation a sham.*"

62.     In addition, the evidence pertaining to the other Defendants demonstrates that all Defendants were utilizing TransactionPoint to pay kickbacks, commissions, and compensation to real estate agents as an inducement for the placement or referral of other real estate settlement services.

63.     Whether the real estate agents and brokers were providing any services whatsoever in exchange for the admitted payments is completely irrelevant to Defendants' violations of Cal. Ins. Code §§12404-12406 and 12760 since the statutes reflect an absolute prohibition of payments or compensation to real estate agents or any other persons as an inducement to the sale or placement of home protection contracts and title business.  With respect to Defendant Fidelity Home Warranty, it has previously conceded that the whole purpose of the payments was to influence real estate agents to promote their home protection contracts.  The

1    May 21, 2008 letter to HUD from the NAR plainly stated that home warranty

2    companies such as Fidelity Home Warranty were paying real estate agents *for*

3    *"[t]he work required to market and sell a home warranty."* The letter not only

4    admitted the practice, but also boldly stated that "real estate brokers/agents are

5    entitled to reasonable compensation for marketing and administering [home

6    warranties] on HWC's [home warranty companies'] behalf."

7         64.    Notwithstanding the February 21, 2008 Advisory Opinion and the

8    overwhelming failure of Defendants' concerted and substantial lobbying efforts,

9    Defendant Fidelity Home Warranty, individually and/or in concert with Defendant

10   Fidelity, continued its practice of paying commissions and fees to real estate agents

11   and brokers as an inducement or compensation for the issuance, purchase, or

12   acquisition of home protection contracts issued by Defendant Fidelity Home

13   Warranty. They also continued to conceal the payments from Plaintiffs and the

14   California UCL Class. The other Defendants similarly continued to pay unlawful

15   compensation to real estate agents during the California UCL Class Period.

16   **VII.  CONSPIRACY, AIDING AND**
17         **ABETTING, AND CONCERTED ACTION**

18        65.    The Defendants and the non-defendant real estate agents and brokers

19   engaged in a conspiracy, common enterprise, and/or common course of conduct

20   commencing by at least the beginning of the RESPA Class Period and continuing

21   thereafter. During this time, the Defendants and real estate agents and brokers

22   concealed the true facts as alleged herein.

23        66.    Defendants conspired with hundreds, if not thousands, of real estate

24   agents and firms concerning the kickbacks and unlawful compensation. While the

25   full identity of all the real estate agents is within the exclusive knowledge of

26   Defendants, information recently acquired by Plaintiffs indicates that Defendants

27   conspired with and signed TransactionPoint licensing agreements with, at a

28   minimum, numerous offices of Re/Max, Prudential California Realty, Keller

1   Williams, Pacific Union, Century 21, Coldwell Banker, Ascent Real Estate, Inc.,
2   Bankers Realty, Rhesus, Inc., Brush Real Estate and Financial Services, Landmark
3   Real Estate Network, Coastal Properties, Domaine Real Estate LLC, Empire Realty
4   Associates, ERA Premiere Realty Associates, West USA Realty, Realty World,
5   Windermere, Smart Click Realty, and numerous other brokers throughout
6   California and the rest of the United States.

7       67.   The purpose and effect of the conspiracy, common enterprise, and/or
8   common course of conduct was, among other things, to disguise the Defendants'
9   violations of law, kickbacks, and unlawful conduct; and to conceal adverse
10  information concerning the Company's operations and kickbacks paid to real estate
11  agents and brokers.

12      68.   The Defendants and non-defendant real estate agents and brokers
13  accomplished their conspiracy, common enterprise, and/or common course of
14  conduct by entering into the unlawful TransactionPoint license and sub-license
15  agreements and by purposefully, recklessly, or negligently paying and failing to
16  disclose kickbacks, commissions, and payments to real estate agents and brokers.
17  Each Defendant and non-defendant was a direct, necessary, and substantial
18  participant in the conspiracy, common enterprise, and/or common course of conduct
19  complained of herein.

20      69.   Defendant Fidelity actively worked with the other Defendants and with
21  the non-defendant real estate agents and brokers to effectuate and carry out the
22  conspiracy and scheme. Steve Murnin was the principal executive at Fidelity who
23  implemented the TransactionPoint scheme and conspiracy, and he showed the
24  conspiring real estate agents and brokers how to design and implement the
25  TransactionPoint software so that the real estate agents and brokers could procure
26  the unlawful kickbacks and compensation from real estate settlement providers. As
27  just one example, during the Class Periods, Murnin wrote a letter to North
28  American Title of Modesto, California *on behalf of and with the knowledge and*

1   *consent of PMZ Real Estate*, a participant in the TransactionPoint license
2   agreements, encouraging North American Title to participate as a sub-licensee in
3   PMZ Realty's TransactionPoint software scheme.  Murnin told North American
4   Title that, if it chose to participate in the program, it would be featured as a
5   "Preferred Vendor" for title and escrow services.  In exchange, Murnin told North
6   American Title that it would be required to pay PMZ Realty a "user fee" of $75 for
7   each transaction, ostensibly for use of the TransactionPoint software but in reality, a
8   kickback for the referral of the real estate settlement service by PMZ Realty to
9   North American Title.  Billy Jensen was also one of the main participants in the
10  conspiracy and signed many of the TransactionPoint agreements on behalf of
11  Defendants Fidelity Home Warranty and Disclosure Source.

12      70.    Real estate settlement providers had no illusion that the payments they
13  were being asked to make by Fidelity and the real estate agents were payments for
14  "software."  Instead, they understood very clearly that Fidelity and the real estate
15  agents were asking for illegal kickbacks in exchange for the referral of real estate
16  settlement services.  For example, upon receiving Murnin's letter, North American
17  Title had its General Counsel and Exec. V.P., Jeffrey Brown, write a letter to HUD
18  complaining about Fidelity's illegal conduct.    Brown attached Murnin's
19  correspondence about TransactionPoint and stated his belief that "the software is
20  simply a device to illegally rebate ($75) per title and escrow from a title company to
21  a real estate broker.  The rebate is camouflaged as an access fee to the real estate
22  broker's order placement software.  In reality, there is no significant worth or value
23  to the order placement software, as any real estate professional today can place and
24  monitor title and escrow orders by email or by accessing a title company's website.
25  . . The realtor does nothing for the fee."

26      71.    While North American Title refused to pay kickbacks to PMZ Realty
27  and other real estate agents, many real estate settlement service providers, including
28  the Defendants named herein, agreed to pay the kickbacks in order to procure

1   "increased business," the stated purpose explicitly mentioned by Murnin in his

2   letters to real estate settlement providers. In his letter, Brown specifically identified

3   Defendants Chicago Title Company and Fidelity National Title Company as title

4   companies that were willingly participating in the illegal conspiracy.

5        72.    Each of the Defendants and the non-defendant real estate brokers and

6   agents aided and abetted, and rendered substantial assistance in the wrongs

7   complained of herein. In taking such actions to substantially assist the commission

8   of the wrongdoing complained of herein, each Defendant and non-defendant real

9   estate agent and broker acted with knowledge of the primary wrongdoing,

10  substantially assisted the accomplishment of that wrongdoing, and was aware of his,

11  her, or its overall contribution to and furtherance of the wrongdoing.

12       73.    At all times relevant hereto, each of the Defendants and non-defendant

13  real estate agents and brokers were the agent of each of the other, and were at all

14  times acting within the course and scope of such agency.

15       74.    In committing the wrongful acts particularized herein, Defendants and

16  the non-defendant real estate agents and brokers have pursued or joined in the

17  pursuit of a common course of conduct, and have acted in concert with one another

18  in furtherance of their common plan or design. In addition to the wrongful conduct

19  particularized herein as giving rise to primary liability, Defendants and the non-

20  defendant real estate agents and brokers further aided and abetted, and/or assisted

21  each other in breach of their respective duties.

22       75.    Each of the Defendants and the non-defendant real estate agents and

23  brokers aided and abetted, and rendered substantial assistance in the wrongs

24  detailed herein. In taking such actions to substantially assist the commission of the

25  wrongdoing detailed herein, each Defendant and the non-defendant real estate

26  agents and brokers acted with knowledge of the primary wrongdoing, substantially

27  assisted the accomplishment of that wrongdoing, and was aware of his, her, or its

28  overall contribution to and furtherance of the wrongdoing.

# VIII. <u>EQUITABLE TOLLING</u>

76. During the relevant period, Plaintiffs did not discover and could not have discovered, through the exercise of due diligence, Defendants' violations of RESPA and California law because Defendants did not disclose, and actively concealed, their unlawful payments of referral fees and commissions to the real estate agents and brokers. Plaintiffs were unaware of and had no knowledge of Defendants' business arrangements and agreements among and between themselves and/or the real estate agents and brokers.

77. Plaintiffs could not have discovered Defendants' violations of law prior to filing suit because Defendants made absolutely no disclosure of the kickbacks to the real estate agents and brokers in the escrow documents, HUD-1 statements, or any other documents. Thus, none of the documents provided to the Plaintiffs made any disclosure of any payment/kickback to the real estate agents or brokers for the referral of real estate settlement services.

78. Moreover, as noted above, Defendants not only failed to disclose any information whatsoever that would have allowed Plaintiffs, exercising due diligence, to discover the illegal kickbacks, but Defendants intentionally fabricated untrue and non-existent services allegedly performed by the real estate agents in order to attempt to disguise the illegal kickbacks and avoid detection by consumers, HUD, and federal and state regulators. These intentional efforts at concealment were wildly successful, as Defendants avoided detection by HUD until July 2011.

79. Further, the TransactionPoint software used by Defendants concealed the payments since it provided Defendants with a non-public way to keep track of which real estate agents were owed kickbacks for referring specific real estate settlement services sold by Defendants. Since it was software used internally by the real estate agents and Defendants, it did not show up on the HUD-1 statements or other escrow documents and thus, did not alert consumers or regulators as to the kickbacks. In addition, Defendants' conduct constitutes a continuing violation of

1 | the law, and thus, Plaintiffs' claims did not accrue until exposure of the Defendants'

2 | illegal conduct by HUD in July 2011.

3 | **IX.    CLASS ACTION ALLEGATIONS**

4 | 80.    Plaintiffs bring this action under Fed. R. Civ. P. 23(b)(3) on behalf of

5 | a nationwide Plaintiff class (the "TransactionPoint Class") consisting of:

> All persons and entities who purchased any real estate
> settlement service from any of the Defendants named
> herein in connection with the purchase or sale of a
> home financed by a federally related mortgage during
> the time period from October 1, 2002 to the present
> (the "RESPA Class Period"), where any portion of the
> fees or premiums for such settlement services was paid
> to any real estate broker or agent under a
> TransactionPoint sublicense agreement.    Excluded
> from the Class are Defendants, their parents,
> subsidiaries, and affiliates; all officers, directors,
> employees, and agents of the Defendants and their
> parents, subsidiaries, and affiliates; any real estate
> agent or broker involved in any of the transactions at
> issue in this Complaint; any agent or employee of any
> federal or state government acting in their official
> capacity; and co-conspirators.

23 | 81.    Plaintiffs also bring this action both on behalf of themselves and as a

24 | class action under Fed. R. Civ. P. 23(b)(3) on behalf of the following second class

25 | (the "California UCL Class"):

> All persons and entities who, during the time period
> from November 23, 2007 through the present (the
> "California UCL Class Period"), purchased in the State

1    of California a home protection contract issued by
2    Defendant Fidelity National Home Warranty Company
3    or purchased any real estate settlement service from
4    any Defendant.  Excluded from the California UCL
5    Class are Defendants, their parents, subsidiaries, and
6    affiliates; all officers, directors, employees, and agents
7    of the Defendants and their parents, subsidiaries, and
8    affiliates; any real estate agent or broker involved in
9    any of the transactions at issue in this Complaint; any
10   agent or employee of any federal or state government
11   acting in their official capacity; and co-conspirators.

12   82.   Plaintiffs do not know the exact number of class members because
13   such information is in the exclusive control of Defendants.  Upon information and
14   belief, Plaintiffs believe that there are hundreds of thousands of class members,
15   geographically dispersed throughout the United States, such that joinder of all class
16   members is impracticable.

17   83.   Plaintiffs' claims are typical of the claims of the TransactionPoint
18   Class and California UCL Class in that:  Plaintiffs purchased real estate settlement
19   services from the Defendants named herein; during the Class Periods, Defendants
20   violated Cal. Ins. Code §§ 12404-12406 and 12760 by paying commissions to
21   persons as inducements or compensation for the issuance, purchase, or acquisition
22   of home protection contracts and title business and/or violated Sections 8(a) and/or
23   8(b) of RESPA; Plaintiffs and all TransactionPoint Class and California UCL Class
24   members were damaged by the same wrongful conduct of Defendants and their
25   co-conspirators as alleged herein; and the relief sought is common to the
26   TransactionPoint Class and California UCL Class.

27
28

1    84.    Numerous questions of law or fact arise from Defendants' unfair and

2    anticompetitive conduct that is common to the TransactionPoint Class and

3    California UCL Class. Among the common questions of law or fact are:

4    (a)    whether Plaintiffs and the Class members purchased real estate

5    settlement services and/or home protection contracts issued by Defendants during

6    the Class Periods;

7    (b)    whether, during the Class Periods, Defendants entered into a

8    scheme with real estate brokers and/or agents whereby Defendants paid a portion

9    of the fees, premiums, and monies received for providing real estate settlement

10   services to real estate brokers and agents utilizing TransactionPoint sublicense

11   agreements;

12   (c)    whether, in an effort to effectuate this scheme, real estate

13   brokers and/or agents were encouraged and/or compensated by Defendants to enter

14   into TransactionPoint sublicensing agreements;

15   (d)    whether the TransactionPoint kickback scheme and/or related

16   wrongful conduct alleged herein between and among Defendants are sufficient to

17   establish the existence of a conspiracy;

18   (e)    whether Defendants issued and/or sold real estate settlement

19   services and/or home protection contracts to Plaintiffs, the TransactionPoint Class,

20   and the California UCL Class during the Class Periods;

21   (f)    whether Defendants violated Sections 8(a) and/or 8(b) of

22   RESPA during the RESPA Class Period;

23   (g)    whether Defendants engaged in unfair and/or unlawful business

24   practices during the Class Periods;

25   (h)    whether Defendants violated Cal. Ins. Code § 12404 by paying

26   commissions, compensation, or other consideration to real estate agents and brokers

27   as inducements for the placement or referral of title business during the UCL Class

28   Period;

1         (i)    whether Defendants violated Cal. Ins. Code § 12760 by paying

2 commissions to persons as inducements or compensation for the issuance, purchase,

3 or acquisition of home protection contracts during the UCL Class Period;

4         (j)    Whether Defendants engaged in unfair, unlawful, and/or

5 fraudulent conduct, as defined by the California UCL;

6         (k)    whether Plaintiffs and Class members are entitled to restitution,

7 and if so the measure of such restitution;

8         (l)    whether Plaintiffs and the Class have been damaged, and if so,

9 the appropriate measure of such damages; and

10         (m)    whether class-wide declaratory and/or injunctive relief is

11 appropriate and, if so, the proper measure of the declaratory and/or injunctive relief.

12      85.    These questions of law or fact are common to the TransactionPoint

13 Class and California UCL Class and predominate over any other questions affecting

14 only individual class members.

15      86.    Plaintiffs will fairly and adequately represent the interests of the

16 TransactionPoint Class and California UCL Class in that: (1) Plaintiffs purchased

17 home protection contracts from Defendant Fidelity National Home Warranty and/or

18 a title policy from Defendant Commonwealth Title during the Class Periods;

19 (2) Plaintiffs suffered damages and/or are entitled to restitution; and (3) Plaintiffs

20 have no conflicts with any other member of the Class. Furthermore, Plaintiffs have

21 retained competent counsel experienced in class action litigation.

22      87.    A class action is superior to the alternatives, if any, for the fair and

23 efficient adjudication of this controversy.

24      88.    Prosecution of separate actions by individual class members would

25 create the risk of inconsistent or varying adjudications, establishing incompatible

26 standards of conduct for the Defendants.

27

28

1    89.    Injunctive relief is appropriate as to the Class as a whole because

2  Defendants have acted or refused to act on grounds generally applicable to the

3  Class.

4    90.    Plaintiffs reserve the right to expand, modify, or alter the class

5  definitions in response to information learned during discovery.

### FIRST CAUSE OF ACTION

**(VIOLATIONS OF RESPA, 12 U.S.C. § 2607 – ON BEHALF OF
PLAINTIFFS HILLDEBRANDT, PHILLIPS, HADDON, AND THE
TRANSACTIONPOINT CLASS AGAINST ALL DEFENDANTS)**

9    91.    Plaintiffs repeat and reallege the allegations contained above as if fully

10  stated herein.

11    92.    Defendants violated numerous provisions of the RESPA, 12 U.S.C.

12  §§ 2601, *et seq.*, as well as Regulations for Real Estate Settlement Procedures,

13  known as Regulation X, promulgated by HUD, 24 C.F.R. §§ 3500, *et seq.*  During

14  the RESPA Class Period, Defendants systematically and repeatedly violated 12

15  U.S.C. §§ 2607(a) and 2607(b), and 24 C.F.R. §§ 3500.14(b) and (c) by paying real

16  estate agents and brokers kickbacks for the referral of real estate "settlement

17  services," and/or a portion of the charges for such real estate "settlement services,"

18  in respect of "federally related mortgage loans," as such terms are defined by

19  RESPA §§ 2602(1) and (3), and as further alleged herein.  Such payments by

20  Defendants were disguised as sublicense fees to the Company's TransactionPoint

21  software platform.

22    93.    Throughout the RESPA Class Period, Defendants provided "settlement

23  services" in respect of "federally related mortgage loans," as such terms are defined

24  by RESPA §§ 2602(1) and (3).  Such settlements services included, but were not

25  limited to, title insurance, home warranty contracts, and property hazard reports.

26    94.    Throughout the RESPA Class Period, Defendants unlawfully paid

27  "things of value," within the meaning of RESPA § 2602(2), to real estate brokers

28  and agents in connection with the referral of real estate settlement services.

1   Defendants paid, and real estate agents and brokers received, millions of dollars in
2   purported sublicense fees that constituted fees, kickbacks or things of value incident
3   to real estate settlement services involving federally related mortgage loans. The
4   real estate agents and brokerages performed no services for such payments. This
5   practice violated RESPA, 12 U.S.C. § 2607(a) and 24 C.F.R. §§ 3500.14(b) and (c).

6       95.    Further, throughout the RESPA Class Period, in connection with
7   transactions involving federally related mortgage loans, Defendants paid, and real
8   estate agents and brokers received through purported sublicense agreements, a
9   portion, split, or percentage of charges received by Defendants for the rendering of
10  real estate settlement services and/or business incident to real estate settlement
11  services other than for services actually performed. The real estate agents and
12  brokerages performed no services for such payments.    This practice violated
13  RESPA, 12 U.S.C.§ 2607(b) and 24 C.F.R. § 3500.14(c).   Agents and brokers
14  participated in the scheme and served as the direct party to which the portion, split,
15  or percentage of Defendants' settlement service charges were ceded.

16      96.    Plaintiffs and the TransactionPoint Class were, in fact, harmed by
17  Defendants' unlawful scheme.

18      97.    First, Plaintiff and the Class members were, as a matter of law, entitled
19  to purchase settlement services from providers that did not participate in unlawful
20  kickback and/or fee-splitting schemes.  Congress has expressly provided for private
21  enforcement of this protected right by empowering consumers to recover statutory
22  damages from offending parties without proof of an overcharge. The plain,
23  unambiguous language of RESPA, Section 8(d)(2) indicates that damages are based
24  on the settlement service amount with no requirement that there has been an
25  overcharge.  Plaintiff alleges that Defendants have accepted unlawful kickback
26  payments and/or an unearned portion of settlement service charges in violation of
27  RESPA—allegations and claims completely distinct and separate from whether the
28  price they paid for settlement services was excessive.

1    98.    Defendants' scheme resulted in a limitation on both settlement service
2    choice and competition.  Plaintiffs and the TransactionPoint Class were subjected to
3    settlement services tainted by kickbacks or referrals of business inherently biased
4    by Defendants' unlawful kickback scheme.  Defendants' sublicensing agreements
5    with real estate agents and brokers over time affected the price, quality, or other
6    characteristics of the "referred" settlement services through, among other things,
7    inherent limits on settlement service choice and competition.  Further, as set forth
8    above, Defendants did not disclose the true nature of the referral arrangements to
9    Plaintiffs.

10    99.    Second, Plaintiffs and the TransactionPoint Class were, in fact, harmed
11    in that, their settlement service premiums were artificially inflated as a result of
12    Defendants'  conduct.    The  kickbacks  and  unearned  fees  alleged  herein
13    unnecessarily and artificially inflated the price of settlement service charges paid by
14    Plaintiffs.  Indeed, Congress has already determined that the aggregate effect of an
15    unlawful  kickback/referral  arrangement  is  to  unnecessarily  inflate  the  costs
16    consumers pay for real estate settlement services.  *See* 12 U.S.C. § 2601(b).

17    100.  Under Defendants' scheme, the settlement service premiums paid by
18    Plaintiffs  and  the  TransactionPoint  Class  necessarily  and  wrongly  included
19    payments for both: (a) actual settlement services; and (b) payments unlawfully
20    kicked back to agents and brokers that far exceeded the value of any services
21    performed (indeed, there were no services performed in return for this payment)
22    and, which were also illegal referral fees.

23    101.  Therefore, Defendants have violated RESPA, 12 U.S.C. §§ 2607(a)
24    and (b).  Pursuant to RESPA, 12 U.S.C. § 2607(d), Defendants are jointly and
25    severally liable to Plaintiffs and the TransactionPoint Class in an amount equal to
26    three times the amounts they have paid or will have paid for Defendants' settlement
27    services as of the date of judgment.

28

1    102. In accordance with RESPA, 12 U.S.C. § 2607(d), Plaintiffs also seek

2    attorneys' fees and costs of suit.

3    ## SECOND CAUSE OF ACTION

4    **(VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* –**
5    **ON BEHALF OF PLAINTIFFS HILDEBRANDT,**
     **PHILLIPS AND MEMBERS OF THE**
6    **TRANSACTIONPOINT CLASS AGAINST ALL DEFENDANTS)**

7    103. Plaintiffs repeat and reallege the allegations contained above as if fully

8    stated herein.

9    104. The Unfair Trade Practices Act defines unfair competition to include

10   any "unfair," "unlawful," or "fraudulent" business act or practice. Cal. Bus. &

11   Prof. Code §§ 17200, *et seq.* Unfair competition also includes "unfair, deceptive,

12   untrue or misleading advertising." *Id.*

13   105. This cause of action is brought on behalf of Plaintiffs Hildebrandt,

14   Phillips, members of the TransactionPoint Class who purchased real estate

15   settlement services from Defendants from November 23, 2007 to the present in the

16   State of California, and members of the general public pursuant to Cal. Bus. & Prof.

17   Code §§ 17200, *et seq.* Under Cal. Bus. & Prof. Code §§ 17200, *et seq.*, Plaintiffs

18   are entitled to enjoin Defendants' wrongful practices and to obtain restitution for

19   the monies obtained by Defendants by reason of Defendants' unlawful, unfair,

20   and/or deceptive acts and practices. *Id.* § 17203.

21   106. As a direct and proximate result of the acts and practices alleged

22   above, members of the TransactionPoint Class and the general public have been

23   injured, harmed, and/or threatened with harm. This Court is empowered to, and

24   should, order restitution to all persons from whom Defendants may have unfairly

25   and/or unlawfully obtained money and property.

26   107. Defendants' unlawful, unfair, and fraudulent business acts and

27   practices, as described above, present a continuing threat to members of the Class

28   and the general public, in that Defendants are continuing, and will continue, unless

-34-

1    enjoined, to commit violations of RESPA and Cal. Bus. & Prof. Code §§ 17200,

2    *et seq.* This Court is empowered to, and should, grant preliminary and permanent

3    injunctive relief against such acts and practices.

4        108. Defendants' conduct, as alleged in this Complaint, is "unlawful" in

5    that it violates RESPA and Cal. Ins. Code §§12404, 12405, 12406, and 12760.

6        109. Defendants' conduct, as alleged in this Complaint, is "unfair" in that it

7    constitutes an unfair business practice as defined by the Unfair Trade Practices Act

8    and applicable case law.

9        110. Defendants' conduct, as alleged in this Complaint, is "fraudulent" in

10   that it is likely to deceive Plaintiffs, the Class, and the general public. Because

11   Defendants did not disclose the payments they were making to real estate agents

12   and brokers, Plaintiffs and the Class were not provided with the full information

13   about the services being provided by Defendants.

14       111. As a result of Defendants' unlawful, unfair, and fraudulent business

15   practices, Plaintiffs were injured.

16       112. Plaintiffs, on behalf of themselves and the Subclass, seek:

17   (1) restitution from Defendants; (2) declaratory relief in the form of a declaration

18   and/or declaratory judgment that Defendants' conduct violates RESPA, Cal. Ins.

19   Code §§ 12404 and 12760, and Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (3)

20   injunctive relief in the form of a preliminary and final injunction barring

21   Defendants from engaging in further violations of the law.

22                         **THIRD CAUSE OF ACTION**

23      **(VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* –**
             **ON BEHALF OF PLAINTIFFS HILDEBRANDT, PHILLIPS,**

24    **AND THE CALIFORNIA UCL CLASS AGAINST ALL DEFENDANTS)**

25       113. Plaintiffs repeat and reallege the allegations contained above as if fully

26   stated herein.

27       114. The Unfair Trade Practices Act defines unfair competition to include

28   any "unfair," "unlawful," or "fraudulent" business act or practice. Cal. Bus. &

1    Prof. Code §§ 17200, *et seq*.  Unfair competition also includes "unfair, deceptive,
2    untrue or misleading advertising." *Id.*  The Act also provides for injunctive relief
3    and restitution for violations. *Id.* § 17203.

4         115.  This cause of action is brought on behalf of Plaintiffs, members of the
5    California UCL Class, and members of the general public pursuant to Cal. Bus. &
6    Prof. Code §§ 17200, *et seq*.  Under Cal. Bus. & Prof. Code §§ 17200, *et seq.*,
7    Plaintiffs are entitled to enjoin Defendants' wrongful practices and to obtain
8    restitution for the monies obtained by Defendants by reason of Defendants'
9    unlawful, unfair, and/or deceptive acts and practices.

10        116.  As a direct and proximate result of the acts and practices alleged
11   above, members of the California UCL Class and the general public have been
12   injured, harmed, and/or threatened with harm.  This Court is empowered to, and
13   should, order restitution to all persons from whom Defendants may have unfairly
14   and/or unlawfully obtained money and property.

15        117.  Defendants' unlawful, unfair, and fraudulent business acts and
16   practices, as described above, present a continuing threat to members of the
17   California UCL Class and the general public, in that Defendants are continuing, and
18   will continue, unless enjoined, to commit violations of RESPA, Cal. Ins. Code
19   §§ 12404 and 12760, and Cal. Bus. & Prof. Code §§ 17200, *et seq*.  This Court is
20   empowered to, and should, grant preliminary and permanent injunctive relief
21   against such acts and practices.

22        118.  Defendants' conduct as alleged in this Complaint is "unlawful" in that
23   it violates RESPA, Cal. Ins. Code §§ 12404, 12405, 12406, and 12760.

24        119.  Defendants' conduct as alleged in this Complaint is "unfair" in that it
25   constitutes an unfair business practice as defined by the Unfair Trade Practices Act,
26   relevant regulations, applicable case law, and is otherwise "unfair" as that term has
27   been construed under relevant case law governing UCL claims.

28

1    120. Defendants' conduct is also "fraudulent" as that term has been

2    construed under relevant case law applicable to UCL claims. "Fraudulent" conduct

3    under the UCL is not the same as common law fraud and Plaintiffs are not alleging

4    common law fraud in this lawsuit.

5    121. As a result of Defendants' unlawful, unfair, and fraudulent business

6    practices, Plaintiffs were injured.

7    122. Plaintiffs, on behalf of themselves and the California UCL Class, seek

8    (1) restitution from Defendants; (2) declaratory relief in the form of a declaration

9    and/or declaratory judgment that Defendants' conduct violates RESPA, Cal. Ins.

10   Code §§ 12404-12406 and 12760, and Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

11   and (3) injunctive relief in the form of a preliminary and final injunction barring

12   Defendants from engaging in further violations of the law.

13                           **FOURTH CAUSE OF ACTION**

14   **(AGAINST ALL DEFENDANTS FOR A DECLARATORY JUDGMENT
     UNDER 28 U.S.C. § 2201(A) AND AN INJUNCTION)**

15

16   123. Plaintiffs repeat and reallege the allegations contained above as if fully

17   stated herein.

18   124. The Defendants have a duty to comply with RESPA, Cal. Ins. Code §§

19   12404-12406 and 12760, and Cal. Bus. & Prof. Code §§ 17200, *et seq.*

20   *125.* An actual and substantial controversy exists between Plaintiffs and

21   Defendants since Defendants deny that their conduct violates RESPA, Cal. Ins.

22   Code §§ 12404-12406 and 12760, and Cal. Bus. & Prof. Code §§ 17200, *et seq.*

23   126. The Defendants have violated and continue to violate RESPA, Cal.

24   Ins. Code §§ 12404-12406 and 12760, and Cal. Bus. & Prof. Code §§ 17200, *et seq.*

25   by the conduct alleged herein.

26   127. As a direct and proximate result of the Defendants' violation of

27   RESPA, Cal. Ins. Code §§ 12404-12406 and 12760, and Cal. Bus. & Prof. Code §§

28

1  17200, *et seq.*, Plaintiffs have been injured.   Moreover, the general public is

2  threatened with harm.

3      128.   Plaintiffs seek (a) a declaratory judgment that the Defendants' conduct

4  violates RESPA, Cal. Ins. Code §§ 12404-12406 and 12760, and/or Cal. Bus. &

5  Prof. Code §§ 17200, *et seq.*, and (b) an injunction that bars the Defendants from

6  further violating such laws.

7  <div align="center">**PRAYER FOR RELIEF**</div>

8      WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

9      A.   A declaration that this action is a proper class action under Fed. R. of

10 Civ. P. 23(b)(3) on behalf of the Class, as defined herein, and an order directing that

11 reasonable notice of this action be given to each member of the TransactionPoint

12 Class and California UCL Class;

13     B.   A declaratory judgment that the Defendants' conduct alleged herein

14 constitutes a violation of RESPA, Regulation X, Cal. Ins. Code §§ 12404-12406

15 and 12760, and Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

16     C.   An injunction enjoining, preliminarily and permanently, Defendants

17 from continuing the unlawful conduct alleged herein;

18     D.   For restitution to Plaintiffs and each member of the TransactionPoint

19 Class and California UCL Class of all sums unlawfully collected by Defendants

20 from the Plaintiffs and other members of the Class during the Class Periods;

21     E.   For treble damages for the RESPA violations;

22     F.   An award for Plaintiffs and the TransactionPoint Class and California

23 UCL Class for the costs of this suit (including expert fees), and reasonable

24 attorneys' fees, as provided by law; and

25     G.   An award for such other and further relief as the nature of this case

26 may require or as this Court deems just, equitable, and proper.

27

28

1

## JURY DEMAND

2    Plaintiffs demand a jury trial of all triable issues.

3

4    DATED:  June 1, 2012

CHAPIN FITZGERALD
5                                              SULLIVAN & BOTTINI LLP

6                                              *Keith  Cochran*

7                                              KEITH M. COCHRAN

8                                              EDWARD D. CHAPIN
9                                              (echapin@cfsblaw.com)
                                               FRANCIS A. BOTTINI, JR.
10                                             (fbottini@cfsblaw.com)
11                                             JILL M. SULLIVAN
                                               (jsullivan@cfsblaw.com)
12                                             KEITH M. COCHRAN
13                                             (kcochran@cfsblaw.com)
                                               550 West "C" Street, Suite 2000
14                                             San Diego, CA 92101
15                                             Tel:   (619) 241-4810
                                               Fax:   (619) 955-5318
16

17                                             BERNSTEIN LITOWITZ
                                                 BERGER & GROSSMANN LLP
18                                             BLAIR NICHOLAS
19                                             (blairn@blbglaw.com)
                                               BENJAMIN GALDSTON
20                                             (beng@blbglaw.com)
21                                             DAVID KAPLAN
                                               (davidk@blbglaw.com)
22                                             LAURENCE REZA WRATHALL
23                                             (laurence.wrathall@blbglaw.com)
                                               12481 High Bluff Drive, Suite 300
24                                             San Diego, CA 92130
25                                             Tel: (858) 793-0070
                                               Fax: (858) 793-0323
26

27                                             *Attorneys for Plaintiffs and the Classes*

28

*Hildebrandt, et al. v. Fidelity National Financial, Inc., et al.*

**APPENDIX**

| DEFENDANT | DESCRIPTION | CAUSES OF ACTION |
|---|---|---|
| Fidelity National Financial, Inc. ("Fidelity" or "the Company") | Defendant Fidelity is a holding company, incorporated in Delaware, with its principal place of business located at 601 Riverside Avenue, Jacksonville, Florida 32204.<br><br>Through its subsidiaries, Fidelity provides title insurance, closing and escrow services, appraisal services, flood certification services, credit reporting services, property and casualty insurance services, mandatory disclosure reports, tax services, home warranty services, and other real estate settlement services. Fidelity's subsidiaries, including Fidelity National Home Warranty, market themselves to consumers based on the financial strength and backing of Fidelity.<br><br>During the Class Periods, Fidelity directly made payments and/or caused its subsidiaries to make payments to real estate agents and brokers in exchange for the referral of real estate settlement services involving federally related mortgages. Fidelity was also a party to all the TransactionPoint license agreements and was listed as the "Licensor" in such agreements. | 1. First Cause of Action for Violations of RESPA, 12 U.S.C. § 2607.<br>2. Second and Third Causes of Action for Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br>3. Fourth Cause of Action for Declaratory Judgment Under 28 U.S.C. § 2201(A) and an Injunction. |
| Fidelity National Title Insurance Company ("Fidelity Title Insurance") | Defendant Fidelity Title Insurance is a California corporation and Fidelity subsidiary, with its principal place of business located at 2510 N. Redhill Avenue, Santa Ana, California 92705. During the Class Periods, Fidelity Title Insurance provided real estate settlement services to Class members, including title insurance policies. | 1. First Cause of Action for Violations of RESPA, 12 U.S.C. § 2607.<br>2. Second and Third Causes of Action for Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br>3. Fourth Cause of Action for Declaratory Judgment Under 28 U.S.C. § 2201(A) and an Injunction. |
| Commonwealth Land Title Company | Defendant Commonwealth Title is a California corporation | 1. First Cause of Action for Violations of RESPA, 12 U.S.C. § 2607. |

| DEFENDANT | DESCRIPTION | CAUSES OF ACTION | |
|---|---|---|---|
| ("Commonwealth Title") | and Fidelity subsidiary, with its principal place of business located at 2510 N. Redhill Avenue, Santa Ana, California 92705. During the Class Periods, Commonwealth Title provided real estate settlement services to Class members, including title insurance policies. | 2. | Second and Third Causes of Action for Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.* |
| | | 3. | Fourth Cause of Action for Declaratory Judgment Under 28 U.S.C. § 2201(A) and an Injunction. |
| Chicago Title Company ("Chicago Title") | Defendant Chicago Title is a California corporation and Fidelity subsidiary, with its principal place of business located at 2510 N. Redhill Avenue, Santa Ana, California 92705. During the Class Periods, Chicago Title provided real estate settlement services to Class members, including title insurance policies. | 1. | First Cause of Action for Violations of RESPA, 12 U.S.C. § 2607. |
| | | 2. | Second and Third Causes of Action for Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.* |
| | | 3. | Fourth Cause of Action for Declaratory Judgment Under 28 U.S.C. § 2201(A) and an Injunction. |
| Ticor Title Company of California ("Ticor Title") | Defendant Ticor Title is a California corporation and Fidelity subsidiary, with its principal place of business located at 2510 N. Redhill Avenue, Santa Ana, California 92705. During the Class Periods, Ticor Title provided real estate settlement services to Class members, including title insurance policies. | 1. | First Cause of Action for Violations of RESPA, 12 U.S.C. § 2607. |
| | | 2. | Second and Third Causes of Action for Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.* |
| | | 3. | Fourth Cause of Action for Declaratory Judgment Under 28 U.S.C. § 2201(A) and an Injunction. |
| Lawyers Title Company ("Lawyers Title") | Defendant Lawyers Title is a California corporation and Fidelity subsidiary, with its principal place of business located at 2510 N. Redhill Avenue, Santa Ana, California 92705. During the Class Periods, Lawyers Title provided real estate settlement services to Class members, including title insurance policies. | 1. | First Cause of Action for Violations of RESPA, 12 U.S.C. § 2607. |
| | | 2. | Second and Third Causes of Action for Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.* |
| | | 3. | Fourth Cause of Action for Declaratory Judgment Under 28 U.S.C. § 2201(A) and an Injunction. |

| DEFENDANT | DESCRIPTION | CAUSES OF ACTION |
|---|---|---|
| Fidelity National Disclosure Source, LLC ("Disclosure Source") | Defendant Disclosure Source is a Delaware corporation and Fidelity subsidiary, with its principal place of business located at 1850 Gateway Blvd., Suite 400, Concord, California 94520.  During the Class Periods, Disclosure Source provided real estate settlement services to Class members, including property hazard reports regarding, among other things, natural hazards, toxic mold, Mello-Roos determinations, Megan's Law, and airport proximity. | 1.  First Cause of Action for Violations of RESPA, 12 U.S.C. § 2607.<br>2.  Second and Third Causes of Action for Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br>3.  Fourth Cause of Action for Declaratory Judgment Under 28 U.S.C. § 2201(A) and an Injunction. |
| Fidelity National Home Warranty Company ("Fidelity National Home Warranty") | Defendant Fidelity National Home Warranty is a California corporation and Fidelity subsidiary, with its principal place of business located at 1850 Gateway Boulevard, Suite 400, Concord, California 94520.  Fidelity National Home Warranty is a "home protection company" as defined by Cal. Ins. Code § 12740(b).  During the Class Periods, Fidelity National Home Warranty sold home warranty contracts to Class members, including homeowners in the State of California, as well as in Arizona, Nevada, Colorado, Washington, and Oregon. | 1.  First Cause of Action for Violations of RESPA, 12 U.S.C. § 2607.<br>2.  Second and Third Causes of Action for Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br>3.  Fourth Cause of Action for Declaratory Judgment Under 28 U.S.C. § 2201(A) and an Injunction. |

# Exhibit A

# ALSTON&BIRD LLP

The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404

202-756-3300
Fax 202-756-3333
www.alston.com

Senator Robert J. Dole                                          Direct Dial: 202-654-4848

April 28, 2010

Ms. Helen Kanovsky, Esq,
General Counsel
Department of Housing and Urban Development
451 7th Street SW, Mail Stop G
Washington, DC 20410

Dear Ms. Kanovsky:

I want to thank you for taking the time to talk to me on March 16, 2010 regarding the Department's current investigation into violations of the Real Estate Settlement Procedures Act in California.

I understand you are not able to speak specifically about the progress of the investigation into the formal complaint filed (b) (7)(D) regarding alleged RESPA violations by Fidelity National Disclosure Source LLC. You did offer to accept additional information that would support the alleged violations. Alston & Bird appreciates your willingness to undertake a thorough investigation.

I have attached three documents we would like to submit as further evidence of our claim of RESPA violations. I am also including an explanatory memorandum with details of each of the documents. We firmly believe these documents support the allegations filed with the formal complaint on September 29, 2009.

We understand the Department takes these investigations seriously and will act judiciously. I think you would also agree that justice postponed is justice denied. Therefore, we are hopeful your investigation will proceed swiftly and that you will come to a resolution soon.

Thank you again for the time you have given to this important matter.

Sincerely,

BOB DOLE

## FURTHER DOCUMENTS IN SUPPORT OF COMPLAINT ON BEHALF
(b) (7)(D)

## REQUEST FOR CONFIDENTIALITY

(b) (7)(D)

a California provider of natural hazard disclosure ("NHD") reports, previously submitted a complaint to the Department of Housing and Urban Development, Office of RESPA and Interstate Land Sales, against Fidelity National Disclosure Source, LLC ("DisclosureSource"), also a California provider of NHD reports. (b) (7)(D) complaint was made on the grounds that DisclosureSource is currently paying kickbacks to various California real estate brokers for the referral of settlement service business. Specifically, DisclosureSource is paying a $25 kickback for each NHD report order placed with DisclosureSource through the TransactionPoint software system, which is used by brokers to manage real estate transactions. DisclosureSource's payment of the $25 referral fee constitutes a violation of 12 U.S.C. § 2607(a).

As with its original complaint, (b) (7)(D) hereby requests confidentiality in connection with this submittal.

Attached are additional documents evidencing DisclosureSource's kickback arrangement. These documents supplement (b) (7)(D) original complaint.

Exhibit 1. Real Estate Service Provider Access Agreement dated as of April 2007 between Filo Real Estate, Inc. dba Smart Click Realty, a California real estate broker, and DisclosureSource.

DisclosureSource's kickback arrangement works as follows:

Numerous California real estate brokers, including Smart Click Realty, license a software product called TransactionPoint to manage their real estate transactions. The Real Estate Service Provider Access Agreement is a sublicense between the broker and DisclosureSource, pursuant to which DisclosureSource is allowed access to the TransactionPoint system in exchange for the payment of a "sublicense fee." In essence, access to the TransactionPoint system allows DisclosureSource to receive orders electronically and then to fill those orders electronically. Until recently, (b) (7)(D) was given access to TransactionPoint by brokers without a formal Access Agreement and without the payment of any fee.

Paragraph 2 of the DisclosureSource/Smart Click Realty Access Agreement provides that DisclosureSource shall pay a $25 "sublicense fee" for each NHD report order placed with DisclosureSource through the TransactionPoint system. The $25 sublicense fee is not capped - - i.e., the more orders, the more fees. Further, the fee is not tied to any license fee incurred by the broker for the license of the TransactionPoint system. DisclosureSource is not relieved of the obligation to pay the sublicense fee as soon as the broker recovers the cost of the license of the TransactionPoint software.

Exhibit 2. Accounting of $25 payments from DisclosureSource to Smart Click Realty.

This document evidences DisclosureSource's payment of the $25 kickback for the referral of NHD report orders. Smart Click Realty is a very small California real estate broker. Nevertheless, payments to DisclosureSource reflected on this accounting total $1,650.00 as of the end of 2009.

Exhibit 3. E-mail correspondence from Keller Williams Coastal Properties, a California real estate broker, to Keller Williams agents.

This document evidences the fact that Keller Williams, a California real estate broker, designates as "preferred providers" those vendors, including DisclosureSource, that agree to pay the $25 kickback fee through the TransactionPoint Access Agreement. The e-mail states that "[t]he fee goes into company profits" and that the agents "SHARE in the PROFITS." Agents are urged to use the preferred providers. The consequence is that (1) the broker makes additional profits through the payment of the $25 kickback, and (2) settlement service providers who do not agree to pay the kickback are shut out of the business from that broker. The Keller Williams e-mail is also significant because it shows that the broker is receiving kickbacks (in the form of TransactionPoint "sublicense fees") from a broad array of settlement service providers.

(b) (7)(D)      respectfully requests that HUD consider these documents during its investigation into these ongoing practices. We encourage HUD to take prompt action to ensure that vendors immediately cease and desist these practices, which we believe violate RESPA and represent unfair business practices.

- 2 -

04/11/2007 14:04 FAX 0255560707        FIDELITY NTL HOME NTY               ☒069

Confidential

BROKER ASP AGREEMENT

REAL ESTATE SERVICE PROVIDER ACCESS AGREEMENT

This Portal Access Agreement ("Agreement"), is made and effective commencing as of this ____ day of _____ ("Effective Date"), by and between Smart Click Realty, a real estate broker having a business address of 7473 Midport Drive, Roseville, CA 95678 ("Sublicensee"), and Triadcasae Source a corporation having a principal place of business at 1850 Gateway Boulevard, Suite 400, Concord, California 94520 ("Sublicensor").

**1. GRANT OF LICENSE.**

Sublicensor grants Sublicensee this non-exclusive, non-transferable license to remotely access and use the application software (the "SOFTWARE") and the Application Service Provider ("ASP") services set forth in Schedule 1 hereto solely in connection with and for the purpose of supporting and offering certain real estate services in real estate transactions in which Sublicensee is acting as a real estate service provider with respect to real property situated in the United States or Canada (herein "Transaction"). The SOFTWARE and ASP services are collectively referred to as the "SERVICE".

Sublicensee shall have no right to sublicense or further distribute or provide access to the SOFTWARE or the SERVICE.

**2. SUBLICENSE FEE.**

In consideration for the foregoing sublicense, Sublicensee shall pay Sublicensor a fee (the "Fee") equal to $25.00 for each order initiated and placed by Sublicensee using the link to Sublicensor's web site.

All charges for support and maintenance are included in the above-referenced Fee.

**3. PROPRIETARY PROTECTION AND RESTRICTIONS.**

Sublicensee acknowledges that Fidelity National Financial, Inc. ("FNF"), or other third parties licensing the SOFTWARE and SERVICE to Sublicensor (collectively, "Licensor"), shall have sole and exclusive ownership of all right, title, and interest in and to the SOFTWARE AND SERVICE (including any images, "applets", photographs, animations, video, audio, music and text incorporated into the SERVICES and/or the SOFTWARE), and all modifications, revisions and enhancements thereof (including ownership of all trade secrets and copyrights pertaining thereto), subject only to the rights and privileges expressly granted therein by Sublicensor. This Agreement does not provide Sublicensee with title or ownership of, or an interest in, the SOFTWARE or SERVICE, but only a right of limited use. Sublicensee must keep the SOFTWARE and its access to the SERVICE free and clear of all claims, liens, and encumbrances.

Sublicensee may not use, copy, modify, or distribute the SOFTWARE (electronically or otherwise), or any copy, adaptation, transcription, or merged portion thereof, except as expressly authorized by Sublicensor or as set forth in this Agreement. Sublicensee may not reverse assemble, reverse compile, or otherwise translate the SOFTWARE. Sublicensee's rights may not be transferred, leased, assigned, or sublicensed without Sublicensor's prior written consent. No service bureau work, multiple-user license, or time-sharing arrangement is permitted, except as expressly authorized by Sublicensor. Without Sublicensor's express prior written authorization, Sublicensee may not install the SOFTWARE in any other computer system or use it at any facility or location other than at Sublicensee's address designated in the preamble hereto.

Sublicensee acknowledges that, in the event of Sublicensee's breach of any of the foregoing provisions, Sublicensor and Licensor will not have an adequate remedy at law in money or damages. Sublicensor and Licensor shall therefore be entitled to obtain an injunction against such breach from any court of competent jurisdiction (without being required to post a bond or security) to restrain such a breach. Sublicensor's right to obtain injunctive relief shall not limit its right to seek further remedies.

04/20/2007 00:01 FAX                                                                    ☒022/035

04/11/2007 14:04 FAX 9253360737          FIDELITY NTL HOME WTY                         ☒010

Confidential

**4. CONFIDENTIALITY.**

The SERVICES and/or the SOFTWARE and all related information licensed hereunder constitute confidential, proprietary and trade secret information of Licensor and Sublicensor having been developed by great expenditures of time, resources and money. Therefore, Sublicensee shall keep the SOFTWARE, the SERVICES and all related information received hereunder in the strictest confidence and will exercise the highest degree of care to safeguard the confidentiality thereof. The existence of a copyright notice shall not cause or be construed as causing, the SOFTWARE to be in the public domain or to be other than an unpublished work with all rights reserved under applicable copyright laws.

**5. TERM AND TERMINATION.**

This Agreement is effective as of the Effective Date and will remain in effect until terminated as hereinafter provided.

Sublicensor or Sublicensee may terminate this Agreement at any time, without cause and without liability to the other party upon thirty days prior written notice.

Licensor or Sublicensor may terminate this Agreement for cause upon five days prior written notice to Sublicensee in the event that Sublicensee shall have failed to cure a material breach of the terms of this Agreement during such notice period.

Upon termination of this Agreement for any reason, all rights granted to Sublicensee by Sublicensor will terminate and revert to Sublicensor. Promptly upon termination of this Agreement for any reason or upon discontinuance or abandonment of Sublicensee's possession or use of the SOFTWARE or SERVICE, Sublicensee must return or destroy, as requested by Sublicensor, all materials pertaining to the SOFTWARE (including all copies thereof). Sublicensee agrees to certify Sublicensee's compliance with this provision upon Sublicensor's request.

**6. COMPLIANCE WITH LAWS.**

Sublicensee acknowledges and agrees that Sublicensee's access to and use of the SERVICES and/or the SOFTWARE and/or participation in a Transaction may be subject to applicable federal, state and local laws, including without limitation, the rules and regulations of the Federal Communications Commission, the Federal Trade Commission or some other regulatory body or agency (a "Regulatory Agency"). Sublicensee agrees to comply with all requirements imposed by any Regulatory Agency. Furthermore, it is the intent of the Parties to comply in all respects with the Real Estate Settlement Procedures Act and with other applicable state and federal laws, rules and regulations in connection with their performance under this Agreement. Anything in this Agreement to the contrary notwithstanding, if either party (the "Notifying Party") reasonably determines that this Agreement poses a significant risk of causing the Notifying Party, or any of the Notifying Party's affiliates, to be in violation of any of the foregoing laws, rules and regulations, the Notifying Party and the other party shall renegotiate the terms of this Agreement so that this Agreement complies with such law, rule or regulation in the reasonable determination of both parties or the Notifying Party may terminate this Agreement.

**7. LIMITED WARRANTY.**

Due to the complex nature of the SOFTWARE and the SERVICES, neither Sublicensor nor any third party contributing to the content or provision of SERVICES or SOFTWARE warrants that the access to the SERVICES and/or the operation or performance of the SOFTWARE will be uninterrupted or error free. As Sublicensee's exclusive remedy for any material defect in the SOFTWARE or SERVICES provided hereunder, Sublicensor shall request Licensor to use reasonable efforts to correct or cure any such reproducible and documented material defect. Sublicensor shall not be obligated to ask Licensor to correct, cure, or otherwise remedy any nonconformity or defect in the SOFTWARE and/or SERVICES if Sublicensor has made any changes whatsoever to the SOFTWARE and/or SERVICES, if the SOFTWARE and/or SERVICES have been misused or damaged in any respect, or if Sublicensee has not reported to Sublicensor the existence and nature of such nonconformity or defect promptly upon discovery thereof. Sublicensor shall not be obligated to correct, cure or otherwise remedy any nonconformity or defect in the SOFTWARE or SERVICES. This warranty is expressly conditioned on Sublicensee's observance of the specifications, operating

2

04/20/2007 08:02 FAX                                                   ☒ 023/035

04/11/2007 14:04 FAX 9255550787          FIDELITY NTL HOME NTY          ☒ 011

Confidential

procedures, security measures, and data control procedures with respect to the SOFTWARE or SERVICES provided to or made available to Sublicensee.

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, LICENSOR AND SUBLICENSOR DISCLAIM ANY AND ALL PROMISES, REPRESENTATIONS, AND WARRANTIES WITH RESPECT TO THE SOFTWARE AND SERVICES, INCLUDING THEIR CONDITION, CONFORMITY TO ANY REPRESENTATION OR DESCRIPTION, THE EXISTENCE OF ANY LATENT OR PATENT DEFECTS, ANY NEGLIGENCE, AND MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OF THE SOFTWARE AND/OR SERVICES.

The cumulative liability of Licensor and Sublicensor for all claims relating to the SOFTWARE and/or the SERVICES arising under this Agreement, including any cause of action sounding in contract, tort, or strict liability, shall not exceed the total amount of all access and license fees paid to Sublicensor hereunder. This limitation of liability is intended to apply without regard to whether other provisions of this Agreement have been breached or have proven ineffective.

IN NO EVENT SHALL LICENSOR OR SUBLICENSOR BE LIABLE FOR ANY LOSS OF PROFITS; ANY INCIDENTAL, SPECIAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES; OR ANY CLAIMS OR DEMANDS BROUGHT AGAINST SUBLICENSEE, EVEN IF SUBLICENSOR OR LICENSOR HAS BEEN ADVISED OR THE POSSIBILITY OF SUCH CLAIMS OR DEMANDS. THIS LIMITATION UPON DAMAGES AND CLAIMS IS INTENDED TO APPLY WITHOUT REGARD TO WHETHER OTHER PROVISIONS OF THIS AGREEMENT HAVE BEEN BREACHED OR HAVE PROVEN INEFFECTIVE.

8. DATA.

Sublicensee acknowledges that data conversion is subject to the likelihood of human and machine errors, omissions, delays, and losses, including inadvertent loss of data or damage to media, that may give rise to loss or damage. None of Sublicensor, Licensor or any web site host shall be liable for any such errors, omissions, delays, or losses, unless caused by its gross negligence or willful misconduct. Sublicensee is responsible for adopting reasonable measures to limit the impact of such problems, including backing up data, and adopting procedures to ensure the accuracy of input data, and examining and confirming results prior to use, and adopting procedures to identify and correct errors and omissions, replace lost or damaged media, and reconstruct data. Sublicensee is also responsible for complying with all local, state, and federal laws pertaining to the use and disclosure of any data.

9. DISCLAIMER OF LIABILITY.

SUBLICENSEE AGREES THAT NEITHER LICENSOR, SUBLICENSOR, THEIR SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR ANY WEB SITE HOST SHALL BE LIABLE TO SUBLICENSEE OR TO ANY OTHER PERSON, FIRM, OR CORPORATION WHATSOEVER FOR ANY LOSSES, DAMAGES, CLAIMS, PENALTIES, COSTS OR EXPENSES (INCLUDING LOST PROFITS) ARISING OUT OF OR RELATING TO ANY TRANSACTION OR THE USE OR INABILITY TO USE THE SERVICES AND/OR THE SOFTWARE, IN ANY WAY, INCLUDING BUT NOT LIMITED TO ANY DELAY, INACCURACIES, ERRORS OR OMISSIONS AND WHETHER OCCASIONED BY ANY CAUSE WHATSOEVER, WHETHER RESULTING FROM NEGLIGENCE OR OTHERWISE. IF THE FOREGOING DISCLAIMER AND WAIVER OF LIABILITY SHOULD BE DEEMED INVALID OR INEFFECTIVE, NEITHER LICENSOR, SUBLICENSOR, ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR THE WEB SITE HOST SHALL BE LIABLE IN ANY EVENT, INCLUDING THEIR OWN NEGLIGENCE, BEYOND AN AMOUNT EQUAL TO TEN THOUSAND DOLLARS ($10,000). SUBLICENSEE FURTHER AGREES THAT NEITHER SUBLICENSOR, ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR THE WEB SITE HOST SHALL BE LIABLE TO SUBLICENSEE OR TO ANY OTHER PERSON, FIRM, OR CORPORATION WHATSOEVER FOR ANY LOST REVENUES OR PROFITS, LOSS OF DATA OR OTHER SPECIAL, DIRECT, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, EVEN IF LICENSOR, SUBLICENSOR OR THE WEB SITE HOST HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10. INDEMNITY.

04/20/2007 08:02 FAX                                                                                    ☒024/036

04/11/2007 14:04 FAX 9253560737              FIDELITY NTL HOME WTY                              ☒012

Confidential

Sublicensee agrees to indemnify and hold Licensor, Sublicensor, its shareholders, directors, officers, employees and agents and the web-site host harmless and to pay all losses, damages, expenses and costs (including reasonable attorneys' fees) incurred by them based upon any third party claim or action (i) arising from Sublicensee's breach of Sublicensee's obligations, representations, warranties or covenants hereunder; or (ii) arising from any delay, inaccuracies, errors or omissions in connection with a Transaction or the use or inability to use the SERVICES and/or the SOFTWARE. Sublicensor and the Licensor shall have the right, but not the obligation, to participate in any defense or settlement of such claims or action.

## 11. PRIVACY OF DATA

Sublicensee shall not sell, transfer, assign, share or use "non-public personal information," as defined in Title V of the Gramm-Leach-Bliley Act and its implementing regulations (hereinafter "Customer Information") in violation of any law designed to safeguard the privacy and security of such information. Except as expressly provided below or with Sublicensor's (or, as applicable, a party to a Transaction's) prior written consent, Sublicensee shall (a) not disclose any Customer Information to any person or entity, other than Sublicensee's employees, affiliates, agents, representatives or service providers who have a need to know such Customer Information in order to perform the responsibilities assigned under this Agreement, and (b) ensure that such person or entity to whom or to which Sublicensee intends to disclose Customer Information, except where such disclosure is pursuant to Sublicensor's (or, as applicable, a party to a Transaction's) direction, shall (i) use or disclose such Customer Information only to the extent necessary to perform the responsibilities imposed under this Agreement, and (ii) shall comply with Licensor's and Sublicensee's obligations under the Gramm-Leach-Bliley Act. Notwithstanding anything to the contrary contained in this Agreement, Sublicensee may disclose Customer Information pursuant to (x) a requirement or official request of a governmental agency, a court or administrative subpoena or order, or any applicable legislative or regulatory requirement, (y) in defense of any claim or cause of action asserted against it, or (z) as otherwise permitted by the Gramm-Leach-Bliley Act or applicable law. Sublicensee shall take all reasonable measures, including without limitation such measures as it takes to safeguard its own Customer Information, to ensure the security and confidentiality of all Customer Information, to protect against anticipated threats or hazards to the security or integrity of such Customer Information and to protect against unauthorized access to or use of such Customer Information.

## 12. GENERAL TERMS AND CONDITIONS.

12.1 Waiver and Limitation of Action. No delay or omission in the exercise of any power or remedy available hereunder shall impair or affect either party's right to the exercise thereof. No action or claim, including, without limitation, any claim for indemnification, regardless of form, arising out of the transactions contemplated herein may be brought by either party more than one (1) year after the party seeking indemnification has actual knowledge that the cause of action had accrued.

12.2 Force Majeure. If either party shall be delayed in its performance of any obligation hereunder or be prevented entirely from performing any such obligation due to causes or events beyond its control including, without limitation, any act of God, fire, strike or other labor problem, legal action, present or future law, government order, rule or regulation, such delay or non-performance shall be excused and the time for performance shall be extended to include the period of such delay or non-performance for a period not to exceed 90 days.

12.3 Notices. All notices shall be made in writing and shall be deemed given or made on the date delivered if delivered in person; on the date initially received if delivered by telecopy transmission (with machine generated transmittal confirmation) followed by certified mail or reputable overnight courier; on the date delivered by an overnight courier service or on the third (3rd) business day after it is mailed if mailed by certified mail (return receipt requested), with postage with either fees prepaid) to the parties at the addresses indicated below (or at such other addresses as shall be given in writing by either of the parties to the other, if given in accordance with the terms of this Subsection 12.3).

If to Sublicensor:

    Senior Click Realty
    Attention: Greg McClure
    7473 Millport Drive
    Roseville, CA 95678
    Phone Number (916) 616-7850

6.

04/20/2007 08:02 FAX                                                                    025/035

04/11/2007 14:05 FAX 8253560737          FIDELITY NTL HOME WTY                          013

Confidential

If to Sublicensee:
    Disclosure Source
    Attn: Bill Jensen
    1850 Gateway Boulevard, Suite 400
    Concord, California 94520
    Phone Number: (925) 521-7144

If to Licensee:
    Fidelity National Financial, Inc.
    601 Riverside Avenue
    Jacksonville, Florida 32204
    Telephone: (904) 854-8100
    Fax (904) 357-1026

12.4 Severability. If any provision or portion of any provision of this Agreement is declared void or unenforceable or against public policy, such provision or portion thereof shall be deemed stricken from this Agreement and the remainder of this Agreement shall remain in full force and effect. In the event that any provision(s) of this Agreement or any portion thereof shall be held to be in any way an unreasonable restriction, the court so holding may reduce the geographical area and/or period of time in which such provision operates to the restriction permitted under applicable law, or otherwise modify or eliminate any such restriction to the least extent necessary to render such provision enforceable. In the event that any provision hereof is found invalid or unenforceable pursuant to judicial decree, the remainder of this Agreement shall remain valid and enforceable according to its terms.

12.5 Governing Law. This Agreement shall be construed and enforced in accordance with the substantive laws of the State of New York and the United States of America, without regard to choice of law principles.

12.6 Dispute Resolution. In connection with any dispute arising out of or relating to this Agreement, the parties hereto agree to attempt in good faith to resolve such dispute promptly by negotiation through an individual with the authority necessary to settle the controversy. Negotiations shall be commenced by written notice being delivered by a party to the other party. The parties are obligated to meet within ten (10) business days after delivery of such notice at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to exchange relevant information and to attempt to resolve the dispute. If the matter has not been resolved within forty-five (45) days of the initiating notice, or if the parties fail to meet within ten (10) business days, any party may initiate mediation of the dispute as provided below. All negotiations pursuant to this Section are confidential and shall be treated as compromise and settlement negotiations for purposes of the federal and state rules of evidence. If the parties agree, or if a party gives notice to mediate under the prior sentence, the parties shall engage in a mediation to resolve the dispute. This proceeding will be conducted in accordance with the then current Commercial Mediation Rules of the American Arbitration Association ("AAA"). Neither party may withdraw from the mediation before the conclusion of the proceeding. If the mediation concludes without a resolution of the dispute, any party may initiate arbitration of the dispute as follows. The obligation to mediate is an essential provision of this Agreement and both parties agree it is legally binding upon it. In case of a violation of the obligation to mediate by either party, the other party may bring an action to seek enforcement of such obligation in any state or federal court of general jurisdiction located in New York, New York, but in no other court. The mediator shall allocate legal fees and expenses as deemed equitable. If a party initiates arbitration as permitted by this Section, the dispute shall be resolved by binding arbitration conducted in accordance with the then current Commercial Arbitration Rules of the AAA. All arbitrators shall have not less than ten (10) years' experience in commercial software marketing or management. The decision of the arbitrators is final and binding upon all parties. Judgment upon the final arbitration decision may be entered by any court having jurisdiction thereof. The arbitrators shall allocate legal fees and expenses as deemed equitable.

12.7 Assignment. This Agreement shall be binding upon the parties hereto and their respective successors and permitted assignees. The rights granted to Sublicensee by this Agreement or any duty or obligation of performance

5

04/20/2007 08:02 FAX                                                          ☑ 028/035

04/11/2007 14:08 FAX 0283560737            FIDELITY NTL HOME WTY            ☑014

Confidential

hereunder shall not be assigned, delegated, sublicensed, or otherwise transferred by Sublicensee, either voluntarily or by operation of law, except as specifically provided for herein. Any attempt by Sublicensee to assign, delegate, sublicense, or transfer any of the rights, duties, or obligations hereunder except as expressly provided by this Agreement is null and void. Sublicensor shall not assign its obligations hereunder without the written consent of Sublicensee, except in connection with the sale of substantially all of its assets.

12.8 Non-solicitation of Employees. Sublicensor and Sublicensee each agree that it will not intentionally induce any employee of the other to terminate his or her employment relationship with the other party. In addition, Sublicensor and Sublicensee agree that, during the term of this Agreement and for an additional period of six (6) months thereafter, it will not knowingly employ or offer employment to any employee of a party who has performed any services related to this Agreement without first obtaining the written consent of the other party.

12.9 Construction. The relationship created by this Agreement is solely that of independent contractors and the parties hereby acknowledge and agree that nothing in this Agreement shall be deemed to constitute either party as an agent or a franchisee of the other party. The parties hereby waive the benefit of any state or Federal statutes dealing with the establishment and regulation of franchises. Neither party shall have any power or express or implied authorization to bind the other party or to assume or to create any obligation or responsibility, expressed or implied, on behalf of the other party or in the other party's name. This Agreement shall not be construed as constituting the parties' partners or to create any other form of joint venture or other relationship which could impose liability upon one party for any act or omission of the other.

12.10 Headings. The Section and Subsection headings used herein are for reference and convenience only and shall not enter into the interpretation hereof.

12.11 Further Assurances. After the date hereof, each party hereto will take all such further actions, and sign all such further documents, as may be reasonably required to confirm and effectuate the terms of this Agreement.

12.12 Public Announcements; References. Sublicensee acknowledges that Sublicensor may desire to use Sublicensee's name in press releases, product brochures and financial reports indicating that Sublicensee is a Sublicensee of Sublicensor, and Sublicensee agrees that Sublicensor may use Sublicensee's name in such manner.

12.13 Export Laws. In no event may Sublicensee export any Licensed Software outside the United States unless it has complied fully with all relevant United States export laws and regulations including without limitation the U.S. Export Administration Act and its associated rules and regulations. Upon the request of Sublicensor, Sublicensee shall promptly deliver to Sublicensor a certification that it has complied with the provisions of this Section 12.13.

12.14 Survival. Sections 3, 4, 5, and 7 through 12 will survive the termination of this Agreement for any reason.

SUBLICENSOR:

DCA/Nation Super Creek Realty

By: _____

Title: ___ AT SEPARATE FLD LOCAL EXAMPLOYEE C.

Date: ___ 4-17-07

SUBLICENSEE:

Name: _____

By: _____

Title: _____

Date: _____

6

Confidential

### SCHEDULE 1

### DESCRIPTION OF SOFTWARE

The Sublicensee will be provided a user name and login to the service provider utility, contained within TransactionPoint, which is embedded in the TSP site. TransactionPoint is a web application service. The user must have Internet Explorer version 5.0 or higher to access the system. The Sublicensee will be provided a hosted and secure operating environment within their clients Transaction Services Portal (TSP).

### DESCRIPTION OF SERVICE

The service provider component of the TransactionPoint platform, accessed from the TSP, will provide the user with the following utilities:

- Receive open orders from TransactionPoint, delivered via their TSP provider/client
- Transmit receipt and confirmation of the order back to the TSP
- Provide specific status information as it relates to activities relating to the Transaction
- Provide the ability to upload documents to the TSP
- Receive a detailed transaction log of the activities from the TSP

Rev. 092203jar

# 1203582_v3

Smart Click Realty
Sublicense Agreement Payments - Disclosure Source
1/1/2007 - 12/31/2009

| Month | Brand | Check Request Date | Orders | | Amount | Check Number | Check Date | |
|---|---|---|---|---|---|---|---|---|
| Apr-07 | Disclosure Source | 7/18/2007 | 1 | $ | 25.00 | 1806Z029 | 7/20/2007 | |
| Aug-07 | Disclosure Source | 9/28/2007 | 1 | $ | 25.00 | 1000000335 | 10/2/2007 | |
| Feb-08 | Disclosure Source | 4/10/2008 | 1 | $ | 25.00 | 1000001819 | 4/17/2008 | |
| Jul-08 | Disclosure Source | 9/9/2008 | 11 | $ | 275.00 | 1000002770 | 9/18/2008 | |
| Aug-08 | Disclosure Source | 10/14/2008 | 4 | $ | 100.00 | 1000003005 | 10/23/2008 | |
| Sep-08 | Disclosure Source | 11/12/2008 | 4 | $ | 100.00 | 1000003264 | 11/20/2008 | |
| Oct-08 | Disclosure Source | 12/8/2008 | 3 | $ | 75.00 | 1000003628 | 12/18/2008 | |
| Nov-08 | Disclosure Source | 1/14/2009 | 3 | $ | 75.00 | 1000003996 | 2/11/2009 | |
| Dec-08 | Disclosure Source | 1/27/2009 | 5 | $ | 125.00 | 1000003949 | 2/4/2009 | |
| Jan-09 | Disclosure Source | 2/25/2009 | 2 | $ | 50.00 | 1000004141 | 3/12/2009 | |
| Feb-09 | Disclosure Source | 3/26/2009 | 7 | $ | 175.00 | 1000004311 | 3/31/2009 | |
| Mar-09 | Disclosure Source | 4/29/2009 | 5 | $ | 125.00 | 1180010242 | 5/6/2009 | |
| Apr-09 | Disclosure Source | 5/29/2009 | 2 | $ | 50.00 | 1000004727 | 6/4/2009 | |
| May-09 | Disclosure Source | 6/25/2009 | 1 | $ | 25.00 | 1000004967 | 6/30/2009 | |
| Jun-09 | Disclosure Source | 7/21/2009 | 2 | $ | 50.00 | 1000005214 | 7/24/2009 | |
| Jul-09 | Disclosure Source | 8/27/2009 | 3 | $ | 75.00 | 1000005635 | 9/2/2009 | |
| Aug-09 | Disclosure Source | 10/8/2009 | 1 | $ | 25.00 | 1000005942 | 10/13/2009 | |
| Sep-09 | Disclosure Source | 10/29/2009 | 4 | $ | 100.00 | 1000006161 | 11/5/2009 | |
| Oct-09 | Disclosure Source | 12/4/2009 | 8 | $ | 200.00 | 1000006376 | 12/14/2009 | |
| Nov-09 | Disclosure Source | | 1 | $ | 25.00 | | | Approved - Payment in process |
| Dec-09 | Disclosure Source | | 2 | $ | 50.00 | | | Orders out for approval |

| Service Type | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Smart disk realty | Disclosure Source (P) | 48692-48949 | 117 Montgomery St | Roseville | CA | 95678 | Closed | Greg McClure | Order Accepted | 4/17/2007 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 1

| Service Type | Agent's Branch | Provider | Order # | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Smart click realty | Disclosure Source (P) | 53071-53229 | 8398 Meeks Bay Ave | Tahoma | CA | 96142 | Pending | Greg McClure | Order Accepted | 8/9/2007 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 1

| Service Type | Sales Type | Elecpost | Contract# | Agent's Branch | Provider | Dcl#ent | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Resale | | 0226545-23232 | Smart eDot entity | Disclosure Source (P) | 59128-532545 | 7616 Brenton St | Citrus Heights | CA | 95621 | Cancelled | Lynne Muñoz | Order Accepted | 22/24/2008 |

Number of Orders Opened for DISCLOSURE SOURCE(P) is: 1

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Start | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 073635-00282 | Smart click realty | Disclosure Source (P) | 63736-43974 | 9735 Spring House Way | Elk Grove | CA | 95624 | Pending | Greg McClure | Order Accepted | 7/24/2008 |
| Natural Hazard Disclosure | Foreclosure | | 071106-00178 | Smart click realty | Disclosure Source (P) | 48317-44071 | 6136 Carl Sandurg Cir | Sacramento | CA | 95842 | Pending | Greg McClure | Order Accepted | 7/11/2008 |
| Natural Hazard Disclosure | Foreclosure | | 071908-00028 | Smart click realty | Disclosure Source (P) | 46246-44365 | 6625 Morro St | Elk Grove | CA | 95758 | Pending | Greg McClure | Order Accepted | 7/19/2008 |
| Natural Hazard Disclosure | Foreclosure | | 072106-00188 | Smart click realty | Disclosure Source (P) | 46250-44418 | 6240 Sunset Vista | Sacramento | CA | 95823 | Pending | Greg McClure | Order Accepted | 7/21/2008 |
| Natural Hazard Disclosure | Foreclosure | | 072106-00255 | Smart click realty | Disclosure Source (P) | 34361-44419 | 406 Clyde St | Roseville | CA | 95678 | Pending | Greg McClure | Order Accepted | 7/21/2008 |
| Natural Hazard Disclosure | Foreclosure | | 072206-00166 | Smart click realty | Disclosure Source (P) | 46357-44465 | 5877 J P Pkwy | Sacramento | CA | 95823 | Pending | Greg McClure | Order Accepted | 7/22/2008 |
| Natural Hazard Disclosure | Foreclosure | | 072506-00086 | Smart click realty | Disclosure Source (P) | 34449-44538 | 119 Saint Marie Dr | Sacramento | CA | 95823 | Pending | Greg McClure | Order Accepted | 7/25/2008 |
| Natural Hazard Disclosure | Foreclosure | | 073106-00181 | Smart click realty | Disclosure Source (P) | 64732-44850 | 2701 Aramon Dr | Rancho Cordova | CA | 95670 | Pending | Greg McClure | Order Accepted | 7/31/2008 |
| Natural Hazard Disclosure | Foreclosure | 0810050-6AEH | 072206-00075 | Smart click realty | Disclosure Source (P) | 64303-44878 | 11537 Smerro Dr | Plumas Lake | CA | 95961 | Pending | Greg McClure | Order Accepted | 7/22/2008 |
| Natural Hazard Disclosure | Foreclosure | 82200934-H | 072606-00067 | Smart click realty | Disclosure Source (P) | 63735-45605 | 8355 Red Glen Way | Antelope | CA | 95843 | Closed | Greg McClure | Order Accepted | 7/26/2008 |
| Natural Hazard Disclosure | Resale | 733702X22 | 071606-00068 | Smart click realty | Disclosure Source (P) | 64096-45227 | 1965 Sun Tree Dr | Roseville | CA | 95661 | Pending | Greg McClure | Order Accepted | 7/16/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 11

| Service Type | Status Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 051206-00287 | Smart click realty | Disclosure Source (P) | 05291-65409 | 7910 Fairway Two Ave | Fair Oaks | CA | 95628 | Closed | Greg McClure | Order Accepted | 8/12/2008 |
| Natural Hazard Disclosure | Foreclosure | | 091406-02025 | Smart click realty | Disclosure Source (P) | 05026-65428 | 864 Castilian Cir | Sacramento | CA | 95829 | Pending | Greg McClure | Order Accepted | 8/14/2008 |
| Natural Hazard Disclosure | Foreclosure | | 091506-00142 | Smart click realty | Disclosure Source (P) | 05442-65500 | 919 Crockett Ct | Roseville | CA | 95747 | Pending | Greg McClure | Order Accepted | 8/15/2008 |
| Natural Hazard Disclosure | Foreclosure | | 092006-00130 | Smart click realty | Disclosure Source (P) | 05550-65709 | 6224 Longgate Drive | North Highlands | CA | 95660 | Pending | Greg McClure | Order Accepted | 8/20/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 4

| Service Type | Sales Type | Escrow# | Contract# | Agent's Broker | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 026208-00026 | Smart click realty | Disclosure Source (P) | 66515.66671 | 9457 Flatrock Way | Elk Grove | CA | 95758 | Pre-Sale | Greg McClure | Order Accepted | 9/15/2008 |
| Natural Hazard Disclosure | Foreclosure | | 026208-00026 | Smart click realty | Disclosure Source (P) | 66514.66672 | 9457 Flatrock Way | Elk Grove | CA | 95758 | Pre-Sale | Greg McClure | Order Accepted | 9/15/2008 |
| Natural Hazard Disclosure | Foreclosure | 880011029 | 026208-00151 | Smart click realty | Disclosure Source (P) | 66514.66772 | 5835 Murrah St | Elk Grove | CA | 95758 | Pending | Greg McClure | Order Accepted | 9/22/2008 |
| Natural Hazard Disclosure | Resale | 750122572 | 026208-00154 | Smart click realty | Disclosure Source (P) | 67134.67292 | 8925 Hidden Valley Cr | Fair Oaks | CA | 95628 | Pending | Greg McClure | Order Accepted | 9/25/2008 |
| Natural Hazard Disclosure | Short Sale | 750285904 | 026208-00246 | Smart click realty | Disclosure Source (P) | 66976.67139 | 8351 Bluebell Ct | Citrus Heights | CA | 95610 | Pending | Greg McClure | Order Accepted | 9/24/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 5

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Track Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 1027063246 | Smart click realty | Disclosure Source (P) | 6610545533 | 1323 Sonoma Ave | Sacramento | CA | 95815 | Pending | Greg McClure | Order Accepted | 10/27/2008 |
| Natural Hazard Disclosure | Foreclosure | | 1026036-30267 | Smart click realty | Disclosure Source (P) | 6620545534 | 7744 Center Parkway | Sacramento | CA | 95923 | Pending | Greg McClure | Order Accepted | 10/28/2008 |
| Natural Hazard Disclosure | Foreclosure | 72009649 | 1028336-30228 | Smart click realty | Disclosure Source (P) | 6610545537 | 3565 Treelaven Ct | Antelope | CA | 95843 | Pending | Greg McClure | Order Accepted | 10/28/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 3

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | 3755963 | 110508-0222E | Smart click realty | Disclosure Source (P) | 66501-65659 | 580 Crivn St. | Folsom | CA | 95630 | Pre-Sale | Greg McClure | Order Accepted | 11/5/2008 |
| Natural Hazard Disclosure | Foreclosure | | 110508-00069 | Smart click realty | Disclosure Source (P) | 66542-65700 | 8212 Riverside Dr | Antelope | CA | 95843 | Close | Greg McClure | Order Accepted | 11/7/2008 |
| Natural Hazard Disclosure | Foreclosure | 360918516-051 | 110408-00059 | Smart click realty | Disclosure Source (P) | 66322-65450 | 6431 Co-or Dr | Sacramento | CA | 95828 | Closed | Greg McClure | Order Accepted | 11/4/2008 |
| Natural Hazard Disclosure | Foreclosure | 78200666 | | Smart click realty | Disclosure Source (P) | 66908-65605 | 3124 Melage Way | Sacramento | CA | 95833 | Closed | Greg McClure | Order Canceled | 11/4/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is 5

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | By | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 122028-00024 | Smart click realty | Disclosure Source (P) | 69796-48949 | 3163 Northlyke Dr | Sacramento | CA | 55315 | Pending | Greg McClure | Order Accepted | 12/24/2008 |
| Natural Hazard Disclosure | Foreclosure | 38821746 | 121028-00095 | Smart click realty | Disclosure Source (P) | 69544-68952 | 7901 Black Bear Dr | Antelope | CA | 55343 | Closed | Greg McClure | Order Accepted | 12/10/2008 |
| Natural Hazard Disclosure | Foreclosure | 38821769 | 121108-00092 | Smart click realty | Disclosure Source (P) | 69373-68551 | 5316-40th St | Sacramento | CA | 55317 | Pending | Greg McClure | Order Accepted | 12/11/2008 |
| Natural Hazard Disclosure | Foreclosure | 38821133 | 112508-00109 | Smart click realty | Disclosure Source (P) | 69684-68642 | 429 Renlow Cir | Sacramento | CA | 55554 | Pre-Sale | Greg McClure | Order Accepted | 12/19/2008 |
| Natural Hazard Disclosure | Foreclosure | 38811640-351 | 122508-00011 | Smart click realty | Disclosure Source (P) | 69965-70021 | 4719 Bellerecker Ave | Sacramento | CA | 55331 | Pending | Greg McClure | Order Accepted | 12/26/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 5

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | 31005702 | C11605-00200 | Smart click realty | Disclosure Source (P) | 70469-70627 | 9200 MacLean Ave | Orangevale | CA | 95662 | Pending | Greg McClure | Order Accepted | 1/16/2009 |
| Natural Hazard Disclosure | Foreclosure | 31005457 | C11606-00111 | Smart click realty | Disclosure Source (P) | 70596-70754 | 852 Fairham Ave | Woodland | CA | 95776 | Pending | Greg McClure | Order Accepted | 1/20/2009 |

Number of Orders Queued for DISCLOSURE SOURCE (P) is : 2

| Service Type | Sales Type | Escrow# | Contract# | Agent/Broker | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 021795-00268 | Senate click realty | Disclosure Source (P) | 71330-73741 | 10501 Mountain Way | Elk Grove | CA | 55757 | Pending | Greg McClure | Order Accepted | 2/15/2009 |
| Natural Hazard Disclosure | Foreclosure | | 021798-00157 | Senate click realty | Disclosure Source (P) | 71387-73546 | 4297 Freemont Loop | Rescue | CA | 95672 | Pending | Greg McClure | Order Accepted | 2/15/2009 |
| Natural Hazard Disclosure | Foreclosure | 21008946 | 021003-00157 | Senate click realty | Disclosure Source (P) | 71116-71477 | 5265 Arbaraio Dr | Fair Oaks | CA | 95628 | Pending | Greg McClure | Order Accepted | 3/20/2009 |
| Natural Hazard Disclosure | Foreclosure | 21009768 | 022009-00247 | Senate click realty | Disclosure Source (P) | 71059-71299 | 795 Lea Dr | Sacramento | CA | 95815 | Pending | Greg McClure | Order Accepted | 3/2/2009 |
| Natural Hazard Disclosure | Foreclosure | 21009968 | 021009-00172 | Senate click realty | Disclosure Source (P) | 72338-71487 | 1075 65th Ave | Sacramento | CA | 95822 | Closed | Greg McClure | Order Accepted | 2/10/2009 |
| Natural Hazard Disclosure | Foreclosure | 33632355 | 022606-00252 | Senate click realty | Disclosure Source (P) | 71976-72155 | 4212 35th Ave | Sacramento | CA | 95824 | Pending | Greg McClure | Order Accepted | 2/26/2009 |
| Natural Hazard Disclosure | Foreclosure | 54235247 | 022109-00271 | Senate click realty | Disclosure Source (P) | 71544-71726 | 8008 Gregmar Way | Sacramento | CA | 95826 | Pending | Greg McClure | Order Accepted | 2/27/2009 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is: 7

| Service Type | Status Type | Escrow# | Contract# | Agent's branch | Provider | Orders | Property Address | City | State | Zip | Trans Status | Agent | Order Station | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 032509-00227 | Smart click realty | Disclosure Source (P) | 73290-743309 | 702 Lofton | Wheatland | CA | 95692 | Pending | Greg McClure | Order Accepted | 2/25/2009 |
| Natural Hazard Disclosure | Foreclosure | 09-12101016 | 031609-00041 | Smart click realty | Disclosure Source (P) | 72707-718894 | 7740 Laurel Wry | Sacramento | CA | 95832 | Closed | Greg McClure | Order Accepted | 3/16/2009 |
| Natural Hazard Disclosure | Foreclosure | 1692326 | 032509-00234 | Smart click realty | Disclosure Source (P) | 73237-73806 | 2561 Abberhill Rd | Lincoln | CA | 95648 | Pending | Greg McClure | Order Accepted | 2/25/2009 |
| Natural Hazard Disclosure | Foreclosure | 11102094 | 032609-00022 | Smart click realty | Disclosure Source (P) | 77292-724062 | 2683 Wood Mar Dr | El Dorado Hills | CA | 95763 | Closed | Greg McClure | Order Accepted | 9/9/2009 |
| Natural Hazard Disclosure | Foreclosure | C090227690-TJC | 032509-00119 | Smart click realty | Disclosure Source (P) | 72567-470546 | 2011 Tanzania Dr | Roseville | CA | 95661 | Pending | Crystal Parrett | Order Accepted | 3/20/2009 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 5


| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 040205-00057 | Smart click realty | Disclosure Source (F) | 73565-73784 | 10301 Maznoo Way | Elk Grove | CA | 95757 | Pending | Greg McClure | Order Accepted | 4/3/2009 |
| Natural Hazard Disclosure | Foreclosure | 926608 | 040205-00071 | Smart click realty | Disclosure Source (F) | 73715-73924 | 1721 Ronald Loop | Placerville | CA | 95667 | Pending | Greg McClure | Order Accepted | 4/7/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (F) is : 2

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | 11011135-SH | CS0509-00115 | Smart Code Realty | Disclosure Source (P) | 73567-75306 | 4594 Woodland Ave | Sacramento | CA | 95828 | Pending | Greg McClure | Order Accepted | 5/4/2009 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 1

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 060809-00087 | Smart click realty | Disclosure Source P1 | 24855-77059 | 231 Chango Cir | Sacramento | CA | 95835 | Pending | Greg McClure | Order Accepted | 6/8/2008 |
| Natural Hazard Disclosure | Short Sale | 385010192 | 062508-00325 | Smart click realty | Disclosure Source P1 | 77943-76539 | 8201 Palia Way | Sacramento | CA | 95823 | Pending | Ilsaf Yusupov | Order Accepted | 6/25/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 2

| Service Type | Sales Type | Escrow# | Contract | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | 31011690-JH | 07-2009-00334 | Smart click realty | Disclosure Source (P) | 76252-76451 | 5219 Durago Way | Sacramento | CA | 95835 | Closed | Greg McClure | Order Accepted | 7/2/2009 |
| Natural Hazard Disclosure | Foreclosure | 52005508 | 07-2009-00309 | Smart click realty | Disclosure Source (P) | 79248-79307 | 3950 Marport | Olivehurst | CA | 95961 | Pending | Greg McClure | Order Accepted | 7/29/2009 |
| Natural Hazard Disclosure | Resale | 09-577603386-gh | 07-2409-00035 | Smart click realty | Disclosure Source (P) | 79457-79655 | 8839 White Peacock Way | Elk Grove | CA | 95624 | Pending | Greg McClure | Order Accepted | 7/24/2009 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 3

| Service Type | Sales Type | Escrow# | Company# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | 40133-RES | 082709-00262 | Smart Click relity | Disclosure Source (P) | 91312-SG-CRS | 625 Tomahchoci Way | Susnville | CA | 96078 | Pending | Greg McGuire | Order Accepted | 8/27/2008 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is: 1

| Service Type | Sales Type | Escrow # | Contract # | Agent's Branch | Provider | Order # | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | 1245231 | 993003-00154 | Smart click realty | Disclosure Source (P) | 852349-83139 | 2031 Keats Way | Sacramento | CA | 95826 | Pending | Greg McClure | Order Accepted | 9/30/2009 |
| Natural Hazard Disclosure | Foreclosure | 3001-2367 | 002659-00209 | Smart click realty | Disclosure Source (P) | 829795-83135 | 5721 Georgia Dr | North Highlands | CA | 95660 | Pending | Greg McClure | Order Accepted | 9/29/2009 |
| Natural Hazard Disclosure | Foreclosure | 527659744 | 006059-00202 | Smart click realty | Disclosure Source (P) | 816014-82671 | 6725 Scenic Pine Ln | Placerville | CA | 95667 | Pending | Greg McClure | Order Accepted | 9/17/2009 |
| Natural Hazard Disclosure | Foreclosure | 2008583 | 006059-00209 | Smart click realty | Disclosure Source (P) | 815905-82602 | 9474 Loucher Way | Antelope | CA | 95843 | Cancelled | av Security | Order Accepted | 9/16/2009 |
| Natural Hazard Disclosure | Foreclosure | 7238516 | 006059-00204 | Smart click realty | Disclosure Source (P) | 813004-82682 | 591 Teresa | Sacramento | CA | 95823 | Pending | Greg McClure | Order Accepted | 9/15/2009 |

Number of Orders Operated for DISCLOSURE SOURCE (P) is: 5

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | 3379925 | 100605-00199 | Smart click realty | Disclosure Source (P) | 82695-89656 | 625 Pelican Way | Sacramento | CA | 95833 | Pending | Greg McClure | Order Accepted | 10/6/2009 |
| Natural Hazard Disclosure | Foreclosure | 34122608 | 100609-00040 | Smart click realty | Disclosure Source (P) | 88818-88574 | 824 Nato St. | Marysville | CA | 95901 | Closed | Greg McClure | Order Accepted | 10/9/2009 |
| Natural Hazard Disclosure | Foreclosure | 34012421 | 102080-00506 | Smart click realty | Disclosure Source (P) | 88256-89621 | 6348 Cantalina Ct | Sacramento | CA | 95842 | Closed | Greg McClure | Order Accepted | 10/1/2009 |
| Natural Hazard Disclosure | Foreclosure | 33822764 | 102609-00306 | Smart click realty | Disclosure Source (P) | 84683-86634 | 205 Penrith Co | Lincoln | CA | 95648 | Pending | Greg McClure | Order Accepted | 10/6/2009 |
| Natural Hazard Disclosure | Foreclosure | 34012467 | 100605-00020 | Smart click realty | Disclosure Source (P) | 53751-83912 | 6901 LeMon Gray Ct | Sacramento | CA | 95824 | Pending | Greg McClure | Order Accepted | 10/9/2009 |
| Natural Hazard Disclosure | Foreclosure | 985100611 | 101609-00085 | Smart click realty | Disclosure Source (P) | 84117-84278 | 1225 Markus Cr | Roseville | CA | 95678 | Pending | Greg McClure | Order Accepted | 10/16/2009 |
| Natural Hazard Disclosure | Short Sale | 57809427-sd | 102509-00021 | Smart click realty | Disclosure Source (P) | 84022-84098 | 2846 Dazzlit Way | Lincoln | CA | 95648 | Pending | Greg McClure | Order Accepted | 10/29/2009 |
| Natural Hazard Disclosure | Short Sale | 57943948-SD | 102509-00156 | Smart click realty | Disclosure Source (P) | 84102-84466 | 178 Phoenix Cr | Lincoln | CA | 95648 | Pending | Greg McClure | Order Accepted | 11/20/2009 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is: 8

| Service Type | Status Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | 3041202 | 091105-00393 | Smart click realty | Disclosure Source (P) | 82279-85441 | 305 Dedham Ct | Lincoln | CA | 95648 | Pending | Emily Schuyler | Order Accepted | 11/5/2009 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 1

| Service Type | Sales Type | Escrow# | Contract# | Agent's Branch | Provider | Order# | Property Address | City | State | Zip | Trans Status | Agent | Order Status | Creation Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | Foreclosure | | 091228-00981 | Smart disclosure | Disclosure Source (P) | 87262-67025 | 701 Gibson Dr # 936 | Roseville | CA | 95678 | Pending | Greg McClure | Order Accepted | 12/28/2009 |
| Natural Hazard Disclosure | Short Sale | | 091228-00228 | Smart disclosure | Disclosure Source (P) | 87253-67416 | 1947 Demolition Way | Sacramento | CA | 95832 | Pending | Lynda Mohler | Order Accepted | 12/28/2009 |

Number of Orders Opened for DISCLOSURE SOURCE (P) is : 2

Welcome **Ticor** Title as our newest member of our family as a PREFERRED PROVIDER!!



Your Title Representative:



Steve Harris-Account Executive (805) 444-3273

How does using a Preferred Provider help you and your clients?
1. Seamless interface with Keller Williams Realty through Transaction Point
   a. More efficiency ... Preferred Provider has more time for you!
   b. Documents loaded online for your and your clients' viewing/ usage
   c. Sarah can place the order for you through Transaction Point!
2. Less chance for error
   a. Sarah enters the order from Transaction Point, no double entry errors
   b. Preferred providers upload documents and instructions directly into the Transaction Point system ... no lost documents!
   c. You spend no time worrying about keeping your file complete. More time for your clients and your family
   d. The providers and Sarah keep the file in order and with the latest info for you
3. Preferred Providers PAY US a data entry fee for opening the order through Transaction Point.
   a. The Preferred Provider is a Transaction Point sub-licensee
   b. The fee goes into the company profits
   c. YOU SHARE in the PROFITS

PLEASE USE OUR PREFERRED PROVIDERS and make your life easier and more profitable! If you don't see a provider you use, ask us about adding them to our family of preferred providers now!



Paula Brimigion (805) 444-3223
Anthony Foli (805) 573-0834



Tom Piszczek (805) 302-8667



Angie Valencia (805) 901-2422




Andy Hasler (805) 233-1777



Brenda Slaton (800) 862-6837



Steve Harris (805) 444-3273



Dave Magdaleno (805) 290-3653

Brenda Slaton (800) 862-6837



Scott Gilman (818) 438-7719

----- Original Message -----
From: (b) (6), (b) (7)(C)
To: (b) (6), (b) (7)(C)
Sent: Fri Mar 19 10:13:20 2010
Subject: Welcome Ticor Title to our Preferred Partners!!!

Welcome Ticor Title as our newest member of our family as a PREFERRED PROVIDER!!

Your Title Representative:

Steve Harris-Account Executive (805) 444-3273

How does using a Preferred Provider help you and your clients?

1.      Seamless interface with Keller Williams Realty through Transaction Point

        a.      More efficiency ... Preferred Provider has more time for you!
        b.      Documents loaded online for your and your clients' viewing/ usage
        c.      Sarah can place the order for you through Transaction Point!

        2.      Less chance for error

        a.      Sarah enters the order from Transaction Point, no double entry errors
        b.      Preferred providers upload documents and instructions directly into the Transaction Point system

... no lost documents!

        c.      You spend no time worrying about keeping your file complete. More time for your clients and your family
        d.      The providers and Sarah keep the file in order and with the latest info for you

        2.      Preferred Providers PAY US a data entry fee for opening the order through Transaction Point.

        a.      The Preferred Provider is a Transaction Point sub-licensee

          b.      The fee goes into the company profits

          c.      YOU SHARE in the PROFITS

PLEASE USE OUR PREFERRED PROVIDERS and make your life easier and more profitable! If you don't see a provider you use, ask us about adding them to our family of preferred providers now!

Paula Brimigion (805) 444-3223            Tom Piszczek
(805) 302-8667          Angie Valencia (805) 901-2422

Anthony Foli (805) 573-0834

Andy Hasler (805) 233-1777          Brenda Slaton
(800) 862-6837        Steve Harris (805) 444-3273

Dave Magdaleno (805) 290-3653      Brenda Slaton (800) 862-6837
                  Scott Gilman (818) 438-7719

Yvonne Finley| Agent Services Coordinator
Keller Williams Realty |P-805.389.1919 | F-805.504.8198 |

770 Paseo Camarillo Ste 100, Camarillo, CA  93010

www.kwcamarillo.com <http://www.kwcamarillo.com>

Keller Williams Realty received the highest numerical score
among full service real estate firms for home buyers in the
proprietary J.D. Power and Associates 2008-2009 Home
Buyer/Seller StudySM. 2009 Study based on 3,138 total
evaluations measuring 7 firms and measures opinions of
individual's who bought a home between March 2008 and April 2009.
Proprietary study results are based on experiences and
perceptions of consumers surveyed April-June 2009. Your
experience may vary. Visit jdpower.com

P Save a tree. Please think before you print.

# Exhibit B

HUD No. 11-142                    FOR RELEASE
Brian Sullivan                          Monday
202) 708-0980                    July 11, 2011

## HUD SETTLES RESPA KICKBACK CASE AGAINST FIDELITY NATIONAL FINANCIAL
*Title company to pay $4.5 million and cease paying brokers referral fees*

WASHINGTON – The U.S. Department of Housing and Urban Development (HUD) today announced an agreement with Fidelity National Financial, Inc. (FNF) to settle allegations the title company paid real estate brokers and other settlement service providers improper kickbacks or referral fees in violation of the *Real Estate Settlement Procedures Act (RESPA)*. **Read the full text of the agreement announced today.**

HUD claimed FNF and its affiliates and subsidiaries engaged in a widespread and years-long campaign to pay real estate brokers kickbacks for the referral of real estate settlement services, including home warranties and title insurance.FNF agreed to cease this practice and pay HUD $4.5 million to resolve the complaint.

"RESPA is very clear that paying fees or providing anything of value for the simple act of referring business is a violation of law," said Acting FHA Commissioner Robert Ryan. "This agreement should be a signal to others that these business practices won't be tolerated."

HUD alleges that FNF, through its subsidiaries, paid fees for the referral of settlement service business in violation of Section 8 of RESPA. To facilitate these payments, real estate brokerages entered into "Application Service Provider Agreements" which provided the real estate brokerages access to *TransactionPoint*, a web-based platform that automates the real estate transaction from listing to closing. This online system also allows the brokers to select real estate settlement providers for a particular real estate transaction. The real estate

brokerages, in turn, entered into Sub-License Agreements with subsidiaries of FNF to enable FNF's subsidiaries to be listed in *TransactionPoint* as a provider of settlement services. As part of the Sub-Licensee Agreement, HUD alleges that FNF's subsidiaries paid the real estate brokerages a fee for each referral of real estate settlement services.

RESPA was enacted in 1974 to provide consumers advance disclosures of settlement charges and to prohibit illegal kickbacks and excessive fees in the homebuying process. Section 8 of RESPA prohibits a person from giving or accepting anything of value in exchange for the referral of settlement service business.

### ###

HUD's mission is to create strong, sustainable, inclusive communities and quality affordable homes for all. HUD is working to strengthen the housing market to bolster the economy and protect consumers; meet the need for quality affordable rental homes: utilize housing as a platform for improving quality of life; build inclusive and sustainable communities free from discrimination; and transform the way HUD does business. More information about HUD and its programs is available on the Internet at www.hud.gov and espanol.hud.gov.

UNITED STATES OF AMERICA
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
Washington, D.C.

| | |
|---|---|
| In the Matter of: | : |
| | : |
| Fidelity National Financial, Inc. | :    **RESPA Case No.:  R-09-3169** |
| | : |
| Respondent | : |
| | : |

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is made and entered into between the United

States Department of Housing and Urban Development (Department or HUD) and Fidelity

National Financial, Inc. (FNF), collectively referred to as "the Parties."

WHEREAS, FNF is a company, that through its subsidiaries, provides title insurance and

other real estate settlement services;

WHEREAS, HUD alleges that FNF failed to comply with the Real Estate Settlement

Procedures Act (RESPA).  Specifically, HUD alleges that FNF, through its subsidiaries, paid fees

for the referral of settlement service business in violation of RESPA.  Real estate brokerages

entered into Application Service Provider Agreements which provided the real estate brokerages

with access to TransactionPoint, a web-based platform that automates the real estate transaction

from listing to closing, and allows the real estate brokers to select real estate settlement providers

for a particular real estate transaction.  The real estate brokerages, in turn, entered into Sub-License

Agreements with subsidiaries of FNF to enable FNF's subsidiaries to be listed in TransactionPoint

as a provider of settlement services.  As part of the Sub-Licensee Agreement, HUD alleges that

FNF's subsidiaries paid the real estate brokerages a fee for each referral of real estate settlement

services.

1

WHEREAS, HUD has indicated its intent to issue a Notice of Administrative Action and pursue administrative sanctions under 2 C.F.R. Parts 180 and 2424 against FNF and its affiliates based on the aforementioned alleged violations of Section 8 of RESPA;

WHEREAS, FNF denies HUD's allegations and contends that its actions complied with RESPA. Specifically, FNF claims that before entering into said arrangements it obtained legal opinions from a law firm recognized for its expertise in RESPA matters informing FNF that these arrangements were lawful. Moreover, FNF insists that: (i) its payments were for use of the TransactionPoint platform, and not for the referral of settlement service orders, since it paid for use of the platform even when the transactions did not close; (ii) its payments for use of the TransactionPoint platform were for valuable goods and facilities actually furnished and services actually performed; and (iii) no charges to consumers for settlement services were affected.

WHEREAS, the Parties mutually desire to avoid further expense and administrative proceedings and to reach a satisfactory resolution of this matter; and

WHEREAS, this Agreement shall not constitute an admission of liability or fault on the part of the Parties.

NOW, THEREFORE, the Parties agree as follows:

1.      This Agreement shall become effective upon its execution by the Parties. The date upon which this Agreement becomes effective is referred to as the Effective Date throughout this Agreement.

2.      FNF has voluntarily ceased paying real estate brokers that place orders with FNF for title insurance and other goods or services using TransactionPoint and agrees to terminate any arrangement involving the payment of fees to any real estate brokers for use of the TransactionPoint platform.

2

3.  With respect to any future agreements that FNF may enter into or create with settlement service providers for payment of their services, FNF agrees to comply with RESPA requirements in structuring and operating these arrangements.

4.  FNF agrees to make a payment to HUD in the amount of Four Million Five Hundred Thousand Dollars ($4,500,000.00). The payment must be made by certified or cashier's check made payable to the U.S. Department of Housing and Urban Development.

5.  This payment must be sent to the attention of Dane M. Narode, Esq., HUD Office of General Counsel, at the following address:

*If by Regular Mail*
451 Seventh Street, SW
Room B-133 -Portals 200
Washington, DC 20410

*If by Courier or Express Mail*
1250 Maryland Ave, SW
Portals Building, Suite 200
Washington, DC 20024
(202) 708-2350 (phone)

6.  Upon faithful execution of this Agreement, HUD agrees to waive, release, remise, remit, compromise, and forever discharge any and all actual or potential administrative enforcement actions or remedies against FNF, its present or former predecessors, successors, parents, subsidiaries, affiliates, assigns, officers, directors, employees and agents (collectively, "Claims") in connection with the payment of fees to use TransactionPoint through the Effective Date of this Agreement.

7.  This Agreement does not waive any rights or responsibilities of HUD or any other Federal agency to investigate or initiate other actions pursuant to its lawful authority except as explicitly waived herein.

8.  This Agreement may not be altered, amended, or modified, except by writing duly executed by authorized representatives of all Parties.

9.     This Agreement constitutes the complete agreement between the Parties, and supersedes and replaces all prior negotiations and agreements, whether written or oral, regarding the resolution of this matter.

10.     Each of the parties warrants that it has been represented by, and has sought and obtained the advice of, independent legal counsel with regard to the nature, purpose, and effect of the Agreement.

11.     This Agreement is voluntary and entered into by FNF after due consideration of the terms contained herein.

12.     FNF will not seek the termination or reconsideration of this Agreement, directly or indirectly, after the Effective Date identified in Paragraph 1, supra, except in the event of a change in applicable law.

13.     Each signatory represents and warrants that he, she or it has the power, consent, and authorization to execute this Agreement.

14.     FNF hereby agrees to waive, release, and remit any and all claims, directly or indirectly, against HUD or HUD employees with respect to the negotiation of this Agreement.

15.     Each side shall bear its own costs and legal fees.

16.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

WHEREFORE, the Parties hereto have duly executed this Agreement.

FIDELITY NATIONAL FINANCIAL, INC.

Date: _July 5, 2011_

By: _____
(Signature)

Name: _PAUL I. PEREZ_
(Print or Type Name)

Title: _CHIEF COMPLIANCE OFFICER_
(Print or Type Title)

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

Date: _7/8/2011_

By: _____
(Signature)

Name: _Robert Ryan_
(Print or Type Name)

Title: _Acting FHA Commissioner_
(Print or Type Title)

Exhibit C

## REAL ESTATE BROKER SUBLICENSE FEE REPORT

**ALLIED PACIFIC FINANCIAL**

**ALTERA REAL ESTATE**
(REMAX VALLEY PROPERTIES)







A.AACRE REAL ESTATE GROUP INC

AQA REAL ESTATE GROUP INC

ASSIST TO SELL PASO ROBLES
(BUYERS AND SELLERS SMART CHOICE)

C01 ALL PROFESSIONAL

C31 ALLSTARS

MICHAEL JAMES REAL ESTATE
(C21 LANDMARK EXCELLENCE)

CENTURY 21 #1 NETWORK
(CENTURY 21 LIGHTHOUSE)

| Category | Description | Fee Type | Amount | Ref # | Date | Amount |
|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | DISC&RS - 1 ORDER89 @ \$18.9/96 | Sublicense Agreement Fee | 100.00 | 1000001424 | 2008 07.07 | 100.00 |
| Natural Hazard Disclosure | DISC&RS 16@\$25.00/0308 | Sublicense Agreement Fee | 250.00 | 1100003779 | 2008 04.14 | 250.00 |
| Natural Hazard Disclosure | DISC&RS 13 12X@\$25.00-JULY 08 | Sublicense Agreement Fee | 300.00 | 1000003674 | 2008 08.04 | 300.00 |
| Natural Hazard Disclosure | DISC&RS 12@ \$25/EA MAY 08 | Sublicense Agreement Fee | 300.00 | 1100005488 | 2008 07.21 | 300.00 |
| Natural Hazard Disclosure | DISC&RS 10@\$25.00 01/09 | Sublicense Agreement Fee | 250.00 | 1100008652 | 2009 03.17 | 250.00 |
| Natural Hazard Disclosure | DISC&RS 9@\$25.00 0708 | Sublicense Agreement Fee | 325.00 | 1000003726 | 2008 09.14 | 325.00 |
| Natural Hazard Disclosure | DISC&RS 15@\$25.00 0508 | Sublicense Agreement Fee | 375.00 | 1000002728 | 2008 09.17 | 375.00 |
| Natural Hazard Disclosure | DISC&RS 17@\$25.00 0305 | Sublicense Agreement Fee | 425.00 | 1000003221 | 2008 12.07 | 425.00 |
| Natural Hazard Disclosure | DISC&RS 17@\$25.00 1008 | Sublicense Agreement Fee | 425.00 | 1000003229 | 2009 02.18 | 425.00 |
| Natural Hazard Disclosure | DISC&RS 21@\$25.00 0309 | Sublicense Agreement Fee | 525.00 | 1000003386 | 2009 11.21 | 525.00 |
| Natural Hazard Disclosure | DISC&RS-3 ORD@\$25/EA - FEB 2010 | Sublicense Agreement Fee | 75.00 | 1000001184 | 2010 04.07 | 75.00 |
| Natural Hazard Disclosure | DISC&RS 4 @\$25/EA MAY 2009 | Sublicense Agreement Fee | 100.00 | 1000000679 | 2010 06.07 | 100.00 |
| Natural Hazard Disclosure | DISC&RS 4 ORDERS @ \$25/EA NOVEMBER 09 | Sublicense Agreement Fee | 100.00 | 1000000915 | 2009 09.30 | 100.00 |
| Natural Hazard Disclosure | DISC&RS 5 @ \$25.EA JAN 09 | Sublicense Agreement Fee | 125.00 | 1000000228 | 2008 09.33 | 125.00 |
| Natural Hazard Disclosure | DISC&RS 5 ORD@\$25/EA-MAR 2010 | Sublicense Agreement Fee | 125.00 | 1000000706 | 2010 05.10 | 125.00 |
| Natural Hazard Disclosure | DISC&RS 5 @\$25.00 0409 | Sublicense Agreement Fee | 125.00 | 1100001916 | 2009 05.19 | 125.00 |
| Natural Hazard Disclosure | DISC&RS 8@\$25.00 0409 | Sublicense Agreement Fee | 200.00 | 1100010218 | 2009 02.08 | 200.00 |
| Natural Hazard Disclosure | DISC&RS-1 ORDER @ \$25/EA-APRIL 2010 | Sublicense Agreement Fee | 25.00 | 1000000208 | 2010 05.11 | 25.00 |
| Natural Hazard Disclosure | DISC&RS-2 ORDERS @ \$25-EA-OCT. 09 | Sublicense Agreement Fee | 25.00 | 1000000981 | 2008 04.14 | 50.00 |
| Natural Hazard Disclosure | DISC&RS-2 @\$25 EA JUL09 | Sublicense Agreement Fee | 125.00 | 1000000609 | 2009 09.13 | 125.00 |
| Natural Hazard Disclosure | DISC&RS-3 ORD @ \$25/EA-DEC 09 | Sublicense Agreement Fee | 150.00 | 1000000551 | 2010 02.08 | 150.00 |
| Natural Hazard Disclosure | DISC/RS-7 ORD@ \$25/EA-JAN '10 | Sublicense Agreement Fee | 175.00 | 1100001176 | 2010 01.01 | 175.00 |
| Natural Hazard Disclosure | DISC&RS ORD@\$25/EA-SEP '09 | Sublicense Agreement Fee | 200.00 | 1100001176 | 2009 11.09 | 200.00 |
| Home Warranty | FNHW - 1 ORDER @ \$15 2008 | Sublicense Agreement Fee | 15.00 | 1000000617 | 2008 04.17 | 15.00 |
| Home Warranty | FNHW - 1 ORDER@\$15-AUG 09 | Sublicense Agreement Fee | 15.00 | 1000000885 | 2009 10.12 | 15.00 |
| Home Warranty | FNHW 1@\$15.00 0309 | Sublicense Agreement Fee | 15.00 | 1000002521 | 2009 10.12 | 15.00 |
| Home Warranty | FNHW 15@\$15.00 0309 | Sublicense Agreement Fee | 440.00 | 1000002065 | 2008 11.21 | 440.00 |
| Signed Warranty | FNHW 1@\$15.00 0705 | Sublicense Agreement Fee | 540.00 | 1000002288 | 2009 05.21 | 540.00 |
| Escrow / Title | RAT-1 @ \$75 APRIL 2008 | Sublicense Agreement Fee | 75.00 | 1000002023 | 2008 05.31 | 75.00 |

| Category | Description | Fee Type | Amount | Ref # | Date | Amount |
|---|---|---|---|---|---|---|
| Escrow / Title | CTT-2 ORDERS @ \$75 0708 | Sublicense Agreement Fee | 150.00 | 2180000318 | 2008 02.29 | 150.00 |
| Escrow / Title | CTT 1@\$75.00 0908 | Sublicense Agreement Fee | 75.00 | 2180000529 | 2008 11.21 | 525.00 |
| Escrow / Title | CTT 9@\$25.00 10/07 | Sublicense Agreement Fee | 225.00 | 2180000019 | 2007 07.01 | 225.00 |
| Escrow / Title | CTT 4@\$75 EA 04/08 | Sublicense Agreement Fee | 375.00 | 2180000147 | 2008 07.08 | 375.00 |
| Escrow / Title | CTT 6@\$75.00 0308 | Sublicense Agreement Fee | 450.00 | 2180000044 | 2008 07.08 | 450.00 |
| Escrow / Title | CTT 4@\$75.00 0708 | Sublicense Agreement Fee | 400.00 | 2180000496 | 2008 13.07 | 450.00 |
| Escrow / Title | CTT 4@\$75.00 0908 | Sublicense Agreement Fee | 400.00 | 2180000023 | 2009 02.11 | 300.00 |
| Natural Hazard Disclosure | CTT-1 ORDER @ \$75/EA-OCT 08 | Sublicense Agreement Fee | 25.00 | 2080002741 | 2009 02.04 | 25.00 |
| Natural Hazard Disclosure | DISCL-SOURCE-1 ORDER @ \$25/EA-DEC 08 | Sublicense Agreement Fee | 25.00 | 1110007088 | 2009 01.23 | 70.00 |
| Natural Hazard Disclosure | DISC&RS - 1 ORDER @ \$25/EA - NOV 09 | Sublicense Agreement Fee | 25.00 | 1000000915 | 2009 01.28 | 35.00 |
| Natural Hazard Disclosure | DISC&RS 1 @ \$25/EA 0308 | Sublicense Agreement Fee | 25.00 | 1110007387 | 2009 03.09 | 25.00 |
| Natural Hazard Disclosure | DISC&RS 1 ORD@\$25/EA-MAR 2010 | Sublicense Agreement Fee | 25.00 | 1000000884 | 2010 05.19 | 25.00 |
| Natural Hazard Disclosure | DISC&RS 1 ORD@\$25 EA/2009 | Sublicense Agreement Fee | 25.00 | 1000000273 | 2009 05.17 | 25.00 |
| Natural Hazard Disclosure | disco-1@\$25.00 0208 | Sublicense Agreement Fee | 125.00 | 1000002713 | 2008 06.17 | 225.00 |
| Natural Hazard Disclosure | DISC&RS 6@\$25.00 0908 | Sublicense Agreement Fee | 150.00 | 1100004219 | 2008 06.05 | 150.00 |
| Natural Hazard Disclosure | DISC&RS 6@\$25.00 0400 | Sublicense Agreement Fee | 150.00 | 1000004479 | 2009 10.17 | 150.00 |
| Natural Hazard Disclosure | DISC&RS 6@\$25.00 0109 | Sublicense Agreement Fee | 375.00 | 1000006964 | 2009 05.21 | 400.00 |
| Natural Hazard Disclosure | DISC&RS 7@\$25.00 1003 | Sublicense Agreement Fee | 50.00 | 1000003036 | 2010 02.18 | 50.00 |
| Natural Hazard Disclosure | DISC&RS 7@\$25.00 0908 | Sublicense Agreement Fee | 50.00 | 1000002491 | 2010 04.07 | 65.00 |
| Natural Hazard Disclosure | DISC&RS 7@\$25.00 0309 | Sublicense Agreement Fee | 75.00 | 1000003522 | 2008 10.17 | 75.00 |
| Natural Hazard Disclosure | disc-4 ORD@\$25/EA - FEB 2010 | Sublicense Agreement Fee | 75.00 | 1000000573 | 2009 01.10 | 225.00 |
| Natural Hazard Disclosure | DISC&RS-3 ORDERS @ 25 EA-APRIL 2200 | Sublicense Agreement Fee | 125.00 | 1000000853 | 2009 12.11 | 225.00 |
| Natural Hazard Disclosure | DISC&RS 3 ORD@\$25 EA/SEA 09/2009 | Sublicense Agreement Fee | 125.00 | 1000007841 | 2010 06.25 | 160.00 |
| Natural Hazard Disclosure | disc 4@\$25.00/EA SEPT 09 | Sublicense Agreement Fee | 125.00 | 1000000075 | 2009 11.09 | 150.00 |
| Natural Hazard Disclosure | DISC&RS 6@\$25.00 0408 | Sublicense Agreement Fee | 175.00 | 1000000681 | 2008 10.07 | 175.00 |
| Natural Hazard Disclosure | DISC&RS 1@\$25.00 1003 | Sublicense Agreement Fee | 200.00 | 1000000782 | 2010 05.19 | 200.00 |
| Natural Hazard Disclosure | DISC&RS-1 ORD@\$25/EA-JAN '10 | Sublicense Agreement Fee | 25.00 | 1000000679 | 2010 02.10 | 25.00 |
| Natural Hazard Disclosure | DISC&RS-2 ORDERS @ \$25/EA-OCT 09 | Sublicense Agreement Fee | 25.00 | 1000001185 | 2009 12.14 | 25.00 |
| Natural Hazard Disclosure | DISC&RS-1 ORDER @\$25 EA/NOV 09 | Sublicense Agreement Fee | 25.00 | 1100007946 | 2009 12.08 | 40.00 |
| Natural Hazard Disclosure | DISC&RS-3 ORD @ \$25/EA-DEC 09 | Sublicense Agreement Fee | 45.00 | 1000000977 | 2009 05.31 | 70.00 |
| Natural Hazard Disclosure | DISC&RS-3 ORDERS @ \$25/EA-JUNE 2010 | Sublicense Agreement Fee | 45.00 | 1000000079 | 2009 05.23 | 45.00 |
| Natural Hazard Disclosure | DISC&RS-3 ORD@\$25/EA-DEC 09 | Sublicense Agreement Fee | 75.00 | 1000000782 | 2010 02.10 | 75.00 |
| Home Warranty | FNHW - 2 ORDERS @ \$10 12/07 | Sublicense Agreement Fee | 20.00 | 1000002744 | 2008 12.24 | 30.00 |
| Home Warranty | FNHW - 3 ORD@\$10 - JAN 07 | Sublicense Agreement Fee | 30.00 | 1000000067 | 2008 05.17 | 30.00 |
| Home Warranty | FNHW 1 @ \$15 FEB A - NOV09 | Sublicense Agreement Fee | 45.00 | 1000000918 | 2009 01.23 | 70.00 |
| Home Warranty | FNHW 1 @ \$15 APRIL 2008 | Sublicense Agreement Fee | 15.00 | 1000000977 | 2008 05.31 | 15.00 |
| Home Warranty | FNHW-1 ORDER @ \$15 APRIL 2010 | Sublicense Agreement Fee | 15.00 | 1000000067 | 2009 05.28 | 67.00 |
| Home Warranty | FNHW 1@\$15.00 1008 | Sublicense Agreement Fee | 15.00 | 1000004023 | 2009 04.24 | 15.00 |
| Home Warranty | FNHW 1@\$15.00 0708 | Sublicense Agreement Fee | 15.00 | 1000002744 | 2008 09.18 | \$43.00 |
| Home Warranty | FNHW 18@\$15.00 0708 | Sublicense Agreement Fee | 30.00 | 1000004278 | 2008 10.05 | 190.00 |
| Home Warranty | FNHW 9@\$15.00 0908 | Sublicense Agreement Fee | 25.04 | 1000003297 | 2009 11.21 | 225.00 |

\$13,475

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Home Warranty | FNHW-1 ORDER @ $15EA-DEC 09 - | Sublicense Agreement Fee | $ | 15.00 | 1000006758 | 2010 02 10 | $ | 15.00 |
| | Home Warranty | FNHW-1 ORDER @$15 EA-FEB 2010 | Sublicense Agreement Fee | $ | 15.00 | 1000007641 | 2010 06 28 | $ | 40.00 |
| | Escrow / Title | FNT 1@75.00 09/07 | Sublicense Agreement Fee | $ | 75.00 | 1500000565 | 2008 09 17 | $ | 75.00 |
| | Escrow / Title | FNT 2@75.00 04/09 | Sublicense Agreement Fee | $ | 150.00 | 1500000856 | 2009 06 01 | $ | 150.00 |
| CENTURY 21 NORTHBAY ALLIANCE (CENTURY 21 CLASSIC PROPERTIES) | Escrow / Title | CTT - 1 ORDER @ $75EA - SEPT 09 | Sublicense Agreement Fee | $ | 75.00 | 2180000733 | 2009 02 24 | $ | 75.00 |
| | Escrow / Title | CTT 14@ $75EA APRIL 08 | Sublicense Agreement Fee | $ | 1,050.00 | 2180000456 | 2008 07 22 | $ | 1,275.00 |
| | Escrow / Title | CTT 2@75.00 05/08 | Sublicense Agreement Fee | $ | 150.00 | 2180000538 | 2008 09 17 | $ | 300.00 |
| | Escrow / Title | CTT 2@75.00 06/08 | Sublicense Agreement Fee | $ | 150.00 | 2180000538 | 2008 09 17 | $ | 300.00 |
| | Escrow / Title | CTT 3@ $75EA MARCH 08 | Sublicense Agreement Fee | $ | 225.00 | 2180000456 | 2008 07 22 | $ | 1,275.00 |
| | Home Warranty | FNHW 2 ORDERS @ 15 E MAY 2010 | Sublicense Agreement Fee | $ | 30.00 | 1000007714 | 2010 07 09 | $ | 30.00 |
| | Escrow / Title | FNT - 7 ORDERS@$75 - AUGUST 09 | Sublicense Agreement Fee | $ | 525.00 | 1510000318 | 2009 09 29 | $ | 525.00 |
| | Escrow / Title | FNT 1@75.00 04/09 | Sublicense Agreement Fee | $ | 75.00 | 1500000857 | 2009 06 01 | $ | 75.00 |
| | Escrow / Title | FNT 1@75.00 07/08 | Sublicense Agreement Fee | $ | 75.00 | 1500001025 | 2008 08 24 | $ | 75.00 |
| | Escrow / Title | FNT 2@75.00 05/08 | Sublicense Agreement Fee | $ | 150.00 | 1500000940 | 2008 07 17 | $ | 150.00 |
| | Escrow / Title | FNT 2@75.00 05/09 | Sublicense Agreement Fee | $ | 150.00 | 1500001282 | 2009 11 18 | $ | 150.00 |
| | Escrow / Title | FNT 23@75.00 06/09 | Sublicense Agreement Fee | $ | 1,725.00 | 1510000273 | 2009 07 21 | $ | 1,725.00 |
| | Escrow / Title | FNT-3 ORDERS @ $75EA-NOV 09 | Sublicense Agreement Fee | $ | 225.00 | 1510000366 | 2009 12 21 | $ | 225.00 |
| | Escrow / Title | FNT 3@75.00 01/09 | Sublicense Agreement Fee | $ | 225.00 | 1510000237 | 2009 04 13 | $ | 225.00 |
| | Escrow / Title | FNT 3@75.00 04/09 | Sublicense Agreement Fee | $ | 225.00 | 1510000256 | 2009 05 22 | $ | 225.00 |
| | Escrow / Title | FNT 4@50.00 02/09 1@25.00 02/09 | Sublicense Agreement Fee | $ | 225.00 | 1500000779 | 2009 04 08 | $ | 225.00 |
| | Escrow / Title | FNT 5 ORDERS @ $50EA AND 2 ORDERS @ $25EA 03-2009 | Sublicense Agreement Fee | $ | 300.00 | 1100010203 | 2009 05 06 | $ | 300.00 |
| | Escrow / Title | FNT 5@75.00 05/08 | Sublicense Agreement Fee | $ | 375.00 | 1510000256 | 2009 05 15 | $ | 375.00 |
| | Escrow / Title | FNT 8@75.00 07/08 | Sublicense Agreement Fee | $ | 500.00 | 1510000298 | 2009 08 24 | $ | 600.00 |
| | Escrow / Title | FNT ADDITIONAL PAYMENT FOR FEB 2009 | Sublicense Agreement Fee | $ | 25.00 | 1510000243 | 2009 05 13 | $ | 150.00 |
| | Escrow / Title | FNT ADDITIONAL PAYMENT FOR FEB 2009 | Sublicense Agreement Fee | $ | 25.00 | 1510000243 | 2009 05 13 | $ | 150.00 |
| | Escrow / Title | FNT ADDITIONAL PAYMENT FOR MARCH 2009 | Sublicense Agreement Fee | $ | 125.00 | 1510000243 | 2009 05 13 | $ | 150.00 |
| | Escrow / Title | FNT-2 ORDERS @ $75 EACH-DEC 08 | Sublicense Agreement Fee | $ | 150.00 | 1510000230 | 2009 03 27 | $ | 150.00 |
| | Escrow / Title | FNT - 1 ORDER @ $75 EACH-DEC 08 | Sublicense Agreement Fee | $ | 75.00 | 1500000765 | 2009 03 27 | $ | 75.00 |
| | Escrow / Title | FNT-4 ORDERS@$75 EA-OCT 09 | Sublicense Agreement Fee | $ | 300.00 | 1500001297 | 2009 11 25 | $ | 300.00 |
| | Escrow / Title | FNT-5 ORD@ $75EA & 1 @ $25EA-DEC 09 | Sublicense Agreement Fee | $ | 400.00 | 1510000394 | 2010 02 03 | $ | 400.00 |
| | Escrow / Title | FNT-5 ORDERS @ $75 EA-SEPT 09 | Sublicense Agreement Fee | $ | 375.00 | 1510000332 | 2009 10 26 | $ | 375.00 |
| | Escrow / Title | FNT 1-ORDER @ 75 E MAY 2010 | Sublicense Agreement Fee | $ | 75.00 | 1510000461 | 2010 07 09 | $ | 75.00 |
| | Escrow / Title | FNT -3 ORD@$75EA- MAR 2010 | Sublicense Agreement Fee | $ | 225.00 | 1510000435 | 2010 04 26 | $ | 225.00 |
| | Escrow / Title | FNT 4 ORDERS @ 75 EA JAN 10 | Sublicense Agreement Fee | $ | 300.00 | 1500001570 | 2010 02 26 | $ | 300.00 |
| | Escrow / Title | FNT -7 ORD@$75EA- FEB 2010 | Sublicense Agreement Fee | $ | 525.00 | 1510000428 | 2010 04 07 | $ | 525.00 |
| | Escrow / Title | FNT-1 ORDER @$75 EA-APRIL 2010 | Sublicense Agreement Fee | $ | 75.00 | 1510000445 | 2010 06 04 | $ | 75.00 |
| | Escrow / Title | FNT-2 ORDERS @$75 EA-JUNE 2010 | Sublicense Agreement Fee | $ | 150.00 | 1510000466 | 2010 08 19 | $ | 150.00 |
| | Escrow / Title | FNT-3ORD@$75EA-JULY 2010 | Sublicense Agreement Fee | $ | 225.00 | 1510000500 | 2010 08 31 | $ | 225.00 |
| CENTURY 21 GOLDES (CONSOLIDATED) | Escrow / Title | FNT - 1 ORDER @ $100 12/07 | Sublicense Agreement Fee | $ | 100.00 | 1510000086 | 2008 02 05 | $ | 100.00 |
| | Escrow / Title | FNT - 2 ORDERS @ $75,$25 11/07 | Sublicense Agreement Fee | $ | 100.00 | 1510000083 | 2008 02 19 | $ | 100.00 |
| CENTURY 21 GOLDEN HILLS | Home Warranty | FNHW - 1 ORDER @ $15 - 10/07 | Sublicense Agreement Fee | $ | 15.00 | 1000000759 | 2007 12 14 | $ | 15.00 |
| | Home Warranty | FNHW - 1 ORDER@$15 - AUG 09 | Sublicense Agreement Fee | $ | 15.00 | 1000005884 | 2009 10 12 | $ | 15.00 |
| | Home Warranty | FNHW - 2 ORDERS @ $15 1/08 | Sublicense Agreement Fee | $ | 30.00 | 1000001599 | 2008 03 24 | $ | 30.00 |
| | Home Warranty | FNHW - 2 ORDERS @ $15 12/07 | Sublicense Agreement Fee | $ | 30.00 | 1000001194 | 2008 02 04 | $ | 30.00 |
| | Home Warranty | FNHW - 4 ORDERS @ $15 2/08 | Sublicense Agreement Fee | $ | 60.00 | 1000001808 | 2008 04 17 | $ | 60.00 |
| | Home Warranty | FNHW - 4 ORDERS @$15EA - NOV 08 | Sublicense Agreement Fee | $ | 60.00 | 1100007027 | 2009 01 23 | $ | 60.00 |
| | Home Warranty | FNHW - 4 ORDERS @$15EA - NOV 08 | Sublicense Agreement Fee | $ | 60.00 | 1100007027 | 2009 01 23 | $ | 60.00 |
| | Home Warranty | FNHW - 4 ORDERS @$15EA - NOV 08 | Sublicense Agreement Fee | $ | 60.00 | 1100014803 | 2010 05 13 | $ | 60.00 |
| | Home Warranty | FNHW - 7 ORDERS @$15 11/07 | Sublicense Agreement Fee | $ | 105.00 | 1000001005 | 2008 01 09 | $ | 105.00 |
| | Home Warranty | FNHW 1 ORDER @ 15 EA JUNE 2010 | Sublicense Agreement Fee | $ | 15.00 | 1000007833 | 2010 08 19 | $ | 15.00 |
| | Home Warranty | FNHW-1 ORDERS@$15 EA SEPT 09 | Sublicense Agreement Fee | $ | 15.00 | 1000006111 | 2009 11 02 | $ | 15.00 |
| | Home Warranty | FNHW 2@15.00 02/09 | Sublicense Agreement Fee | $ | 30.00 | 1000004504 | 2009 04 24 | $ | 30.00 |
| | Home Warranty | FNHW 2@15.00 08/08 | Sublicense Agreement Fee | $ | 30.00 | 1000002714 | 2008 09 17 | $ | 30.00 |
| | Home Warranty | FNHW 3 ORDERS@$15 JULY 09 | Sublicense Agreement Fee | $ | 45.00 | 1000005572 | 2009 09 04 | $ | 45.00 |
| | Home Warranty | FNHW 3@15.00 04/09 | Sublicense Agreement Fee | $ | 45.00 | 1000004740 | 2009 06 05 | $ | 45.00 |
| | Home Warranty | FNHW 3@15.00 06/09 | Sublicense Agreement Fee | $ | 45.00 | 1000005268 | 2009 07 29 | $ | 45.00 |
| | Home Warranty | FNHW 4@15.00 08/08 | Sublicense Agreement Fee | $ | 60.00 | 1000003023 | 2008 10 27 | $ | 60.00 |
| | Home Warranty | FNHW 5 ORDERS @ $15EA 03/2009 | Sublicense Agreement Fee | $ | 75.00 | 1100010223 | 2009 05 06 | $ | 75.00 |
| | Home Warranty | FNHW 5@ $15EA MAY 08 | Sublicense Agreement Fee | $ | 75.00 | 1000002420 | 2008 07 21 | $ | 75.00 |
| | Home Warranty | FNHW 5@15.00 07/08 | Sublicense Agreement Fee | $ | 75.00 | 1000002745 | 2008 09 18 | $ | 75.00 |
| | Home Warranty | FNHW 5@15.00 09/08 | Sublicense Agreement Fee | $ | 75.00 | 1000003268 | 2008 11 21 | $ | 75.00 |
| | Home Warranty | FNHW- 6 @ $15 EACH-12/08 | Sublicense Agreement Fee | $ | 90.00 | 1000004258 | 2009 03 25 | $ | 90.00 |
| | Home Warranty | FNHW 6@15.00 01/09 | Sublicense Agreement Fee | $ | 90.00 | 1000004504 | 2009 04 24 | $ | 30.00 |
| | Home Warranty | FNHW 9@15.00 10/08 | Sublicense Agreement Fee | $ | 135.00 | 1000003462 | 2008 12 18 | $ | 135.00 |
| | Home Warranty | FNHW DUPLICATE PAYMENT 12/08 | Sublicense Agreement Fee | $ | (30.00) | 1000004504 | 2009 04 24 | $ | 30.00 |
| | Home Warranty | FNHW DUPLICATE PAYMENT 12/08 | Sublicense Agreement Fee | $ | (60.00) | 1000004504 | 2009 04 24 | $ | 30.00 |

146

91

$13,270

230

**(RE/MAX ASSOCIATES / INWOOD ENTERPRISES)**

**COLDWELL BANKER ARROW GROUP (AMERICA WEST)**

Escrow 19   Hanswiger   Disclosure //

| Company | Home Warranty | Order | | | | | | Sublicense Agreement Fee | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**REALTY WORLD MILLENNIUM (CHELLANG, INC)**

**ORCAREA ADVISERS**

**CLICK HOME REALTY**

**CLOVIS 1ST REAL ESTATE SVCS**

**COASTAL PROPERTIES**

**PRUDENTIAL NORCAL REALTY (COLDWELL BANKER DIEZ AND LBS REAL ESTATE) / DIEZ AND LBS REAL ESTATE**

$4430

| Category | Description | | Amount | | Date | Reference | Amount |
|---|---|---|---|---|---|---|---|
| Home Warranty | FNHW 1 ORDER @ $325A 12/31/09 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 15.00 |
| Home Warranty | FNHW 1 ORDER @ $325A MAR-DEC 2010 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 15.00 |
| Home Warranty | FNHW 1 ORDER @ $15 10/09 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 75.00 |
| Home Warranty | FNHW 1 ORDER @ $15 JULY 09 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 15.00 |
| Home Warranty | FNHW 1 ORDER@$15 JAN-FEB 2010 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 15.00 |
| Home Warranty | FNHW 1@$15.00 04/09 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 15.00 |
| Home Warranty | FNHW 1@$15.00 02/09 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 15.00 |
| Home Warranty | FNHW 1@$15.00 09/08 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 442.50 |
| Home Warranty | FNHW 1@$15.00 01/09 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 15.00 |
| Home Warranty | FNHW 3@$15.00 09/08 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 300.00 |
| Home Warranty | FNHW 2@$15.00 12/08 | Sublicense Agreement Fee | $ | 30.00 | | | $ | 30.00 |
| Home Warranty | FNHW 3@$15.00 03/09 | Sublicense Agreement Fee | $ | 30.00 | | | $ | 45.00 |
| Home Warranty | FNHW 3 @ $15.00 MAY 08 | Sublicense Agreement Fee | $ | 45.00 | | | $ | 45.00 |
| Home Warranty | FNHW 3@$15.00 04/09 | Sublicense Agreement Fee | $ | 45.00 | | | $ | 900.00 |
| Home Warranty | FNHW 4@$15.00 09/08 | Sublicense Agreement Fee | $ | 60.00 | | | $ | 900.00 |
| Home Warranty | FNHW 5 @ $15 APRIL 2008 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 135.00 |
| Home Warranty | FNHW 5 @ $15 APRIL 2009 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Home Warranty | FNHW 1 ORDER @$15 E-APRIL 2010 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 15.00 |
| Home Warranty | FNHW 4 ORDER @$15 5A-NOV 08 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 165.00 |
| Escrow / Title | RNT - 1 ORDER @ $75 1/09 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 15.00 |
| Escrow / Title | RNT - 1 ORDER @ $75 1/07 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Escrow / Title | RNT - 2 ORDERS @ $75 1/07 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 225.00 |
| Escrow / Title | RNT - 2 ORDERS @ $75 1/07 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 225.00 |
| Escrow / Title | RNT - 2 ORDERS @ $75 APR08 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 150.00 |
| Escrow / Title | RNT 1@$75.00 04/09 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Escrow / Title | RNT 1@$75.00 05/08 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 375.00 |
| Escrow / Title | RNT 1@$75.00 04/04 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Escrow / Title | RNT 1@$75.00 06/08 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Escrow / Title | RNT 4@$75.00 2/09 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Escrow / Title | RNT DUPLICATE PAYMENT 04/08 ORDER | Sublicense Agreement Fee | $ | 100.00 | | | $ | 300.00 |
| Escrow / Title | RNT-1 ORDER @ $75 EACH FEB 08 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |

**COLDWELL BANKER THE VINTAGE GROUP**

| Escrow / Title | GTT - 10 ORDERS @ $75 1/0/07 | Sublicense Agreement Fee | $ | 750.00 | | | $ | 900.00 |
| Escrow / Title | GTT - 2 ORDERS @ $75 11/07 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 150.00 |
| Escrow / Title | GTT 2@$75.00 10/07 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 150.00 |
| Natural Hazard Disclosure | DSCRSS - 16 ORDERS @ $15 - 11/07 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 415.00 |
| Natural Hazard Disclosure | DSCRSS - 2 ORDERS @ $15 11/07 | Sublicense Agreement Fee | $ | 50.00 | | | $ | 25.00 |
| Natural Hazard Disclosure | DSCRSS - 4 ORDERS @ $33 11/07 | Sublicense Agreement Fee | $ | 225.00 | | | $ | 240.00 |
| Home Warranty | FNHW - 1 ORDER @ $15 - 10/07 | Sublicense Agreement Fee | $ | 15.00 | | | $ | 415.00 |
| Home Warranty | FNHW - 2 ORDERS @ $15 11/07 | Sublicense Agreement Fee | $ | 30.00 | | | $ | 240.00 |

**COLON REAL ESTATE ASSOCIATES (WINDERMERE SIGNATURE PROPERTIES)**

| Escrow / Title | GTT - 2 ORDERS @ $75 1/08 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 100.00 |
| Escrow / Title | GTT - 2 ORDERS @ $75 11/07 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 150.00 |
| Escrow / Title | GTT 1@ $75 5A MAR 08 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Escrow / Title | GTT 1@$75.00 09/08 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Escrow / Title | GTT 1@$75.00 08/08 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 150.00 |
| Escrow / Title | GTT 1@$75.00 11/08 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Escrow / Title | GTT 2@$33.00 05/09 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 150.00 |
| Natural Hazard Disclosure | DSCRSS - 1 ORDER @ $25 APR | Sublicense Agreement Fee | $ | 150.00 | | | $ | 150.00 |
| Natural Hazard Disclosure | DSCRSS - 2 ORDERS @ $25 5/08 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 25.00 |
| Natural Hazard Disclosure | DSCRSS - 2 ORDERS @ $25 11/07 | Sublicense Agreement Fee | $ | 50.00 | | | $ | 25.00 |
| Natural Hazard Disclosure | DSCRSS - 3 ORDERS @ $25A-DEC 06 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 152.00 |
| Natural Hazard Disclosure | DSCRSS - 3 ORDERS @ $25A NOV 07 | Sublicense Agreement Fee | $ | 75.00 | | | $ | 75.00 |
| Natural Hazard Disclosure | DSCRSS - 5 ORDERS @ $25-NOV 07 | Sublicense Agreement Fee | $ | 125.00 | | | $ | 140.00 |
| Natural Hazard Disclosure | DSCRSS - 6 ORDERS @ $25 1/08 | Sublicense Agreement Fee | $ | 150.00 | | | $ | 75.00 |
| Natural Hazard Disclosure | DSCRSS 1 ORD@$25A-MAR 2010 | Sublicense Agreement Fee | $ | 25.00 | | | $ | 25.00 |
| Natural Hazard Disclosure | DSCRSS 1 ORDER @$25A 2010 | Sublicense Agreement Fee | $ | 25.00 | | | $ | 150.00 |
| Natural Hazard Disclosure | DSCRSS 1@$25A JULY 08 | Sublicense Agreement Fee | $ | 25.00 | | | $ | 25.00 |
| Natural Hazard Disclosure | DSCRSS 1@$25A MAY 08 | Sublicense Agreement Fee | $ | 25.00 | | | $ | 25.00 |
| Natural Hazard Disclosure | DSCRSS 1@$33.00 04/09 | Sublicense Agreement Fee | $ | 25.00 | | | $ | 25.00 |
| Natural Hazard Disclosure | DSCRSS 1@$25.00 05/08 | Sublicense Agreement Fee | $ | 25.00 | | | $ | 25.00 |

GROUPE REAL ESTATE
(COLDWELL BANKER GRUPE)

QRS COUNTRY AIR PROPERTIES

*Handwritten annotations (top margin):* Escrow 556   Warranty 55   HSN 8   CSS/Warranty 556

| Type | Description | Fee | Amount | Date | Reference | Amount |
|---|---|---|---|---|---|---|
| Home Warranty | RNHW-4 ORDERS @ $15 2008 | Subescrow Agreement Fee | $ 60.00 | 2008 04-17 | 1000001213 | $ 60.00 |
| Home Warranty | RNHW-1 ORDERS@$15 JULY 09 | Subescrow Agreement Fee | $ 15.00 | 2008 02 04 | 1000002577 | $ 15.00 |
| Home Warranty | RNHW-1 ORDERS@$15 @ $15 SEPT 09 | Subescrow Agreement Fee | $ 15.00 | 2008 11 02 | 1000002613 | $ 15.00 |
| Home Warranty | RNHW-1 @15.00 09/09 | Subescrow Agreement Fee | $ 15.00 | 2008 07 09 | 1000002644 | $ 15.00 |
| Home Warranty | RNHW-1 @ $15.00 07/09 | Subescrow Agreement Fee | $ 15.00 | 2010 05 19 | 1000002744 | $ 15.00 |
| Home Warranty | RNHW-2 ORDERS @ $15 EA MARCH 2010 | Subescrow Agreement Fee | $ 30.00 | 2008 12 16 | 1000002794 | $ 30.00 |
| Home Warranty | RNHW-2 ORDERS @ $15 10/09 | Subescrow Agreement Fee | $ 30.00 | 2008 12 04 | 1000002835 | $ 30.00 |
| Home Warranty | RNHW-2 ORDERS @ $15 EA JAN '10 | Subescrow Agreement Fee | $ 30.00 | 2010 05 19 | 1000002960 | $ 30.00 |
| Home Warranty | RNHW-2 @15.00 01/09 | Subescrow Agreement Fee | $ 30.00 | 2008 04 24 | 9000002629 | $ 30.00 |
| Home Warranty | RNHW-2 @15.00 4/09 | Subescrow Agreement Fee | $ 45.00 | 2008 10 27 | 9000002629 | $ 45.00 |
| Home Warranty | RNHW-3 ORDERS @ $15 EA FEB 2010 | Subescrow Agreement Fee | $ 45.00 | 2010 04 07 | 9000007020 | $ 45.00 |
| Home Warranty | RNHW-3 ORDERS @ $15 EA 03/2009 | Subescrow Agreement Fee | $ 45.00 | 2008 04 24 | 9000007719 | $ 45.00 |
| Home Warranty | RNHW-3 ORDERS @ $15 EA MAY 2010 | Subescrow Agreement Fee | $ 15.00 | 2008 04 24 | 9000006506 | $ 15.00 |
| Home Warranty | RNHW @15.00 10/09 | Subescrow Agreement Fee | $ 45.00 | 2009 06 04 | 1000002743 | $ 45.00 |
| Home Warranty | RNHW @15.00 04/09 | Subescrow Agreement Fee | $ 45.00 | 2008 02 20 | 9000002529 | $ 45.00 |
| Home Warranty | RNHW @15.00 05/09 | Subescrow Agreement Fee | $ 45.00 | 2008 03 25 | 1000002628 | $ 45.00 |
| Home Warranty | RNHW @15.00 10/09 | Subescrow Agreement Fee | $ 60.00 | 2008 07 09 | 9000002630 | $ 60.00 |
| Home Warranty | RNHW-4B @ $15 EA 05/2009 | Subescrow Agreement Fee | $ 60.00 | 2008 03 25 | 1000002814 | $ 60.00 |
| Home Warranty | RNHW @ $15.00 10/09 | Subescrow Agreement Fee | $ 75.00 | 2008 07 21 | 1000002628 | $ 75.00 |
| Home Warranty | RNHW-5B @ $15/EA MAY 09 | Subescrow Agreement Fee | $ 75.00 | 2008 04 24 | 1000002635 | $ 75.00 |
| Home Warranty | RNHW DUPLICATE PAYMENT 12/08 | Subescrow Agreement Fee | $ (45.00) | 2008 04 24 | 1000002656 | $ (45.00) |
| Home Warranty | RNHW-1 ORDER @ $15/EA DEC 08 | Subescrow Agreement Fee | $ 15.00 | 2008 09 09 | 9000002536 | $ 15.00 |
| Home Warranty | RNHW-6 @ORD@$15/EA JAN 2010 | Subescrow Agreement Fee | $ 45.00 | 2010 08 33 | 1000002630 | $ 45.00 |
| Home Warranty | RNHW-6 ORDERS @$15 EA APRIL 2010 | Subescrow Agreement Fee | $ 60.00 | 2009 02 24 | 1000002548 | $ 60.00 |
| Home Warranty | RNHW-8 ORDERS @$15 EA JAN 09 | Subescrow Agreement Fee | $ 60.00 | 2010 01 26 | 1000002519 | $ 60.00 |
| Escrow / Title | RNT -10 ORDERS @ $75 12/07 | Subescrow Agreement Fee | $ 750.00 | 2009 02 20 | 1800000369 | $ 750.00 |
| Escrow / Title | RNT -11 ORDERS @ $75 1/08 | Subescrow Agreement Fee | $ 825.00 | 2008 02 29 | 1810000099 | $ 825.00 |
| Escrow / Title | RNT -11 ORDERS @ $75 1/08 | Subescrow Agreement Fee | $ 825.00 | 2008 03 25 | 1810000107 | $ 825.00 |
| Escrow / Title | RNT -11 ORDERS @ $75 2/08 | Subescrow Agreement Fee | $ 900.00 | 2008 03 25 | 1810000098 | $ 900.00 |
| Escrow / Title | RNT -13 ORDERS @ $75 11/07 | Subescrow Agreement Fee | $ 975.00 | 2008 01 04 | 1810000064 | $ 975.00 |
| Escrow / Title | RNT -7 ORDERS @ $75 3/08 | Subescrow Agreement Fee | $ 525.00 | 2008 05 07 | 1810000121 | $ 525.00 |
| Escrow / Title | RNT - $375.00 12/08 | Subescrow Agreement Fee | $ 375.00 | 2008 06 04 | 1810000100 | $ 375.00 |
| Escrow / Title | RNT - $900.00 01/08 | Subescrow Agreement Fee | $ 900.00 | 2008 06 29 | 1810000225 | $ 900.00 |
| Escrow / Title | RNT -S (875.00 06/08 - AUGUST 08 | Subescrow Agreement Fee | $ 750.00 | 2008 06 16 | 1810000927 | $ 750.00 |
| Escrow / Title | RNT -$600.00 08/08 | Subescrow Agreement Fee | $ 750.00 | 2008 06 04 | 1810000095 | $ 750.00 |
| Escrow / Title | RNT 10 $75.00 09/08 | Subescrow Agreement Fee | $ 700.00 | 2008 01 04 | 1810000243 | $ 700.00 |
| Escrow / Title | RNT 11 $75.00 07/08 | Subescrow Agreement Fee | $ 825.00 | 2008 07 31 | 1810000274 | $ 825.00 |
| Escrow / Title | RNT 12 ORD@$75/EA - FEB 2010 | Subescrow Agreement Fee | $ 900.00 | 2010 04 07 | 1810000436 | $ 900.00 |
| Escrow / Title | RNT 12 ORDERS @ 75 EA MAY 2010 | Subescrow Agreement Fee | $ 900.00 | 2010 07 09 | 1810000362 | $ 900.00 |
| Escrow / Title | RNT 12$75.00 08/08 | Subescrow Agreement Fee | $ 900.00 | 2010 02 28 | 1810000016 | $ 900.00 |
| Escrow / Title | RNT 13 $75.00 10/08 | Subescrow Agreement Fee | $ 600.00 | 2008 06 04 | 1810000147 | $ 600.00 |
| Escrow / Title | RNT 14$ $75/EA APR08 | Subescrow Agreement Fee | $ 900.00 | 2008 06 30 | 1810000028 | $ 900.00 |
| Escrow / Title | RNT 14B $75/EA APRIL 08 | Subescrow Agreement Fee | $ 975.00 | 2008 06 30 | 1810000147 | $ 975.00 |
| Escrow / Title | RNT15 ORDER @ $75/EA 05/2010 | Subescrow Agreement Fee | $ 1,050.00 | 2008 08 30 | 1810000033 | $ 1,725.00 |
| Escrow / Title | RNT $600.00 10/08 | Subescrow Agreement Fee | $ 1,500.00 | 2009 11 04 | 1810003011 | $ 1,500.00 |
| Escrow / Title | RNT 17 ORD@$75/EA-DEC 08 | Subescrow Agreement Fee | $ 1,575.00 | 2010 03 18 | 1810000037 | $ 1,575.00 |
| Escrow / Title | RNT16$75.00 12/08 | Subescrow Agreement Fee | $ 825.00 | 2008 05 08 | 1810003242 | $ 1,020.00 |
| Escrow / Title | RNT15 ORDER @ $75/EA-05-2009 | Subescrow Agreement Fee | $ 375.00 | 2008 09 22 | 1810003186 | $ 375.00 |
| Escrow / Title | RNT $625.00 09/08 | Subescrow Agreement Fee | $ 525.00 | 2010 04 21 | 1810000221 | $ 525.00 |
| Escrow / Title | RNT16 $75.00 11/08 | Subescrow Agreement Fee | $ 600.00 | 2010 04 26 | 1810000436 | $ 600.00 |
| Escrow / Title | RNT 16 ORD@$75/EA-MAR 2010 | Subescrow Agreement Fee | $ 600.00 | 2010 02 18 | 1810003564 | $ 600.00 |
| Escrow / Title | RNT 16 ORDER @ 75 EA-JAN 10 | Subescrow Agreement Fee | $ 675.00 | 2008 05 30 | 1810000147 | $ 1,050.00 |
| Escrow / Title | RNT 6$75.00 07/08 | Subescrow Agreement Fee | $ 675.00 | 2009 10 29 | 1810000147 | $ 1,725.00 |
| Escrow / Title | RNT 8 ORDERS @ $75/EA APR08 | Subescrow Agreement Fee | $ 750.00 | 2008 10 29 | 1810000333 | $ 750.00 |
| Escrow / Title | RNT-ca ORDERS@$75/EA-OCT 09 | Subescrow Agreement Fee | $ 750.00 | 2008 11 17 | 1810000147 | $ 750.00 |
| Escrow / Title | RNT 00 ORDER@$75/EA AUG'10 | Subescrow Agreement Fee | $ 700.00 | 2008 09 31 | 1810000333 | $ 750.00 |
| Escrow / Title | RNT-01 ORD@$75/EA-DEC 08 | Subescrow Agreement Fee | $ 825.00 | 2010 02 03 | 1810003047 | $ 825.00 |
| Escrow / Title | RNT-ca ORDERS @$75 EA-APRIL 2010 | Subescrow Agreement Fee | $ 1,200.00 | 2010 06 04 | 1810003047 | $ 1,200.00 |
| Escrow / Title | RNT-8 ORDERS @ $75/EA-NOV 08 | Subescrow Agreement Fee | $ 375.00 | 2008 06 21 | 1810000334 | $ 375.00 |
| Escrow / Title | RNT-9 ORDERS @$75 EA-JUNE 2010 | Subescrow Agreement Fee | $ 450.00 | 2010 02 07 | 1810000489 | $ 450.00 |
| Escrow / Title | RNT-3 ORDERS @ $75/EA-OCT 08 | Subescrow Agreement Fee | $ 600.00 | 2009 02 11 | 1810000217 | $ 600.00 |

| CUSTOMER SERVICE REALTY | | | | | | $ 375.00 |
| | CTT-A(X) @ $75/EA-JULY 2010 | Subliene Agreement Fee | $ 375.00 | 2010 05 31 | 2160001633 | $ 375.00 |
| | DBCBBB-3 ORDERS @$25 EA JUNE 2010 | Subliene Agreement Fee | $ 125.00 | 2010 06 31 | 1000007038 | $ 125.00 |

| DBI HOWARD AND COMPANY | | | | | | $ 25.00 |
| | DBCBBB4 ORDER @$25 EA-JUNE 2010 | Subliene Agreement Fee | $ 25.00 | 2010 09 19 | 1000007796 | $ 25.00 |
| | DBCBBB 3 ORDERS @$25 EA-MAY 2010 | Subliene Agreement Fee | $ 65.00 | 2010 07 13 | 1000007702 | $ 65.00 |
| Home Warranty | PKNH-1 ORD@$15 EA-JUN 2010 | Subliene Agreement Fee | $ 15.00 | 2010 06 23 | 1000007797 | $ 15.00 |
| Home Warranty | PKNH-1 ORDER @$15 EA-MAY 2010 | Subliene Agreement Fee | $ 65.00 | 2010 07 32 | 1000007732 | $ 65.00 |
| Escrow / Title | PKT-C@$75/EA-JULY 2010 | Subliene Agreement Fee | $ 150.00 | 2010 09 31 | 1810003002 | $ 150.00 |

*Handwritten (bottom left):* 446

**DECKER BULLOCK SOTHEBY'S INTERNATIONAL REALTY**

| Name | Memo | Category | Amount | Check No. | Date | Amount |
|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | DECKER 1 @ \$35EA MAY 2009 | Subllcense Agreement Fee | \$ | 1000006465 | 2009 05 20 | \$ 35.00 |
| Natural Hazard Disclosure | DECKER-1 @ GDBSEA FEB 2010 | Subllcense Agreement Fee | \$ | 1000007789 | 2010 02 04 | \$ 35.00 |
| Natural Hazard Disclosure | DECKER-2 @ \$5 x APRIL 2010 | Subllcense Agreement Fee | \$ | 1000008324 | 2010 05 04 | \$ 35.00 |
| Natural Hazard Disclosure | DECKER-3 @ \$35EA JUNE 09 | Subllcense Agreement Fee | \$ | 1000006274 | 2009 07 29 | \$ 78.00 |
| Natural Hazard Disclosure | DECKER-3-ORD@\$35EA-MAR 2010 | Subllcense Agreement Fee | \$ | 1000008024 | 2010 03 10 | \$ 75.00 |
| Natural Hazard Disclosure | DECKER-4 ORDERS@\$35 JULY 09 | Subllcense Agreement Fee | \$ | 1000006620 | 2009 08 24 | \$ 140.00 |
| Natural Hazard Disclosure | DECKER-5 ORD@\$35 AUG 09 | Subllcense Agreement Fee | \$ | 1000006589 | 2009 09 04 | \$ 132.00 |
| Natural Hazard Disclosure | DECKER-5 ORDER@ \$25 EA OCT. 09 | Subllcense Agreement Fee | \$ | 1000006697 | 2009 12 14 | \$ 25.00 |
| Natural Hazard Disclosure | DECKER-6 @ \$25EA-AUG 09 | Subllcense Agreement Fee | \$ | 1000006744 | 2010 10 02 | \$ 25.00 |
| Natural Hazard Disclosure | DECKER-6 WNTR ORDERS@\$35 JLY 09 | Subllcense Agreement Fee | \$ | 1000006778 | 2009 11 09 | \$ 50.00 |
| Home Warranty | RHEM 1 ORDER @ \$35EA MARCH 2010 | Subllcense Agreement Fee | \$ | 1000008330 | 2010 05 19 | \$ 14.00 |
| Home Warranty | RHEM 4@\$100 0309 | Subllcense Agreement Fee | \$ | 1000006550 | 2009 07 08 | \$ 18.00 |
| Home Warranty | RHEM 2 ORDERS@ \$15 MAY 2010 | Subllcense Agreement Fee | \$ | 1000007720 | 2010 07 23 | \$ 15.00 |
| Home Warranty | RHEM X ORDERS@ \$15 JUNE 2010 | Subllcense Agreement Fee | \$ | 1000007837 | 2010 09 14 | \$ 45.00 |
| Home Warranty | RHEM 1 ORDER @\$15EA-JDEO 09 | Subllcense Agreement Fee | \$ | 1000006698 | 2010 02 05 | \$ 15.00 |

**DIANE MARIE ESCOBAR**
**(REAL ESTATE & ESCROW COORDINATOR)**

| Name | Memo | Category | Amount | Check No. | Date | Amount |
|---|---|---|---|---|---|---|
| Escrow / Title | CIT - 1 ORDER @ \$75EA - DEC 09 | Subllcense Agreement Fee | \$ | 218000732 | 2009 01 29 | \$ 150.00 |
| Escrow / Title | CIT - 1 ORDER@\$75 - AUGUST 09 | Subllcense Agreement Fee | \$ | 218001091 | 2009 09 24 | \$ 75.00 |
| Escrow / Title | CIT - 2 ORDERS@\$75 - AUGUST 09 | Subllcense Agreement Fee | \$ | 218000768 | 2009 09 22 | \$ 150.00 |
| Escrow / Title | CIT - 1 @ \$75 05/09 | Subllcense Agreement Fee | \$ | 218000576 | 2009 06 24 | \$ 225.00 |
| Escrow / Title | CIT-1 @ \$75EA AUG 2009 | Subllcense Agreement Fee | \$ | 218000979 | 2009 10 23 | \$ 75.00 |
| Escrow / Title | CIT-1 @ \$75EA MAY 2009 | Subllcense Agreement Fee | \$ | 218000563 | 2009 12 18 | \$ 225.00 |
| Escrow / Title | CIT-1 ORD @\$75 EA-APRIL 2010 | Subllcense Agreement Fee | \$ | 218001047 | 2010 04 09 | \$ 75.00 |
| Escrow / Title | CIT 1 ORDER @ \$75 EA MAY 09 | Subllcense Agreement Fee | \$ | 218001718 | 2010 07 04 | \$ 75.00 |
| Escrow / Title | CIT 1 ORDER @ \$75A - 12/07 | Subllcense Agreement Fee | \$ | 218000006 | 2009 02 01 | \$ 75.00 |
| Escrow / Title | CIT 1 \$75.00 09/09 | Subllcense Agreement Fee | \$ | 218000008 | 2009 05 11 | \$ 625.00 |
| Escrow / Title | CIT-10 ORDERS @ \$75EA MAY 09 | Subllcense Agreement Fee | \$ | 218000584 | 2009 06 12 | \$ 75.00 |
| Escrow / Title | CIT-4 @ \$75 EA MAY 2009 | Subllcense Agreement Fee | \$ | 218000654 | 2009 06 01 | \$ 225.00 |
| Escrow / Title | CIT @\$100 07/09 | Subllcense Agreement Fee | \$ | 218000728 | 2008 06 24 | \$ 75.00 |
| Escrow / Title | CIT-10 ORDERS @ \$75 EA MAY 2009 | Subllcense Agreement Fee | \$ | 218000559 | 2009 06 03 | \$ 75.00 |
| Escrow / Title | CIT -10 ORDERS @ \$75 EA SEPT 09 | Subllcense Agreement Fee | \$ | 218000746 | 2008 08 24 | \$ 750.00 |
| Escrow / Title | CIT -15 ORDER@\$75 EA -MAR 2010 | Subllcense Agreement Fee | \$ | 218001617 | 2009 10 22 | \$ 1,125.00 |
| Escrow / Title | CIT -16 ORDER@\$75 EA @ \$5 MAY 2009 | Subllcense Agreement Fee | \$ | 218000719 | 2010 04 27 | \$ 1,200.00 |
| Escrow / Title | CIT @ \$75 APRIL 2009 | Subllcense Agreement Fee | \$ | 218000439 | 2009 05 27 | \$ 450.00 |
| Escrow / Title | CIT 2 @ \$75 MAY 2009 | Subllcense Agreement Fee | \$ | 218000831 | 2009 06 27 | \$ 100.00 |
| Escrow / Title | CIT 2 @ \$75 EA JUNE 2009 | Subllcense Agreement Fee | \$ | 218000852 | 2009 08 05 | \$ 150.00 |
| Escrow / Title | CIT 2 @ \$75 NOV 2009 | Subllcense Agreement Fee | \$ | 218000620 | 2009 12 23 | \$ 225.00 |
| Escrow / Title | CIT 2 ORDERS @ \$75 E JULY2010 | Subllcense Agreement Fee | \$ | 218001604 | 2010 08 31 | \$ 150.00 |
| Escrow / Title | CIT 2 ORDERS @ 75 EA MARCH 2010 | Subllcense Agreement Fee | \$ | 218000932 | 2010 04 09 | \$ 150.00 |
| Escrow / Title | CIT 2 ORDERS @ \$75 EA MARCH 2010 | Subllcense Agreement Fee | \$ | 218000956 | 2009 06 24 | \$ 150.00 |
| Escrow / Title | CIT @\$75.00 07/09 | Subllcense Agreement Fee | \$ | 218000111 | 2009 10 22 | \$ 2,265.00 |
| Escrow / Title | CIT 2 @ \$75EA OCT 2007 | Subllcense Agreement Fee | \$ | 218000387 | 2008 08 24 | \$ 275.00 |
| Escrow / Title | CIT 2 @ \$75EA OCT 2009 | Subllcense Agreement Fee | \$ | 218000658 | 2008 05 08 | \$ 125.00 |
| Escrow / Title | CIT @\$75 2009 | Subllcense Agreement Fee | \$ | 218000631 | 2009 06 01 | \$ 225.00 |
| Escrow / Title | CIT @\$75.00 07/09 | Subllcense Agreement Fee | \$ | 218000367 | 2008 08 24 | \$ 225.00 |
| Escrow / Title | CIT 5 ORDERS @ \$75 EA MAY 2010 | Subllcense Agreement Fee | \$ | 218001698 | 2008 08 31 | \$ 450.00 |
| Escrow / Title | CIT 6 ORDERS @ 75 \$ 6 ORDERS @ 25 E JULY2010 | Subllcense Agreement Fee | \$ | 218001635 | 2010 03 31 | \$ 525.00 |
| Escrow / Title | CIT 6 ORDERS @ 25 \$ JUN 10 | Subllcense Agreement Fee | \$ | 218000916 | 2010 08 19 | \$ 450.00 |
| Escrow / Title | CIT @\$75.00 08/09 | Subllcense Agreement Fee | \$ | 218000403 | 2009 01 27 | \$ 450.00 |
| Escrow / Title | CIT 6 @ 100 11/07 \$250.00 11/07 | Subllcense Agreement Fee | \$ | 218000228 | 2009 01 02 | \$ 475.00 |
| Escrow / Title | CIT 4 ORD @\$75 EA -APRIL 2010 | Subllcense Agreement Fee | \$ | 218001163 | 2010 05 25 | \$ 500.00 |
| Escrow / Title | CIT 6 ORDERS @ 75 EA JAN 10 | Subllcense Agreement Fee | \$ | 218001516 | 2009 02 15 | \$ 675.00 |
| Escrow / Title | CIT 6 \$75EA -MAR 2007 | Subllcense Agreement Fee | \$ | 218001419 | 2009 08 27 | \$ 675.00 |
| Escrow / Title | CIT @\$50.00 09/09 | Subllcense Agreement Fee | \$ | 218000663 | 2009 09 17 | \$ 675.00 |
| Escrow / Title | CIT CREDIT FOR DUPLICATE ORDERS PAID IN PRIOR MARCH 2010 | Subllcense Agreement Fee | \$ | (150.00) | 218001759 | 2010 07 03 | \$ (450.00) |
| Escrow / Title | CIT-1 ORDER & \$75EA-OCT 09 | Subllcense Agreement Fee | \$ | 218001172 | 2010 09 15 | \$ 75.00 |
| Escrow / Title | CIT-10 ORDER@\$75 EA-FEB 10 | Subllcense Agreement Fee | \$ | 218000184 | 2009 00 09 | \$ 750.00 |
| Escrow / Title | CIT-12 ORD @ \$75/O - NOV 09 | Subllcense Agreement Fee | \$ | 218001384 | 2009 12 21 | \$ 900.00 |
| Escrow / Title | CIT-X @ORD @ \$75 EA - NOV 09 | Subllcense Agreement Fee | \$ | 218000704 | 2009 12 21 | \$ 2,850.00 |
| Escrow / Title | CIT @ 200 @\$75/O - JUL 2009 | Subllcense Agreement Fee | \$ | 218000464 | 2010 03 06 | \$ 150.00 |
| Escrow / Title | CIT-4 ORD @\$75EA - DEC 09 | Subllcense Agreement Fee | \$ | 218001533 | 2009 12 30 | \$ 150.00 |
| Escrow / Title | CIT-4 ORDERS @ \$75EA-NOV 2009 | Subllcense Agreement Fee | \$ | 218001383 | 2009 12 50 | \$ 150.00 |
| Escrow / Title | CIT ORDER@\$75EA-DEC 09 | Subllcense Agreement Fee | \$ | 218001493 | 2009 10 08 | \$ 1,500.00 |
| Escrow / Title | CIT @\$50.00 09/07 | Subllcense Agreement Fee | \$ | 218000517 | 2009 12 03 | \$ 225.00 |
| Escrow / Title | CIT 5 ORDERS @ \$75EA/09 | Subllcense Agreement Fee | \$ | 218000584 | 2008 09 24 | \$ 500.00 |
| Escrow / Title | CIT 5 ORDER@ \$15 EA-FEB 10 | Subllcense Agreement Fee | \$ | 218000194 | 2010 02 10 | \$ 1,250.00 |

ERA PREMIER REALTY ASSOCIATES

SEAWAVE REAL ESTATE (ERA SEAWAVE REAL ESTATE)

GULF AND LINDSEY REALTORS

GATEWAY REALTY

$738,400

| Entity | Type | Fee Description | Amount | Ref No. | Date | Amount |
|---|---|---|---|---|---|---|
| | Escrow / Title | Subescrow Agreement Fee | 75.00 | 1500000172 | 2007 12 05 | $ 75.00 |
| | Escrow / Title | Subescrow Agreement Fee | 750.00 | 1500000642 | 2008 12 15 | $ 825.00 |
| | Escrow / Title | Subescrow Agreement Fee | 750.00 | 1500000558 | 2008 02 29 | $ 750.00 |
| | Escrow / Title | Subescrow Agreement Fee | 150.00 | 1500000501 | 2008 02 20 | $ 450.00 |
| | Escrow / Title | Subescrow Agreement Fee | 150.00 | 1500000945 | 2008 07 17 | $ 525.00 |
| | Escrow / Title | Subescrow Agreement Fee | 150.00 | 1500001265 | 2008 11 18 | $ 525.00 |
| | Escrow / Title | Subescrow Agreement Fee | 150.00 | 1500001062 | 2008 08 24 | $ 150.00 |
| | Escrow / Title | Subescrow Agreement Fee | 100.00 | 1500002315 | 2009 12 30 | $ 150.00 |
| | Escrow / Title | Subescrow Agreement Fee | 150.00 | 1500002849 | 2008 02 07 | $ 150.00 |
| | Escrow / Title | Subescrow Agreement Fee | 225.00 | 1500001400 | 2009 02 20 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 225.00 | 1500002078 | 2009 07 08 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 225.00 | 1500003078 | 2009 04 08 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 125.00 | 1500000027 | 2008 11 21 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 225.00 | 1500002843 | 2010 08 01 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 350.00 | 1500001641 | 2009 05 15 | $ 750.00 |
| | Escrow / Title | Subescrow Agreement Fee | 350.00 | 1500000021 | 2008 09 15 | $ 825.00 |
| | Escrow / Title | Subescrow Agreement Fee | 375.00 | 1500001846 | 2010 04 26 | $ 375.00 |
| | Escrow / Title | Subescrow Agreement Fee | 375.00 | 1500001542 | 2010 02 18 | $ 375.00 |
| | Escrow / Title | Subescrow Agreement Fee | 450.00 | 1500000084 | 2008 07 17 | $ 825.00 |
| | Escrow / Title | Subescrow Agreement Fee | 450.00 | 1500000049 | 2008 08 06 | $ 750.00 |
| | Escrow / Title | Subescrow Agreement Fee | 400.00 | 1500000099 | 2008 08 17 | $ 450.00 |
| | Escrow / Title | Subescrow Agreement Fee | 225.00 | 1500001211 | 2008 07 21 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 450.00 | 1500000942 | 2008 12 18 | $ 525.00 |
| | Escrow / Title | Subescrow Agreement Fee | 835.00 | 1500001164 | 2008 02 02 | $ 825.00 |
| | Escrow / Title | Subescrow Agreement Fee | 525.00 | 1500000992 | 2008 09 15 | $ 525.00 |
| | Escrow / Title | Subescrow Agreement Fee | 675.00 | 1500000941 | 2009 12 02 | $ 675.00 |
| | Escrow / Title | Subescrow Agreement Fee | 150.00 | 1500000483 | 2009 03 02 | $ 450.00 |
| | Escrow / Title | Subescrow Agreement Fee | 225.00 | 1500001234 | 2009 11 13 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 225.00 | 1500001618 | 2010 05 18 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 450.00 | 1500001847 | 2010 03 25 | $ 450.00 |

**FIRST CLASS TRANSACTIONS**
(HELP U SELL HOME MARKETING)

| | Home Warranty | Subescrow Agreement Fee | 15.00 | 1000001242 | 2008 05 12 | $ 15.00 |
| | Home Warranty | Subescrow Agreement Fee | 200.00 | 1000002109 | 2008 08 06 | $ 30.00 |
| | Escrow / Title | Subescrow Agreement Fee | 500.00 | 1500000548 | 2008 04 31 | $ 100.00 |
| | Escrow / Title | Subescrow Agreement Fee | 100.00 | 2000000338 | 2008 04 21 | $ 100.00 |
| | Escrow / Title | Subescrow Agreement Fee | 200.00 | 1000000047 | 2008 05 12 | $ 200.00 |

**HELP U SELL SANTA MARIA**

| | Escrow / Title | Subescrow Agreement Fee | 200.00 | 2150001038 | 2009 05 09 | $ 200.00 |
| | Escrow / Title | Subescrow Agreement Fee | 100.00 | 1000001541 | 2009 02 19 | $ 100.00 |
| | Escrow / Title | Subescrow Agreement Fee | 100.00 | 2160000283 | 2009 02 26 | $ 100.00 |
| | Escrow / Title | Subescrow Agreement Fee | 100.00 | 2150000888 | 2009 06 24 | $ 100.00 |
| | Escrow / Title | Subescrow Agreement Fee | 200.00 | 2150000012 | 2009 02 02 | $ 200.00 |
| | Escrow / Title | Subescrow Agreement Fee | 200.00 | 2150000813 | 2009 07 17 | $ 200.00 |
| | Escrow / Title | Subescrow Agreement Fee | 200.00 | 2160000051 | 2009 05 25 | $ 200.00 |
| | Escrow / Title | Subescrow Agreement Fee | 220.00 | 2160000205 | 2009 12 16 | $ 400.00 |
| | Escrow / Title | Subescrow Agreement Fee | 400.00 | 2180000051 | 2009 12 02 | $ 400.00 |
| | Escrow / Title | Subescrow Agreement Fee | 425.00 | 2160000256 | 2008 10 07 | $ 450.00 |
| | Escrow / Title | Subescrow Agreement Fee | 400.00 | 2160000253 | 2009 11 24 | $ 400.00 |
| | Escrow / Title | Subescrow Agreement Fee | 525.00 | 2170000253 | 2009 06 29 | $ 500.00 |
| | Escrow / Title | Subescrow Agreement Fee | 500.00 | 2170000283 | 2009 12 22 | $ 500.00 |
| | Escrow / Title | Subescrow Agreement Fee | 600.00 | 2160000070 | 2009 05 12 | $ 600.00 |
| | Escrow / Title | Subescrow Agreement Fee | 500.00 | 2180000070 | 2009 06 30 | $ 1,400.00 |
| | Escrow / Title | Subescrow Agreement Fee | 600.00 | 2150000013 | 2009 06 27 | $ 1,400.00 |
| | Escrow / Title | Subescrow Agreement Fee | 200.00 | 2150000768 | 2009 12 18 | $ 200.00 |
| | Escrow / Title | Subescrow Agreement Fee | 400.00 | 2150000082 | 2009 12 14 | $ 400.00 |
| | Escrow / Title | Subescrow Agreement Fee | 100.00 | 2150000068 | 2008 12 19 | $ 100.00 |
| | Escrow / Title | Subescrow Agreement Fee | 100.00 | 1500000081 | 2008 12 18 | $ 100.00 |
| | Escrow / Title | Subescrow Agreement Fee | 275.00 | 1500001630 | 2010 05 28 | $ 275.00 |
| | Escrow / Title | Subescrow Agreement Fee | 200.00 | 1500001207 | 2009 12 21 | $ 200.00 |
| | Escrow / Title | Subescrow Agreement Fee | 200.00 | 1500001732 | 2010 07 08 | $ 200.00 |
| | Escrow / Title | Subescrow Agreement Fee | 275.00 | 1500001848 | 2010 05 18 | $ 275.00 |
| | Escrow / Title | Subescrow Agreement Fee | 375.00 | 1500001849 | 2010 05 18 | $ 375.00 |

**HOMETOWN GMAC REAL ESTATE**

| | Escrow / Title | Subescrow Agreement Fee | 75.00 | 2180000377 | 2008 05 12 | $ 75.00 |
| | Escrow / Title | Subescrow Agreement Fee | 75.00 | 2160000234 | 2008 12 20 | $ 75.00 |
| | Escrow / Title | Subescrow Agreement Fee | 225.00 | 2150000412 | 2008 08 06 | $ 225.00 |
| | Escrow / Title | Subescrow Agreement Fee | 1,375.00 | 2150000158 | 2009 01 09 | $ 1,350.00 |
| | Escrow / Title | Subescrow Agreement Fee | 150.00 | 2150000207 | 2008 09 07 | $ 150.00 |
| | Natural Hazard Disclosure | Subescrow Agreement Fee | 25.00 | 1000002754 | 2008 09 18 | $ 40.00 |

Escrow ??? Warranty/do   Dist. 63

$79,335

**INTEGRITY MORTGAGE GROUP**

**INTERO REAL ESTATE SERVICES INC - ALMADEN**

**INTERO REAL ESTATE SERVICES INC - CORPORATE**

**INTERO REAL ESTATE SERVICES INC - DOWNTOWN**

INTERO REAL ESTATE SERVICES INC - FREMONT

Exxon '91    Warranty    1 T 1    Visa 270

A13845

**INTERO REAL ESTATE SERVICES IND - SAN JOSE**

| Lease Warranty / Escrow / Title | Description | Amount | Fee | Date | Number | Amount | Amount |
|---|---|---|---|---|---|---|---|
| Escrow / Title | CTT-1 ORDER @STEEN - FEB 2010 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2010 04 04 | 190000026T | 75.00 |
| Escrow / Title | CTT-1 ORDER @ $75 EA MARCH 2010 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2010 04 26 | 2180000839 | 75.00 |
| Escrow / Title | CTT-1 ORDER @$75 EA-MAY 2010 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2010 07 09 | 2180000703 | 75.00 |
| Escrow / Title | CTT-ORDER@$75-JULY 2010 | $ 150.00 | Sublicense Agreement Fee | $ 150.00 | 2010 02 31 | 2180000708 | 150.00 |
| Home Warranty | RHW 1 ORDERS @ 15EA 04/08 | $ 15.00 | Sublicense Agreement Fee | $ 15.00 | 2009 02 25 | 1030000710 | 15.00 |
| Home Warranty | RHW @$15.00 02/09 | $ 30.00 | Sublicense Agreement Fee | $ 30.00 | 2009 02 29 | 1030000543 | 30.00 |
| Home Warranty | RHW 2 @15.00 12/07 | $ 30.00 | Sublicense Agreement Fee | $ 30.00 | 2007 12 14 | 1030000649 | 30.00 |
| Home Warranty | RHW 1 ORDER @ 15 EA 03/08 | $ 30.00 | Sublicense Agreement Fee | $ 30.00 | 2008 03 25 | 1030001841 | 30.00 |
| Home Warranty | RHW @$15.00 12/07 | $ 45.00 | Sublicense Agreement Fee | $ 45.00 | 2008 05 03 | 1030001844 | 45.00 |
| Home Warranty | RHW @$15.00 02/08 | $ 60.00 | Sublicense Agreement Fee | $ 60.00 | 2008 04 21 | 1030001531 | 60.00 |
| Home Warranty | RHW 4@15.00 11/07 | $ 60.00 | Sublicense Agreement Fee | $ 60.00 | 2008 01 09 | 1030000600 | 60.00 |
| Home Warranty | RHW 2 ORDERS @ 15EA MARCH 2010 | $ 30.00 | Sublicense Agreement Fee | $ 30.00 | 2010 04 19 | 1030000731 | 30.00 |
| Home Warranty | RHW 2 ORDERS @ 15 EA-JUNE 2010 | $ 30.00 | Sublicense Agreement Fee | $ 30.00 | 2010 06 16 | 1030007382 | 30.00 |
| Home Warranty | RHW-4 ORDER @$15 EA-APRIL 2010 | $ 14.00 | Sublicense Agreement Fee | $ 14.00 | 2010 06 04 | 1030007382 | 14.00 |
| Home Warranty | RHW-4 ORDER @$15 EA-MAY 2010 | $ 16.00 | Sublicense Agreement Fee | $ 16.00 | 2010 07 13 | 1030007733 | 16.00 |
| Home Warranty | RNT 1@75.00 10/07 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2009 07 27 | 1030007733 | 75.00 |
| Escrow / Title | RNT 1@75.00 01/08 | $ 150.00 | Sublicense Agreement Fee | $ 150.00 | 2008 01 27 | 1420000283 | 150.00 |
| Escrow / Title | RNT @$75.00 04/08 | $ 225.00 | Sublicense Agreement Fee | $ 225.00 | 2007 12 05 | 1600000173 | 225.00 |
| Escrow / Title | RNT 3@75.00 11/07 | $ 225.00 | Sublicense Agreement Fee | $ 225.00 | 2004 01 23 | 1500000841 | 225.00 |

**ALTERA SIGNATURE PROPERTIES (RE/MAX ASSOCIATES / INWOOOD ENTERPRISES)**

| Lease Warranty / Escrow / Title | Description | Amount | Fee | Date | Number | Amount | Amount |
|---|---|---|---|---|---|---|---|
| Escrow / Title | CTG 1@75.00 02/09 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2009 04 08 | 2160000778 | 75.00 |
| Escrow / Title | CTT 1 ORDER @ $75 EA JAN 10 | $ 15.00 | Sublicense Agreement Fee | $ 15.00 | 2010 03 09 | 2180000656 | 15.00 |
| Escrow / Title | CTT 1 ORDER @ $75-JAN 2010 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2009 12 22 | 2180001118 | 75.00 |
| Escrow / Title | CTT 1@75.00 05/09 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2008 08 01 | 2160000864 | 75.00 |
| Escrow / Title | CTT 1@75.00 09/09 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2008 06 24 | 2160000998 | 75.00 |
| Escrow / Title | CTT 1@75.00 03/09 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2009 06 16 | 2160000868 | 75.00 |
| Escrow / Title | CTT 1@75.00 12/08 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2009 02 31 | 2160000381 | 75.00 |
| Escrow / Title | CTT 1@75.00 03/09 | $ 150.00 | Sublicense Agreement Fee | $ 150.00 | 2009 02 05 | 2160000600 | 150.00 |
| Escrow / Title | CTT-1 ORD @ $75 EA-NOV 08 | $ 300.00 | Sublicense Agreement Fee | $ 300.00 | 2024 02 02 | 2160000814 | 300.00 |
| Escrow / Title | CTT-4 ORDERS @ $75 EACH-FEB 09 | $ 400.00 | Sublicense Agreement Fee | $ 400.00 | 2024 12 21 | 2160001302 | 300.00 |
| Natural Hazard Disclosure | DSCL SOURCE-H 4 ORDERS @ $25EA-DEC 08 | $ 300.00 | Sublicense Agreement Fee | $ 300.00 | 2009 02 05 | 2160000374 | 300.00 |
| Natural Hazard Disclosure | DSFS 11 ORDERS @ $25-SEPT 08 | $ 275.00 | Sublicense Agreement Fee | $ 275.00 | 2009 12 14 | 2160000664 | 275.00 |
| Natural Hazard Disclosure | CTT 1@75.00 01/09 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2009 01 23 | 1060000088 | 125.00 |
| Natural Hazard Disclosure | DSCRS 10 @25.00 06/08 | $ 250.00 | Sublicense Agreement Fee | $ 250.00 | 2009 01 23 | 1060000088 | 250.00 |
| Natural Hazard Disclosure | DSCRS 11 @ $25EA-NOV 2009 | $ 75.00 | Sublicense Agreement Fee | $ 75.00 | 2009 02 16 | 1000000456 | 65.00 |
| Natural Hazard Disclosure | DSCRS 12 @25.00 08/09 | $ 275.00 | Sublicense Agreement Fee | $ 275.00 | 2009 05 20 | 1000000465 | 275.00 |
| Natural Hazard Disclosure | DSCRS @25.00-DEC 08EA | $ 275.00 | Sublicense Agreement Fee | $ 275.00 | 2009 03 17 | 1100000084 | 275.00 |
| Natural Hazard Disclosure | DSCRS 12 @25.00 06/09 | $ 325.00 | Sublicense Agreement Fee | $ 325.00 | 2009 04 05 | 1000000381 | 325.00 |
| Natural Hazard Disclosure | DSCRS 15 ORDERS @ $25 EA | $ 375.00 | Sublicense Agreement Fee | $ 375.00 | 2009 10 13 | 1000000384 | 375.00 |
| Natural Hazard Disclosure | DSCRS @25.00 01/09 | $ 425.00 | Sublicense Agreement Fee | $ 425.00 | 2009 04 14 | 1000000471 | 425.00 |
| Natural Hazard Disclosure | DSCRS @25.00 00/08 | $ 550.00 | Sublicense Agreement Fee | $ 550.00 | 2009 05 13 | 1100000774 | 550.00 |
| Natural Hazard Disclosure | DSCRS 22 @ $25EA JUNE 09 | $ 530.00 | Sublicense Agreement Fee | $ 530.00 | 2009 12 18 | 1000000814 | 530.00 |
| Natural Hazard Disclosure | DSCRS 27 ORDERS @ $20 EA 05/2009 | $ 530.00 | Sublicense Agreement Fee | $ 530.00 | 2009 02 05 | 1000000870 | 490.00 |
| Natural Hazard Disclosure | DSCRS @25.00 06/09 | $ 525.00 | Sublicense Agreement Fee | $ 525.00 | 2009 05 08 | 1000000524 | 500.00 |
| Natural Hazard Disclosure | DSCRS 22 ORDERS@$25-JULY 09 | $ 570.00 | Sublicense Agreement Fee | $ 570.00 | 2008 10 27 | 1000000040 | 625.00 |
| Natural Hazard Disclosure | DSCRS @25.00 06/08 | $ 550.00 | Sublicense Agreement Fee | $ 550.00 | 2009 01 23 | 1000000384 | 550.00 |
| Natural Hazard Disclosure | DSCRS @25.00-NOV 08 | $ 735.00 | Sublicense Agreement Fee | $ 735.00 | 2009 11 21 | 1000000384 | 735.00 |
| Natural Hazard Disclosure | DSCRS-16 ORDERS@$25EA-SEPT 09 | $ 225.00 | Sublicense Agreement Fee | $ 225.00 | 2010 01 03 | 1000000628 | 225.00 |
| Natural Hazard Disclosure | DSCRS-9 ORDERS @ $25EA-DEC 09 | $ 400.00 | Sublicense Agreement Fee | $ 400.00 | 2009 01 14 | 1000000742 | 400.00 |
| Natural Hazard Disclosure | RHW 10 @25.00 JUNE 2009 | $ 90.00 | Sublicense Agreement Fee | $ 90.00 | 2014 02 05 | 1000000732 | 225.00 |
| Home Warranty | RHW 13 ORDERS @ $18 EA NOVEMBER 09 | $ 135.00 | Sublicense Agreement Fee | $ 135.00 | 2008 07 29 | 1100000109 | 90.00 |
| Home Warranty | RHW 6 ORDERS @ $15 09 | $ 225.00 | Sublicense Agreement Fee | $ 225.00 | 2009 07 29 | 1000000361 | 135.00 |
| Home Warranty | RHW 1@15.00 02/09 | $ 225.00 | Sublicense Agreement Fee | $ 225.00 | 2008 01 02 | 1000004420 | 150.00 |
| Home Warranty | RHW 6 ORDERS @ $15 09 | $ 255.00 | Sublicense Agreement Fee | $ 255.00 | 2008 12 18 | 1000000666 | 225.00 |
| Home Warranty | RHW 1@15.00 07/09 | $ 72.00 | Sublicense Agreement Fee | $ 72.00 | 2008 10 27 | 1000000356 | 225.00 |
| Home Warranty | RHW 4@15.00 09/08 | $ 72.00 | Sublicense Agreement Fee | $ 72.00 | 2009 01 07 | 1000000536 | 72.00 |
| Home Warranty | RHW 4@15.00 01/09 | $ 90.00 | Sublicense Agreement Fee | $ 90.00 | 2008 10 27 | 1000000341 | 75.00 |
| Home Warranty | RHW 6 ORDERS @ $15EA 09/2009 | $ 135.00 | Sublicense Agreement Fee | $ 135.00 | 2009 06 24 | 1000000640 | 90.00 |
| Home Warranty | RHW 9 ORDERS @ $15 09 | $ 135.00 | Sublicense Agreement Fee | $ 135.00 | 2009 04 06 | 1100000221 | 135.00 |
| Home Warranty | RHW 9 ORDERS@$15-JULY 09 | $ 135.00 | Sublicense Agreement Fee | $ 135.00 | 2008 12 14 | 1000000533 | 135.00 |
| Home Warranty | RHW 4@15.00 04/09 | $ 135.00 | Sublicense Agreement Fee | $ 135.00 | 2008 08 04 | 1000000536 | 135.00 |
| Home Warranty | RMNT 1@15.00 09/09 | $ 135.00 | Sublicense Agreement Fee | $ 135.00 | 2009 10 22 | 1000000792 | 135.00 |
| Home Warranty | RMNT DUPLICATE PAYMENT 10/09 | (165.00) | Sublicense Agreement Fee | (165.00) | 2008 11 21 | 1000002290 | 135.00 |

*(Handwritten annotations: "391", "200", "#201495")*

**J ROCKCLIFF REALTORS INC**

**JOHN M. SCOTT REAL ESTATE - PETALLUR**

$11,050

PARAGON REAL ESTATE & MERIDIAN MORTGAGE
DRM CORPORATION

KOPPEL AND KAPPEL

**KELLER WILLIAMS CENTRAL COAST PISMO BEACH (WILLIAMS & COMPANY INC)**

| Escrow Title | AMT <$75.00 03/08 / AMT <$75.00 03/07 | Product / Description | Fee Type | | | |
|---|---|---|---|---|---|---|
| Escrow Title | | CTT 1 @ $EM CA JULY 2008 | Settlement Agreement Fee | $ | 100.00 | |
| Escrow Title | | CTT 1 ORDER @ $007 CA JAN/FEB | Sublicense Agreement Fee | $ | 100.00 | |
| Escrow Title | | CTT 1 ORDER @ .05 CA 03/08 | Sublicense Agreement Fee | $ | 100.00 | |
| Escrow Title | | CTT 1 @ $700 CA APR 08 | Sublicense Agreement Fee | $ | 100.00 | |
| Escrow Title | | CTT 1 @ $100.00 08/08 | Settlement Agreement Fee | $ | 100.00 | |
| Escrow Title | | CTT 1 @ $100.00 05/08 | Settlement Agreement Fee | $ | 100.00 | |
| Escrow Title | | CTT 1 @ $100.00 10/07 | Settlement Agreement Fee | $ | 100.00 | |
| Escrow Title | | CTT 1 @ $100.00 11/08 | Settlement Agreement Fee | $ | 100.00 | |
| Escrow Title | | CTT 1 @ $100.00 11/07 | Settlement Agreement Fee | $ | 300.00 | |
| Natural Hazard Disclosure | | DISCERN 4 ORDERS @ $25 EA — DEC 08 | Sublicense Agreement Fee | $ | 200.00 | |
| Natural Hazard Disclosure | | DISCERN 5 ORDERS @ $25 EA — NOV 08 | Sublicense Agreement Fee | $ | 200.00 | |
| Natural Hazard Disclosure | | DISCERN 1 ORDER @ $25 EA NOVEMBER 2007 | Sublicense Agreement Fee | $ | 250.00 | |
| Natural Hazard Disclosure | | DISCERN 10 @ $25 CA MAY 2009 | Sublicense Agreement Fee | $ | 250.00 | |
| Natural Hazard Disclosure | | DISCERN 10 @ $25.00 @ $25 EA MAR 2010 | Sublicense Agreement Fee | $ | 250.00 | |
| Natural Hazard Disclosure | | DISCERN 10 $25.00 08/08 | Sublicense Agreement Fee | $ | 250.00 | |
| Natural Hazard Disclosure | | DISCERN 10 $25.00 04/08 | Sublicense Agreement Fee | $ | 275.00 | |
| Natural Hazard Disclosure | | DISCERN 12 $25.00 07/08 | Sublicense Agreement Fee | $ | 300.00 | |
| Natural Hazard Disclosure | | DISCERN 13 $25.00 01/09 | Sublicense Agreement Fee | $ | 300.00 | |
| Natural Hazard Disclosure | | DISCERN 2 @$25.00 07/09 | Sublicense Agreement Fee | $ | 125.00 | |
| Natural Hazard Disclosure | | DISCERN 5 ORDERS @ $25 EA 03/08 | Sublicense Agreement Fee | $ | 125.00 | |
| Natural Hazard Disclosure | | DISCERN 2 ORDERS @ $25 EA 02/2008 | Sublicense Agreement Fee | $ | 175.00 | |
| Natural Hazard Disclosure | | DISCERN 8 @ $25.00 JUNE 09 | Sublicense Agreement Fee | $ | 200.00 | |
| Natural Hazard Disclosure | | DISCERN 8 $25.00 02/09 | Sublicense Agreement Fee | $ | 200.00 | |
| Natural Hazard Disclosure | | DISCERN 8 $25.00 10/08 | Sublicense Agreement Fee | $ | 225.00 | |
| Natural Hazard Disclosure | | DISCERN 9 ORDERS @ $25 EA JULY 08 | Sublicense Agreement Fee | $ | 225.00 | |
| Natural Hazard Disclosure | | DISCERN 9 $25.00 09/08 | Sublicense Agreement Fee | $ | 225.00 | |
| Natural Hazard Disclosure | | DISCERN-NODR3 @ $25 NOV 09 | Sublicense Agreement Fee | $ | 350.00 | |
| Natural Hazard Disclosure | | DISCERN-17 ORDERS @ $25 EA DEC 30 | Sublicense Agreement Fee | $ | 425.00 | |
| Natural Hazard Disclosure | | DISCERN 5 ORDERS@$25 EA SEPT 09 | Sublicense Agreement Fee | $ | 75.00 | |
| Natural Hazard Disclosure | | DISCERN 6 ORDERS@$25 EA JULY 09 | Sublicense Agreement Fee | $ | 100.00 | |
| Natural Hazard Disclosure | | DISCERN 5 ORDERS @$25 EA JUNE 2010 | Sublicense Agreement Fee | $ | 125.00 | |
| Natural Hazard Disclosure | | DISCERN 5 ORDERS @$25 EA APRIL 2010 | Sublicense Agreement Fee | $ | 125.00 | |
| Natural Hazard Disclosure | | DISCERN 7 ORDERS @$25 EA JAN 2010 | Sublicense Agreement Fee | $ | 225.00 | |
| Natural Hazard Disclosure | | DISCERN-7 @ $25 EA MAY 2010 | Sublicense Agreement Fee | $ | 175.00 | |
| Natural Hazard Disclosure | | DISCERN-9 @ $25 EA — AUG 09 | Sublicense Agreement Fee | $ | 225.00 | |
| Home Warranty | | RHW 1 @$50.00 03/08 | Referral Agreement Fee | $ | 75.00 | |
| Home Warranty | | RHW 1 @$50.00 03/08 | Referral Agreement Fee | $ | 15.00 | |
| Home Warranty | | RHW 1 @$50.00 02/08 | Referral Agreement Fee | $ | 15.00 | |
| Home Warranty | | RHW 10 @$50.00 09/08 | Referral Agreement Fee | $ | 625.00 | |
| Home Warranty | | RHW 2 ORDERS @ $25 NOVEMBER 2007 | Settlement Agreement Fee | $ | 100.00 | |
| Home Warranty | | RHW 1 ORDER @ $25.00 07/08 | Referral Agreement Fee | $ | 50.00 | |
| Home Warranty | | RHW 1 @$50.00 06/08 | Referral Agreement Fee | $ | 50.00 | |
| Home Warranty | | RHW 2 @$50.00 06/08 | Referral Agreement Fee | $ | 50.00 | |
| Home Warranty | | RHW 1 ORDERS @ $25.00 05/08 | Referral Agreement Fee | $ | 2,140.00 | |
| Home Warranty | | RHW 1 ORDERS @ $25 EA 04/08 | Referral Agreement Fee | $ | 45.00 | |
| Home Warranty | | RHW 1 ORDERS @ $50 EA SEPT 08 | Referral Agreement Fee | $ | 245.00 | |
| Home Warranty | | RHW 1 @ THEA MARCH 2010 | Referral Agreement Fee | $ | 60.00 | |
| Home Warranty | | RHW 4 ORDERS @ 16 05/08 | Settlement Agreement Fee | $ | 60.00 | |
| Home Warranty | | RHW 4 @$50.00 08/08 | Referral Agreement Fee | $ | 110.00 | |
| Home Warranty | | RHW 5 ORDERS @ $THEA 05/2009 | Settlement Agreement Fee | $ | 175.00 | |
| Home Warranty | | RHW 6 ORDERS @ 16 EA JUNE 2010 | Settlement Agreement Fee | $ | 75.00 | |
| Home Warranty | | RHW 5 @$50.00 04/09 | Settlement Agreement Fee | $ | 200.00 | |
| Home Warranty | | RHW 6 @$50.00 08/08 | Settlement Agreement Fee | $ | 450.00 | |
| Home Warranty | | RHW 6 ORDERS @ 15 EA 03/08 | Settlement Agreement Fee | $ | 215.00 | |
| Home Warranty | | RHW @$50.00 02/08 | Settlement Agreement Fee | $ | 345.00 | |
| Home Warranty | | RHW @$50.00 05/08 | Settlement Agreement Fee | $ | 200.00 | |
| Home Warranty | | RHW 4 ORDERS @ 16 EA JAN 10 | Settlement Agreement Fee | $ | 120.00 | |
| Home Warranty | | RHW DUPLICATE PAYMENT/ISSUE OF ORDERS | Settlement Agreement Fee | $ | (75.00) | |

KELLER WILLIAMS REALTY OAKLAND PIEDMONT

KELLER WILLIAMS REALTY SILICON VALLEY
(REALTY WORLD CA PROPERTY NETWORK)

KELLER WILLIAMS-CAMARILLO
(DRM CHERBERFIELD, LLC DRM PACIFIC PROPERTIES, INC)

Escrow 54 Warranty 80 Disc 23

$11475

The body of this page is a densely printed financial ledger (rotated landscape) listing fee line items grouped by category. The left-most column lists the vendor/category, followed by an order/reference column, a fee-type column, dollar amounts, and reference ID numbers with dates. Category groupings include:

- House Warranty / Subtotal — "Subdomain Agreement Fee"
- Escrow / Title — "Subdomain Agreement Fee"
- Key Transaction Coordinators — "Subdomain Agreement Fee"
- King and Associates Real Estate — "Subdomain Agreement Fee"
- Natural Hazard Disclosure — "Subdomain Agreement Fee"

Exhibit 4 ___ W2/ 107 - DISC 4916

$15 623

## C21 LANDMARK NETWORK

| Category | Description | Fee | | | Number | Date | Amount |
|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | DSOSR-5 @$25.00 09/08 | Sublicense Agreement Fee | 50.00 | 50.00 | 1000020284 | 2008.11.21 | $ 25.00 |
| Natural Hazard Disclosure | DSOSR-5 ORDER @$25 EA-OCT 09 | Sublicense Agreement Fee | 25.00 | 25.00 | 1000030361 | 2008.12.14 | $ 25.00 |
| Natural Hazard Disclosure | DSOSR-5 1 ORDER @$25 EA-MAY 2010 | Sublicense Agreement Fee | 25.00 | 25.00 | 1002003482 | 2010.07.09 | $ 25.00 |
| Home Warranty | PNHW - 2 ORDERS @$15EA – NOV 08 | Sublicense Agreement Fee | 30.00 | 30.00 | 1100027108 | 2009.01.23 | $ 15.00 |
| Home Warranty | PNHW 1 ORDER @$15EA FEB 2010 | Sublicense Agreement Fee | 15.00 | 15.00 | 1100020820 | 2008.04.07 | $ 15.00 |
| Home Warranty | PNHW @$15.00 09/08 | Sublicense Agreement Fee | 15.00 | 15.00 | 1100020512 | 2008.04.24 | $ 15.00 |
| Home Warranty | PNHW 2 ORDERS @ 15 EA 04/08 | Sublicense Agreement Fee | 15.00 | 15.00 | 1000020771 | 2008.03.17 | $ 40.00 |
| Home Warranty | PNHW @$15.00 08/08 | Sublicense Agreement Fee | 20.00 | 20.00 | 1000022113 | 2008.02.07 | $ 20.00 |
| Home Warranty | PNHW @$15.00 08/08 | Sublicense Agreement Fee | 30.00 | 30.00 | 1000021432 | 2008.07.22 | $ 65.00 |
| Home Warranty | PNHW @$15.00 08/08 | Sublicense Agreement Fee | 30.00 | 30.00 | 1000027750 | 2008.04.18 | $ 80.00 |
| Home Warranty | PNHW @$15.00 09/08 | Sublicense Agreement Fee | 45.00 | 45.00 | 1000020548 | 2008.10.17 | $ 65.00 |
| Home Warranty | PNHW @$15.00 06/08 | Sublicense Agreement Fee | 45.00 | 45.00 | 1000030264 | 2008.11.21 | $ 65.00 |
| Escrow / Title | GTT -4 ORDERS EA-MAR 2010 | Sublicense Agreement Fee | 75.00 | 75.00 | 2150020316 | 2010.04.07 | $ 75.00 |
| Escrow / Title | GTT @ $75 EA-MAR | Sublicense Agreement Fee | 75.00 | 75.00 | 2150020843 | 2008.12.30 | $ 75.00 |
| Escrow / Title | GTT @$75.00 09/08 | Sublicense Agreement Fee | 75.00 | 75.00 | 2100002916 | 2008.12.18 | $ 75.00 |
| Escrow / Title | GTT @$75.00 11/07 | Sublicense Agreement Fee | 75.00 | 75.00 | 2100002879 | 2008.01.09 | $ 75.00 |
| Natural Hazard Disclosure | DSOSR-1 ORDER @ $25-11/07 | Sublicense Agreement Fee | 375.00 | 375.00 | 1100027108 | 2008.02.27 | $ -425.00 |
| Natural Hazard Disclosure | DSOSR-15 ORDERS @$25EA -NOV 09 | Sublicense Agreement Fee | 100.00 | 100.00 | 1130001244 | 2008.01.24 | $ 100.00 |
| Natural Hazard Disclosure | DSOSR-5 - 4 ORDERS @$25EA NOVEMBER 2007 | Sublicense Agreement Fee | 25.00 | 25.00 | 1130001227 | 2008.02.07 | $ 325.00 |
| Natural Hazard Disclosure | DSOSR-5 ORDERS @ $25 EA NOVEMBER 09 | Sublicense Agreement Fee | 375.00 | 375.00 | 2010.01.22 | 2010.01.22 | $ 325.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 06/08 | Sublicense Agreement Fee | -425.00 | -425.00 | 1110002648 | 2009.01.14 | $ -475.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 05/08 | Sublicense Agreement Fee | 52.00 | 52.00 | 1000030254 | 2008.07.22 | $ 80.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 05/08 | Sublicense Agreement Fee | 50.00 | 50.00 | 1000030722 | 2008.08.07 | $ 65.00 |
| Natural Hazard Disclosure | DSOSR-5 2 ORDERS @ $25 EA 06/2009 | Sublicense Agreement Fee | 325.00 | 325.00 | 1000020892 | 2008.09.17 | $ 650.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 07/09 | Sublicense Agreement Fee | 575.00 | 575.00 | 1000020873 | 2008.05.17 | $ 505.00 |
| Natural Hazard Disclosure | DSOSR @$4 @$25EA-MAY 2009 | Sublicense Agreement Fee | 625.00 | 625.00 | 1000020688 | 2009.06.30 | $ 600.00 |
| Natural Hazard Disclosure | DSOSR -26 ORDERS @$25-FEB 2010 | Sublicense Agreement Fee | 625.00 | 625.00 | 1000020173 | 2008.03.18 | $ 625.00 |
| Natural Hazard Disclosure | DSOSR-5 @$25 EA-MAY 09 | Sublicense Agreement Fee | 625.00 | 625.00 | 1000020224 | 2009.02.19 | $ 625.00 |
| Natural Hazard Disclosure | DSOSR-26 ORDS@$25EA-MAR 2007 | Sublicense Agreement Fee | 700.00 | 700.00 | 1000020373 | 2010.02.19 | $ 700.00 |
| Natural Hazard Disclosure | DSOSR 3 ORD @ $25 EA-APRL 08 | Sublicense Agreement Fee | 75.00 | 75.00 | 1000022284 | 2008.03.30 | $ 75.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 10/08 | Sublicense Agreement Fee | 75.00 | 75.00 | 1000020200 | 2008.10.30 | $ 125.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 11/08 | Sublicense Agreement Fee | 75.00 | 75.00 | 1000020169 | 2008.12.08 | $ 75.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 04/09 | Sublicense Agreement Fee | 675.00 | 675.00 | 1000020456 | 2008.09.05 | $ 965.00 |
| Natural Hazard Disclosure | DSOSR 5T @ $25EA JUNE 09 | Sublicense Agreement Fee | 425.00 | 425.00 | 1000020254 | 2008.08.29 | $ 850.00 |
| Natural Hazard Disclosure | DSOSR-5 ORDERS @$25 EA 09/2009 | Sublicense Agreement Fee | 100.00 | 100.00 | 1000020646 | 2008.05.12 | $ 115.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 07/08 | Sublicense Agreement Fee | 150.00 | 150.00 | 1000027660 | 2008.05.16 | $ 185.00 |
| Natural Hazard Disclosure | DSOSR @$25.00 07/08 | Sublicense Agreement Fee | 150.00 | 150.00 | 1000020307 | 2008.10.29 | $ 150.00 |
| Natural Hazard Disclosure | DSOSR-17 ORDS@$25EA-SEP 09 | Sublicense Agreement Fee | 425.00 | 425.00 | 1000020173 | 2009.11.02 | $ -525.00 |
| Natural Hazard Disclosure | DSOSR-37 ORDERS @$25 EA-JAN 2010 | Sublicense Agreement Fee | 650.00 | 650.00 | 1000027864 | 2010.07.00 | $ 515.00 |
| Natural Hazard Disclosure | DSOSR-23 ORDERS @ $25EA-DEC 09 | Sublicense Agreement Fee | 625.00 | 625.00 | 1000020373 | 2010.02.03 | $ 825.00 |
| Natural Hazard Disclosure | DSOSR-20 ORD @$25EA-JAN '10 | Sublicense Agreement Fee | 575.00 | 575.00 | 1000020691 | 2010.03.10 | $ 575.00 |
| Natural Hazard Disclosure | DSOSR-26 ORDS @$25 EA-OCT 09 | Sublicense Agreement Fee | 575.00 | 575.00 | 1000020831 | 2010.02.14 | $ 575.00 |
| Natural Hazard Disclosure | DSOSR-26 ORDERS @$25EA-JUNE 2010 | Sublicense Agreement Fee | 685.00 | 685.00 | 1000027648 | 2010.03.18 | $ 600.00 |
| Natural Hazard Disclosure | DSOSR-28 ORDS @$25EA-AUG08 | Sublicense Agreement Fee | 700.00 | 700.00 | 1000020307 | 2009.10.12 | $ 700.00 |
| Natural Hazard Disclosure | DSOSR-32 ORDERS @$25 $A-APRL 2010 | Sublicense Agreement Fee | 100.00 | 100.00 | 1000027687 | 2010.01.04 | $ 810.00 |
| Home Warranty | PNHW 1 ORDER @ 15 EA 09/08 | Sublicense Agreement Fee | 15.00 | 15.00 | 1000021460 | 2009.01.22 | $ 446.00 |
| Home Warranty | PNHW 1 ORDER @ 15 EA JUNE 2010 | Sublicense Agreement Fee | 15.00 | 15.00 | 1000027668 | 2009.08.18 | $ 155.00 |
| Home Warranty | PNHW @$15.00 10/07 | Sublicense Agreement Fee | 15.00 | 15.00 | 1000021312 | 2010.06.19 | $ 15.00 |
| Home Warranty | PNHW @$15.00 11/07 | Sublicense Agreement Fee | 15.00 | 15.00 | 1000001212 | 2010.07.00 | $ 45.00 |
| Home Warranty | PNHW 2 ORDERS @ 15EA 04/08 | Sublicense Agreement Fee | 33.00 | 33.00 | 1000022214 | 2010.02.05 | $ 15.00 |
| Home Warranty | PNHW @$15.00 06/08 | Sublicense Agreement Fee | 30.00 | 30.00 | 1000002264 | 2008.09.08 | $ 30.00 |
| Home Warranty | PNHW @$15.00 08/08 | Sublicense Agreement Fee | 30.00 | 30.00 | 1000027629 | 2008.07.23 | $ 60.00 |
| Home Warranty | PNHW @$15.00 08/08 | Sublicense Agreement Fee | 30.00 | 30.00 | 1000004047 | 2008.10.27 | $ 30.00 |
| Home Warranty | PNHW @$15.00 09/08 | Sublicense Agreement Fee | 45.00 | 45.00 | 1000027276 | 2009.09.17 | $ 182.00 |
| Home Warranty | PNHW @$15.00 06/08 | Sublicense Agreement Fee | 45.00 | 45.00 | 1000002250 | 2009.09.18 | $ 82.00 |
| Home Warranty | PNHW 4 ORDERS @ $15EA 06/08 | Sublicense Agreement Fee | 45.00 | 45.00 | 1000024088 | 2008.07.23 | $ 185.00 |
| Home Warranty | PNHW 3 ORDERS @ $15 EA MARCH 2010 | Sublicense Agreement Fee | 15.00 | 15.00 | 1000030247 | 2010.08.19 | $ 82.00 |
| Home Warranty | PNHW @$15.00 03/08 | Sublicense Agreement Fee | 75.00 | 75.00 | 1000027512 | 2008.08.24 | $ 135.00 |
| Home Warranty | PNHW 6 ORDS @ $15 EA NOVEMBER 2007 | Sublicense Agreement Fee | 60.00 | 60.00 | 1000021162 | 2008.09.23 | $ 75.00 |
| Home Warranty | PNHW 6 ORDS @$15EA JULY 09 | Sublicense Agreement Fee | 60.00 | 60.00 | 1000030884 | 2008.09.01 | $ 75.00 |
| Home Warranty | PNHW @$15.00 08/08 | Sublicense Agreement Fee | 30.00 | 30.00 | 1000027716 | 2008.08.01 | $ 90.00 |
| Home Warranty | PNHW @$15 $1 09/08 | Sublicense Agreement Fee | 30.00 | 30.00 | 1000020151 | 2009.04.21 | $ 90.00 |
| Home Warranty | PNHW 7 ORDERS @ $15EA 05/2009 | Sublicense Agreement Fee | 125.00 | 125.00 | 1000004759 | 2008.09.05 | $ 60.00 |
| Home Warranty | PNHW DUPLICATE PAYMENT 11/08 | Sublicense Agreement Fee | (75.00) | (75.00) | 1100001225 | 2008.09.08 | $ 30.00 |
| Home Warranty | PNHW 2 ORDS @ $15EA JUNE 2009 | Sublicense Agreement Fee | 30.00 | 30.00 | 1000004649 | 2009.09.14 | $ 825.00 |
| Home Warranty | PNHW 1 ORDER @$15 EA-MAY 2010 | Sublicense Agreement Fee | 15.00 | 15.00 | 1000027654 | 2010.05.01 | $ 850.00 |

*(Page rotated; handwritten notations at top: "Ex. 83", "D Sd", "254", and at bottom right "$9040")*

**LAPTOP REAL ESTATE INC**

**PACIFIC ARIZONA REALTY** (LESTER P AND PATRICIA J COX PC)

**LEVERAGED SOLUTIONS / EQUITY MANAGEMENT GROUP**

**MERIDIAN CREEK PROPERTIES**

**MICHELLE "NIKKI" CARDOZA**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MING TREE GMAC REALTY | Escrow / Title | FNT - 1 ORDER @ $50 1/08 | Sublicense Agreement Fee | $ | 50.00 | 1510000097 | 2008 02 19 | $ | 825.00 |
| | Escrow / Title | FNT - 10 ORDERS @ $100,$25 11/07 | Sublicense Agreement Fee | $ | 775.00 | 1510000097 | 2008 02 19 | $ | 825.00 |
| | Escrow / Title | FNT 1 @ $100EA NOV 2008 | Sublicense Agreement Fee | $ | 100.00 | 1510000208 | 2008 12 18 | $ | 100.00 |
| | Escrow / Title | FNT 1 @ $70 MARCH 2008 | Sublicense Agreement Fee | $ | 70.00 | 1510000130 | 2008 05 31 | $ | 70.00 |
| | Escrow / Title | FNT 1@70.00 02/08 | Sublicense Agreement Fee | $ | 70.00 | 1510000118 | 2008 04 21 | $ | 470.00 |
| | Escrow / Title | FNT 10 @ $25 3 @ $75 JUNE 2008 | Sublicense Agreement Fee | $ | 475.00 | 1510000180 | 2008 09 05 | $ | 475.00 |
| | Escrow / Title | FNT 10 ORDERS @ 100 EA SEPT.09 | Sublicense Agreement Fee | $ | 1,000.00 | 1500001132 | 2009 10 22 | $ | 1,000.00 |
| | Escrow / Title | FNT 2 @ $50EA OCT 2007 | Sublicense Agreement Fee | $ | 100.00 | 1510000078 | 2007 12 14 | $ | 100.00 |
| | Escrow / Title | FNT 2 ORDERS @ 25EA 02/08 3 @ 75EA | Sublicense Agreement Fee | $ | 275.00 | 1500000336 | 2008 03 25 | $ | 275.00 |
| | Escrow / Title | FNT 3@75.00 7@25.0 02/08 | Sublicense Agreement Fee | $ | 400.00 | 1510000116 | 2008 04 21 | $ | 470.00 |
| | Escrow / Title | FNT 4 @ $25EA 1 @ $75 JAN 2009 | Sublicense Agreement Fee | $ | 175.00 | 1510000222 | 2009 03 12 | $ | 175.00 |
| | Escrow / Title | FNT 4 OR @ $25 EA & 3 OR @ $75 EA FEB 10 | Sublicense Agreement Fee | $ | 325.00 | 1100014430 | 2010 03 25 | $ | 325.00 |
| | Escrow / Title | FNT- 4 ORD@$25EA & 1 ORD@$75EA- JAN '10 | Sublicense Agreement Fee | $ | 175.00 | 1510000420 | 2010 03 10 | $ | 175.00 |
| | Escrow / Title | FNT 4@50.00 11/07 | Sublicense Agreement Fee | $ | 200.00 | 1510000081 | 2008 01 04 | $ | 200.00 |
| | Escrow / Title | FNT 4@75.00 12/07 FNT 3@25.00 12/07 | Sublicense Agreement Fee | $ | 375.00 | 1510000101 | 2008 02 20 | $ | 665.00 |
| | Escrow / Title | FNT- 5 ORD@$25EA / 1 ORD@$75EA- MAR 2010 | Sublicense Agreement Fee | $ | 200.00 | 1510000437 | 2010 04 26 | $ | 200.00 |
| | Escrow / Title | FNT -5 ORD@$25EA- APR 2010 | Sublicense Agreement Fee | $ | 125.00 | 1510000449 | 2010 06 11 | $ | 125.00 |
| | Escrow / Title | FNT 5@50.00 12/07 2@20.00 12/07 | Sublicense Agreement Fee | $ | 290.00 | 1510000101 | 2008 02 20 | $ | 665.00 |
| | Escrow / Title | FNT- 5ORD@$100EA-JULY 2010 | Sublicense Agreement Fee | $ | 500.00 | 1510000503 | 2010 08 31 | $ | 500.00 |
| | Escrow / Title | FNT 6 @ $25 1 @ $75 FEB 2009 | Sublicense Agreement Fee | $ | 225.00 | 1510000233 | 2009 03 31 | $ | 225.00 |
| | Escrow / Title | FNT 6 @ $25 1 @ $75 MAY 2008 | Sublicense Agreement Fee | $ | 225.00 | 1510000139 | 2008 06 27 | $ | 375.00 |
| | Escrow / Title | FNT 6 @ $25 2 @ $75 SEPT 2008 | Sublicense Agreement Fee | $ | 300.00 | 1510000203 | 2008 12 09 | $ | 825.00 |
| | Escrow / Title | FNT 6 @ $25 5 @ $75 OCT 2008 | Sublicense Agreement Fee | $ | 525.00 | 1510000203 | 2008 12 09 | $ | 825.00 |
| | Escrow / Title | FNT 6 @ $25 APRIL 2008 | Sublicense Agreement Fee | $ | 150.00 | 1510000139 | 2008 06 27 | $ | 375.00 |
| | Escrow / Title | FNT 6 @ $75 11 @ $25 JULY 2008 | Sublicense Agreement Fee | $ | 725.00 | 1510000184 | 2008 09 17 | $ | 725.00 |
| | Escrow / Title | FNT 7 @ $100 4 @ $25EA OCT 2007 | Sublicense Agreement Fee | $ | 800.00 | 1510000074 | 2007 12 11 | $ | 800.00 |
| | Escrow / Title | FNT 8 @ $25 2 @ $75 MARCH 2008 | Sublicense Agreement Fee | $ | 350.00 | 1510000122 | 2008 05 09 | $ | 350.00 |
| | Escrow / Title | FNT 9 @ $100EA AUG 2008 | Sublicense Agreement Fee | $ | 900.00 | 1510000190 | 2008 10 24 | $ | 900.00 |
| | Escrow / Title | FNT-1 ORD @ $75 EA & 5 ORD @ $25 EA--NOV 09 | Sublicense Agreement Fee | $ | 200.00 | 1510000379 | 2009 12 21 | $ | 200.00 |
| | Escrow / Title | FNT-1 ORD @$25EA & 1 ORD @$100EA -JUN 2010 | Sublicense Agreement Fee | $ | 125.00 | 1510000469 | 2010 07 28 | $ | 125.00 |
| | Escrow / Title | FNT-1 ORDER @ $25EA/1 ORDER @ $75EA-DEC 09 | Sublicense Agreement Fee | $ | 100.00 | 1510000396 | 2010 02 03 | $ | 100.00 |
| | Escrow / Title | FNT-3 ORDERS@$75 EA-1 ORDER @$25 EA-MAY 2010 | Sublicense Agreement Fee | $ | 250.00 | 1510000457 | 2010 07 09 | $ | 250.00 |
| | Escrow / Title | FNT-4 ORDERS @ $$75EA-JUNE 09' AND 5 ORDERS @ $25EA | Sublicense Agreement Fee | $ | 450.00 | 1510000267 | 2009 07 16 | $ | 575.00 |
| | Escrow / Title | FNT-5 ORDERS @ $25EA-MAYY 09 | Sublicense Agreement Fee | $ | 125.00 | 1510000267 | 2009 07 16 | $ | 575.00 |
| | Escrow / Title | FNT-5ORDERS @ $25EA / 3 ORDERS @ $75EA | Sublicense Agreement Fee | $ | 350.00 | 1510000296 | 2009 08 20 | $ | 350.00 |
| | Escrow / Title | FNT-5ORDERS @ $25EA/ 1 ORDER @ $75EA -APRIL 09 | Sublicense Agreement Fee | $ | 200.00 | 1500000832 | 2009 05 19 | $ | 200.00 |
| | Escrow / Title | FNT-6 ORDERS @ $75EA/3 ORDERS @ $25EA-OCT 09 | Sublicense Agreement Fee | $ | 525.00 | 1510000336 | 2009 11 13 | $ | 525.00 |
| | Escrow / Title | FNT-6 ORDERS @ $75EA/3 ORDERS @ $25EA-OCT 09 | Sublicense Agreement Fee | $ | 525.00 | 1510000392 | 2010 01 19 | $ | 525.00 |
| | Escrow / Title | FNT-7ORDERS @ $25EA/ 2 ORDERS @ $30EA | Sublicense Agreement Fee | $ | 325.00 | 1510000316 | 2009 09 23 | $ | 325.00 |
| | Escrow / Title | FNT - 4ORDERS @ $25EA / 3ORDERS @ $75EA MAR 09 | Sublicense Agreement Fee | $ | 325.00 | 1510000251 | 2009 05 28 | $ | 325.00 |
| MISSION GROVE REALTY | Escrow / Title | CTT 1 @ $100EA OCT 2007 | Sublicense Agreement Fee | $ | 100.00 | 2180000185 | 2007 12 04 | $ | 100.00 |
| | Natural Hazard Disclosure | DSCSRS 1 ORDER @ 25 EA 1207 | Sublicense Agreement Fee | $ | 25.00 | 1000001256 | 2008 02 14 | $ | 25.00 |
| | Natural Hazard Disclosure | DSCSRS 1 ORDER @ 25EA NOVEMBER 2007 | Sublicense Agreement Fee | $ | 25.00 | 1000001131 | 2008 01 23 | $ | 25.00 |
| | Natural Hazard Disclosure | DSCSRS 2 @ $25 APRIL 2008 | Sublicense Agreement Fee | $ | 50.00 | 1000002257 | 2008 06 27 | $ | 50.00 |
| | Natural Hazard Disclosure | DSCSRS 2 @ $25EA OCT 2007 | Sublicense Agreement Fee | $ | 50.00 | 1000000808 | 2007 12 14 | $ | 50.00 |
| | Natural Hazard Disclosure | DSCSRS 3@25.00 01/08 | Sublicense Agreement Fee | $ | 75.00 | 1000001432 | 2008 03 06 | $ | 75.00 |
| | Natural Hazard Disclosure | DSCSRS 4@25.00 02/08 | Sublicense Agreement Fee | $ | 100.00 | 1000001535 | 2008 04 21 | $ | 100.00 |
| | Natural Hazard Disclosure | DSCSRS 5 @ $25 MARCH 2008 | Sublicense Agreement Fee | $ | 125.00 | 1000001804 | 2008 05 08 | $ | 125.00 |
| | Escrow / Title | FNT - 1 ORDER @ $100 12/07 | Sublicense Agreement Fee | $ | 100.00 | 1500000271 | 2008 02 19 | $ | 375.00 |
| | Escrow / Title | FNT - 3 ORDERS @ $100, $75 1/08 | Sublicense Agreement Fee | $ | 275.00 | 1500000271 | 2008 02 19 | $ | 375.00 |
| | Escrow / Title | FNT 1 @ $100 MARCH 2008 | Sublicense Agreement Fee | $ | 100.00 | 1500000387 | 2008 05 02 | $ | 100.00 |
| | Escrow / Title | FNT 1 ORDERS @ 100EA 02/08 | Sublicense Agreement Fee | $ | 100.00 | 1500000331 | 2008 03 25 | $ | 150.00 |
| | Escrow / Title | FNT 1@100.00 11/07 | Sublicense Agreement Fee | $ | 100.00 | 1500000215 | 2008 01 03 | $ | 100.00 |
| | Escrow / Title | FNT 3 @ $100EA OCT 2007 | Sublicense Agreement Fee | $ | 300.00 | 1500000158 | 2007 12 04 | $ | 300.00 |
| COLDWELL BANKER PREMIER REAL ESTATE - FAIRBANKS GRP (MONTECINO AND ASSOCIATES) | Escrow / Title | CTT 1 @ $75EA FEB 2009 | Sublicense Agreement Fee | $ | 75.00 | 2180000762 | 2009 03 26 | $ | 75.00 |
| | Escrow / Title | CTT 1 @ $75EA JULY 2008 | Sublicense Agreement Fee | $ | 75.00 | 2180000544 | 2008 08 17 | $ | 75.00 |
| | Escrow / Title | CTT 1 @ $75EA NOV 2008 | Sublicense Agreement Fee | $ | 75.00 | 2180000723 | 2009 02 11 | $ | 75.00 |
| | Escrow / Title | CTT 1 ORDER @ 75 EA 02/08 | Sublicense Agreement Fee | $ | 75.00 | 2180000324 | 2008 03 25 | $ | 75.00 |
| | Escrow / Title | CTT 1 ORDER @ 75 EA 1207 | Sublicense Agreement Fee | $ | 75.00 | 2180000263 | 2008 02 15 | $ | 75.00 |
| | Escrow / Title | CTT 1@75.00 07/07 | Sublicense Agreement Fee | $ | 75.00 | 2180000219 | 2008 01 03 | $ | 75.00 |
| | Escrow / Title | CTT 2 @ $75 MAY 2008 | Sublicense Agreement Fee | $ | 150.00 | 2180000426 | 2008 06 27 | $ | 150.00 |
| | Escrow / Title | CTT 2 @ $75EA SEPT 2008 | Sublicense Agreement Fee | $ | 150.00 | 2180000610 | 2008 11 20 | $ | 150.00 |
| | Escrow / Title | CTT 2@75.00 08/07 | Sublicense Agreement Fee | $ | 150.00 | 2180000220 | 2008 01 03 | $ | 150.00 |
| | Escrow / Title | CTT 2@75.00 10/07 . | Sublicense Agreement Fee | $ | 150.00 | 2180000221 | 2008 01 03 | $ | 150.00 |
| | Escrow / Title | CTT 3 @ $75 APRIL 2008 | Sublicense Agreement Fee | $ | 225.00 | 2180000404 | 2008 05 31 | $ | 225.00 |
| | Escrow / Title | CTT 3 @ $75EA AUG 2008 | Sublicense Agreement Fee | $ | 225.00 | 2180000575 | 2008 10 23 | $ | 225.00 |
| | Escrow / Title | CTT 4 @ $75EA JUNE 2008 | Sublicense Agreement Fee | $ | 300.00 | 2180000465 | 2008 08 05 | $ | 300.00 |
| | Escrow / Title | CTT - 2 ORDERS @ $75EA 05/09 | Sublicense Agreement Fee | $ | 150.00 | | | | |

220

25

$20,835

$3055

SOTHEBYS INTERNATIONAL REALTY / MORRISON HOUSE

SKY REAL ESTATE AND MORTGAGE COMPANY

NEW CONCEPT REALTY

**NITZEL AND NITZEL REALTY SERVICES**

| Category | Description | Fee Type | Ref. | Date | Amount |
|---|---|---|---|---|---|
| Escrow/Title | TKOIR-3 @ 310GS3i OCT 2007 | Subfuance Agreement Fee | | 2007 12 04 | $125.00 |
| Escrow/Title | TKOIR-1 ORDER @$100 EA-MAY 2010 | Subfuance Agreement Fee | | 2010 07 09 | $100.00 |
| Natural Hazard Disclosure | DISCSBS-6 ORD @$265A-MAR 2010 | Subfuance Agreement Fee | | 2010 03 17 | $125.00 |
| Natural Hazard Disclosure | DISCSBS-4 ORDER @$25 EA-APR 2010 | Subfuance Agreement Fee | | 2010 05 04 | $25.00 |
| Natural Hazard Disclosure | DISCSBS-2 ORDERS @$25 EA-MAY 2010 | Subfuance Agreement Fee | | 2010 07 09 | $50.00 |
| Natural Hazard Disclosure | DISCSBS-33 ORDERS @$25 EA-TO DATE | Subfuance Agreement Fee | | 2010 06 04 | $825.00 |
| Natural Hazard Disclosure | DISCSBS-4 ORDERS @$25 EA JUNE 2010 | Subfuance Agreement Fee | | 2010 08 19 | $100.00 |
| Home Warranty | FNNW-1 ORD @$15 EA-MAR 2010 | Subfuance Agreement Fee | | 2010 05 17 | $15.00 |
| Home Warranty | FNNW-2 ORDERS @ 15 EA JUNE 2010 | Subfuance Agreement Fee | | 2010 08 19 | $30.00 |
| Home Warranty | FNNW-1 ORDER @$15 EA-APRIL 2010 | Subfuance Agreement Fee | | 2010 05 04 | $15.00 |
| Home Warranty | FNNW-15 ORDER @$15 EA-TO DATE | Subfuance Agreement Fee | | 2010 06 04 | $225.00 |
| Home Warranty | FNNW-2 ORDERS @$15 EA-MAY 2010 | Subfuance Agreement Fee | | 2010 07 09 | $30.00 |
| Escrow/Title | TKOIR-5 ORDER @$100 EA-TO DATE | Subfuance Agreement Fee | | 2010 07 09 | $500.00 |

**NORTHWEST EQUITY HOME SALES**

| Category | Description | Fee Type | Ref. | Date | Amount |
|---|---|---|---|---|---|
| Home Warranty | FNNW-1 ORDER @ $15 EA-JUNE 09 | Subfuance Agreement Fee | | 2009 06 08 | $15.00 |
| Home Warranty | FNNW-1 ORDER-$15 EA-JUL 2009 | Subfuance Agreement Fee | | 2010 02 05 | $15.00 |
| Home Warranty | FNNW-1 ORDER @ $15 EA-AUGST 09 | Subfuance Agreement Fee | | 2009 10 07 | $15.00 |

**PACIFIC PINNACLE REAL ESTATE SERVICES**

| Category | Description | Fee Type | Ref. | Date | Amount |
|---|---|---|---|---|---|
| Natural Hazard Disclosure | DISC 3OURCE 1 @ $25EA DEC 08 | Subfuance Agreement Fee | | 2009 02 24 | $25.00 |
| Natural Hazard Disclosure | DISCSBS 1 @ $25EA APR 2008 | Subfuance Agreement Fee | | 2008 06 31 | $25.00 |
| Natural Hazard Disclosure | DISCSBS 3 @ $25EA OCT 2008 | Subfuance Agreement Fee | | 2008 12 18 | $75.00 |
| Natural Hazard Disclosure | DISCSBS 1 ORDER @ $25A 1207 | Subfuance Agreement Fee | | 2008 02 14 | $25.00 |
| Natural Hazard Disclosure | DISCSBS @$25.00 DHAF | Subfuance Agreement Fee | | 2008 04 27 | $25.00 |
| Natural Hazard Disclosure | DISCSBS 2 @$25 MAR 2008 | Subfuance Agreement Fee | | 2008 06 27 | $50.00 |
| Natural Hazard Disclosure | DISCSBS 2 @ $25 APRIL 2008 | Subfuance Agreement Fee | | 2008 06 18 | $50.00 |
| Natural Hazard Disclosure | DISCSBS 2 @ $25EA JULY 2008 | Subfuance Agreement Fee | | 2008 08 18 | $50.00 |
| Natural Hazard Disclosure | DISCSBS 2 @ $25EA OCT 2008 | Subfuance Agreement Fee | | 2008 12 14 | $50.00 |
| Natural Hazard Disclosure | DISCSBS 2 ORDERS @ 25 FEB 2010 | Subfuance Agreement Fee | | 2010 04 07 | $50.00 |
| Natural Hazard Disclosure | DISCSBS 2 @ $25EA JAN 10 | Subfuance Agreement Fee | | 2010 02 10 | $50.00 |
| Natural Hazard Disclosure | DISCSBS 2 ORDERS @ 25 EA NOVEMBER 2007 | Subfuance Agreement Fee | | 2008 01 23 | $50.00 |
| Natural Hazard Disclosure | DISCSBS 3 @ $25 EA MARCH 2009 | Subfuance Agreement Fee | | 2009 05 06 | $75.00 |
| Natural Hazard Disclosure | DISCSBS 3 @ $25EA-JUNE 2008 | Subfuance Agreement Fee | | 2008 08 05 | $75.00 |
| Natural Hazard Disclosure | DISCSBS 5 @ $25EA NOV 2008 | Subfuance Agreement Fee | | 2009 01 23 | $125.00 |
| Natural Hazard Disclosure | DISCSBS 3 ORD @$25EA-MAR 2010 | Subfuance Agreement Fee | | 2010 05 10 | $75.00 |
| Natural Hazard Disclosure | DISCSBS 7 @ $25EA MAY 2008 | Subfuance Agreement Fee | | 2008 07 23 | $165.00 |
| Natural Hazard Disclosure | DISCSBS 49 @ $25EA JAN 2009 | Subfuance Agreement Fee | | 2009 03 12 | $120.00 |
| Natural Hazard Disclosure | DISCSBS 4 @ $25EA SEPT 2008 | Subfuance Agreement Fee | | 2008 11 25 | $100.00 |
| Natural Hazard Disclosure | DISCSBS-4 ORDERS @ $25 EA SALARY DAY | Subfuance Agreement Fee | | 2008 03 30 | $100.00 |
| Natural Hazard Disclosure | DISCSBS 1 ORDER @ $25 EA-OCT 09 | Subfuance Agreement Fee | | 2009 12 14 | $25.00 |
| Natural Hazard Disclosure | DISCSBS 1 ORDER @ $25EA-OCT 09 | Subfuance Agreement Fee | | 2010 02 05 | $25.00 |
| Natural Hazard Disclosure | DISCSBS-1 ORDER @$25 EA-SEP 09 | Subfuance Agreement Fee | | 2009 11 05 | $25.00 |
| Natural Hazard Disclosure | DISCSBS-2 ORDERS @$25 EA-DEC 08 | Subfuance Agreement Fee | | 2009 07 24 | $50.00 |
| Natural Hazard Disclosure | DISCSBS-3 ORDER @$25EA-AUG 09 | Subfuance Agreement Fee | | 2009 10 13 | $75.00 |
| Natural Hazard Disclosure | DISCSBS-2OOR @ $25EA-NOV 09 | Subfuance Agreement Fee | | 2010 01 26 | $50.00 |
| Natural Hazard Disclosure | DISCSBS-3ORDERS @ $25EA-MAR 09 | Subfuance Agreement Fee | | 2009 05 06 | $85.00 |
| Natural Hazard Disclosure | DISCSBS-4 ORDERS @ $25EA-MAY 09 | Subfuance Agreement Fee | | 2009 08 20 | $100.00 |
| Natural Hazard Disclosure | DISCSBS-1 ORDER @$25 EA-APR 09 | Subfuance Agreement Fee | | 2009 12 14 | $25.00 |
| Natural Hazard Disclosure | DISCSBS-3 ORDERS @$25 EA-JUNE 2010 | Subfuance Agreement Fee | | 2010 08 19 | $75.00 |
| Natural Hazard Disclosure | DISCSBS-5 ORDER @ $25EA-MAY 2010 | Subfuance Agreement Fee | | 2010 07 30 | $125.00 |
| Natural Hazard Disclosure | DISCSBS-3 ORDERS @$25EA-JULY 09 | Subfuance Agreement Fee | | 2009 09 24 | $75.00 |
| Natural Hazard Disclosure | DISCSBS-ORDER @ $25EA-JLY 09 | Subfuance Agreement Fee | | 2009 10 13 | $50.00 |
| Home Warranty | FNNW 1 @ $15EA AUG 2008 | Subfuance Agreement Fee | | 2008 10 23 | $15.00 |
| Home Warranty | FNNW 1 @ $15EA FEB 2009 | Subfuance Agreement Fee | | 2009 04 21 | $15.00 |
| Home Warranty | FNNW 1 @ $15EA JAN 2008 | Subfuance Agreement Fee | | 2008 04 02 | $15.00 |
| Home Warranty | FNNW 1 ORDER @ 15 09 | Subfuance Agreement Fee | | 2009 12 14 | $15.00 |
| Home Warranty | FNNW 1 ORDER @ 15EA NOVEMBER 2007 | Subfuance Agreement Fee | | 2008 01 23 | $65.00 |
| Home Warranty | FNNW 1 ORDER-$15 EA SEPT 09 | Subfuance Agreement Fee | | 2008 11 02 | $15.00 |
| Home Warranty | FNNW 2 @ $15 APRIL 2008 | Subfuance Agreement Fee | | 2008 06 31 | $30.00 |
| Home Warranty | FNNW 2 @ $15EA JUNE 2008 | Subfuance Agreement Fee | | 2008 09 05 | $105.00 |
| Home Warranty | FNNW 2 @ $15EA OCT 2008 | Subfuance Agreement Fee | | 2008 12 15 | $55.00 |
| Home Warranty | FNNW 2 ORDERS @ 15 EA JAN 10 | Subfuance Agreement Fee | | 2010 03 18 | $55.00 |
| Home Warranty | FNNW 2 ORDERS @ 15 EA JUNE 2010 | Subfuance Agreement Fee | | 2010 08 19 | $30.00 |
| Home Warranty | FNNW 2@$15.00 0608 | Subfuance Agreement Fee | | 2008 07 22 | $120.00 |
| Home Warranty | FNNW 3 @ $15EA JULY 2008 | Subfuance Agreement Fee | | 2008 08 18 | $85.00 |
| Home Warranty | FNNW 3 @ $15EA NOVEMBER 08 | Subfuance Agreement Fee | | 2009 01 23 | $45.00 |
| Home Warranty | FNNW 4 @ $15EA NOV 2009 | Subfuance Agreement Fee | | 2009 12 14 | $45.00 |
| Home Warranty | FNNW 4 @ $15EA-SEPT 2008 | Subfuance Agreement Fee | | 2008 11 30 | $60.00 |
| Home Warranty | FNNW-4 ORDERS @ $15EA-MAR 2010 | Subfuance Agreement Fee | | 2008 12 17 | $60.00 |
| Home Warranty | FNNW-1 ORD@$15EA-FEB 2010 | Subfuance Agreement Fee | | 2010 04 07 | $15.00 |

CSW LLC    WWW    DE    DISC 42

$ 391,070

| Category / Company | Description | Fee Type | Amount | Date | ID | Amount |
|---|---|---|---|---|---|---|
| Home Warranty | FNHW-1 ORDER @ $15/ESA-APRIL 09 | Subfranchise Agreement Fee | $ | 15.00 | 2009 05 04 | 1000040722 | $ | 15.00 |
| Home Warranty | FNHW-5 ORDERS @ $15/EA-MAY 09 | Subfranchise Agreement Fee | $ | 55.00 | 2009 06 08 | 1100020267 | $ | 55.00 |
| Home Warranty | FNHW-2 ORDERS @ $15/EA-JULY 09 | Subfranchise Agreement Fee | $ | 30.00 | 2009 10 07 | 1000025845 | $ | 30.00 |
| Home Warranty | FNHW-2 ORDERS @ $15/EA-AUGUST 09 | Subfranchise Agreement Fee | $ | 30.00 | 2009 07 07 | 1000050703 | $ | 30.00 |
| Home Warranty | FNHW-2 ORDERS @ $15/EA-MAY 09 | Subfranchise Agreement Fee | $ | 165.00 | 2009 07 07 | 1000030743 | $ | 165.00 |
| Home Warranty | FNHW-2 ORDERS @ $15 EA-APRIL 2010 | Subfranchise Agreement Fee | $ | 30.00 | 2009 07 06 | 1000007389 | $ | 30.00 |
| Home Warranty | FNHW-3 ORDERS @ $15 EA-MAY 2010 | Subfranchise Agreement Fee | $ | 45.00 | 2009 08 03 | 1000020547 | $ | 45.00 |
| Home Warranty | FNHW-3 ORDERS @ $15/EA-JULY 09 | Subfranchise Agreement Fee | $ | 45.00 | 2009 07 28 | 1000026344 | $ | 45.00 |
| Home Warranty | FNHW-4 ORDERS @ $15/EA-JUNE 09 | Subfranchise Agreement Fee | $ | 60.00 | 2009 09 25 | 1000000225 | $ | 60.00 |
| Escrow / Title | RNT-1 @ $25/EA-MARCH 2009 | Subfranchise Agreement Fee | $ | 25.00 | 2009 06 03 | 1000003008 | $ | 25.00 |
| PACIFIC UNION INTERNATIONAL INC (MORGAN LANE MARIN) | | | | | | | |
| Natural Hazard Disclosure | DXCESS-10 ORDERS@$25/EA-MAR 2010 | Subfranchise Agreement Fee | $ | 250.00 | 2010 05 12 | 1000007373 | $ | 250.00 |
| Natural Hazard Disclosure | DXCESS-4 ORDER@$25/EA-FEB 2012 | Subfranchise Agreement Fee | $ | 100.00 | 2010 04 07 | 1000025967 | $ | 100.00 |
| Natural Hazard Disclosure | DXCESS-5 ORDER @ 25 EA-JAN 10 | Subfranchise Agreement Fee | $ | 125.00 | 2010 03 10 | 1000009005 | $ | 125.00 |
| Natural Hazard Disclosure | DXCESS-1 ORDER @ $25/EA-DEC 09 | Subfranchise Agreement Fee | $ | 25.00 | 2010 02 03 | 1000000779 | $ | 25.00 |
| Natural Hazard Disclosure | DXCESS-4 ORDERS @25 EA-NOV 09 | Subfranchise Agreement Fee | $ | 255.00 | 2010 06 24 | 1000007864 | $ | 255.00 |
| Natural Hazard Disclosure | DXCESS-4 ORDERS @$25 EA-MAY 2010 | Subfranchise Agreement Fee | $ | 65.00 | 2010 07 00 | 1000007889 | $ | 65.00 |
| Natural Hazard Disclosure | DXC3RB-2 ORDERS@$25 EA SEPT 09 | Subfranchise Agreement Fee | $ | 50.00 | 2010 01 28 | 1000009005 | $ | 50.00 |
| Natural Hazard Disclosure | DXC3RB-3 ORDERS@$25 EA-AUG 09 | Subfranchise Agreement Fee | $ | 75.00 | 2010 01 28 | 1000000588 | $ | 75.00 |
| Natural Hazard Disclosure | DXC3RB-2 ORDERS@$25 EA OCT 09 | Subfranchise Agreement Fee | $ | 150.00 | 2010 05 04 | 1000007644 | $ | 150.00 |
| Natural Hazard Disclosure | DXC3RB-7 ORDERS @$25 EA-JUNE 2010 | Subfranchise Agreement Fee | $ | 175.00 | 2010 05 19 | 1000007679 | $ | 175.00 |
| Home Warranty | FNHW-1 ORDER@$15-MAR 2010 | Subfranchise Agreement Fee | $ | 60.00 | 2010 05 12 | 1000007378 | $ | 60.00 |
| Home Warranty | FNHW-4 ORDER@ 15 EA APRIL 2010 | Subfranchise Agreement Fee | $ | 60.00 | 2010 04 07 | 1000000879 | $ | 60.00 |
| Home Warranty | FNHW-2 ORDERS @$15 EA-JAN 10 | Subfranchise Agreement Fee | $ | 75.00 | 2010 03 10 | 1000003181 | $ | 75.00 |
| Home Warranty | FNHW-2 ORDERS @$15 EA-APRIL 2010 | Subfranchise Agreement Fee | $ | 30.00 | 2010 06 24 | 1000007864 | $ | 30.00 |
| Home Warranty | FNHW-3 ORDERS @$15 EA-MAY 2010 | Subfranchise Agreement Fee | $ | 45.00 | 2010 07 09 | 1000007889 | $ | 45.00 |
| Home Warranty | FNHW-3 ORDERS @$15 EA-NOV 09 | Subfranchise Agreement Fee | $ | 45.00 | 2010 01 28 | 1000000588 | $ | 45.00 |
| Home Warranty | FNHW-4 ORDERS@$15 EA-NOV 09 | Subfranchise Agreement Fee | $ | 75.00 | 2010 01 28 | 1000000588 | $ | 75.00 |
| Home Warranty | FNHW-4 ORDER@ $15-DEC-2009 | Subfranchise Agreement Fee | $ | 60.00 | 2010 02 03 | 1000000727 | $ | 60.00 |
| Home Warranty | FNHW-1 ORDER @ 15 EACH 09/09 | Subfranchise Agreement Fee | $ | 15.00 | 2009 09 25 | 1000000333 | $ | 15.00 |
| PARAGON REAL ESTATE AND MERIDIAN MORTGAGE | | | | | | | |
| Escrow / Title | RNT-1 ORDER @ $50,000 EA-APRIL 2010 | Subfranchise Agreement Fee | $ | 50.00 | 2010 06 04 | 1000015402 | $ | 50.00 |
| Escrow / Title | RNT-CR1 ORD@$50/EA-JUN 2010 | Subfranchise Agreement Fee | $ | 4,775.00 | 2010 07 29 | 1818000473 | $ | 4,775.00 |
| Escrow / Title | RNT-CR2 ORD@$250/EA-JAN 2010 | Subfranchise Agreement Fee | $ | 6,500.00 | 2010 07 09 | 1818000604 | $ | 6,500.00 |
| Escrow / Title | RNT-60 ORDERS @$25 EA-MAY 2010 | Subfranchise Agreement Fee | $ | 2,250.00 | 2010 07 09 | 1818003428 | $ | 2,250.00 |
| PARAMOUNT EQUITY MORTGAGE | | | | | | | |
| Escrow / Title | CTT-1 ORDER @ $100 108 | Subfranchise Agreement Fee | $ | 200.00 | 2004 02 19 | 2189000278 | $ | 200.00 |
| Escrow / Title | CTT-1 @ $100 MAY 2008 | Subfranchise Agreement Fee | $ | 100.00 | 2008 06 27 | 2189000816 | $ | 100.00 |
| Escrow / Title | CTT-1 @ $100/EA JULY 2008 | Subfranchise Agreement Fee | $ | 100.00 | 2008 11 30 | 1030000816 | $ | 100.00 |
| Escrow / Title | CTT-2 @ $100 MARCH 2008 | Subfranchise Agreement Fee | $ | 200.00 | 2008 04 05 | 2189000816 | $ | 200.00 |
| Escrow / Title | CTT-3 @ $100/EA OCT 2007 | Subfranchise Agreement Fee | $ | 200.00 | 2007 12 04 | 2189000186 | $ | 200.00 |
| Escrow / Title | CTT 2@$100.00 11/07 | Subfranchise Agreement Fee | $ | 200.00 | 2008 01 03 | 2189000223 | $ | 200.00 |
| Escrow / Title | CTT-1@ $100 APRIL 2008 | Subfranchise Agreement Fee | $ | 400.00 | 2008 08 07 | 2190000056 | $ | 400.00 |
| Escrow / Title | CTT-8@$100.00 2008 | Subfranchise Agreement Fee | $ | 350.00 | 2008 04 09 | 2189000248 | $ | 350.00 |
| Escrow / Title | RNT-1 ORDER @ $100 1/08 | Subfranchise Agreement Fee | $ | 150.00 | 2008 02 19 | 1600000274 | $ | 150.00 |
| Escrow / Title | RNT-2 ORDERS @ $100/EA - DEC-08 | Subfranchise Agreement Fee | $ | 200.00 | 2008 01 29 | 1500000884 | $ | 200.00 |
| Escrow / Title | RNT-1 @ $100/EA FEB 2008 | Subfranchise Agreement Fee | $ | 100.00 | 2008 02 28 | 1500000771 | $ | 100.00 |
| Escrow / Title | RNT-1 @ $100/EA MARCH 2008 | Subfranchise Agreement Fee | $ | 100.00 | 2008 04 25 | 1500000045 | $ | 100.00 |
| Escrow / Title | RNT-1 @ $100/EA NOV 2008 | Subfranchise Agreement Fee | $ | 100.00 | 2009 03 31 | 1500000771 | $ | 100.00 |
| Escrow / Title | RNT-4@$100/EA SEPT 2007 | Subfranchise Agreement Fee | $ | 400.00 | 2008 12 18 | 1500000055 | $ | 400.00 |
| Escrow / Title | RNT-1 @ $100/EA SEP 2007 | Subfranchise Agreement Fee | $ | 100.00 | 2007 12 04 | 1500000160 | $ | 100.00 |
| Escrow / Title | RNT-1 1,000 @$100 EA-APRIL 2010 | Subfranchise Agreement Fee | $ | 100.00 | 2009 12 04 | 1500000428 | $ | 100.00 |
| Escrow / Title | RNT-2 $100 MARCH 2008 | Subfranchise Agreement Fee | $ | 200.00 | 2008 06 31 | 1500000150 | $ | 200.00 |
| Escrow / Title | RNT-2 @ $100/EA AUG 2007 | Subfranchise Agreement Fee | $ | 200.00 | 2007 12 04 | 1500000426 | $ | 200.00 |
| Escrow / Title | RNT-8 @ $100/EA JUNE 2008 | Subfranchise Agreement Fee | $ | 400.00 | 2008 07 05 | 1500000965 | $ | 400.00 |
| Escrow / Title | RNT-3 @ $100/EA APRIL 2008 | Subfranchise Agreement Fee | $ | 300.00 | 2008 05 20 | 1400000048 | $ | 300.00 |
| Escrow / Title | RNT-3 $100 FEB 2008 | Subfranchise Agreement Fee | $ | 300.00 | 2008 03 31 | 1500000771 | $ | 300.00 |
| Escrow / Title | RNT-3 @ $100/EA JAN 2009 | Subfranchise Agreement Fee | $ | 300.00 | 2009 03 31 | 1500000884 | $ | 300.00 |
| Escrow / Title | RNT-3 @ $100/EA NOV 2008 | Subfranchise Agreement Fee | $ | 300.00 | 2009 05 19 | 1500000054 | $ | 300.00 |
| Escrow / Title | RNT-3 @ $100/EA SEPT 2008 | Subfranchise Agreement Fee | $ | 300.00 | 2008 11 20 | 1500000016 | $ | 300.00 |
| Escrow / Title | RNT 5@$100 10/07 | Subfranchise Agreement Fee | $ | 500.00 | 2008 01 03 | 1500000223 | $ | 500.00 |
| Escrow / Title | RNT-4 @ $100/EA - AUG 2009 | Subfranchise Agreement Fee | $ | 400.00 | 2008 09 25 | 1500000584 | $ | 400.00 |
| Escrow / Title | RNT-4 @ $100 JULY 2008 | Subfranchise Agreement Fee | $ | 450.00 | 2008 09 27 | 1500000216 | $ | 450.00 |
| Escrow / Title | RNT-4 ORDERS @ $100/EA-AUG 09 | Subfranchise Agreement Fee | $ | 400.00 | 2008 09 25 | 1500000216 | $ | 400.00 |
| Escrow / Title | RNT 4@$100.00 11/07 | Subfranchise Agreement Fee | $ | 400.00 | 2008 01 03 | 1500000216 | $ | 400.00 |
| Escrow / Title | RNT-5 ORDERS @ $100/EA-JUL09-2009 | Subfranchise Agreement Fee | $ | 700.00 | 2008 01 03 | 1500000216 | $ | 700.00 |
| Escrow / Title | RNT-6 @$100.00 11/07 | Subfranchise Agreement Fee | $ | 500.00 | 2008 06 03 | 1500000579 | $ | 500.00 |
| Escrow / Title | RNT-6 $100 MAY 2008 | Subfranchise Agreement Fee | $ | 600.00 | 2008 09 27 | 1500000444 | $ | 600.00 |
| PEABODY AND PLUM REALTORS INC | | | | | | | |

**PREMIER REALTY & ASSET MANAGEMENT**

| Category | Description | Fee | Amount | ID | Date | Amount |
|---|---|---|---|---|---|---|
| Home Warranty | RNW 16 @ $X EA JULY 2009 | Sublicense Agreement Fee | $ 270.00 | 1000002784 | 2008 09 16 | $ 1,200.00 |
| Home Warranty | RNW 2 ORDERS @ $15 EA JUNE 2010 | Sublicense Agreement Fee | $ 60.00 | 1000002567 | 2008 09 15 | $ 300.00 |
| Home Warranty | RNW 4 @ $15 MARCH 2009 | Sublicense Agreement Fee | $ 60.00 | 1000004480 | 2008 09 18 | $ 650.00 |
| Home Warranty | RNW 4 @ $15EA FEB 2009 | Sublicense Agreement Fee | $ 60.00 | 1000002567 | 2008 12 04 | $ 105.00 |
| Home Warranty | RNW 4 ORDERS @ $15 1008 | Sublicense Agreement Fee | $ 60.00 | 1000002120 | 2008 12 04 | $ 90.00 |
| Home Warranty | RNW 4 ORDERS @ $15A NOVEMBER 2007 | Sublicense Agreement Fee | $ 60.00 | 1000003532 | 2008 04 21 | $ 660.00 |
| Home Warranty | RNW 4 @ $X 2007 | Sublicense Agreement Fee | $ 60.00 | 1000002120 | 2008 04 21 | $ 60.00 |
| Home Warranty | RNW 4 @ $40 OCT 2007 | Sublicense Agreement Fee | $ 75.00 | 1000007281 | 2008 04 21 | $ 465.00 |
| Home Warranty | RNW 5 ORDERS @ $15 ... 2010 | Sublicense Agreement Fee | $ 60.00 | 1000003595 | 2009 01 26 | $ 75.00 |
| Home Warranty | RNW 6 ORDERS @ $15 EA JAN 10 | Sublicense Agreement Fee | $ 90.00 | 1000002524 | 2008 11 02 | $ 75.00 |
| Home Warranty | RNW 7 ORDERS @ $15 EA JAN 10 | Sublicense Agreement Fee | $ 105.00 | 1000003791 | 2008 09 10 | $ 90.00 |
| Home Warranty | RNW 9 @ $15EA JUNE 2009 | Sublicense Agreement Fee | $ 135.00 | 1000002653 | 2008 08 18 | $ 615.00 |
| Home Warranty | RNW DUPLICATE | Sublicense Agreement Fee | $ (90.00) | 1000004480 | 2008 04 22 | $ 90.00 |
| Home Warranty | RNW DUPLICATE | Sublicense Agreement Fee | $ 42.00 | 1000007846 | 2008 09 17 | $ 105.00 |
| Home Warranty | RNW 1 ORDER @ $15 EA MAY 2010 | Sublicense Agreement Fee | $ 42.00 | 1000007848 | 2008 09 04 | $ 660.00 |
| Home Warranty | RNW 4 ORDERS @ $15EA APRIL 2010 | Sublicense Agreement Fee | $ 60.00 | 1000002848 | 2008 09 03 | $ 105.00 |
| Escrow / Title | RNW 4 ORDERS @ $15EA JULY 09 | Sublicense Agreement Fee | $ 75.00 | 1000007383 | 2010 04 07 | $ 445.00 |
| Escrow / Title | RNW 4 ORDERS @ NOV...MAR 09 | Sublicense Agreement Fee | $ 75.00 | 1170000254 | 2008 09 25 | $ 60.00 |
| Escrow / Title | RNW 5 ORDERS @ $15EA MAR 09 | Sublicense Agreement Fee | $ 90.00 | 1170000238 | 2008 05 08 | $ 75.00 |
| Escrow / Title | RNW 7 ORDERS @ $5.5EA-AUGUST 09 | Sublicense Agreement Fee | $ 105.00 | 1000003545 | 2009 10 07 | $ 100.00 |
| Escrow / Title | RNW 4 ORDERS @ $15EA-APRIL 09 | Sublicense Agreement Fee | $ 150.00 | 1010000103 | 2008 02 04 | $ 670.00 |
| Escrow / Title | RNT 1 ORDER @ FEB 2007 | Sublicense Agreement Fee | $ 76.00 | 1510000103 | 2008 02 26 | $ 75.00 |
| Escrow / Title | RNT - 16 ORDERS @ $75EA - DEC 08 | Sublicense Agreement Fee | $ 1,200.00 | 1500002595 | 2008 01 29 | $ 1,200.00 |
| Escrow / Title | RNT - 4 ORDERS @ $75 10/07 | Sublicense Agreement Fee | $ 60.00 | 1500000275 | 2008 02 19 | $ 150.00 |
| Escrow / Title | RNT - 4 ORDERS @ $75 1/08 | Sublicense Agreement Fee | $ 76.00 | 1500000075 | 2008 02 28 | $ 300.00 |
| Escrow / Title | RNT - 4 ORDERS @ $75 09/08 | Sublicense Agreement Fee | $ 375.00 | 1500002381 | 2008 03 08 | $ 375.00 |
| Escrow / Title | RNT *@ $75 AUG 2008 | Sublicense Agreement Fee | $ 75.00 | 1170000204 | 2008 12 09 | $ 75.00 |
| Escrow / Title | RNT 1 @ $75 FEB 2008 | Sublicense Agreement Fee | $ 75.00 | 1600000472 | 2008 09 27 | $ 150.00 |
| Escrow / Title | RNT 1 @ $75 JAN 2008 | Sublicense Agreement Fee | $ 76.00 | 1500000223 | 2008 03 12 | $ 150.00 |
| Escrow / Title | RNT 1 @ $75EA JAN 2009 | Sublicense Agreement Fee | $ 75.00 | 1510000223 | 2007 12 04 | $ 75.00 |
| Escrow / Title | RNT 1 @ $75EA OCT 2007 | Sublicense Agreement Fee | $ 75.00 | 1500000191 | 2007 12 04 | $ 450.00 |
| Escrow / Title | RNT 1 @ $75EA SEPT 2008 | Sublicense Agreement Fee | $ 76.00 | 1600000296 | 2008 11 25 | $ 75.00 |
| Escrow / Title | RNT 1 @ $75EA NOV 2008 | Sublicense Agreement Fee | $ 76.00 | 1600000226 | 2008 12 22 | $ 600.00 |
| Escrow / Title | RNT 1 @ $20.00 09/07 | Sublicense Agreement Fee | $ 750.00 | 1010000131 | 2008 09 05 | $ 750.00 |
| Escrow / Title | RNT 10 @ $75JUN 2009 | Sublicense Agreement Fee | $ 75.00 | 1500000342 | 2008 09 21 | $ 75.00 |
| Escrow / Title | RNT 12 @ $75 MARCH 2008 | Sublicense Agreement Fee | $ 900.00 | 1570000471 | 2009 07 16 | $ 900.00 |
| Escrow / Title | RNT 12 @ $75EA JULY 2008 | Sublicense Agreement Fee | $ 900.00 | 1500000608 | 2008 09 17 | $ 900.00 |
| Escrow / Title | RNT 13 @ $75EA JAN 2009 | Sublicense Agreement Fee | $ 975.00 | 1500000596 | 2008 10 23 | $ 975.00 |
| Escrow / Title | RNT -14 ORDERS @ $75EA FEB 2010 | Sublicense Agreement Fee | $ 1,200.00 | 1500000289 | 2008 04 26 | $ 1,200.00 |
| Escrow / Title | RNT -14 ORDERS @ $75EA-AUG 08 | Sublicense Agreement Fee | $ 150.00 | 1500000177 | 2008 03 23 | $ 1,350.00 |
| Escrow / Title | RNT 2 @ $75EA NOV 2008 | Sublicense Agreement Fee | $ 150.00 | 1500000208 | 2008 12 16 | $ 150.00 |
| Escrow / Title | RNT 20 @ $75.00 08/08 | Sublicense Agreement Fee | $ 150.00 | 1500000029 | 2008 07 23 | $ 150.00 |
| Escrow / Title | RNT 2 ORDERS @ $75 EA 1/2010 | Sublicense Agreement Fee | $ 1,575.00 | 1500000221 | 2008 07 18 | $ 1,575.00 |
| Escrow / Title | RNT 33 ORDERS @ $75EA-JUNE 09 | Sublicense Agreement Fee | $ 2,475.00 | 1500000154 | 2009 07 16 | $ 2,475.00 |
| Escrow / Title | RNT 22 @ $75EA NOV 2008 | Sublicense Agreement Fee | $ 1,650.00 | 1500000088 | 2008 12 18 | $ 1,650.00 |
| Escrow / Title | RNT 23 @ $75EA FEB 2009 | Sublicense Agreement Fee | $ 1,725.00 | 1600000417 | 2008 03 21 | $ 1,725.00 |
| Escrow / Title | RNT 24 ORDERS @ $75EA-APR 2010 | Sublicense Agreement Fee | $ 1,800.00 | 1530000044 | 2008 05 12 | $ 2,325.00 |
| Escrow / Title | RNT 25 @ $75EA JAN 2008 | Sublicense Agreement Fee | $ 1,875.00 | 1500000204 | 2007 12 04 | $ 450.00 |
| Escrow / Title | RNT 26 @ $75EA OCT 2008 | Sublicense Agreement Fee | $ 1,875.00 | 1800000258 | 2008 06 27 | $ 525.00 |
| Escrow / Title | RNT 27 @ $75EA OCT 2007 | Sublicense Agreement Fee | $ 1,650.00 | 1500000016 | 2008 12 04 | $ 1,875.00 |
| Escrow / Title | RNT 28 @ $75EA MARCH 2008 | Sublicense Agreement Fee | $ 2,250.00 | 1600000354 | 2008 03 23 | $ 1,650.00 |
| Escrow / Title | RNT 30 @ $75 EA JAN 2010 | Sublicense Agreement Fee | $ 2,250.00 | 1500000283 | 2009 02 28 | $ 2,250.00 |
| Escrow / Title | RNT 33 ORDERS @ $75 EA-NOV 09 | Sublicense Agreement Fee | $ 2,475.00 | 1520000370 | 2009 12 21 | $ 2,475.00 |
| Escrow / Title | RNT 32 @ $75EA MARCH 2010 | Sublicense Agreement Fee | $ 2,400.00 | 1500000471 | 2011 04 29 | $ 2,400.00 |
| Escrow / Title | RNT 33 @ $75EA SEPT 2008 | Sublicense Agreement Fee | $ 75.00 | 1600000354 | 2009 05 19 | $ 2,475.00 |
| Escrow / Title | RNT 4 @ $75EA DEC 2007 | Sublicense Agreement Fee | $ 2,350.00 | 1000004471 | 2008 06 23 | $ 2,350.00 |
| Escrow / Title | RNT 7 @ $75 MAY 2009 | Sublicense Agreement Fee | $ 2,425.00 | 1530000147 | 2009 10 26 | $ 1,500.00 |
| Escrow / Title | RNT 7 @ FEB10 11/07 | Sublicense Agreement Fee | $ 625.00 | 1500000416 | 2008 06 27 | $ 525.00 |
| Escrow / Title | RNT 8 @ $75 APRIL 2008 | Sublicense Agreement Fee | $ 600.00 | 1530000773 | 2009 10 26 | $ 600.00 |
| Escrow / Title | RNT-8 ORDERS@$75EA-JULY 2009 | Sublicense Agreement Fee | $ 600.00 | 1820001846 | 2009 02 20 | $ 600.00 |
| Escrow / Title | RNT-10 ORD @ $75 EA-NOV 09 | Sublicense Agreement Fee | $ 1,725.00 | 1520001373 | 2009 12 21 | $ 1,125.00 |
| Escrow / Title | RNT-16 ORD @ $75EA-XAG09 | Sublicense Agreement Fee | $ 1,200.00 | 1500000471 | 2009 05 19 | $ 1,200.00 |
| Escrow / Title | RNT-30 ORDERS @ $75EA-JULY 09 | Sublicense Agreement Fee | $ 75.00 | 1500000354 | 2008 05 19 | $ 2,475.00 |
| Escrow / Title | RNT-33 ORDERS @ $75 EA-SEPT 09 | Sublicense Agreement Fee | $ 2,475.00 | 1000006471 | 2008 09 23 | $ 2,350.00 |
| Escrow / Title | RNT-56 ORDERS @ $75 EA-JULY 09 | Sublicense Agreement Fee | $ 2,400.00 | 1530001147 | 2009 10 26 | $ 1,900.00 |
| Escrow / Title | RNT-DUPLICATE ORDER YTD 2009 | Sublicense Agreement Fee | $ 300.00 | 1530000773 | 2009 10 26 | $ 300.00 |
| Escrow / Title | RNT-1 ORDERS @$75 EA-MAY 2010 | Sublicense Agreement Fee | $ 825.00 | 1800001757 | 2009 07 20 | $ 525.00 |
| Escrow / Title | RNT -4 ORDERS @ $75EA MAY 09 | Sublicense Agreement Fee | $ (660.00) | 1500001447 | 2010 03 28 | $ 1,500.00 |
| Escrow / Title | RNT -4 ORDERS @ $75EA MAY 09 | Sublicense Agreement Fee | $ 3,300.00 | 1500000866 | 2009 07 12 | $ 3,300.00 |

$XXX,XXX

Ex. 109  Wan B  DS  74

$13350

**PRESTIGE SOTHEBY'S INT'L REALTY**
(DBA/AKA JODRA PROFESSIONAL REAL ESTATE SERVICES)

**PRUDENTIAL CALIFORNIA REALTY PLEASANTON**

RE/MAX CENTRAL SANTA ROSA

RE/MAX REAL ESTATE SERVICES

Ex 20   Par 55   DEF 535

$33,535

| Category | Description | | | |
|---|---|---|---|---|
| Natural Hazard Disclosure | | Sublicense Agreement Fee | | |
| Home Warranty | | Sublicense Agreement Fee | | |
| Escrow / Title | | Sublicense Agreement Fee | | |

**REAL ESTATE USA**

| Category | Description | | | |
|---|---|---|---|---|
| Escrow / Title | | Sublicense Agreement Fee | | |

**REALTY WORLD BROKERS NETWORK**

| Category | Description | | | |
|---|---|---|---|---|
| Natural Hazard Disclosure | | Sublicense Agreement Fee | | |

ES. 51   Disc 264

KELLER WILLIAMS REALTY SILICON VALLEY
(REALTY WORLD CALIFORNIA PROPERTY NETWORK)

RED BRICK REALTY LLC

REMAX ADVISORS

RE/MAX SANTA BARBARA

RE/MAX MAGIC

RE/MAX PERFORMANCE PLUS

DISC. 87

65 187 VOL 4

REMAX PIONEER

REMAX STAR PROPERTIES
(REMAX DOLPHIN REAL ESTATE)

ALTERA REAL ESTATE
(RE/MAX VALLEY PROPERTIES)

*(Handwritten notations in margins: "Es 291 nnn 19 DSC 30" and "$27,415")*

## SILICON VALLEY CAPITAL FUNDING
### (RAINTANG REAL ESTATE & FIRST FINANCIAL CAPITAL)

| Type | Description | Fee | Amount | Date | ID | Amount |
|---|---|---|---|---|---|---|
| Escrow / Title | CTT 3 @ $525A OCT 2008 | Subclause Agreement Fee | $ 525.00 | 2007 12 24 | 21500002153 | $ 525.00 |
| Natural Hazard Disclosure | DSC #3 @ $200A 11/07 | Subclause Agreement Fee | $ 600.00 | 2008 01 03 | 21500002224 | $ 600.00 |
| Natural Hazard Disclosure | DSC#3 10 @ $25 APRIL 2008 | Subclause Agreement Fee | $ 250.00 | 2008 04 07 | 1000002285 | $ 250.00 |
| Natural Hazard Disclosure | DSC#3A 14 ORDERS @ $25A NOVEMBER 2007 | Subclause Agreement Fee | $ 410.00 | 2008 01 42 | 1000001150 | $ 410.00 |
| Natural Hazard Disclosure | DSC#3 16 @ $350A JULY 2008 | Subclause Agreement Fee | $ 840.00 | 2008 05 18 | 1000002286 | $ 840.00 |
| Natural Hazard Disclosure | DSC#3 17 @ $25 FEB 2009 | Subclause Agreement Fee | $ 470.00 | 2008 04 17 | 1000001916 | $ 470.00 |
| Natural Hazard Disclosure | DSC#3 18 @ $25A AUG 2008 | Subclause Agreement Fee | $ 685.00 | 2008 10 23 | 1000002399 | $ 685.00 |
| Natural Hazard Disclosure | DSC#3 19 ORDERS @ $25A 09/08 | Subclause Agreement Fee | $ 720.00 | 2008 07 22 | 1000002348 | $ 720.00 |
| Natural Hazard Disclosure | DSC#3 @ $25A JUNE 2008 | Subclause Agreement Fee | $ 855.00 | 2008 06 03 | 1000002302 | $ 855.00 |
| Natural Hazard Disclosure | DSC#3 11 @ $25 MARCH 2008 | Subclause Agreement Fee | $ 265.00 | 2008 03 06 | 1000001909 | $ 265.00 |
| Natural Hazard Disclosure | DSC#3 13 @ $25A OCT 2007 | Subclause Agreement Fee | $ 275.00 | 2007 12 14 | 1000002816 | $ 275.00 |
| Natural Hazard Disclosure | DSC#3 12 ORDERS @ $25A 1207 | Subclause Agreement Fee | $ 245.00 | 2008 02 14 | 1000002181 | $ 245.00 |
| Natural Hazard Disclosure | DSC#3 @ $225A 01/08 | Subclause Agreement Fee | $ 225.00 | 2008 03 05 | 1000001441 | $ 225.00 |
| Home Warranty | FNIW 11 @ $150A JULY 2008 | Subclause Agreement Fee | $ 540.00 | 2008 09 05 | 1000002769 | $ 540.00 |
| Home Warranty | FNIW 11 @ $150A JUNE 2008 | Subclause Agreement Fee | $ 865.00 | 2008 09 05 | 1000002689 | $ 865.00 |
| Home Warranty | FNIW 9 ORDERS @ $33A 01/08 | Subclause Agreement Fee | $ 33.22 | 2008 02 24 | 1000001193 | $ 33.22 |
| Home Warranty | FNIW 8 $15 FEB 2008 | Subclause Agreement Fee | $ 470.00 | 2008 04 17 | 1000001816 | $ 470.00 |
| Home Warranty | FNIW 9 ORDER $ 15 2A 1207 | Subclause Agreement Fee | $ 245.00 | 2008 02 14 | 1000001891 | $ 245.00 |
| Home Warranty | FNIW 9 @ $15 09/08 | Subclause Agreement Fee | $ 720.00 | 2008 02 24 | 1000002466 | $ 720.00 |
| Home Warranty | FNIW 6 @ $15 MARCH 2008 | Subclause Agreement Fee | $ 285.00 | 1000001909 | 1000002181 | $ 285.00 |
| Home Warranty | FNIW 5 @ $15 APRIL 2008 | Subclause Agreement Fee | $ 75.00 | 2008 05 21 | 1000002283 | $ 75.00 |
| Home Warranty | FNIW 5 @ $15EA OCT 2007 | Subclause Agreement Fee | $ 276.25 | 2007 12 14 | 1000002816 | $ 276.25 |
| Home Warranty | FNIW 8 @ $15EA AUG 2008 | Subclause Agreement Fee | $ 685.00 | 2008 10 23 | 1000002189 | $ 685.00 |
| Home Warranty | FNIW 4 ORDERS @ $15A NOVEMBER 2007 | Subclause Agreement Fee | $ 416.00 | 2008 01 26 | 1000001150 | $ 416.00 |
| Escrow / Title | FNT 1 @ $100 MARCH 2008 | Subclause Agreement Fee | $ 700.00 | 2008 05 06 | 1000001150 | $ 700.00 |
| Escrow / Title | FNT 5 @ $100EA AUG 2008 | Subclause Agreement Fee | $ 500.00 | 2008 10 23 | 1500002395 | $ 500.00 |

| Type | Description | Fee | Amount | Date | ID | Amount |
|---|---|---|---|---|---|---|
| Escrow / Title | CTT-7 ORDERS @ $75A JULY 09 | Subclause Agreement Fee | $ 525.00 | 2009 08 20 | 1300001016 | $ 525.00 |
| Natural Hazard Disclosure | DSC#3A 1 @ $25EA JAN 2009 | Subclause Agreement Fee | $ 25.00 | 2009 03 12 | 1200001002 | $ 25.00 |
| Natural Hazard Disclosure | DSC#3 1 ORDERS @ $50A JAN 2010 | Subclause Agreement Fee | $ 50.00 | 2010 02 12 | 1000000276 | $ 50.00 |
| Natural Hazard Disclosure | DSC#3 1 ORDERS @ $5 10/09 | Subclause Agreement Fee | $ 50.00 | 2009 12 14 | 90000000274 | $ 50.00 |
| Natural Hazard Disclosure | DSC#3A 1 ORDER @ $25EA DEC 09 | Subclause Agreement Fee | $ 25.00 | 2010 01 12 | 1000000756 | $ 25.00 |
| Natural Hazard Disclosure | DSC#3A 1 ORDERS @ $25 5A MAY 2010 | Subclause Agreement Fee | $ 25.00 | 2010 07 02 | 1000000618 | $ 25.00 |
| Natural Hazard Disclosure | DSC#3 2 ORDERS @ $25A MARCH 09 | Subclause Agreement Fee | $ 50.00 | 2009 07 04 | 1000000812 | $ 50.00 |
| Natural Hazard Disclosure | DSC#3A 3 ORDERS @ $25 5A APRIL 2010 | Subclause Agreement Fee | $ 75.00 | 2010 05 10 | 1000007861 | $ 75.00 |
| Home Warranty | FNIW 1 ORDER @ $15 EA SEPT 09 | Subclause Agreement Fee | $ 15.00 | 2009 11 03 | 1000000536 | $ 15.00 |
| Escrow / Title | FNT 11 @ $15 APRIL 2010 | Subclause Agreement Fee | $ 850.00 | 2010 05 10 | 1000000773 | $ 850.00 |
| Escrow / Title | FNT 28 @ $75EA MARCH 2009 | Subclause Agreement Fee | $ 825.00 | 2009 03 31 | 1500000773 | $ 825.00 |
| Escrow / Title | FNT 26 @ $75EA JAN 2009 | Subclause Agreement Fee | $ 900.00 | 2009 03 12 | 1500000461 | $ 900.00 |
| Escrow / Title | FNT 44 ORDERS @ $75 EA 2010 | Subclause Agreement Fee | $ 2,100.00 | 2010 04 08 | 1000002015 | $ 2,100.00 |
| Escrow / Title | FNT 58 @ $75EA APR 2009 | Subclause Agreement Fee | $ 2,850.00 | 2009 07 02 | 1500002016 | $ 2,850.00 |
| Escrow / Title | FNT 5 ORDERS @ 75 EA SEPT 09 | Subclause Agreement Fee | $ 375.00 | 2009 10 22 | 1500025154 | $ 375.00 |
| Escrow / Title | FNT 7 ORDERS @ $75 EA FEB 10 | Subclause Agreement Fee | $ 525.00 | 2010 03 25 | 1200001002 | $ 525.00 |
| Escrow / Title | FNT-9 ORDER @ $75A DEC 09 | Subclause Agreement Fee | $ 675.00 | 2010 01 12 | 1500000756 | $ 675.00 |
| Escrow / Title | FNT 1 ORDER @ $75 EA MAY 2010 | Subclause Agreement Fee | $ 75.00 | 2010 07 02 | 1500000741 | $ 75.00 |
| Escrow / Title | FNT-4 ORDER @ $75A JAN 10 | Subclause Agreement Fee | $ 300.00 | 2010 02 12 | 1500025081 | $ 300.00 |
| Escrow / Title | FNT-4 ORDERS @ $75EA AUG 09 | Subclause Agreement Fee | $ 300.00 | 2009 05 10 | 1500001463 | $ 300.00 |
| Escrow / Title | FNT-5 ORDERS @ $75A NOV 2009 | Subclause Agreement Fee | $ 375.00 | 2009 03 23 | 1500001423 | $ 375.00 |
| Escrow / Title | FNT-6 ORDERS @ $75EA OCT 09 | Subclause Agreement Fee | $ 450.00 | 2010 11 17 | 1500001772 | $ 450.00 |
| Escrow / Title | FNT-6 ORDERS @ $75EA DEC 09 | Subclause Agreement Fee | $ 450.00 | 2010 02 03 | 5400001477 | $ 450.00 |
| Escrow / Title | FNT-16 ORDERS @ $75 EA APRIL 2010 | Subclause Agreement Fee | $ 1,200.00 | 2010 05 04 | 1500001712 | $ 1,200.00 |
| Escrow / Title | FNT-12 ORDERS @ $75 EA MAY 09 | Subclause Agreement Fee | $ 900.00 | 2009 06 12 | 9600002073 | $ 900.00 |

## SEAREAL INVESTMENTS INC

| Type | Description | Fee | Amount | Date | ID | Amount |
|---|---|---|---|---|---|---|
| Escrow / Title | CTT-5 ORDERS @ $25A APR 2010 | Subclause Agreement Fee | $ 125.00 | 2010 09 11 | 2100007021 | $ 125.00 |
| Escrow / Title | CTT 5 ORDERS @ 25 EA FEB 2010 | Subclause Agreement Fee | $ 175.00 | 2010 04 28 | 2100007002 | $ 175.00 |
| Escrow / Title | CTT 6 ORDERS @ 25 EA MARCH 2010 | Subclause Agreement Fee | $ 150.00 | 2010 04 28 | 2100007065 | $ 150.00 |
| Escrow / Title | CTT-4 ORG @ $25EA JAN 2010 | Subclause Agreement Fee | $ 250.00 | 2010 04 28 | 1000027286 | $ 250.00 |
| Escrow / Title | CTT-3 ORG @ $25 Ev JAN 10 | Subclause Agreement Fee | $ 50.00 | 2010 04 48 | 2100001416 | $ 50.00 |
| Frame Warranty | FNEW-2 ORDERS @ $25A MAR 2010 | Subclause Agreement Fee | $ 75.00 | 2010 07 26 | 2100000550 | $ 75.00 |
| Home Warranty | FNHW 3 @ $15 EA JUNE 2010 | Subclause Agreement Fee | $ 30.00 | 2010 05 12 | 1000027436 | $ 30.00 |
| Home Warranty | FNHW-4 ORG @ $15EA JAN 10 | Subclause Agreement Fee | $ 30.00 | 2010 03 15 | 1000033916 | $ 30.00 |
| Home Warranty | FNHW-5 ORDERS @ $15 EA APRIL 2010 | Subclause Agreement Fee | $ 75.00 | 2010 04 10 | 1000002552 | $ 75.00 |
| Home Warranty | FNHW 4 ORDERS @ $15 FEB 2010 | Subclause Agreement Fee | $ 210.00 | 2010 09 04 | 1000002156 | $ 210.00 |
| Home Warranty | FNHW-5 ORG @ $15 EA MARCH 2010 | Subclause Agreement Fee | $ 450.00 | 2010 05 12 | 1000027436 | $ 450.00 |
| Escrow / Title | FNHW 4 ORG @ $15 FEB 2010 | Subclause Agreement Fee | $ 80.00 | 2010 07 05 | 1000002556 | $ 80.00 |

## SELL SMART ADVANTAGE

| Type | Description | Fee | Amount | Date | ID | Amount |
|---|---|---|---|---|---|---|
| Home Warranty | FNHW 1 @ $15EA FEB 2008 | Subclause Agreement Fee | $ 15.00 | 2008 04 31 | 1000002465 | $ 15.00 |
| Home Warranty | FNHW 1 @ $15EA SEPT 2008 | Subclause Agreement Fee | $ 15.00 | 2008 11 20 | 1000002253 | $ 15.00 |

$6,790

**SHARP REALTY**

| Type | Description | Fee | Amount | ID | Date | Amount |
|---|---|---|---|---|---|---|
| Home Warranty | RNW 1 ORDERS @ 16 EA JUNE 2010 | Subdivision Agreement Fee | 15.00 | 1020007567 | 2010 06 19 | $ 15.00 |
| Home Warranty | RNW 2 @ $15 EA AUG 2009 | Subdivision Agreement Fee | 300.00 | 1000000395 | 2009 10 23 | $ 300.00 |
| Home Warranty | RNW 2 @ $15 EA JUNE 2008 | Subdivision Agreement Fee | 350.00 | 1000000395 | 2008 06 05 | $ 350.00 |
| Home Warranty | RNW 2 @ 16.00 7/08 | Subdivision Agreement Fee | 30.00 | 1020000647 | 2008 06 25 | $ 30.00 |
| Home Warranty | RNW 3 ORDER @ 16 EA 1/07 | Subdivision Agreement Fee | 15.00 | 1000000428 | 2009 08 14 | $ 15.00 |
| Home Warranty | RNW 4 ORDERS @ $15 EA APRIL 2010 | Subdivision Agreement Fee | 15.00 | 1000000584 | 2010 08 04 | $ 15.00 |
| Home Warranty | RNW 4 ORDERS @ $15 EA MAY 07 | Subdivision Agreement Fee | 15.00 | 1000000912 | 2009 07 07 | $ 15.00 |
| Home Warranty | RNW 4 ORDERS @ $15 EA AUG/07 | Subdivision Agreement Fee | 15.00 | 1000000584 | 2009 07 25 | $ 15.00 |
| Home Warranty | RNW 4 ORDERS @ $15 EA SEPT 08 | Subdivision Agreement Fee | 300.00 | 1000000159 | 2009 05 31 | $ 300.00 |
| Escrow / Title | RN 1 @ $75 APRIL 2008 | Subdivision Agreement Fee | 75.00 | 1500000340 | 2008 08 06 | $ 75.00 |
| Escrow / Title | RN 1 @ $75 MARCH 2008 | Subdivision Agreement Fee | 75.00 | 1500000282 | 2008 08 27 | $ 75.00 |
| Escrow / Title | RN 2 @ $75 MAY 2008 | Subdivision Agreement Fee | 150.00 | 1500000478 | 2008 05 27 | $ 150.00 |
| Escrow / Title | RN 2 @ $75.00 1/007 | Subdivision Agreement Fee | 150.00 | 1010000041 | 2008 02 06 | $ 150.00 |

**SHARP REALTY** (continued)

| Type | Description | Fee | Amount | ID | Date | Amount |
|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | DECSRS 1 ORDER @ $25 EA 1/2007 | Subdivision Agreement Fee | 25.00 | 1020001397 | 2008 02 14 | $ 40.00 |
| Escrow / Title | RNW 1 @ $15 APRIL 2008 | Subdivision Agreement Fee | 15.00 | 1000001268 | 2008 05 21 | $ 15.00 |
| Home Warranty | RNW 1 ORDER @ 16 EA 1/07 | Subdivision Agreement Fee | 15.00 | 1020001287 | 2009 02 14 | $ 40.00 |
| Home Warranty | RNW 2 @ $15 MARCH 2008 | Subdivision Agreement Fee | 30.00 | 1010000041 | 2008 02 04 | $ 30.00 |

**SMART CLICK REALTY**

| Type | Description | Fee | Amount | ID | Date | Amount |
|---|---|---|---|---|---|---|
| Escrow / Title | CTT 2 @ $75 EA JULY 2008 | Subdivision Agreement Fee | 150.00 | 2180000646 | 2008 03 17 | $ 150.00 |
| Escrow / Title | CTT 2 @ $75 EA OCT 2008 | Subdivision Agreement Fee | 150.00 | 2180000695 | 2008 12 18 | $ 150.00 |
| Escrow / Title | CTT 2 ORDERS @ $75 EA MAY 07 | Subdivision Agreement Fee | 150.00 | 2180000037 | 2009 10 22 | $ 150.00 |
| Escrow / Title | CTT 3 ORDERS @ $75 EA SEPT 08 | Subdivision Agreement Fee | 225.00 | 2180000073 | 2009 03 31 | $ 225.00 |
| Escrow / Title | CTT 4 @ $75 EA FEB 2008 | Subdivision Agreement Fee | 300.00 | 2180000073 | 2008 11 20 | $ 300.00 |
| Escrow / Title | CTT 4 @ $75 EA SEPT 2008 | Subdivision Agreement Fee | 300.00 | 2180000013 | 2009 01 04 | $ 300.00 |
| Escrow / Title | CTT 6 ORDER @ $75 EA JAN 07 | Subdivision Agreement Fee | 450.00 | 2180001437 | 2010 01 27 | $ 450.00 |
| Escrow / Title | CTT 1 ORDER @ $75 EA JUNE 2008 | Subdivision Agreement Fee | 75.00 | 2180001637 | 2010 05 19 | $ 75.00 |
| Escrow / Title | CTT 3 ORDERS @ $75 EA AUG 09 | Subdivision Agreement Fee | 225.00 | 2180001427 | 2009 05 26 | $ 225.00 |
| Escrow / Title | CTT 3 ORDERS @ $75 EA JULY 08 | Subdivision Agreement Fee | 225.00 | 2180001397 | 2009 12 14 | $ 225.00 |
| Escrow / Title | CTT 3 ORDERS @ $75 EA OCT 08 | Subdivision Agreement Fee | 125.00 | 2180001246 | 2009 02 04 | $ 125.00 |
| Natural Hazard Disclosure | DISC SOURCE 1 @ $55 EL DEC 08 | Subdivision Agreement Fee | 125.00 | 1000000346 | 2008 12 24 | $ 40.00 |
| Natural Hazard Disclosure | DISCSRS 1 ORDER @ $45 EA 2/08 | Subdivision Agreement Fee | 25.00 | 1000000910 | 2008 10 15 | $ 25.00 |
| Natural Hazard Disclosure | DISCSRS 1 @ $25 EA 5/06 | Subdivision Agreement Fee | 25.00 | 1000000515 | 2008 10 15 | $ 25.00 |
| Natural Hazard Disclosure | DISCSRS 1 LOWERS @ $25 EA MAY 07 | Subdivision Agreement Fee | 25.00 | 1000000040 | 2008 09 30 | $ 25.00 |
| Natural Hazard Disclosure | DISCSRS 11 @ $25 EA JULY 2008 | Subdivision Agreement Fee | 275.00 | 1020002776 | 2008 09 16 | $ 265.00 |
| Natural Hazard Disclosure | DISCSRS 3 @ $25 EA JAN 2008 | Subdivision Agreement Fee | 75.00 | 1020004341 | 2009 11 04 | $ 75.00 |
| Natural Hazard Disclosure | DISCSRS 3 @ $25 EA NOV 2008 | Subdivision Agreement Fee | 75.00 | 1000000066 | 2009 02 11 | $ 75.00 |
| Natural Hazard Disclosure | DISCSRS 3 @ $25 EA OCT 2008 | Subdivision Agreement Fee | 75.00 | 1000003608 | 2008 12 16 | $ 75.00 |
| Natural Hazard Disclosure | DISCSRS 3 @ $25 EA AUG/SEPT 10 | Subdivision Agreement Fee | 75.00 | 1000000083 | 2008 10 25 | $ 75.00 |
| Natural Hazard Disclosure | DISCSRS 4 @ $25 EA SEPT 2008 | Subdivision Agreement Fee | 100.00 | 1000000366 | 2009 11 20 | $ 150.00 |
| Natural Hazard Disclosure | DISCSRS 4 ORDER @ $25 EA MAR 2010 | Subdivision Agreement Fee | 100.00 | 1000000387 | 2010 01 18 | $ 100.00 |
| Natural Hazard Disclosure | DISCSRS 6 @ $25 EA FEB 2008 | Subdivision Agreement Fee | 175.00 | 1000000810 | 2008 08 04 | $ 175.00 |
| Natural Hazard Disclosure | DISCSRS 8 ORDERS @ $25 10/08 | Subdivision Agreement Fee | 200.00 | 1000000878 | 2009 12 14 | $ 200.00 |
| Natural Hazard Disclosure | DISCSRS-ORD03 DISC4 NOV 08 | Subdivision Agreement Fee | 25.00 | 1000000982 | 2009 09 30 | $ 25.00 |
| Natural Hazard Disclosure | DISCSRS-ORD06 @ $75 EA APRIL 09 | Subdivision Agreement Fee | 50.00 | 1000000775 | 2009 01 05 | $ 50.00 |
| Natural Hazard Disclosure | DISCSRS-ORD06 @ $25 EA AUG 09 | Subdivision Agreement Fee | 50.00 | 1000000740 | 2009 10 14 | $ 50.00 |
| Natural Hazard Disclosure | DISCSRS 2 ORDERS @ $25 EA MAY/2010 | Subdivision Agreement Fee | 50.00 | 1000000255 | 2009 07 24 | $ 50.00 |
| Natural Hazard Disclosure | DISCSRS-3 ORDERS @ $25 EA MAY/2010 | Subdivision Agreement Fee | 50.00 | 1000000708 | 2010 07 02 | $ 50.00 |
| Natural Hazard Disclosure | DISCSRS-3 ORDERS @ $25 EA JULY 09 | Subdivision Agreement Fee | 75.00 | 1000000163 | 2009 08 02 | $ 75.00 |
| Natural Hazard Disclosure | DISCSRS-4 ORDER @ $25 EA JUNE 2010 | Subdivision Agreement Fee | 75.00 | 1000000982 | 2009 10 25 | $ 75.00 |
| Natural Hazard Disclosure | DISCSRS-5 ORDERS @ $25 EA JUNE 2010 | Subdivision Agreement Fee | 100.00 | 1000000191 | 2008 11 05 | $ 100.00 |
| Natural Hazard Disclosure | DISCSRS-6 ORDERS @ $25 EA MAR 09 | Subdivision Agreement Fee | 125.00 | 1000000240 | 2009 09 04 | $ 125.00 |
| Natural Hazard Disclosure | DISCSRS-6 ORDERS @ $25 EA APRIL 2010 | Subdivision Agreement Fee | 150.00 | 1000000043 | 2010 05 04 | $ 150.00 |
| Home Warranty | RNW 1 @ $15 OCT 2008 | Subdivision Agreement Fee | 15.00 | 1000000619 | 2008 04 17 | $ 15.00 |
| Home Warranty | RNW 1 @ $16 OCT 2008 | Subdivision Agreement Fee | 15.00 | 1000000003 | 2009 10 23 | $ 40.00 |
| Home Warranty | RNW 1 @ $16 SEPT 09 | Subdivision Agreement Fee | 15.00 | 1020001913 | 2008 09 04 | $ 115.00 |
| Home Warranty | RNW 1 ORDERS @ 15 EA JUNE 2010 | Subdivision Agreement Fee | 15.00 | 1000001565 | 2010 03 19 | $ 40.00 |
| Home Warranty | RNW 2 @ $15 EA AUG 2008 | Subdivision Agreement Fee | 30.00 | 1000000266 | 2009 10 23 | $ 60.00 |
| Home Warranty | RNW 2 ORDERS @ $16 JAN 07 | Subdivision Agreement Fee | 30.00 | 1000001384 | 2009 01 04 | $ 30.00 |
| Home Warranty | RNW 2 ORDERS @ 16 EA 6/10 GREEER 08 | Subdivision Agreement Fee | 30.00 | 1020000949 | 2010 02 27 | $ 30.00 |
| Home Warranty | RNW 3 @ $15 EA NOV 2008 | Subdivision Agreement Fee | 45.00 | 1000003771 | 2009 01 26 | $ 45.00 |
| Home Warranty | RNW 7 @ $15 EA JULY 2009 | Subdivision Agreement Fee | 105.00 | 1020002771 | 2008 08 18 | $ 380.00 |
| Home Warranty | RNWH-ORDER @ $75 EA FEB 2010 | Subdivision Agreement Fee | 15.00 | 1000000127581 | 2009 04 02 | $ 15.00 |
| Home Warranty | RNWH 1 ORDER @ $75 EA AUG 09 | Subdivision Agreement Fee | 15.00 | 1000000948 | 2010 10 07 | $ 15.00 |
| Home Warranty | RNWH 1 ORDER @ $15 EA JULY 2010 | Subdivision Agreement Fee | 15.00 | 1000005563 | 2009 08 03 | $ 15.00 |
| Home Warranty | RNWH 1 @ $15 EA OCT 08 | Subdivision Agreement Fee | 15.00 | 1000000965 | 2010 07 01 | $ 65.00 |
| Home Warranty | RNWH 1 @ $15 EA NOV 2008 | Subdivision Agreement Fee | 15.00 | 1000000045 | 2009 12 16 | $ 15.00 |

**SMART GROWTH CORPORATION (KELLER WILLIAMS ROSEVILLE)**

**SUGAR PINE REALTY INC (SMAC SUGAR PINE REALTY)**

SUPERSTAR REALTY

TIMOTHY TOYE & ASSOCIATES

URBANSPACE REAL ESTATE SERVICES INC

**WATSON TOUCHSTONE REAL ESTATE**
**(WATSON REALTY)**

| | | | | | | |
|---|---|---|---|---|---|---|
| Escrow / Title | RNT-1 ORDER @ $75 E-A APRIL 2010 | Subbroker Agreement Fee | $ | 150.00 | | 150.00 |
| Escrow / Title | RNT-1 ORDER @ $75 E-A MAY 2010 | Subbroker Agreement Fee | $ | 150.00 | | 150.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Escrow / Title | CTT 1 ORDER @ 100EA 0209 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | CTT 3 @ $100 JAN & MAR | Subbroker Agreement Fee | $ | 220.00 | | 220.00 |
| Escrow / Title | CTT 7 ORDERS @ 100 EA 1107 | Subbroker Agreement Fee | $ | 700.00 | | 700.00 |
| Escrow / Title | PNT-2 ORDERS @ $100 1108 | Subbroker Agreement Fee | $ | 200.00 | | 200.00 |
| Escrow / Title | RNT 1@100.00 1007 | Subbroker Agreement Fee | $ | 150.00 | | 150.00 |
| Escrow / Title | TICOR-4 ORDERS @ $100 LP5 | Subbroker Agreement Fee | $ | 600.00 | | 600.00 |
| Escrow / Title | TICOR 1 @ $100 MARCH 2008 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | TICOR 1 @ $100EA AUG 2008 | Subbroker Agreement Fee | $ | 150.00 | | 150.00 |
| Escrow / Title | TICOR 1 @ $100EA AUG 2008 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | TICOR 2 ORDERS @ 100EA 0208 | Subbroker Agreement Fee | $ | 220.00 | | 220.00 |

**WEST USA REALTY**

| | | | | | | |
|---|---|---|---|---|---|---|
| Escrow / Title | CTT- 1 ORDER @ $75 1/09 | Subbroker Agreement Fee | $ | 75.00 | | 75.00 |
| Escrow / Title | CTT 1 @ $75 APRIL 2008 | Subbroker Agreement Fee | $ | 75.00 | | 75.00 |
| Escrow / Title | CTT 1 @ $75EA SEPT 2008 | Subbroker Agreement Fee | $ | 75.00 | | 75.00 |
| Escrow / Title | CTT 1@ $75 MARCH 2008 | Subbroker Agreement Fee | $ | 75.00 | | 75.00 |
| Escrow / Title | CT2 @ $75 FEB 2008 | Subbroker Agreement Fee | $ | 150.00 | | 150.00 |
| Escrow / Title | CT3 @ $75 MAY 2008 | Subbroker Agreement Fee | $ | 225.00 | | 225.00 |
| Escrow / Title | CTT 3 $75EA AUG 2008 | Subbroker Agreement Fee | $ | 225.00 | | 225.00 |
| Escrow / Title | CTT 3 $75EA JULY 2008 | Subbroker Agreement Fee | $ | 225.00 | | 225.00 |
| Escrow / Title | CTT 3 $75EA JUNE 2008 | Subbroker Agreement Fee | $ | 225.00 | | 225.00 |
| Escrow / Title | CT3 ORDERS @ $75 3/07 1147 | Subbroker Agreement Fee | $ | 225.00 | | 225.00 |

**MORRO BAY REALTY**
**(WESTERN HERITAGE ENTERPRISES)**

| | | | | | | |
|---|---|---|---|---|---|---|
| Escrow / Title | CTT 1@100.00 1107 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Natural Hazard Disclosure | DISCERS 1 @ $25EA AUG 2008 | Subbroker Agreement Fee | $ | 25.00 | | 25.00 |
| Natural Hazard Disclosure | DISCERS-1 ORDER@$25 MAR 2010 | Subbroker Agreement Fee | $ | 25.00 | | 25.00 |
| Natural Hazard Disclosure | DISCERS 6 ORDERS @ $25 1/07 | Subbroker Agreement Fee | $ | 150.00 | | 150.00 |
| Natural Hazard Disclosure | DISCERS 6 ORDERS @ $25EA NOVEMBER 2007 | Subbroker Agreement Fee | $ | 150.00 | | 150.00 |
| Natural Hazard Disclosure | DISCERS $25 6-01 0108 | Subbroker Agreement Fee | $ | 225.00 | | 225.00 |
| Home Warranty | FNHW 1 @ $15 MARCH 2008 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 1 @ $15 DEC 2008 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 1 @ $15EA DEC 2008 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 1 @ $15EA JAN 2008 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 1 @ $15EA JULY 2008 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 1 @ $15EA NOV 2008 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 1 @ $15EA NOV 2008 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 1 ORDER @ 15 EA 1007 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 1 ORDERS $15 15-A JAN 10 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW 2 @ $15EA FEB 2008 | Subbroker Agreement Fee | $ | 30.00 | | 30.00 |
| Home Warranty | FNHW 2 @ $15EA OCT 2007 | Subbroker Agreement Fee | $ | 30.00 | | 30.00 |
| Home Warranty | FNHW 2 @ $15 FEB 2008 | Subbroker Agreement Fee | $ | 30.00 | | 30.00 |
| Home Warranty | FNHW- 2 ORDERS@$15.EA SEPT 08 | Subbroker Agreement Fee | $ | 30.00 | | 30.00 |
| Home Warranty | FNHW DUPLICATE | Subbroker Agreement Fee | $ | (15.00) | | (15.00) |
| Home Warranty | FNHW 1 ORDER @ $15EA MAR 07 | Subbroker Agreement Fee | $ | 15.00 | | 15.00 |
| Home Warranty | FNHW-1 ORDER @ $15 E-A APRIL 2009 | Subbroker Agreement Fee | $ | 30.00 | | 30.00 |
| Home Warranty | FNHW-1 ORDER @ $15 E-A MARCH 07 | Subbroker Agreement Fee | $ | 30.00 | | 30.00 |
| Home Warranty | FNHW-1 ORDER@$15EA AUG 09 | Subbroker Agreement Fee | $ | 30.00 | | 30.00 |
| Escrow / Title | RNT 1 ORDER @ $100 1/09 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | RNT 1 @ $100 1 @ $25 JUNE 2008 | Subbroker Agreement Fee | $ | 125.00 | | 125.00 |
| Escrow / Title | RNT 3 @ $100EA AUG 2008 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | RNT 1 @ $100EA FEB 2009 | Subbroker Agreement Fee | $ | 150.00 | | 150.00 |
| Escrow / Title | RNT 1 @ $100EA NOV 2008 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | RNT 1 @ $751 @ $25 JAN 2008 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | RNT 1 $100 1007 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | RNT 1 $100 1107 | Subbroker Agreement Fee | $ | 100.00 | | 100.00 |
| Escrow / Title | RNT 2 @ $100 MARCH 2008 | Subbroker Agreement Fee | $ | 250.00 | | 250.00 |
| Escrow / Title | RNT 2 @ $100EA JULY 2008 | Subbroker Agreement Fee | $ | 200.00 | | 200.00 |
| Escrow / Title | RNT-2 ORDERS @ $100 MAR 2009 | Subbroker Agreement Fee | $ | 200.00 | | 200.00 |
| Escrow / Title | RNT-2 ORDERS @ 100 E-A JUNE 2010 | Subbroker Agreement Fee | $ | 200.00 | | 200.00 |
| Escrow / Title | RNT 3@100.00 1007 | Subbroker Agreement Fee | $ | 320.00 | | 320.00 |
| Escrow / Title | RNT 3 @ $100EA AUG 2007 | Subbroker Agreement Fee | $ | 300.00 | | 300.00 |
| Escrow / Title | RNT 3 @ $100EA MARCH 2008 | Subbroker Agreement Fee | $ | 200.00 | | 200.00 |
| Escrow / Title | RNT 3 @ $100EA SEP 2007 | Subbroker Agreement Fee | $ | 220.00 | | 220.00 |
| Escrow / Title | RNT 4 @ $100 APRIL 2008 | Subbroker Agreement Fee | $ | 450.00 | | 450.00 |
| Escrow / Title | RNT 4 @ $100EA SEPT 2008 | Subbroker Agreement Fee | $ | 400.00 | | 400.00 |
| Escrow / Title | RNT 6 @ $100 FEB 2008 | Subbroker Agreement Fee | $ | 500.00 | | 500.00 |

Es 356

Disd 1

B19775

## WINCHESTER MOOSE REAL ESTATE AND LOANS

| | | | | | | |
|---|---|---|---|---|---|---|
| Imperial Title | RHT-5 ORD @ $10.22 EA APRIL 2010 | Subclerance Agreement Fee | $ | 500.00 | 1800031708 | 2010.05.29 | 500.00 |
| Escrow Title | RHT-4 ORD @ $10.22 EA-APR 09 | Subclerance Agreement Fee | $ | 100.00 | 1500041574 | 2008.12.21 | 100.00 |
| Escrow Title | RHT-7 ORDER @ $10X EA-JNE 09 | Subclerance Agreement Fee | $ | 100.00 | 1500000628 | 2009.07.16 | 100.00 |
| Escrow Title | RHT-3 ORD @ $0.05A-DEC 08 | Subclerance Agreement Fee | $ | 200.00 | 1500001479 | 2010.02.03 | 200.00 |
| Escrow Title | RHT-2 ORDERS @ $10.5 EA-OCT 08 | Subclerance Agreement Fee | $ | 200.00 | 1500001042 | 2009.12.14 | 200.00 |
| Escrow Title | RHT-3 ORDERS @ $10.5A-JLY 2008 | Subclerance Agreement Fee | $ | 200.00 | 1500007503 | 2010.08.31 | 200.00 |
| Escrow Title | RHT-5 ORDER @ $H10 EA-FEB 10 | Subclerance Agreement Fee | $ | 300.00 | 1500000955 | 2010.01.05 | 300.00 |
| Escrow Title | RHT-4 ORDERS @ $H5 EA-SEPT 09 | Subclerance Agreement Fee | $ | 400.00 | 1500001185 | 2009.10.27 | 400.00 |
| Escrow Title | RHT-5 ORDERS @ $H10 EA-JLY 09 | Subclerance Agreement Fee | $ | 500.00 | 1500001082 | 2009.09.23 | 500.00 |
| Escrow Title | RHT-6 ORDERS @ $H10 EA-JLY 09 | Subclerance Agreement Fee | $ | 500.00 | 1500001918 | 2008.05.20 | 500.00 |
| Escrow Title | RHT-5 ORDERS @ $H10 EA-MAY 09 | Subclerance Agreement Fee | $ | 600.00 | 1500000624 | 2009.06.12 | 600.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Merchant Record Statement | DEC SOURCE1 @ $25EA DEC 08 | Subclerance Agreement Fee | $ | 25.00 | 1000000846 | 2009.02.04 | 25.00 |
| Escrow Title | RNT-10 ORDERS @ $75EA-DEC 09 | Subclerance Agreement Fee | $ | 760.00 | 1500000568 | 2009.01.29 | 750.00 |
| Escrow Title | RNT-4 ORDERS @ $75 09 | Subclerance Agreement Fee | $ | 375.00 | 1100000258 | 2008.12.19 | 375.00 |
| Escrow Title | RNT-1 ORDER @ $325 2009 | Subclerance Agreement Fee | $ | 325.00 | 1100002024 | 2009.12.08 | 625.00 |
| Escrow Title | RNT-1 ORDERS @ 375 225 | Subclerance Agreement Fee | $ | 675.00 | 1500000342 | 2008.03.26 | 675.00 |
| Escrow Title | RNT 3 @ $75EA-JUNE 2008 | Subclerance Agreement Fee | $ | 75.00 | 1500000204 | 2008.06.05 | 75.00 |
| Escrow Title | RNT 2 @ $75 EA MAY 2009 | Subclerance Agreement Fee | $ | 150.00 | 1500000289 | 2009.06.16 | 150.00 |
| Escrow Title | RNT 2 ORDER @ 75 EA JAN 2010 | Subclerance Agreement Fee | $ | 140.00 | 1500000184 | 2010.02.18 | 150.00 |
| Escrow Title | RNT @ $75 APRIL 2008 | Subclerance Agreement Fee | $ | 225.00 | 1500000453 | 2008.05.31 | 226.00 |
| Escrow Title | RNT 3 @ $75 MAY 2009 | Subclerance Agreement Fee | $ | 225.00 | 1500000475 | 2009.06.07 | 225.00 |
| Escrow Title | RNT 3 @ $75EA-JULY 2008 | Subclerance Agreement Fee | $ | 225.00 | 1500000017 | 2008.08.17 | 225.00 |
| Escrow Title | RNT 3 @ $75EA-SEPT 2008 | Subclerance Agreement Fee | $ | 225.00 | 1500000063 | 2008.11.20 | 225.00 |
| Escrow Title | RNT-3 ORD @ $75EA-APR 2010 | Subclerance Agreement Fee | $ | 225.00 | 1500007002 | 2010.05.26 | 225.00 |
| Escrow Title | RNT-6 ORDS@$75EA-FEB 2010 | Subclerance Agreement Fee | $ | 225.00 | 1500000084 | 2010.01.13 | 225.00 |
| Escrow Title | RNT-3 ORDERS @ $75 EA-JAN 2010 | Subclerance Agreement Fee | $ | 225.00 | 1500001043 | 2009.11.23 | 225.00 |
| Escrow Title | RNT 3 ORDERS @ $75 EA-SEPT 08 | Subclerance Agreement Fee | $ | 225.00 | 1500001139 | 2009.10.22 | 225.00 |
| Escrow Title | RNT 1@10 01 2007 | Subclerance Agreement Fee | $ | 225.00 | 1500000094 | 2008.02.05 | 225.00 |
| Escrow Title | RNT 4 @ $75 EA MARCH 2008 | Subclerance Agreement Fee | $ | 300.00 | 1500000028 | 2008.04.05 | 300.00 |
| Escrow Title | RNT 4 @ $75EA FEB 2008 | Subclerance Agreement Fee | $ | 500.00 | 1500000650 | 2008.04.26 | 500.00 |
| Escrow Title | RNT 4@75.00 YO07 | Subclerance Agreement Fee | $ | 500.00 | 1500000094 | 2008.02.20 | 500.00 |
| Escrow Title | RNT 5 @ $75EA JAN 2009 | Subclerance Agreement Fee | $ | 375.00 | 1500000034 | 2009.03.12 | 375.00 |
| Escrow Title | RNT 6 @ $75EA-OCT 2007 | Subclerance Agreement Fee | $ | 375.00 | 1500000017 | 2007.11.13 | 375.00 |
| Escrow Title | RNT 5 ORDERS @ 75 EA-MARCH 2010 | Subclerance Agreement Fee | $ | 375.00 | 1500004329 | 2010.04.28 | 375.00 |
| Escrow Title | RNT-6 @ $75EA-OCT 2009 | Subclerance Agreement Fee | $ | 450.00 | 1500000307 | 2009.12.08 | 450.00 |
| Escrow Title | RN-1 ORD @$75EA-JUNE 07 | Subclerance Agreement Fee | $ | 450.00 | 1500000079 | 2009.07.16 | 450.00 |
| Escrow Title | RN-1 ORD @$75EA-JAN 2009 | Subclerance Agreement Fee | $ | 75.00 | 1500000179 | 2010.07.26 | 75.00 |
| Escrow Title | RNT-H ORDERS @ $75EA-409 | Subclerance Agreement Fee | $ | 153.00 | 1500000035 | 2009.05.19 | 625.00 |
| Escrow Title | RHS-6 ORDERS @$75 EA-NOV 2008 | Subclerance Agreement Fee | $ | 225.00 | 1500001743 | 2010.07.09 | 225.00 |
| Escrow Title | RNT-4 ORD @ $75 EA-MAY 09 | Subclerance Agreement Fee | $ | 840.00 | 1500001062 | 2009.06.23 | 323.00 |
| Escrow Title | RNT-4ORD@$75EA-JULY 2010 | Subclerance Agreement Fee | $ | 300.00 | 1500001854 | 2010.08.31 | 300.00 |
| Escrow Title | RHS-4 ORDS $75EA-DEC 08 | Subclerance Agreement Fee | $ | 400.00 | 1500000160 | 2010.03.03 | 400.00 |
| Escrow Title | RNT-6 ORDERS @ $75 EA-JLY 09 | Subclerance Agreement Fee | $ | 525.00 | 1500001912 | 2009.08.20 | 525.00 |
| Escrow Title | RNT-6 ORD @ $75 EA-NOV 08 | Subclerance Agreement Fee | $ | 450.00 | 1500000577 | 2009.12.21 | 630.00 |
| Escrow Title | RNT-5 ORDERS @ $75 EA MAY 08 | Subclerance Agreement Fee | $ | 676.00 | 1500000513 | 2009.09.13 | 375.00 |

## WINDEMERE PROPERTIES OF THE FAIR SKY

| | | | | | | |
|---|---|---|---|---|---|---|
| Escrow Title | CTT-2 ORDERS @ $75 EA-SEPT 2007 | Subclerance Agreement Fee | $ | 150.00 | 2180000060 | 2008.03.11 | 150.00 |
| Escrow Title | CTT-1 ORDER @ $75 09 | Subclerance Agreement Fee | $ | 75.00 | 2180000068 | 2008.02.19 | 76.00 |
| Escrow Title | CTT-1 @ $75 APRIL 2008 | Subclerance Agreement Fee | $ | 75.00 | 2180000049 | 2008.05.21 | 75.00 |
| Escrow Title | CTT-1 @ $75 EA NOV 2008 | Subclerance Agreement Fee | $ | 75.00 | 2180000059 | 2008.12.17 | 75.00 |
| Escrow Title | CTT-1 ORDER @ 75 EA 1009 | Subclerance Agreement Fee | $ | 75.00 | 2180000354 | 2008.03.71 | 75.00 |
| Escrow Title | CTT-2 @ $75 MARCH 2008 | Subclerance Agreement Fee | $ | 150.00 | 2180000364 | 2008.05.68 | 150.00 |
| Escrow Title | CTT-2 @ $75 MAY 2008 | Subclerance Agreement Fee | $ | 150.00 | 2180000054 | 2008.06.62 | 150.00 |
| Escrow Title | CTT-2 ORD@$75 EA MAR 2010 | Subclerance Agreement Fee | $ | 150.00 | 2180001484 | 2010.04.97 | 160.00 |
| Escrow Title | CTT-3 @ $75EA AUG 2008 | Subclerance Agreement Fee | $ | 225.00 | 2180000062 | 2008.10.23 | 225.00 |
| Escrow Title | CTT-3 @ $75EA JAN 2009 | Subclerance Agreement Fee | $ | 225.00 | 2180000076 | 2009.03.06 | 225.00 |
| Escrow Title | CTT-3 @ $75EA OCT 2003 | Subclerance Agreement Fee | $ | 225.00 | 2180000019 | 2009.12.50 | 225.00 |
| Escrow Title | CTT-3 ORD @$75EA+APRIL 2079 | Subclerance Agreement Fee | $ | 225.00 | 2180001043 | 2010.05.28 | 225.00 |
| Escrow Title | CTT-3 ORDERS @ $75 EA-JAN10 | Subclerance Agreement Fee | $ | 225.00 | 2180001922 | 2010.02.19 | 225.00 |
| Escrow Title | CTT-3 @ $75 EA MAY 2010 | Subclerance Agreement Fee | $ | 225.00 | 2180000079 | 2010.08.16 | 225.00 |
| Escrow Title | CTT 4 @ $75EA-FEB 2009 | Subclerance Agreement Fee | $ | 700.00 | 2180000774 | 2009.02.31 | 300.00 |
| Escrow Title | CTT-7 ORD @ $75 EA-NOV 09 | Subclerance Agreement Fee | $ | 720.00 | 2180000091 | 2009.07.19 | 300.00 |
| Escrow Title | CTT-2 ORD @$75EA+JUL 2010 | Subclerance Agreement Fee | $ | 150.00 | 2480001763 | 2009.11.80 | 150.00 |
| Escrow Title | CTT-2 ORD @$75EA-SEP 08 | Subclerance Agreement Fee | $ | 150.00 | 2180001491 | 2010.07.35 | 150.00 |
| Escrow Title | CTT-2 ORDS@$75EA-JUNE 08 | Subclerance Agreement Fee | $ | 150.00 | 2180000089 | 2010.02.03 | 150.00 |
| Escrow Title | CTT-4 ORDERS @$75EA-MAY 09 | Subclerance Agreement Fee | $ | 150.00 | 2180001748 | 2010.07.08 | 150.00 |

**WINDERMERE REAL ESTATE (WELCOME HOME)**

| Category | Description | Fee Type | Amount | Date | ID |
|---|---|---|---|---|---|
| Escrow / Title | CIT - 1 ORDER @ $75 EA-SEPT 09 | Sublicense Agreement Fee | $ 225.00 | 2009 10 28 | 2160002159 |
| Escrow / Title | CIT-1 ORDERS @ $75EA-JULY 09 | Sublicense Agreement Fee | $ 225.00 | 2009 08 20 | 2160000972 |
| Escrow / Title | CIT-1@$75-JAN | Sublicense Agreement Fee | $ 225.00 | 2009 05 01 | 2160000302 |
| Escrow / Title | CIT-1 ORDERS @ $75 EA | Sublicense Agreement Fee | $ 225.00 | 2009 05 91 | 2160000301 |
| Escrow / Title | CIT-ORDER@$75EA-JULY 2010 | Sublicense Agreement Fee | $ 375.00 | 2010 09 31 | 2150001467 |
| Escrow / Title | CIT-5 ORDERS @ $75 EA-FEB 10 | Sublicense Agreement Fee | $ 375.00 | 2010 03 05 | 2150001888 |
| Escrow / Title | CIT-6 ORDER @ $75EA-AUG 09 | Sublicense Agreement Fee | $ 450.00 | 2010 05 25 | 2150001623 |
| Escrow / Title | PMT - 1 ORDER @ $75 -DEC | Sublicense Agreement Fee | $ 75.00 | 2010 03 19 | 1800000333 |
| Escrow / Title | PMT-1 @ $75-APRIL 2008 | Sublicense Agreement Fee | $ 75.00 | 2008 05 21 | 1600000364 |
| Escrow / Title | PMT 1@$75-DEC 1 2007 | Sublicense Agreement Fee | $ 75.00 | 2008 02 20 | 1550000282 |
| Escrow / Title | PMT 1 @ $75-MAY | Sublicense Agreement Fee | $ 225.00 | 2008 06 20 | 1550000049 |
| Escrow / Title | PMT 1 @ $75 MAY 2008 | Sublicense Agreement Fee | $ 225.00 | 2008 06 57 | 1800000049 |
| | | | | | |
| Escrow / Title | CIT - 1 ORDER @ $62.50-12/08 | Sublicense Agreement Fee | $ 75.00 | 2009 01 25 | 2160000961 |
| Natural Hazard Disclosure | CIT - 1 ORDER @ $25.00-2007 | Sublicense Agreement Fee | $ 75.00 | 2009 01 25 | 2160000251 |
| Natural Hazard Disclosure | CIT - 1 ORDER @ $75 407 | Sublicense Agreement Fee | $ 75.00 | 2009 01 25 | 2150000311 |
| Natural Hazard Disclosure | CIT - 1 ORDER @ $75 607 | Sublicense Agreement Fee | $ 75.00 | 2009 01 25 | 2150000301 |
| Natural Hazard Disclosure | CIT-1 ORDER @ $75 5/4-JUNE 2010 | Sublicense Agreement Fee | $ 150.00 | 2009 01 25 | 2160001628 |
| Natural Hazard Disclosure | DISCESS 1 @ $46 FEB 2008 | Sublicense Agreement Fee | $ 25.00 | 2008 04 17 | 1600001823 |
| Natural Hazard Disclosure | DISCESS 3 @$160.00-JAN 10 | Sublicense Agreement Fee | $ 25.00 | 2010 03 19 | 1700000553 |
| Natural Hazard Disclosure | DISCESS 1@$.00-SEPT 2009 | Sublicense Agreement Fee | $ 200.00 | 2009 11 20 | 1700000582 |
| Natural Hazard Disclosure | DISCESS-10 ORDERS@$25EA-MAR3 2010 | Sublicense Agreement Fee | $ 250.00 | 2010 05 10 | 1700001361 |
| Natural Hazard Disclosure | DISCESS-12 ORDERS @ $25 EA-MAY 09 | Sublicense Agreement Fee | $ 300.00 | 2009 08 20 | 1600000328 |
| Natural Hazard Disclosure | DISCESS 2 @ $25EA-AUG 2008 | Sublicense Agreement Fee | $ 50.00 | 2008 09 20 | 1600000049 |
| Natural Hazard Disclosure | DISCESS 4 @ $25EA-AUG 2003 | Sublicense Agreement Fee | $ 100.00 | 2008 10 23 | 1000000010 |
| Natural Hazard Disclosure | DISCESS 5 @ $25EA-FEB 2008 | Sublicense Agreement Fee | $ 125.00 | 2008 10 51 | 1000000459 |
| Natural Hazard Disclosure | DISCESS 5 ORDERS @ $25 EA-OCT 2008 | Sublicense Agreement Fee | $ 125.00 | 2009 10 51 | 1000000632 |
| Natural Hazard Disclosure | DISCESS 6 @ $25EA AUG 2003 | Sublicense Agreement Fee | $ 125.00 | 2008 10 23 | 1000000636 |
| Natural Hazard Disclosure | DISCESS 6 @ $25EA-JULY 2008 | Sublicense Agreement Fee | $ 150.00 | 2008 10 23 | 1000000545 |
| Natural Hazard Disclosure | DISCESS-6 ORDERS @ 25 1009 | Sublicense Agreement Fee | $ 150.00 | 2009 12 14 | 1000000778 |
| Natural Hazard Disclosure | DISCESS 8 @ $25EA JULY 2008 | Sublicense Agreement Fee | $ 200.00 | 2008 09 18 | 1000000775 |
| Natural Hazard Disclosure | DISCRSN-9 ORDERS @ $25EA-DEC 09 | Sublicense Agreement Fee | $ 225.00 | 2009 07 24 | 1000000518 |
| Natural Hazard Disclosure | DISCSPR-11 ORDERS @ $25EA-JUNE 09 | Sublicense Agreement Fee | $ 275.00 | 2009 07 24 | 1000000519 |
| Natural Hazard Disclosure | DISCSPR-16 ORDERS @ $25EA-MAR10 2010 | Sublicense Agreement Fee | $ 400.00 | 2009 09 02 | 1000000529 |
| Natural Hazard Disclosure | DISCESS-4 ORDERS @ $25 EA-DEC 2010 | Sublicense Agreement Fee | $ 100.00 | 2010 04 07 | 1000001186 |
| Natural Hazard Disclosure | DISCSPR-5 ORDERS@$25 EA-DEC 09 | Sublicense Agreement Fee | $ 125.00 | 2009 03 18 | 1000000558 |
| Natural Hazard Disclosure | DISCSPR-5ORDERS @$25-EA JAN-MAY 2010 | Sublicense Agreement Fee | $ 125.00 | 2010 12 99 | 1000000791 |
| Natural Hazard Disclosure | DISCSPR-5ORDERS@$25EA-JAN-AUG 09 | Sublicense Agreement Fee | $ 125.00 | 2009 05 19 | 1000000768 |
| Natural Hazard Disclosure | DISCSPR-5ORDERS@$25EA-AUG 09 | Sublicense Agreement Fee | $ 175.00 | 2009 05 18 | 1000000728 |
| Natural Hazard Disclosure | DISCSPR-7 ORDERS@$25 EA-SEPT 09 | Sublicense Agreement Fee | $ 175.00 | 2009 11 05 | 1000000183 |
| Natural Hazard Disclosure | DISCSPR-9 ORDERS @ $25EA-MARCH 09 | Sublicense Agreement Fee | $ 225.00 | 2009 05 09 | 1100010249 |
| Natural Hazard Disclosure | DISCSPR-9 ORDERS @$25 EA-APRIL 2010 | Sublicense Agreement Fee | $ 225.00 | 2010 05 24 | 1000000587 |
| Home Warranty | PMW 1 @ $15EA-NOV 2008 | Sublicense Agreement Fee | $ 30.00 | 2009 05 18 | 1000000417 |
| Home Warranty | PMW 1 @ $15EA-NOV 2008 | Sublicense Agreement Fee | $ 30.00 | 2009 07 18 | 1000000976 |
| Home Warranty | PMW 2 ORDERS @ 15 EA-NOVEMBER 09 | Sublicense Agreement Fee | $ 30.00 | 2009 01 08 | 1000000975 |
| Home Warranty | PMW 1@ $15EA 2008 | Sublicense Agreement Fee | $ 30.00 | 2010 05 17 | 1000000417 |
| Home Warranty | RNEW 3 @ $15EA OCT 2008 | Sublicense Agreement Fee | $ 45.00 | 2008 12 18 | 1000000582 |
| Home Warranty | RNEW 4 @ $15 MARCH 2008 | Sublicense Agreement Fee | $ 45.00 | 2008 05 18 | 1000000582 |
| Home Warranty | RNEW 4 @ $15EA OCT 2008 | Sublicense Agreement Fee | $ 60.00 | 2008 12 16 | 1000000524 |
| Home Warranty | RNEW 5 @ $15-FEB, 2008 | Sublicense Agreement Fee | $ 75.00 | 2008 05 51 | 1000000355 |
| Home Warranty | PMW-5 ORDERS@$15EA-MAR 2010 | Sublicense Agreement Fee | $ 75.00 | 2010 05 19 | 1000000342 |
| Home Warranty | RNEW 6 @$15EA AUG 2008 | Sublicense Agreement Fee | $ 60.00 | 2008 10 23 | 1000000200 |
| Home Warranty | RNEW 6 @$15EA-JULY 2008 | Sublicense Agreement Fee | $ 90.00 | 2008 11 55 | 1000000772 |
| Home Warranty | PMW-8 @$15EA SEPT 2008 | Sublicense Agreement Fee | $ 120.00 | 2008 11 55 | 1000000332 |
| Home Warranty | RNEW-1 ORDER @ $15 EA-JUNE 2010 | Sublicense Agreement Fee | $ 55.00 | 2010 08 24 | 1000000980 |
| Home Warranty | RNEW-3 ORDERS@ $15 EA-DEC 09 | Sublicense Agreement Fee | $ 45.00 | 2010 06 51 | 1000000575 |
| Home Warranty | RNEW-4 ORDERS @ $15EA-JUNE 09 | Sublicense Agreement Fee | $ 60.00 | 2009 07 09 | 1000000471 |
| Home Warranty | RNEW-4ORDERS @$15-EA MAY 2010 | Sublicense Agreement Fee | $ 60.00 | 2010 07 09 | 1000000701 |
| Home Warranty | RNEW-4 ORDERS @$15 EA-OCT 09 | Sublicense Agreement Fee | $ 80.00 | 2009 11 13 | 1000000424 |
| Home Warranty | RNEW-6 ORDERS @ $15EA-FEB 09 | Sublicense Agreement Fee | $ 75.00 | 2009 12 18 | 1000000763 |
| Home Warranty | RNEW-5 ORDERS @$15-EA MARCH 2010 | Sublicense Agreement Fee | $ 75.00 | 2009 12 07 | 1000000553 |
| Home Warranty | RNEW-7 ORDERS @$15 EA-APRIL 2010 | Sublicense Agreement Fee | $ 75.00 | 2010 05 04 | 1000001008 |
| Home Warranty | RNEW-8 ORDERS @ $15 EA-APRIL 09 | Sublicense Agreement Fee | $ 90.00 | 2009 05 14 | 1000000529 |
| Home Warranty | PMW-6 ORDERS@$15-EA JAN 09 | Sublicense Agreement Fee | $ 90.00 | 2009 07 16 | 1000000614 |
| Home Warranty | RNEW-9ORDERS @$15-EA-JUNE 09 | Sublicense Agreement Fee | $ 105.00 | 2009 07 09 | 1000000726 |
| Home Warranty | RNEW-9ORDERS@$15-EA-APRIL 09 | Sublicense Agreement Fee | $ 125.00 | 2009 05 04 | 1000000729 |
| Home Warranty | PMW-9ORDERS@$15-EA-MARCH 09 | Sublicense Agreement Fee | $ 130.00 | 2009 03 18 | 1000000528 |
| Escrow / Title | PMT 1@ $75 MARCH 2008 | Sublicense Agreement Fee | $ 75.00 | 2008 04 25 | 1600000828 |
| Escrow / Title | ISCM1@$26.03 0407 | Sublicense Agreement Fee | $ 74.00 | 2008 05 11 | 1310000047 |

ZIP CODE PROPERTIES INC

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Natural Hazard Disclosure | DISCJR03 1 @ $25 FEB 2008 | | | | Sublicense Agreement Fee | $ | 25.00 | 1000001804 | 2008 04 17 | $ | 25.00 |
| Natural Hazard Disclosure | DISCJR03 1 @ $25.00 01 08 | | | | Sublicense Agreement Fee | $ | 25.00 | 1000001451 | 2008 02 08 | $ | 25.00 |
| Natural Hazard Disclosure | DISCJR03 1 @ $25.00, OCT 2007 | | | | Sublicense Agreement Fee | $ | 15.00 | 1000000836 | 2007 12 14 | $ | 83.00 |
| Home Warranty | FNHW 1 @ $10/EA OCT 2007 | | | | Sublicense Agreement Fee | $ | 16.00 | 1000000833 | 2007 12 14 | $ | 60.00 |
| Escrow / Title | FNT 1 @ $25/EA OCT 2007 | | | | Sub-license Agreement Fee | $ | 25.00 | 1800000167 | 2007 12 04 | $ | 25.00 |

CTT - Chicago Title Insurance Company
FNT - Fidelity National Title Insurance Company
TICOR - Ticor Title Insurance Company
SGT - Security Union Title Insurance Company
DISCJR03 - Disclosure Source
FNHW - Fidelity National Home Warranty

Kawani Share Participants

**IA-3 - REAL ESTATE BROKER REPORT**

| | Client | Address | City | State | Zip Code | Contact | Telephone | Dates of Participation |
|---|---|---|---|---|---|---|---|---|
| 1 | A La Carte Real Estate | 820 State Street #321 | San Diego | CA | 92101 | Bobbie Abad | (619) 231-5777 | 02/01/2006 - Present |
| 2 | Dgltn Real Estate | P.O. Box 7240 | Carmel | CA | 93921 | Rob Perkins | (831) 622-1040 | 11/01/2004 - Present |
| 3 | Alchemy Real Estate | 2145 N. Northlake Way, Ste. C-1 | Seattle | WA | 98109 | Jay Miller | (206) 633-5900 | 7/29/2008 - Present |
| 4 | All Area Real Estate | 8100 Watt Avenue | Antelope | CA | 95843 | George Bornowsky | (916) 344-6680 | 03/28/2006 - Present |
| 5 | Allied Pacific Financial | 991 C Lomas Santa Fe, Ste. 441 | Solana Beach | CA | 92075 | Stephanie Farber | (760) 753-3333 | 02/01/2009 - Present |
| 6 | American Steel Properties (The S Group / Cross Points Realty) | 1655 MacBlair Avenue | San Jose | CA | 95125 | Less Sigmond | (408) 267-1100 | 09/19/2005 - Present |
| 7 | Assist Real Estate Group | 145 Dillon Ave, Ste. 2 | Campbell | CA | 95008 | Less Sigmon | (408) 374-8300 | 04/13/2005 - Present |
| 8 | Assist to Sell Pass Realty (Buyers and Sellers Smart Choice) | 1740 Spring Sts, Ste. C | Paso Robles | CA | 93446 | Joseph M. Bergquist | (805) 238-0090 | 11/30/2005 - Present |
| 9 | Ada Real Estate Group (C-CSTA3 Mortgage) | 1450 Frazee Road, Sta. 301 | San Diego | CA | 92108 | Howard Blum | (858) 436-1287 | 06/01/2005 - Present |
| 10 | Builders Indiana Group (Builders Advantage Group / Riess Realty Group) | 7065 Indiana Ave., Sta. 200 | Riverside | CA | | Lisa Riess | (951) 776-4013 | 12/12/2004 - Present |
| 11 | Buy, Sell a Less | 22015 Lake Forest Drive, Ste C | Laguna Hills | CA | 92656 | Robert Cobb | (949) 583-9449 | 11/23/2004 - Present |
| 12 | Buyers & Sellers Realty of Stockton | 1811 Grand Canal Blvd, #6 | Stockton | CA | 95207 | Kevin Moran | (209) 477-0456 | 7/30/2004 - Present |
| 13 | CA Mortgage Assistance Coalition (GMAC) | 6950 Indiana Avenue, Ste, 220 | Riverside | CA | 92506 | Mark A. Mellor, Esq. | (951) 222-2100 | 2/1/2009 - Present |
| 14 | Campgrass 123.com | 3020 Saturn Street | Brea | CA | 92821 | David Berg | (888) 806-2532 | 5/1/2005 - Present |
| 15 | C21 A-1 Network (Century 21 Countrywide) | 3111 McLaughlin Avenue | San Jose | CA | 95121 | Tony Dinh | (408) 224-7100 | 3/1/2005 - Present |
| 16 | C21 AI Professional | 1920 River Park Drive | Sacramento | CA | 95815 | Steve Witolt | (916) 482-0044 | 3/4/2009 - Present |
| 17 | C21 All Stars | 6153 Telegraph Road, Sta. 220 | Pico Rivera | CA | 90640 | Rhda Vtllanueva | (562) 263-3121 | 1/1/2006 - Present |
| 18 | C21 Bundeveen | 815 Petaluma Blvd | South Petaluma | CA | 94952 | Mel Sandoveen | (707) 126-2266 | 9/1/2010 - Present |
| 19 | C21 Golden Hills | 2030 South White Road, Sta. 160 | San Jose | CA | 95148 | Robert Fernandez | (408) 238-3111 | 05/12/2005 - Present |
| 20 | C21 GoDph (Consolidated) | P.O. Box 635 | Fortuna | CA | 95540 | Jacques Deloris | (707) 725-4456 | 8/30/2004 - Present |
| 21 | C21 Jervis & Associates - C21 Chuck Stevens | 800 N. Harbor Blvd. | La Habra | CA | 90631 | Connie Day | (562) 802-2226 | 5/1/2005 - Present |
| 22 | Michael James Real Estate (C21 Landmark Excellence) | 2708 Telegraph Avenue | Oakland | CA | 94612 | Denise Markiewen | (510) 836-6888 | 7/12/2005 - Present |
| 23 | C21 Landmark Network | 8801 Folsom Blvd, Sta. 260 | Sacramento | CA | 95826 | Anthony Thanh Nguyen | (916) 383-3828 | 1/11/2008 - Present |
| 24 | C21 Northbay Alliance (Century 21 Classic Properties) | 1067 College Avenue | Santa Rosa | CA | 95404 | Glenn Gephart | (707) 577-7777 | 12/11/2008 - Present |
| 25 | C21 Premier | 18525 Sutter Blvd., Ste. 400 | Morgan Hill | CA | 95037 | Chuck Venaas | (408) 369-8467 | 9/22/2003 - Present |
| 26 | C21 at Tahoe Paradise | 3145 US Highway 50 | South Lake Tahoe | CA | 96150 | Carl Feller | (530) 577-4700 | 5/1/2005 - Present |
| 27 | C21 The Ronin Group | 305 Orchard City Drive, Sta. 102 | Campbell | CA | 95008 | Annie T. McKee | (408) 871-9111 | 3/9/2006 - Present |
| 28 | Coldwell Banker Alliance | 2381 Boswell Road | Chula Vista | CA | 91941 | Joel Portal | (619) 656-9900 | 07/01/2004 - Present |
| 29 | Coldwell Banker Arrow Group (America West) | 1630 Westwind Drive | Bakersfield | CA | 93301 | Frank Hannon | (661) 334-4106 | 09/19/2005 - Present |
| 30 | Prudential NorCal Realty (CB Diaz & Lewis Real Estate Group) | 5120 Manzanita Ave. #120 | Carmichael | CA | 95608 | Ron Leal/Greg Diaz | (916) 971-1950 | 1/1/2004 - Present |
| 31 | Coldwell Banker Excellence | 3428 Brookside Road | Stockton | CA | 95219 | Lenny Wood | (209) 956-1900 | 12/2/2004 - Present |
| 32 | Coldwell Banker The Vintage Group | 403 W. 11th Street | Tracy | CA | 95376 | Erin Beckman | (209) 833-3333 | 1/5/2007 - Present |
| 33 | Click Home Realty | 980 Monroe Street | Santa Clara | CA | 95050 | Rick Smith | (408) 615-1000 | 2/18/2010 - Present |
| 34 | Clovis 1st Real Estate Services | 685 Barstow Avenue, Ste. 18 | Clovis | CA | 93612 | Ted or Julie Tadich | (559) 323-1215 | 4/17/2007 - Present |
| 35 | Coastal Properties | 1400 Coast Village Road | Santa Barbara | CA | 93108 | Grant Salquist | (805) 969-4114 | 04/10/2006 - Present |
| 36 | Cornerstone Real Estate Brokerage | 9375 Valley Pines Drive | Folsom | CA | 95630 | Edward V. Anderson | (916) 989-5500 | 5/07/2010 - Present |
| 37 | Contrastones Realty | 1919 Grand Canal Blvd., Sta. C6 | Stockton | CA | 95207 | Randy F. Thomas | (209) 955-5022 | 09/15/2004 - Present |
| 38 | CPS Country Air Properties (Keystanding Real Estate) | 301 S. Main Street | Lakeport | CA | 95453 | Philip Smoley | (707) 263-2520 | 01/21/2005 - Present |
| 39 | Coton & Dolls and Associates | 555 California Avenue, Ste. 6 | Bakersfield | CA | 93304 | David Ortiz/Carl Cole | (661) 377-9088 | 6/2/2005 - Present |
| 40 | Customer Service Realty | 5671 Santa Teresa Blvd., Sta. 100 | San Jose | CA | 95123 | Brian Bonafede | (408) 558-5000 | 6/26/2010 - Present |
| 41 | CutNDeals.com | 2920 East Camelback, Sta. 100 | Phoenix | AZ | 85016 | Troy Funk | (480) 302-2424 | 6/19/2008 - Present |
| 42 | Deb Howard & Company | 3559 Lake Tahoe Blvd., Sta. A | South Lake Tahoe | CA | 96150 | Deb Howard | (530) 542-2912 | 4/14/2010 - Present |
| 43 | Dennis Bullock Schaible's Intl. Realty | 14140 Dillon Road | Truckee | CA | 96161 | William Bullock | (530) 550-0030 | 10/12/2005 - Present |
| 44 | Dream Duo, LLC | 11500 Donner Pass Road | Truckee | CA | 96161 | Lil Schaible | (530) 587-6007 | 5/7/2010 - Present |
| 45 | Dream Home Real Estate of Dixon | 130 West A Street | Dixon | CA | 95620 | Michael Brooks | (707) 693-6060 | 1/1/2010 - Present |
| 46 | Domarle Duo, LLC | 915 Broadway, Ste. 100 | Vancouver | WA | 98660 | Patti Stabold | (360) 256-5626 | 9/19/2009 - Present |
| 47 | Elite Team Realty | 3204 E. Birch St. | Brea | CA | 92821 | Bryan Head | (714) 256-6888 | 5/20/2005 - Present |
| 48 | Entera Realty - DuraBit | 260 Diablo Road | Danville | CA | 94526 | Lynn Armacher | (925) 820-1000 | 11/12/2005 - Present |
| 49 | Embrex Realty Properties | 9200 Brentwood Blvd., Ste. C | Brentwood | CA | 94513 | Ron Eppa | (925) 634-4611 | 6/2/2005 - Present |
| 50 | Emmilan of the East Bay | 3728 Castro Valley Blvd. | Castro Valley | CA | 94546 | Eric Chalfour | (510) 728-2323 | 8/29/2007 - Present |
| 51 | ERA Peak West Realty | 38067 Mission Blvd. | Fremont | CA | 94539 | Luston Peak | (510) 284-4960 | 12/27/2005 - Present |
| 52 | ERA Premier Realty Associates | 16024 24th Street, E, Sta. B1 | Summer | WA | 98390 | James Clifford | (253) 826-7500 | 12/22/2005 - Present |

| # | Client | Address | City | State | Zip Code | Contact | Telephone | Dates of Participation |
|---|--------|---------|------|-------|----------|---------|-----------|------------------------|
| 53 | ERA Heritage Realty - Dublin | 7190 Regional Street | Dublin | CA | 94568 | David Lam | (925) 803-2902 | 5/2/2007 - Present |
| 54 | Seascapes Real Estate (ERA Sea View Real Estate) | 1390 Price Street | Pismo Beach | CA | 93449 | Lili Torres | (805) 773-5700 | 4/1/2005 - Present |
| 55 | E-Transactions | 123 Cool Spring Court | Fullerton | CA | 92530 | Loren Riessler | (916) 439-5388 | 10/17/2006 - Present |
| 56 | ERA Wilbur Properties (Wilbur Properties) | 7291 High Street | Palo Alto | CA | 94301 | Anne K. Wilbur | (650) 328-8877 | 4/19/2007 - Present |
| 57 | Fontes & Hall Realty, Inc. | 535 Westlake Avenue North | Seattle | WA | 98109 | David W. Hall | (206) 381-3800 | 4/18/2006 - Present |
| 58 | Gallacher & Lindsey Realtors | 2424 Central Avenue | Alameda | CA | 94501 | Michael Studebaker | (510) 748-1129 | 1/8/2009 - Present |
| 59 | Gateway Realty | 700 Mason Street, Ste. 101 | Vacaville | CA | 95688 | Steve Spencer | (707) 422-1151 | 08/01/2005 - Present |
| 60 | GMAC Silver Oaks | 9863 Myrtle Avenue | Brandle | CA | 95501 | Larry Oliver | (707) 445-4500 | 5/27/2005 - Present |
| 61 | GMAC Shuster Pine Realty | 11950 Hillsdale Drive | Sonora | CA | 95370 | Emmett Brennan | (209) 533-4242 | 3/21/2008 - Present |
| 62 | Hauot Real Estate | 2801 70th Avenue W, Ste. GH | University Place | WA | 98466 | Al Hauer | (253) 460-4775 | 6/30/2008 - Present |
| 63 | Help U Sell of Fresno | 3842 W. Shaw Ave. | Fresno | CA | 93711 | David Croce | (559) 922-2222 | 9/13/2004 - Present |
| 64 | Help U Sell Transactions (Help U Sell Home Marketing) | 1409 East Belmont Blvd., Ste. 400 | Bakersfield | CA | 93308 | Frieda Gregorich | (661) 588-1247 | 10/11/2005 - Present |
| 65 | Kneebone Properties, Inc. (Help U Sell Northwest Real Estate) | 711 Fourth Street | Bakersfield | CA | 93304 | Ken Knechs | (805) 922-0077 | 8/30/2004 - Present |
| 66 | Help U-Sell Santa Maria | 602 E. Main Street | Santa Maria | CA | 93454 | Ken Knechs | (805) 922-0077 | 8/30/2004 - Present |
| 67 | HomeTeam Northwest | 2909 8th Avenue NE, #A | Puyallup | WA | 98372 | Terri Olson | (253) 435-1515 | 04/18/2008 - Present |
| 68 | Hometown Realty GMAC | 4725 First Street, Ste. 150 | Pleasanton | CA | 94566 | Steve Fair | (925) 426-3890 | 3/15/2005 - Present |
| 69 | InfoServ Professional Select Properties | 5520 Hollista Road #13 | Los Gatos | CA | 95032 | Denise DeSotus | (408) 483-0053 | 8/29/2005 - Present |
| 70 | Independent Coordinator - Catherine Gilardi | 1697 Clovis Avenue | San Jose | CA | 95124 | Catherine Gilardi | (408) 219-8417 | 8/29/2008 - Present |
| 71 | Independent Realty Group | 7420 Clairmont Mesa Blvd., Ste. 106 | San Diego | CA | 92111 | Matthew Sorensen | (858) 204-5288 | 1/15/2005 - Present |
| 72 | Integrity Mortgage Group | 9663 Tierra Grande, Ste. 102 | San Diego | CA | 92126 | Alex Viel | (858) 225-5000 | 3/15/2007 - Present |
| 73 | Intero Real Estate Services - San Jose | 2110 Storey Road, Ste. 100 | San Jose | CA | 95122 | Rian Draganosky | (408) 225-2200 | 7/9/2007 - Present |
| 74 | Intero Real Estate - Evergreen | 2761 East Capitol Ave., Ste. 1175 | San Jose | CA | 95148 | Rian Draganosky | (408) 225-2200 | 03/02/2007 - Present |
| 75 | Intero Real Estate - Fremont | 43725 Mission Blvd. | Fremont | CA | 94539 | Reba Betschi | (510) 651-8300 | 10/11/2006 - Present |
| 76 | Intero Real Estate - Corporate | 10275 N. De Anza Blvd. | Cupertino | CA | 95014 | Tom Tognoli | (408) 342-3000 | 2/22/2010 - Present |
| 77 | Intero Real Estate - Santa Cruz | 2222 East Cliff Dr., Ste. 150 | Santa Cruz | CA | 95062 | Debra Frey | (831) 464-5310 | 3/12/2009 - Present |
| 78 | Intero Real Estate - Almaden | 5370 Snell Ave., Ste. 200 | San Jose | CA | 95123 | Diane McDermott | (408) 947-4828 | 3/4/2010 - Present |
| 79 | Intervest Investments | 12291 Oakglen Way | San Bruno | CA | 94066 | Paul Hazen | (650) 589-7288 | 3/26/2008 - Present |
| 80 | IJ Decedel REALTORS | 4115 Blackhawk Plaza Circle, Ste. 201 | Danville | CA | 94506 | Jeff Scopin | (925) 648-5300 | 10/5/2007 - Present |
| 81 | John L. Scott- Des Moines | 22535 Marine View Drive S, #321 | Des Moines | WA | 98198 | Tony Hettler | (206) 870-8800 | 7/29/2008 - Present |
| 82 | John L. Scott Real Estate - Puyallup | 11919 Canyon Road East, Ste. A | Puyallup | WA | 98373 | Stephanie Shephers | (253) 538-5800 | 6/16/2007 - Present |
| 83 | John L. Scott Real Estate - Puyallup | 11919 Canyon Road, Unit H | Puyallup | WA | 98373 | Sue Bowman | (253) 538-5800 | 7/7/2006 - Present |
| 84 | Kennos & Manos, Inc. Realtors | 355 Main Street | Maryville | CA | 96288 | Dean Karpol | (707) 446-9600 | 9/1/2005 - Present |
| 85 | Keller Williams Camarillo (DRM Diversified, LLC/DRM Pacific Properties, Inc.) | 770 Paseo Camarillo #100 | Camarillo | CA | 93010 | Dan McAllister | (805) 389-1919 | 5/12/2004 - Present |
| 86 | Keller Williams Central Coast Pismo Beach (Williams & Company, Inc.) | 350 James Way, Ste. 130 | Pismo Beach | CA | 94539 | M. Alan Williams | (805) 773-7777 | 9/1/2004 - Present |
| 87 | Keller Williams Realty - Danville (CTD Realty) | 789 Camino Ramon, Ste. 200 | Danville | CA | 94526 | Beverly Steiner | (925) 855-1333 | 6/20/2010 - Present |
| 88 | Keller Williams Realty - Central Valley | 2291 W. March Lane, Ste. B255 | Stockton | CA | 95207 | Gail Bjorkus | (209) 952-8197 | 5/7/2010 - Present |
| 89 | Keller Williams Realty Hollywood Hills | 8501 West Sunset Blvd., Ste. E253 | West Hollywood | CA | 90069 | Rick Dergan | (310) 432-2900 X_DE | 8/18/2010 - Present |
| 90 | Keller Williams Realty Silicon Valley (Realty World CA Property Network) | 2110 El Bascom Avenue #101 | Campbell | CA | 95008 | Michael Stella | (408) 626-8800 | 06/04/2005 - Present |
| 91 | Keller Williams - Puyallup | 615 East Pioneer #204 | Puyallup | WA | 98372 | Linda Warren | (253) 848-5304 | 7/28/2005 - Present |
| 92 | Keller Williams Realty-Oakland/Piedmont | 100 Franklin Street, Ste. 104 | Oakland | CA | 94607 | Matthew Murphy | (510) 868-9100 | 3/15/2010 - Present |
| 93 | Key Transaction Coordinators | 815 West Cypress Ave. | Mountain View | CA | 94043 | Laura McCarty | (650) 799-0485 | 4/15/2010 - Present |
| 94 | Key Realty Group (Remax United) | 2525 Camino Del Rio S, #170-155 | Rocklin | CA | 92625 | Richard Yung | (858) 547-0170 | 11/22/2005 - Present |
| 95 | King Realty Group (Remax United) | 4370 La Jolla Village Dr., Ste. 855 | San Diego | CA | 92122 | Richard Lawman | (858) 546-2315 | 9/12/2004 - Present |
| 96 | Leaders Professionals Realty | 1993 S. 10th Street | San Jose | CA | 95112 | Cindy Nguyen | (408) 454-5800 | 6/25/2008 - Present |
| 97 | Leroy Vapnek, Realtor | 5430 DuPont Point Building 5000, Ste. 407 | Kirkland | WA | 98033 | Rick Proctor | (425) 893-8004 | 6/30/2008 - Present |
| 98 | Pacific Arizona Realty - The Cox Team (Lettner F. & Pamela J. Cox, P.C.) | 5449 S. Lakeshore Drive, Ste. 104 | Tempe | AZ | 85283 | Lettner Cox | (480) 775-7700 | 8/1/2009 - Present |
| 99 | Leveraged Solutions / Equity Management Group | 7212 NE 60th Place | Vancouver | WA | 98661 | Amber Monroe | (360) 693-2214 | 4/15/2006 - Present |
| 100 | Listing Central | 17123 Fremont Promenade, Ste. 100 | Santa Ana | CA | 92707 | Selena Chema | (714) 619-0007 | 2/24/2011 - Present |
| 101 | Los Gatos Capital | 15723 Los Gatos Blvd., Ste. 100 | Los Gatos | CA | 95032 | Shane Smith | (408) 358-2828 | 10/17/2005 - Present |
| 102 | Maxim Properties / Wedgewood | 319 Main Street | El Segundo | CA | 90245 | Polly Watts | (310) 640-3590 | 6/1/2010 - Present |
| 103 | Meridian Creek Properties | 1850 Meridian Avenue #150 | San Jose | CA | 95125 | Andy Russo | (408) 884-8825 | 3/5/2005 - Present |
| 104 | Meridian Creek Properties | 5570 Old Madrona Road | Stockton | CA | 95215 | Mark Marsocci | (209) 943-6480 | 9/12/2009 - Present |
| 105 | Housedwin (JayJobsIndustrialized Technology Group, Inc. | 11 S. San Joaquin St., Ste. 301 | Stockton | CA | 95212 | Ian Robert Marsolof | (209) 649-4820 | 12/30/2004 - Present |
| 106 | Michaels "MIGO" Cardoza | 818 Sixth Street | Eureka | CA | 95501 | Michaela Cardoza | (707) 476-0200 | 9/20/2007 - Present |
| 107 | Mission Grove Realty | 4142 E. Florida Ave. | Hemet | CA | 92544 | Graham Holmes | (951) 927-8940 | 12/20/2005 - Present |
| 108 | Coldwell Banker Premier Real Estate - Fairbanks Group (Mongudovo & Associates, Inc.) | 38385 Highway 41, Ste. C | Coarsegold | CA | 93614 | Brandon Fairbanks | (559) 683-3595 | 10/11/2006 - Present |
| 109 | Pacific Union International, Inc. (Morgan Lane Marin) | One Letterman Drive, Bldg. C, 3300 | San Francisco | CA | 94129 | Mark McLauphlin | (415) 345-3066 | 11/26/2010 - Present |

| | Client | Address | City | State | Zip Code | Contact | Telephone | Dates of Participation |
|---|---|---|---|---|---|---|---|---|
| 110 | Mr Real Estate & Mortgage Company | 1205 S. El Camino Real | Encinitas | CA | 92024 | Jimmy Santarpello | (760) 634-8444 | 7/1/2005 - Present |
| 111 | New Concept Realty Services | 11401 Easton Drive Sta. 135 | Bakersfield | CA | 93309 | John Wilingham | (661) 283-1585 | 7/5/2005 - Present |
| 112 | Nhaol & PLUM Realty Services | 2488 Calle Arcadia | San Diego | CA | 92139 | Stephanie Nikel | (619) 434-2582 | 7/1/2004 - Present |
| 113 | Northwest Equity Home Sales | 5719 Brookdale Road E | Tacoma | WA | 98456 | Gene Delaney | (253) 539-7653 | 5/6/2005 - Present |
| 114 | Pacific Pinnacle Real Estate Services | 788 W. Washington Street | San Diego | CA | 92103 | George Gibson | (619) 294-7217 | 5/15/2005 - Present |
| 115 | Paragon Real Estate & Meridian Mortgage | 6929 Sunrise Blvd., Ste. 150 | Citrus Heights | CA | 95610 | Anthony Randa | (916) 870-9821 | 5/1/2006 - Present |
| 116 | Paramount Equity Mortgage, Inc. | 8781 Sierra College Blvd. | Roseville | CA | 95661 | Eric Meadow | (916) 746-8009 | 4/5/2010 - Present |
| 117 | Park Place Realty | 24000 Rancho Del Rio Court | Salinas | CA | 93906 | Michelle Arendorf | (831) 205-5190 | 10/30/2006 - Present |
| 118 | Patria, Grion (RE/MAX Equity) | 2619 NE 135th Street | Vancouver | WA | 98686 | Patrick Grion | (360) 256-3478 | 3/1/2006 - Present |
| 119 | Peabody & PLUM Realtors | 9755 El Camino Real | Atascadero | CA | 93422 | Michael K. Sherer | (805) 466-8200 | 7/23/2004 - Present |
| 120 | Platinum Realty Network | 33024 N. 60th Place | Scottsdale | AZ | 85262 | Pete Baldwin | (480) 326-8821 | 4/10/2006 - Present |
| 121 | PMZ Real Estate | 1230 K. Orangeburg Ave., Sta. A | Modesto | CA | 95350 | Michael Zagaris | (209) 527-2010 | 12/15/2005 - Present |
| 122 | Premier Realty & Asset Management | 6585 Fieldcrest Court #1 | Granite Bay | CA | 95746 | Virginia Yarak | (916) 988-7770 | 6/6/2007 - Present |
| 123 | Preside Sothebys International Realty (Ryan & Johns Professional Real Estate Services) | 8501 Camino Media, Ste. 300 | Bakersfield | CA | 93311 | Mike Ryan Cissy Johns | (661) 326-7653 | 7/18/2006 - Present |
| 124 | Prudential CA Realty - Modesto | 1101 Sylvan Ave., Ste. A-7 | Modesto | CA | 95350 | Craig Lewis | (209) 578-4040 | 6/22/2010 - Present |
| 125 | Prudential California Realty - Pleasanter | 5724 W. Las Positas Blvd. Ste. 100 | Pleasanton | CA | 94588 | Michael Lavender | (925) 621-7775 | 12/30/2006 - Present |
| 126 | Prudential California Realty - Redondo | 5015 San Pedro Road | Redondo | CA | 94580 | Steve Petersen | (831) 626-4557 | 12/18/2006 - Present |
| 127 | Prudential California Realty Central Coast | 130 West Branch Street, Ste. C | Arroyo Grande | CA | 93420 | Eric Pinkert | (805) 489-2229 | 11/20/2009 - Present |
| 128 | Prudential California - San Bruno | 180 El Camino Real | San Bruno | CA | 94066 | Michael Manzano | (650) 589-1000 | 8/1/2003 - Present |
| 129 | Prudential SoCal | 12344 High Bluf Dr., Ste. 420 | San Diego | CA | 92130 | Jon Cook | (858) 792-6085 | 7/16/2009 - 4/19/2010 |
| 130 | RE/MAX Advisors | 5890 Stoneridge Avenue Sta. 2290 | San Jose | CA | 95123 | Rob Foster | (408) 225-5000 | 7/18/2008 - Present |
| 131 | Adam Signature Properties (RE/MAX Associates / Inwood Enterprises) | 4840 Lena Tree Way, Sta. C | Antioch | CA | 94531 | Chuck Welter | (925) 776-1100 | 7/18/2008 - Present |
| 132 | RE/MAX Cerrito Real (Legion Investments Inc.) | 838 E. First St., Ste. 200 | Tustin | CA | 92780 | Gilbert Pino | (714) 508-8300 | 05/05/2004 - Present |
| 133 | RE/MAX Central Santa Rosa | 320 College Ave., Ste. 200 | Santa Rosa | CA | 95401 | Edward Hannman | (707) 524-5512 | 9/22/2004 - Present |
| 134 | RE/MAX Empire (RE/MAX East Bay Group) | 39844 Mission Blvd. | Fremont | CA | 94539 | Bill Arrowsmith | (510) 875-3231 | 5/20/2010 - Present |
| 135 | RE/MAX Five Star | 2140 Larkspur Lane | Redding | CA | 96002 | Don D. Davis | (530) 722-9800 | 2/1/2005 - Present |
| 136 | RE/MAX Honolulu | 1357 Kapiolani Blvd., Ste. 370 | Honolulu | HI | 96814 | John Harris | (808) 828-8675 | 9/15/2010 - Present |
| 137 | RE/MAX in Motion | 3160 Castro Valley Blvd., #A | Castro Valley | CA | 94546 | Tina Fetig | (510) 733-1700 | 04/25/2006 - Present |
| 138 | RE/MAX Metro | 4650 California Ave. | Bakersfield | CA | 93309 | Debbie Raymond | (661) 616-4040 | 11/24/2006 - Present |
| 139 | RE/MAX Performance Plus | 19420 108th Avenue SE, Ste 202 | Renton | WA | 98055 | Sherri Goldstein | (253) 852-4680 | 5/24/2007 - Present |
| 140 | RE/MAX Pioneer | 2920 Woodside Road | Woodside | CA | 94062 | Judith Brooks | (640) 851-1200 | 11/24/2005 - Present |
| 141 | RE/MAX Platinum Properties | 341 Tres Pinos Road, Ste. A | Hollister | CA | 95023 | Deborah Stammoski | (831) 637-5490 | 7/12/2004 - Present |
| 142 | RE/MAX Professionals - AZ | 7111 W. Bell Road | Glendale | AZ | 85308 | Brian Gilgrasch | (623) 643-1050 | 8/27/2007 - Present |
| 143 | RE/MAX Real Estate Services | 19200 Stevens Creek Blvd. #210 | Cupertino | CA | 95014 | Will Carrillo | (408) 252-9800 | 8/10/2003 - Present |
| 144 | RE/MAX Santa Barbara | P.O. Box 30480 | Santa Barbara | CA | 93101 | Diana Bell | (805) 897-2600 | 3/5/2003 - Present |
| 145 | RE/MAX Star Properties (RE/MAX Dolphin Real Estate) | 202 Redwood Shores Parkway | Redwood City | CA | 94065 | George Oncouff | (650) 802-9300 | 9/19/2007 - Present |
| 146 | Abram Real Estate (RE/MAX Valley Properties) | 1124 Meridian Avenue | San Jose | CA | 95125 | Dennis BuckaSecco | (408) 978-9000 | 5/10/2003 - Present |
| 147 | Real Estate Amerifica | 9381 E. Stockton Blvd., Sta. 112 | Elk Grove | CA | 95624 | Ernie Cabrera | (916) 439-4663 | 11/01/2005 - Present |
| 148 | Reed Estate Professionals of Bakersfield | 3150 Panama Road, Sta. A | Bakersfield | CA | 93313 | Raju Jassar | (661) 835-7258 | 11/1/2006 - Present |
| 149 | Home Made Encinal (Read Estate Escrow Coordinators) | 313 Sycamore Valley Road West | Danville | CA | 94526 | Diane Fischer | (925) 766-2614 | 4/30/2007 - Present |
| 150 | Real Estate USA | 9901 Stockdale Blvd. | Lakewood | CA | 90302 | Bob Channell | (253) 581-2040 | 09/11/2007 - Present |
| 151 | Realty ExecuSets SoCal | 8927 Magnolia Ave. | Riverside | CA | 92508 | Barbara Feinstein | (909) 779-9400 | 7/19/2007 - Present |
| 152 | Realty World Broker's Network | 115 Race Street | San Jose | CA | 95126 | Michael Mendoza | (408) 280-1800 | 2/6/2009 - Present |
| 153 | Realty World Infinity | 4647 Howard Road, Sta. 1 | Pleasanton | CA | 95688 | Timmy Yau | (925) 598-1888 | 04/25/2006 - Present |
| 154 | Realty World Regency & Associates | 200 Montague Expressway | Milpitas | CA | 95035 | Art Renteria | (408) 432-0100 | 04/12/2006 - Present |
| 155 | Realty World Millennium | 1498 W. 11th Street | Tracy | CA | 95376 | David Dynamite | (209) 835-4545 | 3/29/2005 - Present |

| | Client | Address | City | State | Zip Code | Contact | Telephone | Dates of Participation |
|---|---|---|---|---|---|---|---|---|
| 156 | Realty World Mediaz | 578 Commerce Court | Manteca | CA | 95336 | Jeff Bruno | (209) 239-3388 | 02/12/2007 - Present |
| 157 | Red Brick Realty | 5304 E. Southern Ave., Ste. 110 | Mesa | AZ | 85206 | Sandra Hershey | (480) 464-6000 | 07/01/2009 - Present |
| 158 | San Diego REO Specialists | 272 3rd Avenue | Chula Vista | CA | 91910 | Kristian Peter | (800) 656-5334 | 7/15/2010 - Present |
| 159 | Silicon Valley Capital Funding (Samana Real Estate & First Financial Capital) | 1475 S. Bascom Ave., Ste. 111 | Campbell | CA | 95008 | Randy Omoto | (408) 558-8600 | 10/10/2008 - Present |
| 160 | RealDeal Investments, Inc. | 13255 1st Avenue S., Ste. A | Burien | WA | 98168 | Rodolfo Hammandez | (206) 291-5229 | 12/22/2009 - Present |
| 161 | Sell Smart Advantage | 3161 Cameron Park Drive #111 | Cameron Park | CA | 95682 | Kevin J. Wilson | (916) 985-4911 | 8/10/2006 - Present |
| 162 | Sharp Realty | 3120 Delbur Road, Ste. F | Brentwood | CA | 94513 | Brian Sharp | (925) 240-6863 | 11/4/2005 - Present |
| 163 | Smart Cheic Realty | 7473 Milford Drive | Roseville | CA | 95678 | Greg McClure | (916) 616-7650 | 4/17/2007 - Present |
| 164 | Smart Growth Group (Keller Williams Roseville) | 3001 Lava Ridge Court, Ste. 100 | Roseville | CA | 95661 | Wayne Hall | (916) 783-3800 | 6/23/2005 - Present |
| 165 | Sotheby International Realty Mansion House | 3010 Bridgeport Way West | University Place | WA | 98466 | Michael Morrison | (253) 581-5100 | 9/9/2009 - Present |
| 166 | Super Star Realty | 201 W. Main Street | Santa Maria | CA | 93458 | Peter Lopez | (805) 925-1105 | 9/22/2005 - Present |
| 167 | Superior Realty and Investments Group | 9906 Elk Grove Blvd. | Elk Grove | CA | 95624 | Ernest Matthews | (916) 714-6777 | 8/15/2006 - Present |
| 168 | The Monopoly Group | 7400 District Blvd., Ste. A | Bakersfield | CA | 93313 | Dana Janis | (661) 397-8009 | 8/15/2004 - Present |
| 169 | The Stockton Company | 11100 San Pablo Avenue, Ste. 208 | El Cerrito | CA | 94530 | Brett Stratton | (510) 334-1355 | 3/3/2010 - Present |
| 170 | Thompson & Brown | 4012 Foothill Blvd. #100 | Roseville | CA | 95747 | Scott Thompson | (916) 771-4177 | 9/27/2004 - Present |
| 171 | Timothy Toys and Associates | P.O. Box 1353 | Cobb | CA | 95426 | Timothy Toys | (707) 928-5912 | 8/6/2007 - Present |
| 172 | UrbanSpace Real Estate Services | 811 Washington Street | Oakland | CA | 94607 | Matthew Goranson | (510) 465-6253 | 3/15/2010 - Present |
| 173 | Watson Touchstone Real Estate Group (Watson Realty) | 9101 Camino Media | Bakersfield | CA | 93311 | Kenneth Carter | (661) 327-6191 | 10/30/2008 - Present |
| 174 | West USA of Prescott | 221 N. Marina Street | Prescott | AZ | 86301 | Dan Sealights | (928) 777-8351 | 6/26/2007 - Present |
| 175 | Morro Bay Realty (Western Heritage Enterprises) | 805 Main Street | Morro Bay | CA | 93442 | Richard Fisher | (805) 772-1256 | 8/22/2004 - Present |
| 176 | Winchester McGee Real Estate and Loans | 11230 Point East Drive | Rancho Cordova | CA | 95742 | Josh McGee | (916) 601-0300 | 4/24/2007 - Present |
| 177 | Windermere Real Estate (Welcome Home) | 2882 Bishop Drive, Ste. 161 | San Ramon | CA | 94583 | Gretchen Pearson | (910) 536-1347 | 8/2/2006 - Present |
| 178 | Colton Real Estate Associates (Windermere Signature Properties) | 5609 Meca Street | Gilroy | CA | 95020 | Cheryl Oden | (408) 427-4344 | 8/10/2006 - Present |
| 179 | Windermere Real Estate/Paragon Company | 7525 28th Street West, Ste. B | University Place | WA | 98466 | Ron Lunceford | (253) 564-4664 | 04/18/2006 - Present |
| 180 | Windermere Properties of the East Bay | 1066 Division Street | Pleasanton | CA | 94566 | Gretchen Pearson | (510) 538-1347 | 8/20/2007 - Present |
| 181 | Zip Code Proceeds (RE/MAX Pros Interest Funding) | 1645 Clearlake Road, Ste. 100 | San Marcos | CA | 92069 | John Puhek | (760) 591-7400 | 05/01/2004 - Present |

9821519 v9

# Exhibit D

### DECLARATION OF STEVE MURNIN

I, Steve Murnin, declare as follows:

1.      I have been employed as a Vice-President with Fidelity National Financial ("Fidelity") since 2002. Since starting at Fidelity, I have headed Fidelity's Integrated Technology Solutions group in Northern California. The Integrated Technology Solutions group markets, and trains brokers and real estate service providers on the use of, the web-based transaction management software known as TransactionPoint. I thus have had extensive experience since 2002 marketing TransactionPoint to brokers and then, once a broker licenses TransactionPoint, training the broker and any vendors selected by the broker on the use of TransactionPoint. In this regard, understanding TransactionPoint and how it may be and, in fact, is used by brokers, is critical to my being able to carry out my job responsibilities. I have personal knowledge of the facts stated in this declaration, except for those stated on information and belief, which I am informed and believe are true. I could and would testify under oath to each of these facts if called upon to do so.

2.      TransactionPoint was developed by a Fidelity-related entity which, I am informed and believe, is now named Lender Processing Services, Inc. ("LPS"), an independent, publicly-traded company that was spun off from Fidelity in 2009. When I first became involved with TransactionPoint in 2002, it was still a relatively new product, having first been made available to brokers in 2000.

3.      TransactionPoint allows residential real estate brokers to manage all aspects of a residential sales transaction by computer, including the placement of orders for services a broker's client will need to close a transaction, such as escrow, title, home warranty, home inspection, termite inspection and natural hazard disclosure ("NHD") reports. In exchange for licensing fees, a broker can utilize TransactionPoint to automate the transaction process and achieve efficiencies and cost-savings by eliminating much of the labor and expense involved in managing transactions through the traditional means of voluminous paper files and countless telephone calls and faxes.

4.      TransactionPoint is an open system. For as long as I have been working with the

1

1    TransactionPoint, it has been available to all brokers in California. The brokers who license the

2    program are free to utilize it as they wish. A few brokers use it for all of their transactions. Most

3    brokers use it for some but not all, leaving it up to the particular agent responsible for a given

4    transaction whether or not to use TransactionPoint.

5        5.    TransactionPoint allows brokers, at their option, to recoup some of the expense of

6    licensing TransactionPoint by sublicensing it, for a fee, to the various real estate service

7    providers, or vendors, who access the system in order to receive and process orders. The

8    question of whether to charge vendors an access fee is entirely up to the broker. The broker can

9    use TransactionPoint to place orders with vendors, and allow vendors to access TransactionPoint

10   to receive and fulfill the orders, whether or not the vendor signs a sublicense agreement and is

11   charged an access fee—that is a matter left solely to the broker. Some brokers who license

12   TransactionPoint require their service providers to sign a sublicense agreement and pay an access

13   fee; others do not. It is purely up to the broker.

14       6.    Fidelity still assists LPS in California with marketing TransactionPoint to brokers

15   and assisting and training brokers in its use, including the feature of the program that allows

16   brokers to sublicense access to the system as a means of generating revenue. In this role,

17   Fidelity also assists and trains the service providers that the brokers want to be given access to

18   the system. If a broker wishes to ask a service provider to enter a sublicense agreement, Fidelity

19   will provide a standard form sublicense agreement for this purpose and recommend a standard

20   access fee. It is left to the broker, however, to fill out the form sublicense and get it signed by

21   the service provider, although Fidelity will assist in this regard if asked to do so by the broker.

22   The TransactionPoint sublicense agreement for NHD reporting services that we give to interested

23   brokers includes a blank for the amount of any access fee the broker wishes to charge. Fidelity

24   will suggest, however, a standard fee of $25 for each occasion that a vendor accesses

25   TransactionPoint to receive an order. We emphasize to the broker that the fee is for accessing

26   TransactionPoint and must be paid whether or not a transaction closes and the vendor is

27   ultimately paid for its service.

28       7.    Typically, my group does not get involved with TransactionPoint sublicenses.

2

1   They are sent by the broker directly to the vendor and any negotiations that take place occur

2   directly between the broker and the vendor. On occasion, however, a broker will ask us to act on

3   their behalf in requesting that one or more of their vendors sign a sublicense. In addition, if the

4   vendor is a Fidelity-related company, like Disclosure Source, my group will assist in getting the

5   sublicense agreements signed. For this reason, I am aware that Disclosure Source has been

6   signing TransactionPoint sublicense agreements, and paying access fees, since 2003.

7       8.      By November 2005, Disclosure Source had entered 44 TransactionPoint

8   sublicense agreements; by November 2006, it had entered 60; by November 2007, it had entered

9   80. I obtained this information from an administrative assistant to my group whose job

10  responsibilities include maintaining copies of all the Disclosure Source sublicense agreements.

11      9.      All of the TransactionPoint sublicense agreements that Disclosure Source has

12  entered into with brokers have been virtually identical, consisting of the same standard form.

13  The agreements provide that Disclosure Source will pay a $25 fee to the broker each time the

14  broker places an order with Disclosure Source through TransactionPoint, regardless of whether

15  the home sale transaction closes and Disclosure Source is paid by the seller for issuing an NHD

16  report. The fee is for the right to access TransactionPoint for the purpose of accepting and

17  processing an order electronically. It is not a quid-pro-quo for an order.

18      10.     The TransactionPoint sublicense arrangement is well known throughout the

19  industry. I have personally been provided by brokers with sublicense agreements executed by

20  other NHD report providers, and I have overseen members of my group who have trained other

21  NHD report providers on the use of TransactionPoint. As an example, I am attaching hereto as

22  Exhibit A a true and correct copy of a sublicense agreement dated in May 2006 and signed by

23  JCP Geologists Inc., an NHD report company. Another example, a true and correct copy of

24  which I am attaching as Exhibit B, is the sublicense agreement dated in May 2006 and signed by

25  another NHD report company, TerraCheck. Both of these agreements are in the same standard

26  form as the Disclosure Source sublicense agreements, and both contain the same $25 access fee

27  amount.

28      11.     In addition to other NHD report providers, the TransactionPoint sublicense

3

1  agreement for NHD providers is well known to brokers. There must be literally hundred of

2  brokers who have signed the standard NHD sublicense agreement with various NHD report

3  providers, including Disclosure Source, Terra Check and JCP Geologists. All of these

4  agreements, to my knowledge, provide for the same $25 access fee. In addition, in marketing

5  TransactionPoint, my group will inform brokers of the revenue that can be generated by

6  sublicensing access to the system. So even some brokers who do not license TransactionPoint

7  are familiar with the sublicense arrangement.

8

9      I declare under penalty of perjury under the laws of the State of California that the

10  foregoing is true and correct, and that I signed this Declaration on July 19, 2010, at San Jose

11  California.

12

13                                          _____
                                               Steve Murnin

14

15

16

17  # 9627240_v1

18

19

20

21

22

23

24

25

26

27

28

                                            4

REAL ESTATE SERVICE PROVIDER ACCESS AGREEMENT

This Portal Access Agreement ("Agreement"), is made and effective commencing as of this 10th day of May 2006 ("Effective Date"), by and between Windermere Signature Properties, a real estate broker having a business address of 5609 Silver Creek Valley Road, San Jose, CA 95138 ("Sublicensor"); and JCP Geologists Inc, a corporation having a principal place of business at 321 Warren Ave. Fremont, CA 94539 ("Sublicensee").

1. GRANT OF LICENSE.

Sublicensor grants Sublicensee this non-exclusive, non-transferable license to remotely access and use the application software (the "SOFTWARE") and the Application Service Provider ("ASP") services set forth in Schedule 1 hereto solely in connection with and for the purpose of supporting and offering certain real estate services in real estate transactions in which Sublicensee is acting as a real estate service provider with respect to real property situated in the United States or Canada (herein "Transaction"). The SOFTWARE and ASP services are collectively referred to as the "SERVICE".

Sublicensee shall have no right to sublicense or further distribute or provide access to the SOFTWARE or the SERVICE.

2. SUBLICENSE FEE.

In consideration for the foregoing sublicense, Sublicensee shall pay Sublicensor a fee (the "Fee") equal to $ 25.00 for each order initiated and placed by Sublicensor using the link to Sublicensee's web site.

All charges for support and maintenance are included in the above-referenced Fee

3. PROPRIETARY PROTECTION AND RESTRICTIONS.

Sublicensee acknowledges that Fidelity National Financial, Inc. ("FNF"), or other third parties licensing the SOFTWARE and SERVICE to Sublicensor (collectively, "Licensor"), shall have sole and exclusive ownership of all right, title, and interest in and to the SOFTWARE AND SERVICE (including any images, "applets", photographs, animations, video, audio, music and text incorporated into the SERVICES and/or the SOFTWARE), and all modifications, revisions and enhancements thereof (including ownership of all trade secrets and copyrights pertaining thereto), subject only to the rights and privileges expressly granted therein by Sublicensor. This Agreement does not provide Sublicensee with title or ownership of, or an interest in, the SOFTWARE or SERVICE, but only a right of limited use. Sublicensee must keep the SOFTWARE and its access to the SERVICE free and clear of all claims, liens, and encumbrances.

Sublicensee may not use, copy, modify, or distribute the SOFTWARE (electronically or otherwise), or any copy, adaptation, transcription, or merged portion thereof, except as expressly authorized by Sublicensor or as set forth in this Agreement. Sublicensee may not, reverse assemble, reverse compile, or otherwise translate the SOFTWARE. Sublicensee's rights may not be transferred, leased, assigned, or sublicensed without Sublicensor's prior written consent. No service bureau work, multiple-user license, or time-sharing arrangement is permitted, except as expressly authorized by Sublicensor. Without Sublicensor's express prior written authorization, Sublicensee may not install the SOFTWARE in any other computer system or use it at any facility or location other than at Sublicensor's address designated in the preamble hereto.

Sublicensee acknowledges that, in the event of Sublicensee's breach of any of the foregoing provisions, Sublicensor and Licensor will not have an adequate remedy at law in money or damages. Sublicensor and Licensor shall therefore be entitled to obtain an injunction against such breach from any court of competent jurisdiction (without being required to post a bond or security) to restrain such a breach. Sublicensor's right to obtain injunctive relief shall not limit its right to seek further remedies.

1

The SERVICES and/or the SOFTWARE and all related information licensed hereunder constitute confidential, proprietary and trade secret information of Licensor and Sublicensor having been developed by great expenditures of time, resources and money. Therefore, Sublicensee shall keep the SOFTWARE, the SERVICES and all related information received hereunder in the strictest confidence and will exercise the highest degree of care to safeguard the confidentiality thereof. The existence of a copyright notice shall not cause or be construed as causing the SOFTWARE to be in the public domain or to be other than an unpublished work with all rights reserved under applicable copyright laws.

## 5. TERM AND TERMINATION.

This Agreement is effective as of the Effective Date and will remain in effect until terminated as hereinafter provided.

Sublicensor or Sublicensee may terminate this Agreement at any time, without cause and without liability to the other party upon thirty days prior written notice

Licensor or Sublicensee may terminate this Agreement for cause upon five days prior written notice to Sublicensee in the event that Sublicensee shall have failed to cure a material breach of the terms of this Agreement during such notice period.

Upon termination of this Agreement for any reason, all rights granted to Sublicensee by Sublicensor will terminate and revert to Sublicensor. Promptly upon termination of this Agreement for any reason or upon discontinuance or abandonment of Sublicensee's possession or use of the SOFTWARE or SERVICE, Sublicensee must return or destroy, as requested by Sublicensor, all materials pertaining to the SOFTWARE (including all copies thereof). Sublicensee agrees to certify Sublicensee's compliance with this restriction upon Sublicensor's request.

## 6. COMPLIANCE WITH LAWS.

Sublicensee acknowledges and agrees that Sublicensee's access to and use of the SERVICES and/or the SOFTWARE and/or participation in a Transaction may be subject to applicable federal, state and local laws, including without limitation, the rules and regulations of the Federal Communications Commission, the Federal Trade Commission or some other regulatory body or agency (a "Regulatory Agency"). Sublicensee agrees to comply with all requirements imposed by any Regulatory Agency. Furthermore, it is the intent of the Parties to comply in all respects with the Real Estate Settlement Procedures Act and with other applicable state and federal laws, rules and regulations in connection with their performance under this Agreement. Anything in this Agreement to the contrary notwithstanding, if either party (the "Notifying Party") reasonably determines that this Agreement poses a significant risk of causing the Notifying Party, or any of the Notifying Party's affiliates, to be in violation of any of the foregoing laws, rules and regulations, the Notifying Party and the other party shall renegotiate the terms of this Agreement so that this Agreement complies with such law, rule or regulation in the reasonable determination of both parties or the Notifying Party may terminate this Agreement.

## 7. LIMITED WARRANTY.

Due to the complex nature of the SOFTWARE and the SERVICES, neither Sublicensor nor any third party contributing to the content or provision of SERVICES or SOFTWARE warrants that the access to the SERVICES and/or the operation or performance of the SOFTWARE will be uninterrupted or error free. As Sublicensee's exclusive remedy for any material defect in the SOFTWARE or SERVICES provided hereunder, Sublicensee shall request Licensor to use reasonable efforts to correct or cure any such reproducible and documented material defect. Sublicensor shall not be obligated to ask Licensor to correct, cure, or otherwise remedy any nonconformity or defect in the SOFTWARE and/or SERVICES if Sublicensee has made any changes whatsoever to the SOFTWARE and/or SERVICES, if the SOFTWARE and/or SERVICES have been misused or damaged in any respect, or if Sublicensee has not reported to Sublicensor the existence and nature of such nonconformity or defect promptly upon discovery thereof. Sublicensor shall not be obligated to correct, cure or otherwise remedy any nonconformity or defect in the SOFTWARE or SERVICES. This warranty is expressly conditioned on Sublicensee's observance of the specifications, operating

2

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, LICENSOR AND SUBLICENSOR DISCLAIM ANY AND ALL PROMISES, REPRESENTATIONS, AND WARRANTIES WITH RESPECT TO THE SOFTWARE AND SERVICES, INCLUDING THEIR CONDITION, CONFORMITY TO ANY REPRESENTATION OR DESCRIPTION, THE EXISTENCE OF ANY LATENT OR PATENT DEFECTS, ANY NEGLIGENCE, AND MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OF THE SOFTWARE AND/OR SERVICES.

The cumulative liability of Licensor and Sublicensor to Sublicensee for all claims relating to the SOFTWARE and/or the SERVICES arising under this Agreement, including any cause of action sounding in contract, tort, or strict liability, shall not exceed the total amount of all access and license fees paid to Sublicensor hereunder. This limitation of liability is intended to apply without regard to whether other provisions of this Agreement have been breached or have proven ineffective.

IN NO EVENT SHALL LICENSOR OR SUBLICENSOR BE LIABLE FOR ANY LOSS OF PROFITS; ANY INCIDENTAL, SPECIAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES; OR ANY CLAIMS OR DEMANDS BROUGHT AGAINST SUBLICENSEE, EVEN IF SUBLICENSOR OR LICENSOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH CLAIMS OR DEMANDS. THIS LIMITATION UPON DAMAGES AND CLAIMS IS INTENDED TO APPLY WITHOUT REGARD TO WHETHER OTHER PROVISIONS OF THIS AGREEMENT HAVE BEEN BREACHED OR HAVE PROVEN INEFFECTIVE.

8. DATA.

Sublicensee acknowledges that data conversion is subject to the likelihood of human and machine errors, omissions, delays, and losses, including inadvertent loss of data or damage to media, that may give rise to loss or damage. None of Sublicensor, Licensor or any web site host shall be liable for any such errors, omissions, delays, or losses, unless caused by its gross negligence or willful misconduct. Sublicensee is responsible for adopting reasonable measures to limit the impact of such problems, including backing up data, and adopting procedures to ensure the accuracy of input data; examining and confirming results prior to use; and adopting procedures to identify and correct errors and omissions, replace lost or damaged media, and reconstruct data. Sublicensee is also responsible for complying with all local, state, and federal laws pertaining to the use and disclosure of any data.

9. DISCLAIMER OF LIABILITY.

SUBLICENSEE AGREES THAT NEITHER LICENSOR, SUBLICENSOR, THEIR SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR ANY WEB SITE HOST SHALL BE LIABLE TO SUBLICENSEE OR TO ANY OTHER PERSON, FIRM, OR CORPORATION WHATSOEVER FOR ANY LOSSES, DAMAGES, CLAIMS, PENALTIES, COSTS OR EXPENSES (INCLUDING LOST PROFITS) ARISING OUT OF OR RELATING TO ANY TRANSACTION OR THE USE OR INABILITY TO USE THE SERVICES AND/OR THE SOFTWARE, IN ANY WAY, INCLUDING BUT NOT LIMITED TO ANY DELAY, INACCURACIES, ERRORS OR OMISSIONS AND WHETHER OCCASIONED BY ANY CAUSE WHATSOEVER, WHETHER RESULTING FROM NEGLIGENCE OR OTHERWISE. IF THE FOREGOING DISCLAIMER AND WAIVER OF LIABILITY SHOULD BE DEEMED INVALID OR INEFFECTIVE, NEITHER LICENSOR, SUBLICENSOR, ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR THE WEB SITE HOST SHALL BE LIABLE IN ANY EVENT, INCLUDING THEIR OWN NEGLIGENCE, BEYOND AN AMOUNT EQUAL TO TEN THOUSAND DOLLARS ($10,000). SUBLICENSEE FURTHER AGREES THAT NEITHER SUBLICENSOR, ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR THE WEB SITE HOST SHALL BE LIABLE TO SUBLICENSEE OR TO ANY OTHER PERSON, FIRM, OR CORPORATION WHATSOEVER FOR ANY LOST REVENUES OR PROFITS, LOSS OF DATA OR OTHER SPECIAL, DIRECT, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, EVEN IF LICENSOR, SUBLICENSOR OR THE WEB SITE HOST HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10. INDEMNITY.

5

agents and the web site host harmless and to pay all losses, damages, expenses and costs (including reasonable attorneys' fees) incurred by them based upon any third party claim or action: (a) arising from Sublicensee's breach of Sublicensee's obligations, representations, warranties or covenants hereunder, or (b) arising from any delay, inaccuracies, errors or omissions in connection with a Transaction or the use or inability to use the SERVICES and/or the SOFTWARE. Sublicensor and the Licensor shall have the right ,but not the obligation, to participate in any defense or settlement of such claim or action.

## 11. PRIVACY OF DATA.

Sublicensor shall not sell, transfer, assign, share or use "non-public personal information," as defined in Title V of the Gramm-Leach-Bliley Act and its implementing regulations (hereinafter "Customer Information") in violation of any law designed to safeguard the privacy and security of such information. Except as expressly provided below or with Sublicensee's (or, as applicable, a party to a Transaction's) prior written consent, Sublicensor shall (a) not disclose any Customer Information to any person or entity, other than Sublicensor's employees, affiliates, agents, representatives or service providers who have a need to know such Customer Information in order to perform the responsibilities required under this Agreement, and (b) ensure that each person or entity to whom or to which Sublicensor intends to disclose Customer Information, except where such disclosure is pursuant to Sublicensee's (or, as applicable, a party to a Transaction's) direction, shall (i) use or disclose such Customer Information only to the extent necessary to perform the responsibilities required under this Agreement, and (ii) shall comply with Licensor's and Sublicensor's obligations under the Gramm-Leach-Bliley Act. Notwithstanding anything to the contrary contained in this Agreement, Sublicensor may disclose Customer Information pursuant to (x) a requirement or official request of a governmental agency, a court or administrative subpoena or order, or any applicable legislative or regulatory requirement, (y) in defense of any claim or cause of action asserted against it, or (z) as otherwise permitted by the Gramm-Leach-Bliley Act or applicable law. Sublicensor shall take all reasonable measures, including without limitation such measures as it takes to safeguard its own Customer Information, to ensure the security and confidentiality of all Customer Information, to protect against anticipated threats or hazards to the security or integrity of such Customer Information and to protect against unauthorized access to or use of such Customer Information.

## 12. GENERAL TERMS AND CONDITIONS.

12.1 Waivers and Limitation of Actions. No delay or omission in the exercise of any power or remedy available hereunder shall impair or effect either party's right to the exercise thereof. No action or claim, including, without limitation, any claim for indemnification, regardless of form, arising out of the transactions contemplated herein may be brought by either party more than one (1) year after the party seeking indemnification has actual knowledge that the cause of action has accrued.

12.2 Force Majeure. If either party shall be delayed in its performance of any obligation hereunder or be prevented entirely from performing any such obligation due to causes or events beyond its control including, without limitation, any act of God, fire, strike or other labor problem, legal action, present or future law, government order, rule or regulation, such delay or non-performance shall be excused and the time for performance shall be extended to include the period of such delay or non-performance for a period not to exceed 90 days.

12.3 Notices. All notices shall be made in writing and shall be deemed given or made on the date delivered if delivered in person, on the date initially received if delivered by telecopy transmission (with machine generated transmittal confirmation) followed by certified mail or reputable overnight courier, on the date delivered by an overnight courier service or on the third (3rd) business day after it is mailed if mailed by certified mail (return receipt requested, with postage and other fees prepaid) to the parties at the addresses indicated below (or at such other addresses as shall be given in writing by either of the parties to the other, if given in accordance with the terms of this Subsection 12.3).

If to Sublicensor

    Windermere Signature Properties
    5609 Silver Creek Valley Road
    San Jose, CA 95138
    Lew & Charle Colon'
    408.605.6364

If to Sublicensee:

    JCP Geologist Inc.
    321 Warren Ave.
    Fremont, CA 94539
    Greg Rufe
    Telephone: (510) 580-2000

If to Licensor:

    Fidelity National Financial, Inc.
    601 Riverside Avenue
    Jacksonville, Florida 32204
    Telephone:  (904) 854-8100
    Fax: (904) 357-1026

12.4 <u>Severability</u>. If any provision or portion of any provision of this Agreement is declared void or unenforceable or against public policy, such provision or portion thereof shall be deemed stricken from this Agreement and the remainder of this Agreement shall remain in full force and effect. In the event that any provision(s) of this Agreement or any portion thereof shall be held to be in any way an unreasonable restriction, the court so holding may reduce the geographical area and/or period of time in which such provision operates to the maximum permitted under applicable law, or otherwise modify or eliminate any such restriction to the least extent necessary to render such provision enforceable. In the event that any provision hereof is found invalid or unenforceable pursuant to judicial decree, the remainder of this Agreement shall remain valid and enforceable according to its terms.

12.5 <u>Governing Law</u>. This Agreement shall be construed and enforced in accordance with the substantive laws of the State of New York and the United States of America, without regard to choice of law principles.

12.6 <u>Dispute Resolution</u>. In connection with any dispute arising out of or relating to this Agreement, the parties hereto agree to attempt in good faith to resolve such dispute promptly by negotiation through an individual with the authority necessary to settle the controversy. Negotiations shall be commenced by written notice being delivered by a party to the other party. The parties are obligated to meet within ten (10) business days after delivery of such notice at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to exchange relevant information and to attempt to resolve the dispute. If the matter has not been resolved within forty-five (45) days of the initiating notice, or if the parties fail to meet within ten (10) business days, any party may initiate mediation of the dispute as provided below. All negotiations pursuant to this Section are confidential and shall be treated as compromise and settlement negotiations for purposes of the federal and state rules of evidence. If the parties agree, or if a party gives notice to mediate under the prior sentence, the parties shall engage in a mediation to resolve the dispute. The proceeding will be conducted in accordance with the then current Commercial Mediation Rules of the American Arbitration Association ("AAA"). Neither party may withdraw from the mediation before the conclusion of the proceeding. If the mediation concludes without a resolution of the dispute, any party may initiate arbitration of the dispute as follows. The obligation to mediate is an essential provision of this Agreement and both parties agree is legally binding upon it. In case of a violation of the obligation to mediate by either party, the other party may bring an action to seek enforcement of such obligation in any state or federal court of general jurisdiction located in New York County, New York, but in no other court. The mediator shall allocate legal fees and expenses as deemed equitable. If a party initiates arbitration as permitted by this Section, the dispute shall be resolved by binding arbitration conducted in accordance with the then current Commercial Arbitration Rules of the AAA. All arbitrators shall have not less than ten (10) years' experience in commercial software marketing or management. The decision of the arbitrators is final and binding upon all parties. Judgment upon the final arbitration decision may be entered by any court having jurisdiction thereof. The arbitrators shall allocate legal fees and expenses as deemed equitable.

12.7 <u>Assignment</u>. This Agreement shall be binding upon the parties hereto and their respective successors and permitted assignees.  The rights granted to Sublicensee by this Agreement or any duty or obligation of performance hereunder shall not be assigned, delegated, sublicensed, or otherwise transferred by Sublicensee, either voluntarily or by operation of law, except as specifically provided for herein. Any attempt by Sublicensee to assign, delegate, sublicense, or transfer any of the rights, duties, or obligations hereunder except as expressly provided by this Agreement is null and

5

12.8 Non-solicitation of Employees. Sublicensor and Sublicensee each agrees that it will not intentionally induce any employee of the other to terminate his or her employment relationship with the other party. In addition, Sublicensor and Sublicensee agree that, during the term of this Agreement and for an additional period of six (6) months thereafter, it will not knowingly employ or offer employment to any employee of a party who has performed any services related to this Agreement without first obtaining the written consent of the other party.

12.9 Contraction. The relationship created by this Agreement is solely that of independent contractors and the parties hereby acknowledge and agree that nothing in this Agreement shall be deemed to constitute either party as an agent or a franchisee of the other party. The parties hereby waive the benefit of any state or federal statutes dealing with the establishment and regulation of franchises. Neither party shall have any power or express or implied authorization to bind the other party or to assume or to create any obligation or responsibility, express or implied, on behalf of the other party or in the other party's name. This Agreement shall not be construed as constituting the parties' partners or to create any other form of joint venture or other relationship which could impose liability upon one party for any act or omission of the other.

12.10 Headings. The Section and Subsection headings used herein are for reference and convenience only and shall not enter into the interpretation hereof.

12.11 Further Assurances. After the date hereof, each party hereto will take all such further actions, and sign all such further documents, as may be reasonably required to confirm and effectuate the terms of this Agreement.

12.12 Public Announcements; References. Sublicensee acknowledges that Sublicensor may desire to use Sublicensee's name in press releases, product brochures and financial reports indicating that Sublicensee is a Sublicensee of Sublicensor, and Sublicensee agrees that Sublicensor may use Sublicensee's name in such manner.

12.13 Export Laws. In no event may Sublicensee export any Licensed Software outside the United States unless it has complied fully with all relevant United Stated export laws and regulations including without limitation the U.S. Export Administration Act and its associated rules and regulations. Upon the request of Sublicensor, Sublicensee shall promptly deliver to Sublicensor a certification that it has complied with the provisions of this Section 12.13.

12.14 Survival. Sections 3, 4, 5, and 7 through 12 will survive the termination of this Agreement for any reason.

SUBLICENSOR:

Name: Windermere Signature Properties

By: _____

Title: _____

Date: _____

SUBLICENSEE:

Name: JCP Geodigital Inc.    Greg Rufa

By: _____

Title: _____

Date: _____

6

The Sublicensee will be provided a user name and login to the service provider utility, contained within TransactionPoint, which is embedded in the TSP site. TransactionPoint is a web application service. The user must have Internet Explorer version 5.0 or higher to access the system. The Sublicensee will be provided a hosted and secure operating environment within their clients Transaction Services Portal (TSP).

## DESCRIPTION OF SERVICE

The service provider component of the TransactionPoint platform, accessed from the TSP, will provide the user with the following utilities:

- Receive open orders from TransactionPoint, delivered via their TSP provider/client

- Transmit receipt and confirmation of the order back to the TSP

- Provide specific status information as it relates to activities relating to the Transaction

- Provide the ability to upload documents to the TSP

- Receive a detailed transaction log of the activities from the TSP

Rev. 092203jaa

# 1208533_v3

7

Mumin Ex. A
'196

# Exhibit B

Sunday, June 24, 2007 8.47 AM

Confidential

APPENDIX 4 TO BROKER ASP AGREEMENT

REAL ESTATE SERVICE PROVIDER ACCESS AGREEMENT

This Portal Access Agreement ("Agreement"), is made and effective commencing as of this 7th day of May, 2007 ("Effective Date"), by and between Wilbur Properties, a real estate broker having a business address of 790 High Street, Palo Alto, California 94301 ("Sublicensee"), and TerraCheck a corporation having a principal place of business at 15495 Los Gatos Blvd, Suite #9, Los Gatos, CA 95032 ("Sublicensor").

1. GRANT OF LICENSE.

Sublicensor grants Sublicensee this non-exclusive, non-transferable license to remotely access and use the application software (the "SOFTWARE") and the Application Service Provider ("ASP") services set forth in Schedule 1 hereto solely in connection with and for the purpose of supporting and offering certain real estate services in real estate transactions in which Sublicensee is acting as a real estate service provider with respect to real property situated in the United States or Canada (each a "Transaction"). The SOFTWARE and ASP services are collectively referred to as the "SERVICE".

Sublicensee shall have no right to sublicense or further distribute or provide access to the SOFTWARE or the SERVICE.

2. SUBLICENSE FEE.

In consideration for the foregoing sublicense, Sublicensee shall pay Sublicensor a fee (the "Fee") equal to $ 25.00 for each order initiated and placed by Sublicensor using the link to Sublicensee's web site.

All charges for support and maintenance are included in the above-referenced Fee.

3. PROPRIETARY PROTECTION AND RESTRICTIONS.

Sublicensee acknowledges that Fidelity National Financial, Inc. ("FNF"), or other third parties licensing the SOFTWARE and SERVICE to Sublicensor (collectively, "Licensor"), shall have sole and exclusive ownership of all right, title, and interest in and to the SOFTWARE AND SERVICE (including any images, "applets", photographs, animations, video, audio, music and text incorporated into the SERVICES and/or the SOFTWARE), and all modifications, revisions and enhancements thereof (including ownership of all trade secrets and copyrights pertaining thereto), subject only to the rights and privileges expressly granted therein by Sublicensor. This Agreement does not provide Sublicensee with title or ownership of, or an interest in, the SOFTWARE or SERVICE, but only a right of limited use. Sublicensee must keep the SOFTWARE and its access to the SERVICE free and clear of all claims, liens, and encumbrances.

Sublicensee may not use, copy, modify, or distribute the SOFTWARE (electronically or otherwise), or any copy, adaptation, transcription, or merged portion thereof, except as expressly authorized by Sublicensor or as set forth in this Agreement. Sublicensee may not reverse assemble, reverse compile, or otherwise translate the SOFTWARE. Sublicensee's rights may not be transferred, leased, assigned, or sublicensed without Sublicensor's prior written consent. No service bureau work, multiple-user license, or time-sharing arrangement is permitted, except as expressly authorized by Sublicensor. Without Sublicensor's express prior written authorization, Sublicensee may not install the SOFTWARE in any other computer system or use it at any facility or location other than at Sublicensee's address designated in the preamble hereto.

Sublicensee acknowledges that, in the event of Sublicensee's breach of any of the foregoing provisions, Sublicensor and Licensor will not have an adequate remedy at law in money or damages. Sublicensor and Licensor shall therefore be entitled to obtain an injunction against such breach from any court of competent jurisdiction (without being required to post a bond or security) to restrain such a breach, Sublicensor's right to obtain injunctive relief shall not limit its right to seek further remedies.

1

Sunday, June 24, 2007 8:47 AM          Paulson 408-27041412                              p.00

Confidential

## 4. CONFIDENTIALITY.

The SERVICES and/or the SOFTWARE and all related information licensed hereunder constitute confidential, proprietary and trade secret information of Licensor and Sublicensor having been developed by great expenditures of time, resources and money. Therefore, Sublicensee shall keep the SOFTWARE, the SERVICES and all related information received hereunder in the strictest confidence and will exercise the highest degree of care to safeguard the confidentiality thereof. The existence of a copyright notice shall not cause or be construed as causing the SOFTWARE to be in the public domain or to be other than an unpublished work with all rights reserved under applicable copyright laws.

## 5. TERM AND TERMINATION.

This Agreement is effective as of the Effective Date and will remain in effect until terminated as hereinafter provided.

Sublicensor or Sublicensee may terminate this Agreement at any time, without cause and without liability to the other party upon thirty days prior written notice.

Licensor or Sublicensor may terminate this Agreement for cause upon five days prior written notice to Sublicensee in the event that Sublicensee shall have failed to cure a material breach of the terms of this Agreement during such notice period.

Upon termination of this Agreement for any reason, all rights granted to Sublicensee by Sublicensor will terminate and revert to Sublicensor. Promptly upon termination of this Agreement for any reason or upon discontinuance or abandonment of Sublicensee's possession or use of the SOFTWARE or SERVICE, Sublicensee must return or destroy, as requested by Sublicensee, all materials pertaining to the SOFTWARE (including all copies thereof). Sublicensee agrees to certify Sublicensee's compliance with this restriction upon Sublicensee's request.

## 6. COMPLIANCE WITH LAWS.

Sublicensee acknowledges and agrees that Sublicensee's access to and use of the SERVICES and/or the SOFTWARE and/or participation in a Transaction may be subject to applicable federal, state and local laws, including without limitation, the rules and regulations of the Federal Communications Commission, the Federal Trade Commission or some other regulatory body or agency (a "Regulatory Agency"). Sublicensee agrees to comply with all requirements imposed by any Regulatory Agency. Furthermore, it is the intent of the Parties to comply in all respects with the Real Estate Settlement Procedures Act and with other applicable state and federal laws, rules and regulations in connection with their performance under this Agreement. Anything in this Agreement to the contrary notwithstanding, if either party (the "Notifying Party") reasonably determines that this Agreement poses a significant risk of causing the Notifying Party, or any of the Notifying Party's affiliates, to be in violation of any of the foregoing laws, rules and regulations, the Notifying Party and the other party shall renegotiate the terms of this Agreement so that this Agreement complies with such law, rule or regulation in the reasonable determination of both parties or the Notifying Party may terminate this Agreement.

## 7. LIMITED WARRANTY.

Due to the complex nature of the SOFTWARE and the SERVICES, neither Sublicensee nor any third party contributing to the content or provision of SERVICES or SOFTWARE warrants that the access to the SERVICES and/or the operation or performance of the SOFTWARE will be uninterrupted or error free. As Sublicensee's exclusive remedy for any material defect in the SOFTWARE or SERVICES provided hereunder, Sublicensee shall request Licensor to use reasonable efforts to correct or cure any such reproducible and documented material defect. Sublicensor shall not be obligated to ask Licensor to correct, cure, or otherwise remedy any nonconformity or defect in the SOFTWARE and/or SERVICES if Sublicensee has made any changes whatsoever to the SOFTWARE and/or SERVICES, if the SOFTWARE and/or SERVICES have been misused or damaged in any respect, or if Sublicensee has not reported to Sublicensor the existence and nature of such nonconformity or defect promptly upon discovery thereof. Sublicensor shall not be obligated to correct, cure or otherwise remedy any nonconformity or defect in the SOFTWARE or SERVICES. This warranty is expressly conditioned on Sublicensee's observance of the specifications, operating

2

Confidential

procedures, security measures, and data-control procedures with respect to the SOFTWARE or SERVICES provided to or made available to Sublicensee.

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, LICENSOR AND SUBLICENSOR DISCLAIM ANY AND ALL PROMISES, REPRESENTATIONS, AND WARRANTIES WITH RESPECT TO THE SOFTWARE AND SERVICES, INCLUDING THEIR CONDITION, CONFORMITY TO ANY REPRESENTATION OR DESCRIPTION, THE EXISTENCE OF ANY LATENT OR PATENT DEFECTS, ANY NEGLIGENCE, AND MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OF THE SOFTWARE AND/OR SERVICES.

The cumulative liability of Licensor and Sublicensor to Sublicensee for all claims relating to the SOFTWARE and/or the SERVICES arising under this Agreement, including any cause of action sounding in contract, tort, or strict liability, shall not exceed the total amount of all access and license fees paid to Sublicensor hereunder. This limitation of liability is intended to apply without regard to whether other provisions of this Agreement have been breached or have proven ineffective.

IN NO EVENT SHALL LICENSOR OR SUBLICENSOR BE LIABLE FOR ANY LOSS OF PROFITS; ANY INCIDENTAL, SPECIAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES; OR ANY CLAIMS OR DEMANDS BROUGHT AGAINST SUBLICENSEE, EVEN IF SUBLICENSOR OR LICENSOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH CLAIMS OR DEMANDS. THIS LIMITATION UPON DAMAGES AND CLAIMS IS INTENDED TO APPLY WITHOUT REGARD TO WHETHER OTHER PROVISIONS OF THIS AGREEMENT HAVE BEEN BREACHED OR HAVE PROVEN INEFFECTIVE.

8. DATA.

Sublicensee acknowledges that data conversion is subject to the likelihood of human and machine errors, omissions, delays, and losses, including inadvertent loss of data or damage to media, that may give rise to loss of damage. None of Sublicensor, Licensor or any web site host shall be liable for any such errors, omissions, delays, or losses, unless caused by its gross negligence or willful misconduct. Sublicensee is responsible for adopting reasonable measures to limit the impact of such problems, including backing up data, and adopting procedures to ensure the accuracy of input data, examining and confirming results prior to use; and adopting procedures to identify and correct errors and omissions, replace lost or damaged media, and reconstruct data. Sublicensee is also responsible for complying with all local, state, and federal laws pertaining to the use and disclosure of any data.

9. DISCLAIMER OF LIABILITY.

SUBLICENSEE AGREES THAT NEITHER LICENSOR, SUBLICENSOR, THEIR SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR ANY WEB SITE HOST SHALL BE LIABLE TO SUBLICENSEE OR TO ANY OTHER PERSON, FIRM, OR CORPORATION WHATSOEVER FOR ANY LOSSES, DAMAGES, CLAIMS, PENALTIES, COSTS OR EXPENSES (INCLUDING LOST PROFITS) ARISING OUT OF OR RELATING TO ANY TRANSACTION OR THE USE OR INABILITY TO USE THE SERVICES AND/OR THE SOFTWARE, IN ANY WAY, INCLUDING BUT NOT LIMITED TO ANY DELAY, INACCURACIES, ERRORS OR OMISSIONS AND WHETHER OCCASIONED BY ANY CAUSE WHATSOEVER, WHETHER RESULTING FROM NEGLIGENCE OR OTHERWISE. IF THE FOREGOING DISCLAIMER AND WAIVER OF LIABILITY SHOULD BE DEEMED INVALID OR INEFFECTIVE, NEITHER LICENSOR, SUBLICENSOR, ITS SHAREHOLDERS DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR THE WEB SITE HOST SHALL BE LIABLE IN ANY EVENT, INCLUDING THEIR OWN NEGLIGENCE, BEYOND AN AMOUNT EQUAL TO TEN THOUSAND DOLLARS ($10,000). SUBLICENSEE FURTHER AGREES THAT NEITHER SUBLICENSOR, ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS NOR THE WEB SITE HOST SHALL BE LIABLE TO SUBLICENSEE OR TO ANY OTHER PERSON, FIRM, OR CORPORATION WHATSOEVER FOR ANY LOST REVENUES OR PROFITS, LOSS OF DATA OR OTHER SPECIAL, DIRECT, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, EVEN IF LICENSOR, SUBLICENSOR OR THE WEB SITE HOST HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

3

Confidential

**10. INDEMNITY.**

Sublicensee agrees to indemnify and hold Licensor, Sublicensor, its shareholders, directors, officers, employees and agents and the web site host harmless and to pay all losses, damages, expenses and costs (including reasonable attorneys' fees) incurred by them based upon any third party claim or action (a) arising from Sublicensee's breach of Sublicensee's obligations, representations, warranties or covenants hereunder, or (b) arising from any delay, inaccuracies, errors or omissions in connection with a Transaction or the use or inability to use the SERVICES and/or the SOFTWARE. Sublicensor and the Licensor shall have the right, but not the obligation, to participate in any defense or settlement of such claim or action.

**11. PRIVACY OF DATA.**

Sublicensee shall not sell, transfer, assign, share or use "non-public personal information," as defined in Title V of the Gramm-Leach-Bliley Act and its implementing regulations (hereinafter "Customer Information") in violation of any law designed to safeguard the privacy and security of such information. Except as expressly provided below or with Sublicensee's (or, as applicable, a party to a Transaction's) prior written consent, Sublicensor shall (a) not disclose any Customer Information to any person or entity, other than Sublicensor's employees, affiliates, agents, representatives or service providers who have a need to know such Customer Information in order to perform the responsibilities required under this Agreement, and (b) ensure that each person or entity to whom or to which Sublicensor intends to disclose Customer Information, except where such disclosure is pursuant to Sublicensee's (or, as applicable, a party to a Transaction's) direction, shall (i) use or disclose such Customer Information only to the extent necessary to perform the responsibilities required under this Agreement, and (ii) shall comply with Licensor's and Sublicensor's obligations under the Gramm-Leach-Bliley Act. Notwithstanding anything to the contrary contained in this Agreement, Sublicensor may disclose Customer Information pursuant to (x) a requirement or official request of a governmental agency, a court or administrative subpoena or order, or any applicable legislative or regulatory requirement, (y) in defense of any claim or cause of action asserted against it, or (z) as otherwise permitted by the Gramm-Leach-Bliley Act or applicable law. Sublicensor shall take all reasonable measures, including without limitation such measures as it takes to safeguard its own Customer Information, to ensure the security and confidentiality of all Customer Information, to protect against anticipated threats or hazards to the security or integrity of such Customer Information and to protect against unauthorized access to or use of such Customer Information.

**12. GENERAL TERMS AND CONDITIONS.**

12.1 **Waiver and Limitation of Actions.** No delay or omission in the exercise of any power or remedy available hereunder shall impair or effect either party's right to the exercise thereof. No action or claim, including, without limitation, any claim for indemnification, inquiries of form, arising out of the transactions contemplated herein may be brought by either party more than one (1) year after the party seeking indemnification has actual knowledge that the cause of action has accrued.

12.2 **Force Majeure.** If either party shall be delayed in its performance of any obligation hereunder or be prevented entirely from performing any such obligation due to causes or events beyond its control including, without limitation, any act of God, fire, strike or other labor problem, legal action, present or future law, government order, rule or regulation, such delay or non-performance shall be excused and the time for performance shall be extended to include the period of such delay or non-performance for a period not to exceed 90 days.

12.3 **Notices.** All notices shall be made in writing and shall be deemed given or made on the date delivered if delivered in person, on the date initially received if delivered by telecopy transmission (with machine generated transmittal confirmation) followed by certified mail or reputable overnight courier, on the date delivered by an overnight courier service or on the third (3rd) business day after it is mailed if mailed by certified mail (return receipt requested), with postage and other fees prepaid) to the parties at the addresses indicated below (or at such other addresses as shall be given in writing by either of the parties to the other, if given in accordance with the terms of this Subsection 12.3).

If to Sublicensee:

    Wilbon Properties
    Attention: Anna K. Wilbon
    750 High Street
    Palo Alto, California 94301

4

Confidential

Phone Number: (650) 328-8877

If to Sublicensee:

TerraCheck
15496 Los Garos Blvd., Suite #6
Los Garos, CA 95032
Hilary Bunter
Telephone: (408) 354-8282
hilary@cterracheck.com

If to Licensor:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Telephone: (904) 854-8100
Fax (904) 357-1026

12.4 Severability. If any provision or portion of any provision of this Agreement is declared void or unenforceable or against public policy, such provision or portion thereof shall be deemed stricken from this Agreement and the remainder of this Agreement shall remain in full force and effect. In the event that any provision(s) of this Agreement or any portion thereof shall be held to be in any way an unreasonable restriction, the court so holding may reduce the geographical area and/or period of time in which such provision operates to the maximum permitted under applicable law, or otherwise modify or eliminate any such restriction to the least extent necessary to render such provision enforceable. In the event that any provision hereof is found invalid or unenforceable pursuant to judicial decree, the remainder of this Agreement shall remain valid and enforceable according to its terms.

12.5 Governing Law. This Agreement shall be construed and enforced in accordance with the substantive laws of the State of New York and the United States of America, without regard to choice of law principles.

12.6 Dispute Resolution. In connection with any dispute arising out of or relating to this Agreement, the parties hereto agree to attempt in good faith to resolve such dispute promptly by negotiation through an individual with the authority necessary to settle the controversy. Negotiations shall be commenced by written notice being delivered by a party to the other party. The parties are obligated to meet within ten (10) business days after delivery of such notice at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to exchange relevant information and to attempt to resolve the dispute. If the matter has not been resolved within forty-five (45) days of the initiating notice, or if the parties fail to meet within ten (10) business days, any party may initiate mediation of the dispute as provided below. All negotiations pursuant to this Section are confidential and shall be treated as compromise and settlement negotiations for purposes of the federal and state rules of evidence. If the parties agree, or if a party gives notice to mediate under the prior sentence, the parties shall engage in a mediation to resolve the dispute. The proceeding will be conducted in accordance with the then current Commercial Mediation Rules of the American Arbitration Association ("AAA"). Neither party may withdraw from the mediation before the conclusion of the proceeding. If the mediation concludes without a resolution of the dispute, any party may initiate arbitration of the dispute as follows. The obligation to mediate is an essential provision of this Agreement and both parties agree is legally binding upon it. In case of a violation of the obligation to mediate by either party, the other party may bring an action to seek enforcement of such obligation in any state or federal court of general jurisdiction located in New York County, New York, but in no other court. The mediator shall allocate legal fees and expenses as deemed equitable. If a party initiates arbitration as permitted by this Section, the dispute shall be resolved by binding arbitration conducted in accordance with the then current Commercial Arbitration Rules of the AAA. All arbitrators shall have not less than ten (10) years' experience in commercial software marketing or management. The decision of the arbitrators is final and binding upon all parties. Judgment upon the final arbitration decision may be entered by any court having jurisdiction thereof. The arbitrators shall allocate legal fees and expenses as deemed equitable.

5

May 19 07 02:20p                                                          p.2

Confidential

12.7 **Assignment**. This Agreement shall be binding upon the parties hereto and their respective successors and permitted assignees. The rights granted to Sublicensee by this Agreement or any duty or obligation of performance hereunder shall not be assigned, delegated, sublicensed, or otherwise transferred by Sublicensee, either voluntarily or by operation of law, except as specifically provided for herein. Any attempt by Sublicensee to assign, delegate, sublicense, or transfer any of the rights, duties, or obligations hereunder except as expressly provided by this Agreement is null and void. Sublicensee shall not assign its obligations hereunder without the written consent of Sublicensor, except in connection with the sale of substantially all of its assets.

12.8 **Non-solicitation of Employees**. Sublicensor and Sublicensee each agrees that it will not intentionally induce any employee of the other to terminate his or her employment relationship with the other party. In addition, Sublicensor and Sublicensee agree that, during the term of this Agreement and for an additional period of six (6) months thereafter, it will not knowingly employ or offer employment to any employee of a party who has performed any services related to this Agreement without first obtaining the written consent of the other party.

12.9 **Contingent**. The relationship created by this Agreement is solely that of independent contractors and the parties hereby acknowledge and agree that nothing in this Agreement shall be deemed to constitute either party as an agent or a franchisee of the other party. The parties hereby waive the benefit of any state or federal statutes dealing with the establishment and regulation of franchises. Neither party shall have any power or express or implied authorization to bind the other party or to assume or to create any obligation or responsibility, express or implied, on behalf of the other party or in the other party's name. This Agreement shall not be construed as constituting the parties' partners or to create any other form of joint venture or other relationship which could impose liability upon one party for any act or omission of the other.

12.10 **Headings**. The Section and Subsection headings used herein are for reference and convenience only and shall not enter into the interpretation hereof.

12.11 **Further Assurances**. After the date hereof, each party hereto will take all such further actions, and sign all such further documents, as may be reasonably required to confirm and effectuate the terms of this Agreement.

12.12 **Public Announcement; Reference**. Sublicensee acknowledges that Sublicensor may desire to use Sublicensee's name in press releases, product brochures and financial reports indicating that Sublicensee is a Sublicensee of Sublicensor, and Sublicensee agrees that Sublicensor may use Sublicensee's name in such manner.

12.13 **Export Laws**. In no event may Sublicensee export any Licensed Software outside the United States unless it has complied fully with all relevant United States export laws and regulations including without limitation the U.S. Export Administration Act and its associated rules and regulations. Upon the request of Sublicensor, Sublicensee shall promptly deliver to Sublicensor a certification that it has complied with the provisions of this Section 12.13.

12.14 **Survival**. Sections 3, 4, 5, and 7 through 13 will survive the termination of this Agreement for any reason.

SUBLICENSOR:

Name: Wilbur Properties
By: _____
Title: _____
Date: _____ 6 - 15 - 07

SUBLICENSEE:

Name: Terra _____
By: _____
Title: V.P. OPER ATI ons
Date: 5-15-07

6

Sunday, June 24, 2007 8,47 AM                    Pattison 406-270-1212

Confidential

SCHEDULE I

DESCRIPTION OF SOFTWARE

The Sublicensee will be provided a user name and login to the service provider utility, contained within TransactionPoint, which is embedded in the TSP site. TransactionPoint is a web application service. The user must have Internet Explorer version 5.0 or higher to access the system. The Sublicensee will be provided a hosted and secure operating environment within their clients Transaction Services Portal (TSP).

DESCRIPTION OF SERVICE

The service provider component of the TransactionPoint platform, accessed from the TSP, will provide the user with the following utilities:

* Receive open orders from TransactionPoint, delivered via their TSP provider/client

* Transmit receipt and confirmation of the order back to the TSP

* Provide specific status information as it relates to activities relating to the Transaction

* Provide the ability to upload documents to the TSP

* Receive a detailed transaction log of the activities from the TSP

Rev. 092203jka
# 1203682_v5

7

# Exhibit E



Fidelity National Financial Inc. & TransactionPoint

# Section 8(a) – Referral Fees

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

# FNF RES Providers

- Fidelity National Title Insurance Company
- Chicago Title Insurance Company
- Ticor Title Insurance Company
- Security Union Title Insurance Company
- Fidelity National Home Warranty Company
- Fidelity National Disclosure Source, LLC

# Sub-Licensee Agreement

Confidential

## REAL ESTATE SERVICE PROVIDER ACCESS AGREEMENT

This Portal Access Agreement ("Agreement"), is made and effective commencing as of this 12th day of November, 2004 ("Effective Date"), by and between TRW Diversified, LLC and DRW Pacific Properties, inc., a real estate broker having a business address of 770 Paseo Camarillo, Suite 100, Camarillo, CA 93010 ("Sublicensor"), and Fidelity National Title Company, a corporation having a principal place of business at 760 Paseo Camarillo, Suite 101, Camarillo, CA 93010 ("Sublicensee").

## 1. GRANT OF LICENSE.

Sublicensor grants Sublicensee this non-exclusive, non-transferable license to remotely access and use the application software (the "SOFTWARE") and the Application Service Provider ("ASP") services set forth in Schedule 1 hereto solely in connection with and for the purpose of supporting and offering certain real estate services in real estate transactions in which Sublicensee is acting as a real estate service provider with respect to real property situated in the United States or Canada (herein "Transaction"). The SOFTWARE and ASP services are collectively referred to as the "SERVICE".

Sublicensee shall have no right to sublicense or further distribute or provide access to the SOFTWARE or the SERVICE.

# Order of Licensees

- Licensor: FNF/Transaction Point

- Licensee/Sublicensor: Real Estate Broker
- i.e., DRM/Keller Williams

- Sub-Licensee: FNF RES Provider
- i.e., Fidelity National Title

# Referral and Agreement

- Selection of a FNF RES Provider by the Broker constitutes the referral.

- The sublicensee fee is a disguised referral fee.

- FNF's RES Providers are paying kickbacks to real estate brokerages.

# Referral Process

- Real estate agent obtains a contract for sale of a home. *Transaction Coordinator*
- Real estate agent enters information about the home sale into Transaction Point. *broakrage*
- Real estate agent pays a one-time $17 *$12* fee to enter transaction.

# Referral Process (continued)

- Real estate agent selects FNF RES providers from a dropdown list. ~ Not necessary

    Trans Coor

- FNF RES providers are notified that a transaction is pending in the system.

# Agreement

- FNF RES providers who do not enter into an agreement with the real estate brokerage are not included as a menu option and therefore cannot be selected by the real estate agent.

- Therefore the referral is pursuant to a written agreement.

# Agreement to Pay

## 2. SUBLICENSE FEE.

In consideration for the foregoing sublicense, Sublicensee shall pay Sublicensor a fee (the "Fee") equal to $75.00 for each Escrow order and $25.00 for each Title Insurance order initiated and placed by Sublicensor using the link to Sublicensee's web site.   Sublicensor will bill Sublicensee on or about the 5th of the month for all orders placed during the prior month, payable by the 20th to DRM Diversified LLC.

All charges for support and maintenance are included in the above-referenced Fee

# Example

On March 31, 2009, for listing at

665 Halifax Lane, Oxnard, CA 93035:

- Fidelity Home Warranty paid Keller Williams Realty $15.

- Fidelity National Title Co. paid Keller Williams Realty $100.

- Total kickbacks/referral fees paid: $115

# Thing of Value

- The FNF RES provider receives an invoice for closed transactions only.

- The invoiced fee is pre-determined by the type of service being offered, and is contained in the written agreement.

Day 3 Bonus

# Fee Schedule

Enclosed is a report (the "Real Estate Broker Sublicense Fee Report") that identifies the amount paid to real estate brokers by FNF RES Providers through the Revenue Share program for orders to each of the following types of services:

| Type of Service | Amount of Sublicense Fee |
|---|---|
| a. Title/escrow | $25/$75 changed to $25/$50 |
| b. Home warranty | $15 |
| c. Home/property inspection | N/A |
| d. Mortgage | N/A |
| e. Property hazard report | $25 |
| f. All other settlement service providers listed by the type of the service provided | N/A |

Note that this is $25 for Title and $75 for escrow

# Thing of Value

- In a particular transaction, the real estate broker may receive up to $140 ($25 for title + $75 for escrow + $15 for home warranty + $25 for hazard report) in kickbacks/referral fees from FNF RES providers.

- $140 = Referral fee/Kickback

- FNF RES Providers only pay if a transaction goes to closing.

# Section 8(b) – Unearned Fees

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

# No Work

- Real estate brokerages performed no work for the $140 paid by FNF RES Providers for closed transactions.

# 8(c)(2) Does not apply

Section 8(c)(2) allows the payment of a fee for services actually performed.

After reviewing all documentation submitted by FNF, HUD has been unable to identify any service performed by the real estate brokerage that would be compensable by FNF RES Providers.

# Conclusion

Since 2002, Fidelity National Financial, Inc., through its affiliates/subsidiaries, violated Section 8 of RESPA by paying kickbacks to approximately 181 real estate brokers for the referral of settlement service business and by paying unearned fees.

# Referral Fees Paid

From August 1, 2007, through
September 24, 2010,

FNF RES Providers paid in total:

# Title and Escrow

## Title and Escrow Referral Fees:

8,084 transactions

x $100 = $808,400

in kickbacks/referral fee payments to real estate brokerages.

# Home warranty

## Home Warranty Referral Fees:

3,754 transactions

x $15 = $56,310

in kickbacks/referral fee payments to real estate brokerages.

# Hazard disclosure

## Hazard Disclosure Referral Fees:

9,972 transactions

x $25 = $249,300

in kickback/referral fee payments to real estate brokerages.

## Totals

FNF paid a total of $1,114,010 in kickbacks/referral fee payments in connection with 21,810 transactions.

# Improper profits

As a result of paying kickbacks/referral fees, FNF earned $21,979,596 in profits.

COPY

Name & Address:
Edward D. Chapin, Esq. (SBN: 053287)
Francis A. Bottini, Jr., Esq. (SBN: 175783)
Chapin Fitzgerald Sullivan & Bottini LLP
550 West C Street, Suite 2000
San Diego, CA 92101

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| MATTHIAS HILDEBRANDT, SCOTT PHILLIPS, DORSEY MCTAGGART, [see attachment] PLAINTIFF(S) v. FIDELITY NATIONAL FINANCIAL, INC., a Delaware corporation; [see attachment] DEFENDANT(S). | CASE NUMBER SACV12 874 JVS(MLGx) SUMMONS |
|---|---|

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Francis A. Bottini, Jr., Esq._ , whose address is _550 West C Street, Suite 2000, San Diego, CA 92101_ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JUN - 1 2012

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____

By: _____
           Deputy Clerk

SEAL

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    SUMMONS

## ATTACHMENT TO SUMMONS

MATTHIAS HILDEBRANDT, SCOTT
PHILLIPS, DORSEY MCTAGGART,
and WILLIAM C. HADDON,
individually and on behalf of themselves
and all others similarly situated,

                               Plaintiffs,

        v.

FIDELITY NATIONAL FINANCIAL,
INC., a Delaware corporation;
FIDELITY NATIONAL TITLE
INSURANCE COMPANY, a California
corporation; COMMONWEALTH
LAND TITLE COMPANY, a California
corporation; CHICAGO TITLE
COMPANY, a California corporation;
TICOR TITLE COMPANY OF
CALIFORNIA, a California
corporation; LAWYERS TITLE
COMPANY, a California corporation;
FIDELITY NATIONAL
DISCLOSURE SOURCE, LLC, a
Delaware corporation; FIDELITY
NATIONAL HOME WARRANTY
COMPANY, a California corporation;
and DOES 1-100, inclusive,

                               Defendants.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>MATTHIAS HILDEBRANDT, SCOTT PHILLIPS, DORSEY MCTAGGART, and WILLIAM C. HADDON, individually and on behalf of themselves and all others similarly situated, | DEFENDANTS<br>FIDELITY NATIONAL FINANCIAL, INC., a Delaware corporation; FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation; COMMONWEALTH LAND TITLE COMPANY, et al. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Francis A. Bottini, Jr., Esq.; Chapin Fitzgerald Sullivan & Bottini LLP<br>550 West C Street, Suite 2000, San Diego, CA 92101;  Tel: (619) 241-4810<br>(see attachment for additional counsel) | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No       ☒ MONEY DEMANDED IN COMPLAINT: $ according to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
12 U.S.C. Section 2601 - Violation of the Real Estate Settlement Procedures Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | **IMMIGRATION** | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

SACV12  874

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑Yes
If yes, list case number(s): CV11-09746 DSF (AGRx); Honorable Dale S. Fischer

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Matthias Hildebrandt - Los Angeles County | Scott Phillips - San Diego County<br>Dorsey McTaggart - Marin County<br>William C. Haddon - Nevada |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, Orange County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Keith Cochran_ Date June 1, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# ATTACHMENT TO CIVIL CASE COVER SHEET

CHAPIN FITZGERALD
  SULLIVAN & BOTTINI LLP
EDWARD D. CHAPIN
(echapin@cfsblaw.com)
FRANCIS A. BOTTINI, JR.
(fbottini@cfsblaw.com)
JILL M. SULLIVAN
(jsullivan@cfsblaw.com)
KEITH M. COCHRAN
(kcochran@cfsblaw.com)
550 West "C" Street, Suite 2000
San Diego, CA 92101
Tel:  (619) 241-4810
Fax:  (619) 955-5318

BERNSTEIN LITOWITZ
  BERGER & GROSSMANN LLP
BLAIR NICHOLAS
(blairn@blbglaw.com)
BENJAMIN GALDSTON
(bgaldston@blbglaw.com)
DAVID KAPLAN
(davidk@blbglaw.com)
LAURENCE REZA WRATHALL
(laurence.wrathall@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:  (858) 793-0070
Fax:  (858) 793-0323

Attorneys for Plaintiffs and the Classes

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV12- 874 JVS (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[X] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.